IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>      Defendants. | Civil Action No. 3:22-cv-00055-REP<br><br><u>CLASS ACTION</u> |

MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
AND SERVICE AWARDS TO THE NAMED PLAINTIFFS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................1

II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
        APPROPRIATE..............................................................................................4

        A.      A Reasonable Percentage of the Benefit Conferred on the Class Is the
                Appropriate Method for Awarding Attorneys' Fees.................................6

        B.      Class Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit
                Authority ..................................................................................................8

                1.      The Amount in Controversy and the Result Obtained for the Class
                        Support the Requested Fee...........................................................9

                2.      The Reaction of the Class and Endorsement of Named Plaintiffs
                        Support the Requested Fee.........................................................10

                3.      The Skill and Efficiency of Class Counsel Support the Requested
                        Fee..............................................................................................10

                4.      The Complexity and Difficulty of the Litigation Support the
                        Requested Fee ............................................................................11

                5.      The Contingent Nature of Class Counsel's Representation and the
                        Risk of Nonpayment Support the Requested Fee .......................12

                6.      Awards in Comparable Cases Support the Requested Fee .......13

                7.      The Time and Labor Expended Support the Requested Fee.....14

III.    CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND
        WERE NECESSARILY INCURRED.............................................................20

IV.     THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD
        BE APPROVED ............................................................................................21

V.      CONCLUSION..............................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                               **Page**

*Adkins v. Midland Credit Mgmt., Inc.*,
No. 5:17-cv-04107, 2022 WL 327739 (S.D. W. Va. Feb. 3, 2022)..........................................6

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972)............................................................................................................11

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ...............................................................................................22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..............................................................................................................6

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) .................................................................................23

*Cohen v. Chilcott*,
522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................................................6

*Fire & Police Retiree Health Care Fund, San Antonio v. Smit*h,
No. CCB-18-3670, 2020 WL 6826549 (D. Md. Nov. 20, 2020)...............................................6

*Foti v. NCO Fin. Sys., Inc.*,
No. 04 Civ. 00707 (RJS), 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 20, 2008) ...............5

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)...................................................................................................8

*Halcom v. Genworth Life Ins. Co.*,
No. 3:21-cv-00019-REP (E.D. Va. June 29, 2022) ....................................................... *passim*

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).................6

*Helmick v. Columbia Gas Transmission*,
No. 2:07-cv-00743, 2010 WL 2671506 (S.D. W. Va. July 1, 2010).......................................23

*Henderson v. Verifications Inc.*,
No. 3:11cv514-REP, 2013 WL 12146748 (E.D. Va. Mar. 13, 2013).................................7, 14

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).............................................................................................................5

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) .....................................................23

*In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ......................................6, 14

Page

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................................................3

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...................................17

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................................ *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
    172 F. Supp. 2d 778 (E.D. Va. 2001) ........................................................................... *passim*

*In re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) .......................................................................................19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*,
    No. 4:14-md-2541-CW (N.D. Cal. Mar. 26, 2019) ................................................................19

*In re NII Holdings Inc. Sec. Litig.*,
    No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702 (E.D. Va. Sept. 16, 2016) ..............14, 19

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) .......................................................................................3

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. Civ. 03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ........................................23

*In re Remeron End-Payor Antitrust Litig.*,
    No. Civ. 02-2007 FSH, 2005 WL 2230314 (D.N.J. Sept. 13, 2005)......................................23

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................................17

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................................17

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
    886 F. Supp. 445 (E.D. Pa. 1995) .....................................................................................14

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................................13

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .............................................................................................8

*Jones v. Dominion Res. Servs., Inc.*,
    601 F. Supp. 2d 756 (S.D. W. Va. 2009).............................................................................23

*Knurr v. Orbital ATK, Inc.*,
    No. 1:16-cv-01031-TSE-MSN, 2019 WL 3317976 (E.D. Va. June 7, 2019) ....................6, 14

Page

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
No. 1:02-cv-05893 (N.D. Ill.) ................................................................. 13

*McBean v. City of New York*,
233 F.R.D. 377 (S.D.N.Y. 2006) ............................................................ 23

*Phillips v. Triad Guar. Inc.*,
No. 1:09CV71, 2016 WL 2636289 (M.D.N.C. May 9, 2016) ................. 18

*Pierce v. Rosetta Stone, Ltd.*,
No. C 11-01283, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ........... 22

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................ 21, 22

*Ryals v. Strategic Screening Sols., Inc.*,
No. 3:14-cv-00643-REP, 2016 WL 7042947 (E.D. Va. Sept. 15, 2016) ...............7, 14, 21, 22

*Savani v. URS Prof'l Sols. LLC*,
121 F. Supp. 3d 564 (D.S.C. 2015) ........................................................ 23

*Skochin v. Genworth Fin., Inc.*,
No. 3:19-cv-49-REP, 2020 WL 6536140 (E.D. Va. Nov. 5, 2020) ................................ *passim*

*Skochin v. Genworth Life Ins. Co.*,
413 F. Supp. 3d 473 (E.D. Va. 2019) ..................................................... 12

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. Civ.A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ........ 17

## STATUTES, RULES, AND REGULATIONS

Fair Credit Reporting Act (FCRA) ....................................................................7

Federal Rules of Civil Procedure
Rule 23(h) ..................................................................................................5

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
108 F.R.D. 237 (1986) ..........................................................................7, 15

## SECONDARY AUTHORITIES

*Big Billers: The Paralegals*, THE AMERICAN LAWYER (Jan. 24, 2019),
https://www.law.com/americanlawyer/2019/01/24/weil-fees-in-sears-bankruptcy-shine-light-on-big-billers-the-paralegals/ ...........................................19

Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*,
WALL ST. J. (Feb. 9, 2016) ......................................................................19

Goldman Scarlato & Penny, P.C., Robbins Geller Rudman & Dowd LLP, Berger Montague PC, and Phelan Petty PLC, counsel for the Named Plaintiffs[1] and the Class[2] ("Class Counsel"), respectfully submit this memorandum in support of their application for an award of attorneys' fees and expenses and service awards to the Named Plaintiffs.

