IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually, and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br>v.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>    *Defendants*. | Civil Action No.: 3:22-cv-00055-REP |

DECLARATION OF BRIAN D. PENNY IN SUPPORT OF: (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS

I, Brian D. Penny, hereby declare as follows:

1. I am a partner in the law firm of Goldman Scarlato & Penny, P.C., one of four firms the Court appointed Class Counsel in the above-captioned action.[1] I have been actively involved in the investigation, institution, prosecution, and resolution of this action, I am familiar with its proceedings, and I have knowledge of the matters set forth herein based upon my involvement in this matter and supervision of and communication with other attorneys and staff assigned to this matter and the Named Plaintiffs, Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten.

---

[1] Capitalized terms not otherwise defined herein have the same meanings as that ascribed to them in the Amended Joint Stipulation of Class Action Settlement and Release [ECF No. 33-1], and Exhibit B to this Declaration.

2. I submit this declaration in support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement; and (2) Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Service Awards to the Named Plaintiffs.

3. For the Court's convenience, attached hereto are the following documents previously filed with the Court:

(a) Declaration of Rodney A. Max [ECF No. 28-2], **Exhibit A**; and

(b) Amended Joint Stipulation of Class Action Settlement and Release [ECF No. 33-1], **Exhibit B**.[2]

4. Also submitted for the first time and attached hereto are the following documents:

(a) Declaration of Nicholas Sheahon in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Sheahon Declaration"), **Exhibit C**;

(b) Fee Declaration of Brian D. Penny filed on behalf of Goldman Scarlato & Penny, P.C., **Exhibit D**;

(c) Fee Declaration of Stuart A. Davidson Filed on Behalf of Robbins Geller Rudman & Dowd LLP, **Exhibit E**;

(d) Fee Declaration of Glen L. Abramson Filed on Behalf of Berger Montague P.C., **Exhibit F**;

(e) Fee Declaration of Jonathan M. Petty Filed on Behalf of Phelan Petty LLC, **Exhibit G**;

(f) Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Notice Plan ("Azari Declaration"), **Exhibit H**;

---

[2] Appendix A to Amended Joint Stipulation of Class Action Settlement and Release [ECF No. 33-1] inadvertently omitted New York Partnership Form 51013. An updated Appendix A that includes this policy form is included in this version of the Amended Settlement Agreement.

  (g)  Declaration of Harris D. Butler, III, Esquire, **Exhibit I**;

  (h)  Declaration of Fred Haney in Support of Final Approval of Class Action Settlement and Request for Service Payment, **Exhibit J**;

  (i)  Declaration of Marsha Merrill in Support of Final Approval of Class Action Settlement and Request for Service Payment, **Exhibit K**;

  (j)  Declaration of Sylvia Rausch in Support of Final Approval of Class Action Settlement and Request for Service Payment, **Exhibit L**;

  (k)  Declaration of Stein Swenson in Support of Final Approval of Class Action Settlement and Request for Service Payment, **Exhibit M**; and

  (l)  Declaration of Alan Wooten in Support of Final Approval of Class Action Settlement and Request for Service Payment, **Exhibit N**.

**I.**  **THE SETTLEMENT**

  5.  The relevant facts and allegations are set forth in Plaintiffs' concurrently filed: (i) Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Brief"); and (ii) Memorandum of Law in Support of Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Service Award to the Named Plaintiffs ("Fee Brief").

  6.  The settlement of this case reflects a good faith, arms-length, highly efficient effort by all parties to reach an excellent resolution for the Class without wasting the parties or the Court's limited resources, as commanded by Rule 1 of the Federal Rules of Civil Procedure, which states that the "rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

  7.  To ensure the proposed Settlement was in the best interests of the Class, the Named Plaintiffs and Class Counsel engaged in discovery with Genworth Life Insurance Company and

Genworth Life Insurance Company of New York ("Genworth" or "Defendants"), including the review and analysis of over 300,000 pages of documents produced by Genworth and interviews with Genworth's key decision-makers regarding the issues in this action.

