# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FRED HANEY, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENWORTH LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Civil Action No. 3:22-cv-00055-REP<br><br><u>CLASS ACTION</u> |

## DECLARATION OF RODNEY A. MAX

I, Rodney A. Max, pursuant to 28 U.S.C. §1746, declare as follows:

12. My name is Rodney A. Max. I am over the age of 18 and I am competent to give testimony. The statements contained in this declaration are based upon my own personal knowledge and are true and correct.

### I. BACKGROUND AND EXPERIENCE

2. I graduated in 1975 cum laude from the Cumberland School of Law. Upon graduation, I became licensed to practice law in the state of Alabama (1975) and the state of Florida (1976). I am currently a member of Upchurch, Watson, White & Max Mediation Group, Inc.

3. Since 1992, my practice has focused exclusively on alternative dispute resolution, with an emphasis on mediation.

4. I have national mediation experience and have mediated in 40 states including the District of Columbia and Puerto Rico. I have been selected to conduct mediations by leading plaintiffs' attorneys, defense counsel and in-house counsel for national and international manufacturers, distributors, transporters, insurers and service provider companies and have been appointed by federal and state judges from coast to coast.

5. I have mediated cases involving consumer fraud, wrongful death and personal injury, breach of contract, bad faith, securities (NASD), antitrust, patent and trademark, Lanham Act, construction, property, environmental, fraud and suppression, banking, estate and trusts, stockholder disputes, partnership disputes and derivative claims. I have mediated numerous national and statewide class actions as well as numerous mass tort, contract and statutory warranty cases. I have convened parties for mediation before suits have been filed, as well as mediated cases on appeal.

6. Over the course of my career, I have conducted well over 5,000 mediations involving over 10,000 cases

7. I am a past President of the American College of Civil Trial Mediators. Additionally, I am a member of the Alabama Center of Dispute Resolution, the Florida Academy of Professional Mediators and the Dispute Resolution Section of the American Bar Association.

8. I have played a major role in establishing rules, standards and ethics for mediators. I initiated the Mediation Process and Practice Program at Cumberland School of Law as an adjunct professor from 1997-2002. Additionally, I have lectured at CLE seminars for attorneys or those who have sought training on mediation at the following courses:

- American College of Attorney Mediators – Multi Party Mediation, The Business of Mediation;

- American Bar Association Dispute Resolution Section – Multi Party Mediation, Ethics of Mediation, The Business of Mediation;

- New Jersey Bar Association – The Practice of Mediation;

- Alabama Bar Association – Multi Party Mediation; Mediation Dissected;

- Florida Academy of Civil Trial Mediators – Opening Statements;

- University of Florida – Designing The Mediation; and

- The International Academy of Mediators – Ethics of Mediation.

2

9. I have also published a number of articles. The following abridged list is a sampling: Mediation Comes of Age, published in The American Journal of Trial Advocacy, Volume 23, Issue 3 (Spring 2000); Multiparty Mediation, published in The American Journal of Trial Advocacy, Volume 23, Issue 2 (Fall 1999); Designing The Mediation, presented at professional seminars; The Ethical Civil Trial Mediator, The Letter, The Spirit and The Practice, presented at professional seminars; and Mediation: The Humanization of the Justice System, presented at professional seminars.

## II.   FAMILIARITY WITH THE PRESENT LITIGATION

10. This case is the third in a series of class-action lawsuits filed against Genworth Life Insurance Company and Genworth Life Insurance Company of New York (collectively, "Genworth"). The first was *Skochin v. Genworth Life Ins. Co.*, No. 3:19-cv-00049-REP (E.D. Va.). The second was *Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-00019-REP (E.D. Va.).

11. I was initially retained as a neutral mediator by counsel for the parties in *Skochin* in August 2019. In my capacity as mediator, I consider myself to be a neutral, representing neither plaintiff nor defendant.

12. Through the mediation I conducted in *Skochin*, the parties settled *Skochin* on December 20, 2019, and this Court granted final approval of the settlement in *Skochin* on November 12, 2020. I understand that no appeals were taken by any objectors to the *Skochin* settlement and that the settlement is now final, with hundreds of millions of dollars in cash and additional long-term care having already been paid out to *Skochin* class members.

