# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENWORTH LIFE INSURANCE COMPANY, and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendants. | Civil Action No. 3:22-cv-00055-REP<br><br>CLASS ACTION |

**DECLARATION OF NICHOLAS SHEAHON IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I, Nicholas Sheahon, declare as follows:

1. I currently am the Interim Leader for LTC In Force and Vice President & Actuary for Long Term Care Strategy and Analytics for Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY," GLIC and GLICNY together, "Genworth"). I have been employed by Genworth Financial, Inc. for the last seven (7) years and previously was employed for eight (8) years at Employers Reassurance Corp working in various long-term care reinsurance actuarial roles including valuation, experience analysis, assumption setting, modeling, and projections. I am a Fellow of the Society of Actuaries and a Member of the American Academy of Actuaries. I have been employed as a professional actuary for over fifteen (15) years, with a focus on long-term care insurance for at least the last fourteen (14) years.

2. I lead the team of actuaries at Genworth responsible for determining assumptions related to actuarially justified rate increases and corresponding benefit reductions, developing benefit reduction options and product alternatives for policyholders, the modeling and governance that supports long-term care insurance ("LTCI") rate increase filings and approvals, and LTCI-related data and analytics efforts.

3. I submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement. This declaration is based both on my personal knowledge and upon a review of records that Genworth maintains in the ordinary course of business.

4. I have been asked to analyze the potential value of the cash damages payments ("Cash Damages") that will be offered to the class (the "Class" or "Class Members") as part of the proposed settlement (the "Settlement") of this case. For this purpose, Genworth has calculated potential Cash Damages based on hypothetical scenarios in which the percentage of Class Members who elect the Special Election Option is 30%, 20%, or 10% of the total Class, as shown

1

in the chart in Paragraph 5 below. For each of these scenarios, Genworth has made two assumptions: (1) that the same percentage of eligible Class Members will elect each of these five Special Election Options so that, for example, in the scenario where 30% of Class Members elect these Special Election Options, assuming that 6% of eligible Class Members will elect each of the five Special Election Options shown below; and (2) that approximately 75% of Class Members who are already in Non-Forfeiture Status[1] (i.e., 32,250 out of 43,000 Class Members) will elect the Special Election Option available to them that provides a $1,000 Cash Damages payment and allows them to maintain their current non-forfeiture benefit.[2] As shown in the below chart, using such assumptions results in hypothetical total Cash Damages ranging from $224,806,000 to $609,900,000, assuming overall 30%, 20%, or 10% take rates for Options 1-5 and assuming that

---

[1] "Non-Forfeiture Status" means a policy status where the Class Member has exercised a "Non-Forfeiture Option." "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option; the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.

[2] As of September 15, 2022, in the settlement reached in *Skochin, et al. v. Genworth Life Insurance Co., et al.*, Case No. 3:19-CV-00049-REP (E.D.V.A.) (the "*Skochin* Settlement"), 99% of the *Skochin* Settlement has been fully implemented, meaning that 99% of *Skochin* Class Members have received a Special Election Letter and their time to make an election has fully run. Of that population of the *Skochin* Class, approximately 28% of *Skochin* Class Members in premium-paying status have made an election. Of the *Skochin* Class Members in premium paying status, 9% elected the "Reduced Basic Paid-Up Benefit Option," 7% elected the "Enhanced Paid-Up Benefit Option," and 2% elected the Reduced Benefit Option that removed inflation benefits and reverted to the Class Member's original daily benefit amount. Of the *Skochin* Class Members in Non-Forfeiture Status, approximately 75% elected a Special Election Option.

75% of *Haney* Class Members already in Non-Forfeiture Status elect the option whereby they receive a $1,000 Cash Damages payment and retain their current non-forfeiture benefit.[3]

5. The figures in the below chart below are not intended to project the actual results of the *Haney* Settlement because Genworth cannot predict to a reasonable degree of certainty how many Class Members will elect the Special Election Options, or what percentage of Class Members will elect any particular Special Election Option. This is uncertain for several reasons, including but not limited to, because the Special Election Options: (1) have Cash Damages or other components that have not been previously made available to these Class Members, (2) will be accompanied by Disclosures that did not accompany previous rate increases and coverage-adjustment communications, and (3) typically will not be sent in conjunction with a specific rate increase facing the Class Member. Additionally, it cannot be assumed that elections in the Settlement of this case will be made at the same rate as the elections in the *Skochin* Settlement, whether across all Special Election Options or with respect to certain Options.

---

[3] A Class Member will be eligible to elect particular Special Election Options based on whether the Special Election Option can be made available to them based on their policy terms at the time that they make their election. As of September 15, 2022, approximately 85% of Class Members would be eligible for Option 1, approximately 85% of Class Members would be eligible for Option 2, approximately 64% would be eligible for Option 3, approximately 61% of Class Members would be eligible for Option 4, and approximately 51% of Class Members would be eligible for Option 5 as described in the chart shown in Paragraph 5.

Subject to these caveats:

| | | Option 1 | Option 2 | Option 3 | Option 4 | Option 5 | Option for Class Members with NFO Status | Total |
|---|---|---|---|---|---|---|---|---|
| | | Reduced Basic Paid-Up Benefit with Cash Payment | Enhanced Paid-Up Benefit Option | Remove Inflation Benefit & Revert to Original Daily Benefit Amount *Plus* Cash Payment | Reduce Inflation Benefit to 1% Compound & Recalculate Daily Benefit Amount *Plus* Cash Payment | Remove Inflation Benefit & Reduce Benefit Period, *Plus* Cash Payment | Class Members in Non-Forfeiture Status Elect a $1,000 Cash Payment | |
| 10% Take Rate for Options 1-5 | # of Elections | 6,877 | 6,877 | 6,877 | 6,877 | 6,877 | 32,250 | 34,385 |
| | Cash Damages Amount | $10,000 | $0 | $6,000 | $6,000 | $6,000 | $1,000 | N/A |
| | Total Cash | $68,770,000 | $0 | $41,262,000 | $41,262,000 | $41,262,000 | $32,250,000 | $224,806,000 |
| 20% Take Rate for Options 1-5 | # of Elections | 13,754 | 13,754 | 13,754 | 13,754 | 13,754 | 32,250 | 68,773 |
| | Cash Damages | $10,000 | $0 | $6,000 | $6,000 | $6,000 | $1,000 | N/A |
| | Total Cash | $137,540,000 | $0 | $82,524,000 | $82,524,000 | $82,524,000 | $32,250,000 | $417,362,000 |
| 30% Take Rate for Options 1-5 | # of Elections | 20,631 | 20,631 | 20,631 | 20,631 | 20,631 | 32,250 | 103,159 |
| | Cash Damages | $10,000 | $0 | $6,000 | $6,000 | $6,000 | $1,000 | N/A |
| | Total Cash | $206,310,000 | $0 | $123,786,000 | $123,768,000 | $123,786,000 | $32,250,000 | $609,900,000 |

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on September 15, 2022, in Shawnee, Kansas.

_____

Nicholas Sheahon, FSA, MAAA

4