## I.      INTRODUCTION

Class Counsel have achieved another substantial settlement for the benefit of a class of Genworth Life Insurance Company and Genworth Life Insurance Company of New York ("Genworth" or "Defendants") long-term care ("LTC") insureds.  The settlement ("Settlement") is very similar to those approved by the Court in *Skochin*[3] and *Halcom*,[4] and achieves the litigation's main goals by delivering the core relief Plaintiffs could expect to obtain had they prevailed on the merits of their claims.  That relief includes several election options in connection with their LTC insurance policies, including "Paid-up Benefit Options" and "Reduced Benefit Options" with cash damages payments or enhanced paid-up benefits.  Stipulation ¶46 and Appendices C-D.  It also includes a more complete and adequate disclosure from Genworth about its plans for future rate increases, its dependence upon obtaining those rate increases to be able to pay future claims, and information about its current financial condition ("Disclosures").  *Id.* ¶46(a)-(b) and Appendix B.  While the Settlement structure and relief closely track the *Skochin*

---

[1]    The "Named Plaintiffs" are Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten.

[2]    All capitalized terms not defined herein shall have the same meanings as in the Amended Joint Stipulation of Class Action Settlement and Release signed by the Parties on July 5, 2022 [ECF No. 33-1] ("Stipulation").  Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

[3]    *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49-REP, 2020 WL 6536140 (E.D. Va. Nov. 5, 2020).

[4]    Final Judgment and Order of Dismissal With Prejudice, *Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-00019-REP (E.D. Va. June 29, 2022), ECF No. 119.

and *Halcom* settlements, Class Counsel's fee request is significantly lower than both, and does not include any payment of fees for the injunctive relief (*i.e.*, the Disclosures) secured for the Class, nor does it include compensation for any of the work Class Counsel expended in those prior cases. As compensation for their efforts, Class Counsel respectfully request an award of attorneys' fees in the amount of a contingent payment of 15% of certain amounts related to Special Election Options selected by the Class, which shall be no greater than $13 million ("Contingent Fee") (compared to $24.5 million and $18.5 million caps in *Skochin* and *Halcom*, respectively). Stipulation ¶55(a). It is important to clarify that none of the attorneys' fees will be deducted from the cash awards claimed by the Class Members, and instead will be paid separately by Genworth.

Since fee awards are designed to encourage counsel to get the best possible result for the class, the amount requested in this case is warranted given the outstanding recovery. The monetary relief that Class Counsel expects the Settlement to provide Class Members is considerable. Including by reference to the rate of settlement elections made to date in the *Skochin* settlement, Class Counsel anticipate that total cash damages payments to the Class could be between $224 million and $609 million. Declaration of Nicholas Sheahon ("Sheahon Decl.") ¶¶4-5 (attached as Exhibit C to the Declaration of Brian D. Penny in support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement; and (2) Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Service Awards to the Named Plaintiffs ("Penny Decl.")). That calculation does not account for the benefits for the thousands of Class Members who may elect a paid-up non-forfeiture benefit in the Settlement that will be worth ***150%*** of what it would be worth if elected outside the Settlement. Moreover, none of these amounts will be reduced in any way by Genworth's payment of attorneys' fees, expenses, and the Named Plaintiffs' awards. While the relief provided here is substantial, the requested Contingent Fee is relatively modest. A 15% fee tied directly to the cash payments actually claimed by the Class is far below the fees awarded in

this District and Circuit in other recent class actions, even without accounting for the cap on potential fees which will likely lower the aggregate percentage of Class Counsels' fee compared to the cash damages paid to the Class.  *See* below §II.B.6.

In addition, the recovery was achieved in the face of considerable risk.  These risks include, for example, the risk that a litigation class could not be certified, the risk that the case would not survive summary judgment on whether Genworth's disclosures to Class Members were material or misleading, or the risk that a jury would not find them material or misleading.  *See* Penny Decl., ¶¶8-10.  Indeed, as explained in greater detail in Section C.1 of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Brief"), the risks to recovery in this case were far more significant than they were in the prior *Skochin* and *Halcom* cases.  Class Counsel also faced the prospects of an aggressive defense mounted by Defendants through two of the largest and most sought-after defense firms in the country.  While facing these risks, Class Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved.

In light of these risks, the recovery is exceptional and secures what the Named Plaintiffs sought – more complete Disclosures (Stipulation, Appendix B) and an opportunity to make new policy and benefit elections based on those Disclosures, including significant cash damage payment options or the option for an enhanced paid-up benefit equal to 150% of what was offered outside the Settlement (*id.*, Appendix C).  This is significantly better than the typical settlement, which often recovers low double digit or even single digit percentages of the relief sought by the class.[5]  The Settlement was achieved despite significant obstacles and risks that Class Counsel

---

[5]   *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming class settlement of "6.1 percent of what appellees agree is the settlement class's maximum potentially recoverable damages"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 242 (3d Cir. 2001)

faced in bringing and prosecuting this case.  Accordingly, the requested fee, which even at its maximum is below that awarded by the Court in *Skochin* and *Halcom*, and which on a percentage basis is well below others awarded in the Fourth Circuit, is warranted.

In addition, the Named Plaintiffs – who have participated in and overseen this action from initial investigation (including well before the Parties entered mediation or the Class Action Complaint ("Complaint") was filed) through Settlement – approve of and endorse the requested fee.  Class Counsel respectfully request that this Court approve the requested amount of fees and litigation expenses as justified under the particular facts of this case.