8. As this Court is aware having presided over the cases of *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49 (E.D. Va.), and *Halcom v. Genworth Life Ins. Co.*, 3:21-cv-00019 (E.D.Va.), this action, like *Skochin* and *Halcom*, faced considerable risks for the Named Plaintiffs, in light of the fact that numerous prior cases against other long-term care ("LTC") insurers had tried (unsuccessfully) to obtain some relief for policyholders in the face of considerable rate increases. But this case also faced obstacles that were more challenging than *Skochin* and *Halcom*. For example, here Genworth would argue that its internal plans for future rate increases on the Class Policies were far less concrete and long-term than they were in the prior cases, obviating any duty to make additional disclosures.[3] While Plaintiffs believe they could have rebutted those arguments, if Genworth were able to demonstrate that their plans for future rate increases did not include specified increases on the Class Policies, then Plaintiffs' claims would likely have been unsuccessful. Thus, the difficulties of proof were significant and far more challenging than the prior litigations. Genworth also would likely renew its argument, including on appeal, that Plaintiffs' claims were barred by the filed rate doctrine. The underlying facts involved the overlap of complicated issues of insurance regulation and actuarial accounting that may be challenging for most laypersons to understand.

9. Further, Genworth would have argued that class certification was unwarranted on either of Plaintiffs' claims because, according to Genworth, fraud claims require proof of reliance.

---

[3] Genworth has denied and continues to deny any liability in connection with its actions related to rate increases and disclosures in the *Skochin* and *Halcom* cases; Plaintiffs are merely acknowledging that, based on Class Counsel's experience and judgment, the facts in those cases were stronger than those in the present case.

Plaintiffs would have argued that a presumption of reliance was available under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972) (reliance for fraud claim presumed based on materiality of omission), based on arguments that Genworth's omissions were material, and that the rate increase notification letters were all uniform based on template forms, but Genworth would have disputed that and, in any event, would have argued that any presumption would have been rebutted. Genworth also would have argued that the substantial involvement of state insurance regulators in the LTC insurance rate increase gave rise to numerous defenses, factual and legal.

10. Plaintiffs would have to prevail on all of these issues at class certification and trial, and if they prevailed at both, on the appeals that would likely follow. Thus, there were significant risks to the continued prosecution of this action. Moreover, without settlement, the length of time and the expense required to resolve all of these issues would be considerable. Considering the age of the Members of the proposed Class, any delay in resolving these claims would likely prevent some Class Members from being able to participate at all, even were the case to be successful.

11. Considering the significant obstacles that the Named Plaintiffs and the Class faced in this action, the Settlement obtained here is a testament to the ingenuity, tenacity, and skill of Class Counsel and the Named Plaintiffs. They succeeded in obtaining for the entire Class Disclosures providing material information about Genworth's future plans to seek additional rate increases and the need for those increases to remain solvent, as well as the opportunity to choose from a menu of special election options that could reduce policyholders' premiums, provide substantial monetary damages payments, or enhance the value of their paid-up policy options ("Special Election Options"). Depending on each Class Member's election, individual cash damages payments range between $1,000 and $10,000 for each Special Election Option.

12. Indeed, between the two types of benefits achieved for the Class – the Disclosures and the Special Election Options – Class Members will obtain significant and meaningful relief in

this Settlement, especially when those benefits are compared to the claims the Named Plaintiffs brought against Genworth and the financial damages asserted in this case.

13. The Settlement achieved here is similar in structure and magnitude to the settlements this Court approved as fair, reasonable, and adequate in *Skochin* and *Halcom*. The *Skochin* settlement has been a rousing success, with a claims rate of approximately 30%, one of the highest claims rates ever in a consumer class action and orders of magnitude larger than the median claims rates found by the Federal Trade Commission in a September 2019 published study of consumer class action settlements. *See* ECF No. 28-3. Class Counsel believe that the claims rate for this Settlement will be similarly impressive.

14. Class Counsel are also keenly aware of the importance of providing the Court with a valuation of the Settlement in connection with seeking final approval. In this regard, based on the number of Class Members in this action and the rate of settlement elections made in the *Skochin* settlement, Class Counsel anticipate that total cash damages in this Settlement will likely range between $224 million and $6097 million, and that calculation does not even account for the benefits for the thousands of Class Members who may elect to have their non-forfeiture benefits increased by 50% in the Settlement. The foundational basis for this valuation is set forth in more detail in the Sheahon Declaration, filed concurrently herewith as **Exhibit C**.

15. At bottom, there is no question that the Settlement includes substantial relief, and each Class Member gets to choose what relief they prefer. Accordingly, Class Counsel respectfully submit that, in their informed opinions, the Settlement here is fair, reasonable, and adequate to the Class and should be finally approved.

**II.     REACTION OF THE CLASS**

16. The fairness and adequacy of the Settlement is further evidenced by the favorable reaction of the Class.

17. The Notice has been mailed to 352,146 Class Members. *See* Ex. H, Azari Declaration, ¶14. As of September 14, 2022, Class Counsel are aware of only 60 policyholders that have requested to opt-out of the Settlement and only two objections to it. *Id.*, ¶24. Thus far, the response from the Class has been overwhelmingly positive. Indeed, in order to ensure that every Class Member timely receives the information they need about the Settlement and answers to any questions they may have, Class Counsel set up a special Call Center staffed with attorneys whose sole responsibilities are to answer Class Member inquiries and questions. To date, attorneys in the Call Center have spoken to nearly 4,300 Class Members, the ***vast*** majority of whom expressed their strong approval of the Settlement.