13. Thereafter, in light of the parties' success in reaching an amicable resolution of the *Skochin* matter and the extremely positive reaction the *Skochin* class was having to that settlement, I was retained by the parties in *Halcom*. Through the mediation I conducted in *Halcom*, the parties

3

reached a settlement in *Halcom* in August 2021, which, as of the signing of this declaration, awaits this Court's decision on whether to grant final approval following a fairness hearing held on February 9, 2022.

14. In the Fall of 2021, I was retained by the parties in this matter for the purpose of mediating the case and to assist in reaching a negotiated resolution. Around the same time, the parties and I agreed to schedule two separate mediation sessions, the first to take place on November 8, 2021 at the offices of Dentons US LLP in New York, New York, and the second to occur in my office in Miami, Florida from Friday, January 14, 2022 through Sunday, January 16, 2022.

15. Prior to mediation, I held separate conference calls with counsel for the plaintiffs and counsel for Genworth to discuss their preliminary thoughts and observations leading up to the scheduled mediation. The parties explained to me their views on the several issues, including: (a) how this matter differed in any respects from *Skochin* and *Halcom*; (b) whether the terms of any proposed settlement of this case should differ from the settlement terms in *Skochin* and *Halcom*; and (c) each party's views on the strengths and weaknesses of this particular case.

## III. THE MEDIATED SETTLEMENT NEGOTIATIONS

16. The parties in this case mediated with me all day on November 8, 2021. The purpose of this first mediation session was largely an information-sharing session where the parties were free to exchange facts and arguments about their positions in this case. The parties also spent a considerable amount of time discussing their positions on how this case was similar to, or different from, the prior *Skochin* and *Halcom* cases. During the mediation, plaintiffs' counsel propounded a number of fact questions to Genworth and requested a number of documents and data points from them. I understand that following this first mediation session, Genworth responded to those questions and produced requested information and materials to plaintiffs.

4

17. After taking time to digest the arguments at the November 8th session, and after reviewing the additional materials Genworth provided to plaintiffs, the parties again mediated with me all day on Friday, January 14, 2022, and again on Saturday, January 15, 2022.

18. The parties spent the better part of the first day of the second mediation session trying to negotiate a resolution of the case. The session concluded with the parties having made substantial progress on a general framework for a negotiated resolution.

19. By the end of the day on January 15, 2022, after three full days of mediating, the parties had reached an agreement, memorialized in a Memorandum of Understanding, setting forth the material terms of an agreement-in-principle to be incorporated into a formal Settlement Agreement for the Court's approval.

20. I never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted and despite having reached two settlements in prior related cases, was quite adversarial. In fact, at several junctures it appeared that a resolution may not be reached.

21. It was only upon reaching an agreement on the substantive terms of a settlement and Class member relief that further consideration was given to a reasonable and appropriate attorneys fee that would be based on a percentage of the cash damages payments actually claimed by the Class, plaintiffs' counsels out-of-pocket costs incurred in prosecuting this case, and the plaintiffs' service awards, all of which were: (a) less than the Court approved in *Skochin*; (b) less than the parties agreed to seek in *Halcom*; and (c) that the parties understood would be subject to Court approval.

22. A review of my records shows that, in total, I personally spent in excess of 39.75 hours coordinating, preparing, pre-mediating, and mediating the resolution of this case.

23. Based on my experience as a mediator for over 30 years, I came away from the mediation process in this case with the same thoughts I did after mediation concluded in both *Skochin* and *Halcom*. First, I firmly believe that this settlement represents a reasonable and fair outcome for the Class given the parties' strongly-held positions throughout negotiations. As such, I strongly support the approval of the settlement in all respects. Second, the advocacy on both sides of the case remained outstanding. Plaintiffs' counsel and Genworth's in-house and outside counsel represented their clients with tremendous effort, creativity, and zeal. All counsel displayed the highest level of professionalism in carrying out their duties on behalf of their respective clients and the settlement is the direct result of all counsel's experience, reputation, and ability in complex class actions.

24. Should the Court have any questions of me or require any additional information regarding the parties' negotiations of the proposed settlement, I am happy to answer and provide the same (subject to the parties' approval of me providing any such information that would otherwise be protected under the settlement or mediation privilege).

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

DATED: March 25, 2022

*Rodney A. Max*

Rodney A. Max