Separately, the Named Plaintiffs seek service awards of $15,000 each in connection with their representation of the Class – amounts in line with the Court's awards in *Skochin* and *Halcom*. The time and effort the Named Plaintiffs dedicated to this litigation are set forth in the Declarations of the Named Plaintiffs (*See* Penny Decl., Exs. J-N), and they respectfully request that the Court approve the awards.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND APPROPRIATE

On May 2, 2022, the Court granted preliminary approval of the Settlement and the Notice of Pendency of Class Action and Proposed Settlement ("Notice") (Stipulation, Appendix E), which informed Class Members that Class Counsel would seek attorneys' fees of a 15% Contingent Fee on cash damages payments made by Genworth and in an amount no greater than $13 million. Class Counsel also informed the Class that they would request an award of litigation expenses in an amount not to exceed $50,000 and service awards not to exceed $15,000 for each Named Plaintiff.  *Id.*

---

(affirming settlement with Ernst & Young where settlement amount equated to "9.25% of the damages for which it was responsible").

Rule 23(h) of the Federal Rules of Civil Procedure permits the Court to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, as in *Skochin* and *Halcom*, the fees are **both** authorized by law **and** by the Parties' agreement. Paragraph 55 of the Stipulation permits Class Counsel to seek attorneys' fees of $13 million in the form of a contingency fee. The requested fees and expenses were agreed to by the Parties only after they had reached agreement on the substantive terms of the Settlement and following extensive negotiation. Declaration of Rodney A. Max [ECF No. 28-2], ¶21. Such negotiated fee and expense awards are favored, and courts have endorsed them. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). The fact that the Parties were able to avoid a "second major litigation[,]" as to the fees and expenses through extensive negotiations, weighs in favor of the award. *Id.*

Also, like the *Skochin* and *Halcom* settlements, "[t]he payment of these fees does not subtract from the amount that Genworth will disburse to plaintiffs as part of their damages payments; rather, the 15% attorney fee will be paid by Genworth over and above the damage payments to class members." *Halcom*, No. 3:21-cv-19, 2022 WL 2317435, at *8 (E.D. Va. June 28, 2022); *see also Skochin*, 2020 WL 6536140, at *8 (The fees awarded "will be paid by Defendants from a separate fund that will not diminish Class members' recovery.").

Courts recognize that a reduction to a negotiated fee only benefits the defendant. *See, e.g.*, *Foti v. NCO Fin. Sys., Inc.*, No. 04 Civ. 00707 (RJS), 2008 U.S. Dist. LEXIS 16511, at *21 (S.D.N.Y. Feb. 20, 2008) (finding proposed amount of fees to be fair in case where class settlement was not a monetary common fund, and attorneys' fees were not to "come out of the pocket of class members"; the court noted that "were the Court to reduce the agreed-upon amount of attorneys' fees, the only beneficiary would be [defendant] – not the class"). What's more, "where attorneys' fees are paid separately from the claim fund, courts base the fee award on the entire settlement

fund as that package is the benefit to the class.  This amount includes notice and administration costs and separately paid attorneys' fees and costs." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012); *accord Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007) ("[T]he settlement has separate funds for class recovery and attorneys' fees, and because the attorneys' fees are borne by defendants and not plaintiff, they represent a valuable part of the settlement.").

## A.   A Reasonable Percentage of the Benefit Conferred on the Class Is the Appropriate Method for Awarding Attorneys' Fees

It is well settled that attorneys who achieve a common settlement fund for the benefit of a class are "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  In *Skochin*, the Court treated the cash damages portion of the relief to the Class as a "constructive common fund" and agreed that "the percentage method is still appropriate."  2020 WL 6536140, at *6.  The Court followed that same principle in *Halcom*. 2022 WL 2317435, at *8-*9.

Determining the appropriate percentage fee is case specific, but in *Halcom* and *Skochin*, the Court agreed that a 15% fee was reasonable.  *Halcom*, 2022 WL 2317435, at *9; *Skochin*, 2020 WL 6536140, at *11.  In fact, district courts in the Fourth Circuit have frequently awarded much higher percentages – 25% to 33% of the recovery – as attorneys' fees in recent class actions. *See, e.g.*, *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W. Va. Feb. 3, 2022) (awarding 33% fee); *Fire & Police Retiree Health Care Fund, San Antonio v. Smit*h, No. CCB-18-3670, 2020 WL 6826549, at *8 (D. Md. Nov. 20, 2020) (awarding fees "just under 30 percent of the value of the settlement"); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN, 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (awarding 28% fee); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding 33% fee in antitrust class action settlement); *In re Genworth Fin. Sec.*

*Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (awarding 28% fee in securities class action settlement); *Ryals v. Strategic Screening Sols., Inc.*, No. 3:14-cv-00643-REP, 2016 WL 7042947, at *2 (E.D. Va. Sept. 15, 2016) (Payne J.) (awarding 26.752% fee in Fair Credit Reporting Act ("FCRA") class settlement); *Henderson v. Verifications Inc.*, No. 3:11cv514-REP, 2013 WL 12146748, at *5 (E.D. Va. Mar. 13, 2013) (awarding 28.67% fee in FCRA case).

In addition, because the attorneys' fees that Genworth will pay Class Counsel are capped, while the cash damages payments to Class Members are not, it is possible (if not probable) that the attorneys' fees ultimately will be ***well below*** 15% of the Class' aggregate cash damages payments.  It is not possible, however, that the attorneys' fees will ever be more than 15% of the cash actually paid to the Class.  This further confirms the reasonableness of the fee request.

To ensure the reasonableness of the percentage fee awarded, district courts in the Fourth Circuit sometimes do a lodestar "cross-check," although as the Third Circuit's Task Force on court-awarded attorneys' fees aptly explained:

> [The lodestar method] creates a disincentive for the early settlement of cases. Because of [its] emphasis on hours worked, lawyers – including defense counsel who typically bill their clients on an hourly basis – have little or no incentive to settle cases at the earliest appropriate opportunity.  To the contrary, there appears to be a conscious, or perhaps unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar.