18. Class Members still have until September 30, 2022 to opt-out or object to the Settlement. Class Counsel will update these numbers and address all objections to the Settlement in their reply brief to be filed on or before November 3, 2022.

### III. CLASS COUNSEL'S ATTORNEYS' FEES AND EXPENSES

19. Class Counsel respectfully request that the Court award contingent fees equal to **15%** of the cash damages payments triggered by the Special Election Options selected by the Settlement Class, which shall be no greater than **$13,000,000**. Class Counsel are not requesting any attorneys' fee for Special Election Options that do not provide for a cash damages payment, nor are they requesting fees relating to the value of the Disclosures obtained in the Settlement.

20. The Fees approved by the Court will not be paid from any Class Member's cash damages payment but will instead be paid separately by Genworth. This is a significant additional benefit Class Counsel achieved for the Class insofar as the genesis for the "common fund" doctrine is "that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Class Counsel believe such a fee is reasonable and appropriate.

21.     Class Counsel further request an award of **$39,697.92** in litigation expenses and charges in connection with the prosecution of this action. The arguments and authorities supporting the requested fees and expenses are set forth in the Fee Brief.

22.     The time and resources in the investigation, institution, and prosecution of this action, as well as the costs and expenses of the litigation are set forth in detail in the Fee Declarations of Class Counsel, which include the following: Fee Declaration of Brian D. Penny filed on behalf of Goldman Scarlato & Penny, P.C., **Exhibit D**; Fee Declaration of Stuart A. Davidson Filed on Behalf of Robbins Geller Rudman & Dowd LLP, **Exhibit E**; Fee Declaration of Glen L. Abramson Filed on Behalf of Berger Montague P.C., **Exhibit F**; and Fee Declaration of Jonathan M. Petty Filed on Behalf of Phelan Petty LLC, **Exhibit G**, submitted herewith. Included with these Declarations are schedules that summarize Class Counsel's lodestar, as well as expenses incurred by category. In the aggregate, through September 1, 2022, Class Counsel have expended **2,215.50** hours working this case for combined lodestar of **$1,327,404.00**.

23.     As set forth in the Fee Brief, Class Counsel worked efficiently and diligently to obtain an excellent result for the Class. The recovery obtained for the Class is the direct result of the significant efforts of attorneys who possess substantial experience in the prosecution of complex consumer class actions and diligent and responsible class representatives.

24.     On the other side, Defendants were represented by experienced lawyers from two of the largest and most well-known defense firms: Dentons and McGuireWoods LLP. Genworth itself is a large corporation that was a well-financed and formidable adversary. Class Counsel were fully aware that, if this action could not be settled through mediation, the case would be vigorously defended. The result was obtained, and the requested fee was earned, only through preparation, tenacity, and hard work. The ability of Class Counsel to obtain a favorable settlement in the face of such opposition confirms the quality of their representation.

25. When Class Counsel undertook to represent the Named Plaintiffs and the Class, it was with the expectation that their attorneys and paraprofessionals would have to devote a significant amount of time and effort to the prosecution, and Class Counsel would have to make a substantial commitment to this action. The time spent by Class Counsel on this case was at the expense of the time that they could have devoted to other matters. Class Counsel undertook this case solely on a contingent fee basis, assuming a risk that the case would yield no recovery and leave Class Counsel uncompensated for their considerable work.

26. Unlike counsel for Defendants, who are generally paid an hourly rate and paid for their expenses on a regular basis, Class Counsel have not been compensated for any time or expenses since this case began. To date, Class Counsel have litigated this action without any payment, during which time they:

- researched Genworth rate action filings with insurance commissioners over a ten-year period in at least 20 states;

- surveyed and charted Choice 2 and Choice 2.1 rate action approvals in all 50 states, as well as California CADE, California Reprice, and California Unbundled rate action approvals;

- reviewed the past ten years of Genworth's Securities and Exchange Commission filings, public statements, and financial statements filed with the Delaware Department of Insurance;

- reviewed all correspondence between Genworth and Plaintiffs, including their policies and all rate action letters the Plaintiffs received;

- drafted a detailed Complaint incorporating this information;

- reviewed and analyzed over 300,000 pages of documents produced by Genworth in this litigation;