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 248 (1986) ("*Third Circuit Task Force*").

Here, the 15% fee calculated from each Class Member's actual cash damages payment is well below the range of percentage fees approved by courts in this District and the reasonableness of the percentage is, if necessary, confirmed by the resulting lodestar multiplier of 9.8x, which is consistent with the Court's conclusion in *Skochin*.  2020 WL 6536140, at *10 ("a potential lodestar multiplier of 9.05 is not unreasonable in this case").

**B.      Class Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority**

In *Halcom* and *Skochin*, the Court used the percentage method and applied a combination of the *Johnson* and *Gunter* factors to determine the reasonableness of Class Counsel's fee request. *Halcom*, 2022 WL 2317435, at *11-*12; *Skochin*, 2020 WL 6536140, at *6-*7.

> The twelve *Johnson* factors are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for legal work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation[,] and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Skochin*, 2020 WL 6536140, at *4-*5 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

In *Gunter*, "the reasonableness factors are: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys' involved; (3) the complexity and duration of the case; (4) the risk of nonpayment; (5) awards in similar case; (6) objections; and (7) the amount of time devoted to the case by plaintiffs' counsel." *Id.* at *5 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

Just as the Court did in *Halcom* and *Skochin*, Class Counsel will analyze the fees request by applying both the applicable *Johnson* and *Gunter* factors.  Class Counsel's 15% requested fees satisfy each of those factors, are approved and endorsed by the Named Plaintiffs, and are eminently reasonable when compared to the fee awards in *Halcom* and *Skochin*.  Class Counsel's requested fees should be awarded as fair and reasonable in this case.

## 1.    The Amount in Controversy and the Result Obtained for the Class Support the Requested Fee

"The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843; *see also In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 787 (E.D. Va. 2001) (stating that a fee should "include a reward or enhancement" for "the degree of success achieved").  Put differently, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome.  Here, not only will Class Members receive significant, valuable benefits, they can enjoy those benefits without having to pay Class Counsel's fees – that amount will be paid entirely by Genworth.

The Settlement is an excellent result for the Class by any measure.  It provides significant injunctive relief in the form of Disclosures that provide Class Members visibility about future rate increases (which Class Counsel does ***not*** seek any attorneys' fees for achieving), and also provides them the option to keep their policies as is or make changes to their policies and also receive cash damages payments depending on their choice.  The cash damages payments to Class Members for the reduced benefit options ("RBOs") are $6,000 for each option, and $1,000 for the RBO applicable to those who previously elected a stable premium option.  For Paid-up Benefit Options, the cash damages payments are $10,000, or $1,000 for those that have already elected a Paid-up Benefit Option outside the Settlement.  Class Counsel estimate potential cash damages payments of between $224 million and $609 million.  *See* Sheahon Decl., ¶¶4-5.  There is no aggregate cap or limit to how much Genworth will pay out to Class Members, and these payments are substantial given the harm alleged in this case.

In the end, the Class cares most about getting a good result.  This Settlement is a great result for the Class – indeed, a lifeline for many Class Members – and supports Class Counsel's

fee request and merits an appropriate fee that encourages counsel to seek excellent results as efficiently as possible.

## 2. The Reaction of the Class and Endorsement of Named Plaintiffs Support the Requested Fee

The Named Plaintiffs, who most closely observed the work of Class Counsel, approve and endorse the fee request.  *See* Penny Decl., ¶34; Ex J, ¶9; Ex K, ¶9; Ex L, ¶9; Ex M, ¶9; and Ex N, ¶9.  In addition, Class Members were informed in the Class Notice that Class Counsel would move the Court for attorneys' fees as described above.  Class Members were also advised of their right to object to the fee request, and that such objections are required to be filed with the Court and served on the Settlement Administrator no later than September 30, 2022.  As of the date of this filing, 352,146 Class Notices were sent directly to Class Members, and there has been only one objection to Class Counsel's fees request.  *See Genworth*, 210 F. Supp. 3d at 844 (The "limited objection to attorneys' fees within the range awarded by the Court demonstrates their reasonableness.").[6]

## 3. The Skill and Efficiency of Class Counsel Support the Requested Fee

The skill and efficiency of the attorneys involved are also important factors.  *See Skochin*, 2020 WL 6536140, at *8.  Class Counsel, based on knowledge gained in litigating and settling *Skochin* and *Halcom*, served targeted discovery, including document requests and interrogatories, and reviewed and analyzed over 300,000 pages of documents.  In anticipation of further litigation in the event settlement talks broke down, Class Counsel marshaled evidence on complex factual and legal issues such as contract interpretation, insurance-related financial and actuarial issues (*e.g.*, reserves for future liabilities), and damages.  Class Counsel also carefully prepared for and

---

[6]   To the extent any objections to Class Counsel's fee request are received after the filing of this motion, Class Counsel will address them in their reply brief due on November 3, 2022.

interviewed two of Genworth's representatives to test the merits of Plaintiffs' claims and Genworth's anticipated defenses. *See* Final Approval Brief at 12-14; Penny Decl., ¶24. In doing so, Class Counsel expended significant time, resources, and skill in developing compelling evidence to establish liability and damages and to better understand the potential defenses in this case, which were different and more substantial than Genworth's defenses in the prior litigations. *See* Final Approval Brief at 19-21; Penny Decl., ¶¶7-10.

The recovery obtained for the Class is a direct result of these efforts, and Class Counsel's diligence and skill enabled them to negotiate a very favorable recovery for the Class under difficult and challenging circumstances. *See Genworth*, 210 F. Supp. 3d at 844 (noting the "skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law" weighed in favor of awarding 28% fee).