- interviewed Genworth's Senior Project Manager for In-Force Placement, who was responsible for developing rate increase notification letters sent to the Settlement Class, as well as for providing support for the customer service team following state regulatory decisions on Genworth's rate increase requests;

- interviewed Genworth's Senior Vice President for LTC Inforce, who was responsible for development of rate increase action plans, new LTC products, and

> helping to oversee the state regulatory approval process of LTC rate increase requests;

- served Genworth with interrogatories and received and reviewed detailed responses;

- produced documents and answered interrogatories in response to discovery served by Genworth;

- drafted mediation statements and other documents and conducted three in-person mediation sessions with Genworth and Rodney A. Max; and

- reviewed data from the *Skochin* class action settlement and the response of the *Skochin* class to that settlement.

27. Class Counsel's experience and advocacy was required in presenting the strengths of this case in their Complaint and during mediation to achieve the best possible settlement.

28. To that end, Class Counsel assembled a litigation team that included attorneys with significant trial and consumer class action experience that could detail how the Named Plaintiffs would prove their claims before a jury.

29. As detailed in the Fee Brief, in light of the substantial recovery obtained, the complexity of the issues presented, the effort and skill exhibited by Class Counsel, the time expended by Class Counsel and its paraprofessionals, the fee awards in comparable class actions, including *Skochin* and *Halcom*, the contingent nature of Class Counsel's representation, and the Named Plaintiffs' endorsement of the requested fee, Class Counsel believe the requested fee and litigation expense awards are reasonable and appropriate.

## IV. NAMED PLAINTIFFS' SERVICE AWARDS

30. Based upon my and my co-counsel's observation of the time and effort the Named Plaintiffs dedicated to this case, I can confidently declare that they have represented the Class with diligence, passion, skill, and perseverance, and that their representation was more than adequate. Frankly, without their work, this Settlement would not have been possible.

31. During Class Counsel's pre-suit investigation of this case, and since they joined this case as Named Plaintiffs, Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten have understood, and currently understand, that their obligations as class representatives include placing the interests of the Class ahead of their own. They have consistently demonstrated their commitment by pursuing this litigation actively and diligently. That work included, at first, preserving all data and documents potentially relevant to this case in accordance with their obligations. They have since devoted scores of hours to this matter on behalf of the class.

32. They each worked with Class Counsel to draft, review, and edit the Complaint filed in this action. They also reached out to Class Counsel with questions about the allegations and claims advanced to ensure they understood them.

33. They reviewed all of the document requests and interrogatories that Genworth served on them with Class Counsel, and worked with Class Counsel to provide careful, correct answers to the interrogatories and to search for, collect, and produce responsive documents concerning their claims and Genworth's defenses, including extremely sensitive information regarding their financial and medical circumstances.

34. They spoke and corresponded on several occasions with Class Counsel about the attorneys' ongoing mediation efforts with mediator Rodney A. Max to attempt to settlement the litigation. They were each well informed of the negotiations as they progressed and were given the opportunity to comment on and ask questions about the Settlement reached, which they did.

35. Simply put, the Named Plaintiffs ensured that they stayed fully informed throughout the pendency of the case. Class Counsel also sent drafts of all major court filings, communicated case developments with the Named Plaintiffs frequently, and Named Plaintiffs

were fully informed before making a decision whether to accept the proposed Settlement negotiated by Class Counsel and Genworth's counsel.

36. In Named Plaintiffs' opinion, the Settlement with Genworth provides the Class with a fair and well-deserved result following the impact of Genworth's actions. Indeed, the Named Plaintiffs belief that Class Counsel obtained significant and meaningful relief for the Class, especially when that relief is compared to the claims brought and damages sought in this case. In addition, the Named Plaintiffs are aware of and approve Class Counsel's fee and expense application to the Court.

37. As described above and in the Final Approval Brief and the Fee Brief, Class Counsel respectfully submit that the Settlement should be approved as fair and reasonable, and that the Court should award Class Counsel's requested fees and expenses and the service awards to the Named Plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of September 2022, at Conshohocken, Pennsylvania.

*s/ Brian D. Penny*
BRIAN D. PENNY

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2022, I filed the foregoing pleading or paper through the Court's CM/ECF system, which sent a notice of electronic filing to all registered users.

                    /s/ Jonathan M. Petty
Jonathan M. Petty (VSB No. 43100)
PHELAN PETTY, PLC
3315 West Broad Street
Richmond, VA  23230
Telephone:  804/980-7100
804/767-4601 (fax)
jpetty@phelanpetty.com

*Counsel for Plaintiffs*