### 4. The Complexity and Difficulty of the Litigation Support the Requested Fee

The complexity or difficulty of issues is another factor that can support an enhanced fee award. *See Skochin*, 2020 WL 6536140, at *8-*9.

While certain of the issues, *e.g.*, pleading issues, were resolved in *Skochin*, under the facts of that case, a number of other complex and difficult issues lay ahead. For instance, Genworth would have argued that class certification was unwarranted on Named Plaintiffs' claims because, according to Genworth, both fraud and state consumer protection law claims require proof of reliance. Named Plaintiffs would have argued that a presumption of reliance was available under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972) (reliance for fraud claim presumed when omission material), based on Genworth's omissions being material, and that the rate increase notification letters were all uniform based on template forms. Genworth, however, would have disputed that and, in any event, would have argued that any presumption would have been rebutted.

In addition, Named Plaintiffs faced the risk that the Court could have entered summary judgment on whether Genworth's disclosures were misleading, or whether Genworth was even obligated to make such disclosures in the first place. Likewise, a jury could have found that Genworth did not have a duty to make these disclosures or that the disclosures made were not misleading. Also, Genworth would have undoubtedly appealed any decision to certify the class and any adverse judgment. At the Fourth Circuit, Named Plaintiffs would have faced substantial risk, including the risk that the appellate court would reverse this Court's rejection of Genworth's filed-rate doctrine arguments made in *Skochin v. Genworth Life Ins. Co.*, 413 F. Supp. 3d 473, 484 (E.D. Va. 2019).

### 5. The Contingent Nature of Class Counsel's Representation and the Risk of Nonpayment Support the Requested Fee

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement. *See Halcom*, 2022 WL 2317435, at *12; *Skochin*, 2020 WL 6536140, at *9. In *Skochin*, the Court recognized that "the risk of non-payment was very real." 2020 WL 6536140, at *9. For the reasons just stated, the same is true here; in fact, because the facts were weaker than those in *Skochin* and *Haclom*, the risks here were more acute. Class Counsel worked very hard to draft the Complaint, review documents from Genworth, interview material witnesses, and negotiate this Settlement on a wholly contingent basis despite the risks of surviving dispositive motions, obtaining class certification, proving liability and damages, and litigating the case through trial and possible appeals if this Settlement is not approved. *See* Final Approval Brief at 12-14; Penny Decl., ¶¶20-24. To date, Class Counsel have not been compensated for their time or expenses in representing the Class. Penny Decl., ¶23.

Litigation of these cases can be extremely protracted and yet law firm salaries, leases, and other expenses must be paid, while counsel wait for several years to be paid, if at all. For example,

in another case handled by one of Class Counsel, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.), Robbins Geller Rudman & Dowd LLP litigated the case for 14 years through trial and appeal, without compensation and expending over $35 million in actual, out-of-pocket expenses without third-party funding, before reaching a settlement.  In Class Counsel's view, it is their hard-earned reputations and willingness to go all the way to get the best possible result that benefits the Class and makes them highly sought-after firms for clients. Nevertheless, in every case the risk of losing and not being paid at all remains, as there are numerous class actions in which plaintiffs' counsel expended thousands of hours and lost, receiving no compensation.  *See In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

Class Counsel bore the risks of continued litigation and committed significant time to the successful settlement of this action and believe they achieved the best possible result for the Class. In doing so, Class Counsel diverted resources – and the litigators in this case – away from other potentially meritorious actions.  The contingent nature of counsel's representation, and the risk of nonpayment, support approval of the requested fee.

### 6.    Awards in Comparable Cases Support the Requested Fee

In *Genworth*, the court held that the "award of 28% to the Plaintiffs' Counsel is fair and reasonable[,]" and noted that plaintiffs had cited several cases "in which courts grant attorneys' fees varying from 25% to 33.3% of the total Settlement amount."  210 F. Supp. 3d at 845 & n.4 (citing settlements ranging from $165 million to $325 million where attorneys' fees of 25% to 33.3% were awarded).  Here, the recovery is better than most cases, providing substantial financial

and injunctive relief, yet Class Counsel's requested 15% fee – the same percentage approved in

*Skochin*[7] and *Halcom* – is well below recent fees for comparable complex litigation settlements:

| Cases in the Fourth Circuit | Settlement | Fee % |
|---|---|---|
| *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031, 2019 WL 3317976 (E.D. Va. June 7, 2019) | $108,000,000 | 28% |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) | $94,000,000 | 33% |
| *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837 (E.D. Va. 2016) | $219,000,000 | 28% |
| *In re NII Holdings Inc. Sec. Litig.*, No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702 (E.D. Va. Sept. 16, 2016) | $41,500,000 | 25% |
| *Ryals v. Strategic Screening Sols., Inc.*, No. 3:14-cv-00643-REP, 2016 WL 7042947 (E.D. Va. Sept. 15, 2016) | $1,492,869 | 26.752% |
| *Henderson v. Verifications Inc.*, No. 3:11cv514-REP, 2013 WL 12146748 (E.D. Va. Mar. 13, 2013) | $3,750,000 | 28.67% |

Accordingly, the requested fee percentage is reasonable.

### 7. The Time and Labor Expended Support the Requested Fee

Awarding fees based on the percentage method "has the virtue of reducing the incentive

for plaintiffs' attorneys to over-litigate or 'churn' cases" and, therefore, the trend has been toward

use of the percentage method. *See MicroStrategy*, 172 F. Supp. 2d at 787.  Indeed, as courts have

observed, through the percentage method, "[a] number of salutary effects can be achieved . . .

including removing the inducement to unnecessarily increase hours, prompting early settlement,

reducing burdensome paperwork for counsel and court[,] and providing a degree of predictability

to fee awards."  *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 460

---

[7]    While the Court noted a "risk of a windfall payment" in *Skochin*, 2020 WL 6536140, at *9, due to the $10 million floor that was initially requested but then withdrawn, Class Counsel did not request a floor in *Halcom* and do not do so here.  Hence, there is no risk of windfall.

(E.D. Pa. 1995).  The lodestar crosscheck, on the other hand, "creates a disincentive for the early settlement of cases . . . [b]ecause of [its] emphasis on hours worked[.]"  *Third Circuit Task Force*, 108 F.R.D. at 248.  For this reason, the private marketplace for contingency-fee attorneys never utilizes the "lodestar" method but provides for the payment of a percentage of the overall recovery.  The legal market in Richmond, Virginia is no different.  *See* Declaration of Harris D. Butler, III, Esquire ("Butler Decl."), attached as Exhibit I to Penny Decl., ¶18 ("For single party or single event cases, the common practice for contingency fee contracts in the Richmond, Virginia legal market is for plaintiffs' attorneys to have a contingency fee contract of 33 to 40% of the gross amount recovered, and in complex federal litigation, a 40% contract is the norm.").

Nevertheless, courts in this District recognize that reviewing counsel's lodestar as a "cross-check" may assist in assessing the reasonableness of a percentage fee.  *See Halcom*, 2022 WL 2317435, at *13; *Skochin*, 2020 WL 6536140, at *9-*10; *Genworth*, 210 F. Supp. 3d at 845; *MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "adequately compensate lead counsel for the time expended on the case").  Since fee awards are designed to encourage efficient litigation and great results, which Class Counsel believe they have accomplished here, courts recognize that the fee award should "include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors."  *MicroStrategy*, 172 F. Supp. 2d at 787.  Overall, the awarding of fees "contemplate[s] the exercise of sound judgment by the trial court in adjusting the lodestar figure after a qualitative assessment of various factors[.]"  *Id.*  Each of those factors, along with the Court's careful analysis in *Skochin*, supports the requested fee.

### a.   Class Counsel's Lodestar Multiplier Is Reasonable and Appropriately Rewards and Incentivizes Counsel for Their Efficient Work

Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms which are guaranteed payment win or lose and are paid immediately, Class Counsel are only paid at the end of the case and only if the case is successful. *See, e.g.*, *MicroStrategy*, 172 F. Supp. 2d at 788 ("[T]here is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery.").

In this case, Class Counsel and their paraprofessionals have expended to date more than 2,215 hours in the initiation, prosecution, and settlement of this action with a resulting lodestar (after writing off time in the exercise of billing judgment) of approximately $1,327,404, resulting in a 9.8x multiplier to Class Counsel's lodestar based on their fee request.[8] *See* Penny Decl., ¶20 and accompanying Declaration of Brian D. Penny Filed on Behalf of Goldman Scarlato & Penny, P.C. in Support of Application for Award of Attorneys' Fees and Expenses ("Goldman Scarlato Decl."), Exhibit D, ¶4; Declaration of Stuart A. Davidson Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), Exhibit E, ¶4; Declaration of Glen L. Abramson Filed on Behalf of Berger Montague PC in Support of Application for Award of Attorneys' Fees and Expenses ("Berger Montague Decl."), Exhibit F, ¶4; Declaration of Jonathan M. Petty Filed on Behalf of Phelan Petty PLC in Support of Application for Award of Attorneys' Fees and Expenses ("Phelan Petty Decl."), Exhibit G, ¶4.

---

[8]   This multiple is based on the requested $13 million for the 15% contingency fee award. If the cash damages paid to the Class exceeds roughly $86,750,000, then the total attorneys' fees will be capped at $13 million. Of course, as the cash damages exceed this threshold, then the requested fees will be less than 15% of the actual value obtained by the Class and could be a substantially lower percentage.

The lodestar multiplier confirms the reasonableness of the requested fee award, as it is consistent with the Court's conclusion in *Skochin* that a "potential lodestar multiplier of 9.05 is not unreasonable in this case." 2020 WL 6536140, at *10.  The Court in *Skochin* identified two bases supporting this multiplier.  First, Class Counsel would only receive the contingency fee ceiling (and thus the maximum potential multiplier) if enough Class Members in fact choose one of the five Special Election Options with a cash damages payment component.  *See id*.  Awarding the maximum potential multiplier here would mean Class Members had received over $86,750,000 in cash damages payments, at which point the $13 million fee ceiling would be triggered.  *See id*.  "Second, the lodestar is only used as a cross-check rather than the primary method of assessing the reasonableness of the attorneys' fees in this case."  *Id*.  If the Court finds, as it did in *Skochin*, that the 15% fee is reasonable in light of the significant value provided to the Class, "the lodestar should not preclude recovery."  *Id.*

Awarding Class Counsel up to a 9.8x multiplier is reasonable under the facts of this case and provides an appropriate "reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *MicroStrategy*, 172 F. Supp. 2d at 787-88.[9]  Moreover, that multiplier will only decrease as Class Counsel continues to expend significant hours through final approval and the administration of this Settlement after approval.

---

[9]    *See also In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (awarding 25% of the settlement fund of $126,800,000 and 6.96 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ.A. 03-4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (15.6 multiplier awarded, which the court found was "neutralized with respect to the reasonableness of a percentage fee award of 20% by the extraordinary support Plaintiffs have shown for counsel's request for fees"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In  contingent litigation, lodestar multiples of over 4 are routinely awarded by courts."); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ 10240(CM), 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2007) ("Lodestar multipliers of nearly 5 have been deemed common by courts in this District.").

#### b.      Class Counsel's Hours and Rates Are Reasonable

Although courts need not apply "exhaustive scrutiny" to Class Counsel's lodestar and "may accept the hours estimates provided by Lead Counsel[,]" *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *7 (M.D.N.C. May 9, 2016), courts may "examine [the lodestar's] components and assess their reasonableness[,]" *MicroStrategy*, 172 F. Supp. 2d at 788. Here, both Class Counsel's hours and rates are reasonable for practitioners in this area of the law.

First, the more than 2,215.20 hours committed to the initiation, prosecution, and settlement of this action by Class Counsel to date are "reasonable in light of the degree of difficulty involved in prosecuting this complicated case against expert and experienced defense counsel." *Id.*  In fact, Class Counsel's hours demonstrate that they litigated this action with exceptional efficiency.

The lodestar accrued by Class Counsel in this case was warranted and is not duplicative of the work performed by Class Counsel in the prior *Skochin* and *Halcom* cases.  For example, while drafting similar complaints in the prior cases certainly streamlined that effort here, Class Counsel still had to collect, review, and analyze rate filings from dozens of states for the numerous policy types encompassed in this Class.  In doing so, Class Counsel needed to ascertain what future planned rate increases Genworth anticipated for all these policy form types in various states and then compare that to the disclosures Genworth actually made to policyholders about those future increase plans.  These allegations are all specific to this Class and needed to be formulated anew from the facts at issue.  In addition, while discovery was more targeted and efficient due to the prior cases, Class Counsel still had to review hundreds of thousands of pages of documents to confirm their understanding of the merits of *these* claims, that are based on an entirely new Class of policyholders, and to marshal the evidence necessary to certify *this* Class and prove the merits of its claims.  In the end, Class Counsel was able to do this work more efficiently given the work

- 18 -

performed in the prior cases, but this case still required its own, independent efforts that justify the requested fees.

Second, Class Counsel's rates are "within the range of reasonableness." *MicroStrategy*, 172 F. Supp. 2d at 788. Class Counsel's rates are lower than the standard set by national defense firms that defend class actions.[10]

| | Haney v. Genworth Plaintiff Firm 2022 Rates | Sears Bankr. Defense Firm 2019 Rates | NCAA Antitrust Defense Firm 2018 Rates | Genworth Plaintiff Firm 2016 Rates | NII Holdings Plaintiff Firm 2016 Rates | Comp. Sciences Plaintiff Firm 2013 Rates |
|---|---|---|---|---|---|---|
| **Partner** | $500-1,100 | $1,025-$1,600 | $820-$1,445 | $700-$995 | $775-$985 | $750-$975 |
| **Associate** | $450 | $560-$1,030 | $545-$765 | $500 | $390-$725 | $440-$665 |
| **Counsel** | | $1,025-$1,160 | | $700 | $650 | $725 |
| **Staff Attys[11]** | $390-450 | $345-$480 | $85 | $340-390 | $335-$435 | $325-$390 |
| **Paralegals** | $375 | $240-$480 | $170-$340 | $285-$310 | $150-$325 | $200-$295 |
| **Investigators** | $290 | | | $245-$495 | $425-$495 | $410-$485 |
| **Lit. Support** | $150-300 | | $275 | $285 | | |
| **Analysts** | | | | $325 | $300-$550 | |

---

[10]   The rates for the Sears bankruptcy are for the national law firms of Weil, Gotschal & Manges LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP. *See* Dan Packel, *Weil Fees in Sears Bankruptcy Shine Light on Big Billers: The Paralegals*, THE AMERICAN LAWYER (Jan. 24, 2019), https://www.law.com/americanlawyer/2019/01/24/weil-fees-in-sears-bankruptcy-shine-light-on-big-billers-the-paralegals/. The rates for the NCAA antitrust case are for the national law firm of Winston & Strawn LLP. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, ECF No. 1169-1 at 12 (N.D. Cal. Mar. 26, 2019). In addition to these examples, it was publicly reported that partners at national firms were "routinely charg[ing] between $1,200 to $1,300 an hour," and Kirkland & Ellis LLP had billing rates as high as $1,445 per hour – four years ago in 2016. *See* Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, WALL ST. J. (Feb. 9, 2016), https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708?cb=logged0.10928983175737395. The information for the plaintiffs' firm rates are taken from the settlement filings in those cases.

[11]   Staff Attorneys includes "project" or "contract" attorneys. Courts in this District have included these attorneys at "market rates" because they "are part of the team brought in to benefit the class" and "[t]heir contributions are of a similar nature to the attorneys who are in the firms retained by plaintiffs." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) ("[T]he Court has absolutely no trouble finding that the contract attorneys should be billed at market versus cost."); *see also NII*, No. 1:14-cv-00227-LMB-JFA, ECF No. 257-1 at 99 (E.D. Va. Aug. 12, 2016) (including contract attorneys in lodestar).

As demonstrated herein, Class Counsel's rates are in line with comparable cases or even below the rates submitted by nationwide firms. Indeed, "the rates requested by class counsel are fair and reasonable, and within the market rates for the Eastern District of Virginia, Richmond Division." Butler Decl., ¶27. More specifically, Mr. Butler, who has practiced in civil litigation in the Richmond area since 1987, *id.*, ¶4, and is "regularly asked to provide expert testimony in fee application proceedings in matters of complex federal litigation," *id.*, ¶11, opines that:

- "[C]ontingency fee contracts in the Richmond, Virginia legal market is for plaintiffs' attorneys to have a contingency fee contract of 33 to 40% of the gross amount recovered, and in complex federal litigation, a 40% contract is the norm."

- "The market rate for complex federal litigation in the Richmond, Virginia market would certainly be commensurate with the amounts that Class Counsel, [him]self, and defense litigators in this Court regularly charge in such complex federal court litigation."

- Class Counsel's hourly rates match favorably to rates of lawyers practicing in the Richmond Division of the Eastern District of Virginia, including the rates of firms like McGuireWoods and Troutman Pepper.

*Id.*, ¶¶18-25.

## III.   CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED

As with attorneys' fees, Genworth has agreed to pay Class Counsel's litigation expenses up to $50,000 in addition to, and apart from, the relief being provided to the Class. Stipulation, ¶56(a). Class Counsel seek an award of $39,697.92 in litigation expenses. Class Counsel's expenses and charges are set forth in the accompanying firm declarations. *See* Goldman Scarlato Decl., ¶5; Robbins Geller Decl., ¶5; Berger Montague Decl., ¶5; Phelan Petty Decl., ¶5. These

expenses and charges were reasonable and necessary to the prosecution of the claims and achieving the Settlement.  *See* Goldman Scarlato Decl., ¶¶5-6; Robbins Geller Decl., ¶¶5-6; Berger Montague Decl., ¶¶5-6; Phelan Petty Decl., ¶¶5-6.

The "items of costs reported include expenditures for computer legal research, document reproduction, . . . court reporting, . . . consultant fees, and travel, meals, and lodging," which are "reasonable in a case with this level of complexity, and they bear a reasonable relationship to the time and effort expended and the result achieved." *MicroStrategy*, 172 F. Supp. 2d at 791; *accord Genworth*, 210 F. Supp. 3d at 845.

The remaining expenses – such as mediation fees, service fees, and charges for photocopies, telephone services, and delivery services – are all "reasonable in a case with this level of complexity, and they bear a reasonable relationship to the time and effort expended and the result achieved." *MicroStrategy*, 172 F. Supp. 2d at 791.  The Class Notice advised Class Members that Class Counsel would seek an award of up to $50,000 in expenses, and there have been no objections to date regarding such an award.  Class Counsel respectfully request payment of these reasonable litigation expenses.

## IV.     THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED

Finally, while the Court in *Skochin* found a $25,000 service award to be "reasonable," Class Counsel seek, and Genworth does not oppose, service awards here in the amount of $15,000 for each of the Named Plaintiffs, which is the same amount requested and approved in *Halcom*. 2022 WL 2317435, at *13.  If approved, Genworth will pay these awards separately.  Genworth's agreement to pay them will not diminish the amount of monetary relief provided to Class Members. Stipulation, ¶56(b).

Service awards "are commonplace in class actions in this District and elsewhere[.]" *Ryals*, 2016 WL 7042947, at *2; *accord Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

"Trial courts will typically authorize service awards to class representatives for the time and effort they expended for the benefit of the class." *Skochin*, 2020 WL 6536140, at *10. Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* (quoting *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015), and citing *Rodriguez*, 563 F.3d at 958-59). Relevant considerations are the actions the class representative has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the class representative expended. *See Ryals*, 2016 WL 7042947, at *2 ("Plaintiff has earned [the service award] by prosecuting this case, answering discovery, and keeping up-to-date on the case status through conferences with his Counsel."); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013).

The requested $15,000 awards for each of the Named Plaintiffs here are reasonable and warranted. The Named Plaintiffs actively participated in the pre-suit discovery and prosecution of this case by regularly communicating and working with Class Counsel to assist in the investigation of claims (including well before the mediation process began), to produce the Complaint in this case, and in responding to all written discovery served by Genworth. They produced all relevant documents in their possession, custody, and control to Genworth, which included producing extremely private financial and medical information. The Named Plaintiffs kept abreast of the litigation and mediation throughout and have consistently demonstrated their commitment to the Class by pursuing this case with passion and diligence. *See* Penny Decl., ¶¶28-34, and declarations of the Named Plaintiff Declarations, attached to Penny Decl., Exs. J-N.

In seeking to hold Genworth accountable, the Named Plaintiffs subjected themselves to public attention and exposure of their personal information. Named Plaintiffs pursued these claims

notwithstanding the risks that private information would likely be discoverable and perhaps at some point unsealed; in effect, they risked forfeiting their own privacy rights to vindicate the rights of others like them.   Under all the circumstances of this case, the requested service awards are justified.   *See, e.g.*, *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) ($15,000); *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743, 2010 WL 2671506, at *3 (S.D. W. Va. July 1, 2010) ($50,000); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 768 (S.D. W. Va. 2009) ($15,000 where none of the class representatives produced documents or sat for a deposition); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *7-*8 (E.D. Pa. Jan. 3, 2008) ($30,000); *McBean v. City of New York*, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (stating incentive awards of $25,000-$30,000 are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000); *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005) ($30,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ($50,000).

## V.    CONCLUSION

For all the reasons stated herein, and in the accompanying declarations and the Final Approval Brief, Class Counsel respectfully request that the Court: (i) award Class Counsel attorneys' fees in the amount of a contingent payment of 15% of the cash damages payments made pursuant to the Special Election Options selected by each Class Member, in an amount not to exceed $13 million, and the payment of litigation expenses of $39.697.92; and (ii) award the Named Plaintiffs $15,000 each in connection with their representation of the Class.

DATED:  September 16, 2022                    Respectfully submitted,

PHELAN PETTY LLC


/s/ Jonathan M. Petty

JONATHAN M. PETTY (VSB No. 43100)
MICHAEL G. PHELAN (VSB No. 29725)
3315 West Broad Street
Richmond, VA  23230
Telephone:  804/980-7100
804/767-4601 (fax)
jpetty@phelanpetty.com
mphelan@phelanpetty.com

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON (admitted *pro hac vice*)
BRADLEY BEALL (admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

GOLDMAN SCARLATO & PENNY, P.C.
BRIAN D. PENNY (admitted *pro hac vice*)
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA  19428
Telephone:  484/342-0700
484/342-0701 (fax)
penny@lawgsp.com

BERGER MONTAGUE PC
SHANON J. CARSON (admitted *pro hac vice*)
GLEN L. ABRAMSON (admitted *pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)

*Counsel for Plaintiffs and the Class*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2022, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users.

/s/ Jonathan M. Petty

Jonathan M. Petty (VSB No. 43100)
PHELAN PETTY, LLC

3315 West Broad Street
Richmond, VA  23230
Telephone:  804/980-7100
804/767-4601 (fax)
jpetty@phelanpetty.com

*Counsel for Plaintiffs*