# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually, and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, <br><br> *Defendants*. | Civil Action No. 3:22-cv-00055-REP |

## DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN

I, Cameron Azari, declare as follows:

1.      My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I am a Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing and implementing large-scale legal notification plans.  Hilsoft is a business unit of Epiq.

4.      This declaration will describe the implementation of the Settlement Notice Plan ("Notice Plan" or "Plan") and notices (the "Notice" or "Notices") for the Settlement in *Haney v. Genworth Life Ins. Co.*, No. 3:23-cv-00055-REP, in the United States District Court for the Eastern District of Virginia.

5.      I previously executed my *Declaration of Cameron R. Azari, Esq. on Settlement*

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN

*Notice Plan and Administration,* on March 31, 2022, in which I detailed Hilsoft's class action notice experience and attached Hilsoft's *curriculum vitae*. I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs.

6.     The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Hilsoft and Epiq, who worked with us to implement the Notice Plan.

## OVERVIEW

7.     On May 2, 2022, the Court approved the Notice Plan as designed by Hilsoft and appointed Epiq as the Settlement Administrator in the *Order Granting Preliminary Approval of Settlement and Directing Notice to Class* ("Preliminary Approval Order"). In the Preliminary Approval Order, the Court preliminarily certified for settlement purposes only, the following "Class":

> [A]ll Policyholders[1] of GLIC and GLICNY long-term care insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policies and state variations of those Class Policies[2] in force at any time during the Class Period[3] and issued in any of the States[4].
>
> Excluded from the Class are:

---

[1] "Policyholder(s)" means the policy owner, except:

 a) where a single policy or certificate insures both a policy owner and another insured person, "Policyholder(s)" means both the policy owner and another insured person jointly;
 b) where the Class Policy at issue is certificate 7042CRT, 7044CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.

[2] "Class Policy" or "Class Policies" mean Genworth long-term care insurance policies on the policy forms identified in Appendix A to the Settlement Agreement in force at any time during the Class Period and issued in any of the fifty (50) states of the United States or the District of Columbia.

[3] "Class Period" means any time on or between January 1, 2013 and the date the Class Notice is mailed.

[4] The complete list of the Class Policy forms that are included within the definition of Class is attached hereto as **Attachment 1**.

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN

(1) those Policyholders whose policies entered Non-Forfeiture Status[5] or entered a Fully Paid-Up Status[6] prior to January 1, 2014;

(2) those Policyholders whose Class Policy is Lapsed[7] and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated[8], as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter[9] would otherwise be mailed to the Policyholder;

(3) those Policyholders who are deceased at any time before their signed Special Election Option[10] is post-marked for mailing to Genworth, or is faxed or emailed to Genworth;

(4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and

(5) Judge Robert E. Payne and his immediate family and staff.

8.      After the Court's Preliminary Approval Order was entered, we began to implement the Notice Plan.  This declaration will detail the notice activities undertaken and explain how and why the Notice Plan was comprehensive and well-suited to the Class.  This declaration will also

---

[5] "Non-Forfeiture Status" means a policy status where the Policyholder has exercised a "Non-Forfeiture Option." "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to: an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option; the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.

[6] "Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed.  A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status.

[7] "Lapse" or "Lapsed" means a status whereby a policy is no longer in force because premium was not paid as required. A Lapsed policy terminates and cannot be reinstated if it is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium. For purposes of this Settlement Agreement, a policy in Non-Forfeiture Status (defined below) is not a Lapsed policy.

[8] "Terminated" means a status whereby a Class Policy is no longer in force and is unable to be automatically reinstated by the Policyholder with payment of past due premium. It includes, for example, a Class Policy that has Lapsed beyond the period permitted for automatic reinstatement, a Class Policy that has been cancelled, or a Class Policy (including a policy in Non-Forfeiture Status) that is no longer in force because all available benefits have been exhausted.

[9] "Special Election Letter" means the letter that Genworth will send, as part of consideration to the Class under this Settlement that provides disclosures and settlement options available to the Class Member.

[10] "Special Election Options" are defined in the Settlement Agreement in ¶46 and are described in detail in Appendix C to the Settlement Agreement.

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN

discuss the administration activity to date.

## NOTICE PLAN

9.      Rule 23 of the Federal Rules of Civil Procedure directs that the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."[11]  The Notice Plan here satisfies this requirement.  The Notice Plan in this case provided for Epiq sending a detailed Class Notice to Class Members via United States Postal Service ("USPS") first class mail, a publication notice to appear one time in three of the highest circulated, nationwide newspapers in the country, and a case website.

10.     Because notice remailing efforts are still underway and the exclusion request and objection deadlines have not passed, I will provide the Court with a supplemental declaration prior to the Final Approval Hearing, which will include the final calculated reach of the Notice Plan as implemented.  Still, based on the data available to date, the Notice Plan is estimated to reach at least 95% of the Class.

11.     In my opinion, the Notice Plan as designed and implemented to date, has reached the greatest practicable number of Class Members through the use of individual notice and publication notice. In my opinion, the Notice Plan is the best notice practicable under the circumstances of this case and satisfies the requirements of due process, including its "desire to actually inform" requirement.[12]

## CAFA NOTICE

12.     As described in the *Declaration of Stephanie J. Fiereck, Esq. on Implementation of CAFA Notice*, dated April 11, 2022, ("Fiereck Declaration"), Epiq sent a CAFA notice packet (or "CAFA Notice"), on behalf of Defendants Genworth Life Insurance Company and Genworth Life

---

[11] Fed. R. Civ. P. 23(c)(2)(B).

[12] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

Insurance Company of New York (together, "Genworth" or "Defendants")—as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, to 52 government officials on April 11, 2022.  The CAFA Notice was mailed by USPS certified mail to 52 officials, including the State Insurance Commissioner (or comparable regulatory department head) of each of the 50 States and the District of Columbia.  The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.  The Fiereck Declaration is included as **Attachment 2**.

<u>**NOTICE PLAN IMPLEMENTATION**</u>
*Individual Notice*

13.     On July 5, 2022, Epiq received one data file from counsel for Defendants, which contained 352,952 Class Member records.  On July 19, 2022, Epiq received a second data file from counsel for Defendants, which contained 17 additional Class Member records and 318 records identified by Defendants as requiring exclusion from the Class, including records of policyholders whose policies have terminated due to death or other reasons.  Epiq conducted an analysis of the Class Member records and removed exact duplicates of other records based on name, address, and Social Security number fields, as well as records with invalid mailing addresses.  This resulted in 352,146 Class Members to receive Notice.

14.     On August 1, 2022, Epiq sent the detailed Notice via USPS first-class mail to the 352,146 Class Members.  The Notice was a 14-image detailed Notice inserted into a windowed envelope that clearly and concisely summarizes the Settlement.  The Notice directs the recipients to a case website dedicated to the Settlement where they can access additional information.  The Class Notice is included as **Attachment 3**.

15.     Prior to mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS.[13]  Any addresses that were not confirmed

---

[13] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

as valid by the NCOA database were updated, pre-mail through a third-party address search service.  In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

16.    The USPS automatically forwards Class Notices with an available forwarding address order that has not expired ("Postal Forwards").  The return address on these Class Notice mailings is a post office box maintained by Epiq, and for Class Notices returned as undeliverable, Epiq re-mailed the Class Notice to any new address available through USPS information (for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated).  For other returned Class Notice mailings, Epiq also has obtained better addresses by using a third-party lookup service, a process commonly referred to as "skip-tracing".  Epiq also has worked with Defendants to ensure that any such changes of address for Class Members appear current.  Upon successfully locating better addresses through these means, Class Notices have been promptly re-mailed, and while undeliverable processing and remailing efforts are ongoing, to date, Epiq has received from the USPS and re-mailed three such Class Notices.

17.    Additionally, a Class Notice has been mailed to all persons who requested one via the toll-free telephone number maintained by Epiq (as detailed below) or by mail.  As of September 14, 2022, Epiq has mailed 29 additional Class Notices as a result of such requests.

### *Supplemental Publication Notice*

18.    The Notice Plan also includes a Publication Notice to be published for one business day in the national editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*, which is no later than 15 days before the deadline for requesting exclusion from the Class or filing objections.

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN

19.     On September 2, 2022, the Publication Notice was published for one business day in the national editions of *The New York Times*, *The Wall Street Journal*, and *USA Today* as an 1/8 page ad unit.    The combined average weekday circulation of these three publications is approximately 1.26 million.  The Publication Notice is included as **Attachment 4**.  Copies of the tear sheets are included as **Attachment 5**.

### *Case Website, Toll-free Telephone Number, and Postal Mailing Address*

20.     On August 1, 2022, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.Choice2LongTermCareInsuranceSettlement.com).   Class Members are able to obtain detailed information about the case and review key documents, including the Notice, Settlement Agreement and its exhibits, the Complaint, and the Preliminary Approval Order, as well as answers to frequently asked questions ("FAQs") and a toll-free telephone number.  The case website address is displayed prominently in all Notices.

21.     As of September 14, 2022, there have been 34,198 unique visitor sessions to the case website, and 63,937 web pages have been presented to visitors.

22.     On August 1, 2022, Epiq also established a toll-free telephone number (1-855-662-0078) to allow Class Members to call for additional information, listen to answers to FAQs, request that a Notice be mailed to them, and choose to speak to a live operator during normal business hours.  This automated phone system is available 24 hours per day, 7 days per week. The toll-free telephone number also is prominently displayed in the Notices.  As of September 14, 2022, the toll-free number has handled 10,373 calls for 62,610 minutes of use and live operators have handled 2,295 calls for 25,567 minutes of use.

23.     A post office box has also been established to allow Class Members to send inquiries about the Settlement.

### *Exclusion Requests and Objections*

24.     The deadline to request exclusion or objection to the Settlement is September 30, 2022.  As of September 14, 2022, Epiq has received 60 requests for exclusion from the Settlement.

As of September 12, 2022, I am aware of two objections (which I understand must be submitted by the objectors to the Court). I have reviewed the objections and none relate to the method of providing notice or settlement administration.

## CONCLUSION

25.    In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by state and local rules and statutes, and by case law pertaining to the recognized notice standards under Rule 23. This framework directs that the notice plan be optimized to reach the class and, in a Class action notice situation such as this, that the notice or notice plan itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements are met in this case.

26.    The Notice Plan included individual, direct-mail notice to all Class Members who were identified with reasonable effort. Because of the address updating protocols that were used, we reasonably expect to deliver individual notice to at least 95% of the identified Class. The established website and the supplemental publication notice expanded the reach of the notice further. In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Here, we have developed and implemented a Notice Plan that readily achieved a reach at the higher end of that standard.

27.    The Notice Plan described above provides for the best notice practicable under the circumstances of this case, conforms to all aspects of the Rule 23, and comports with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth.

28.    The Notice Plan schedule affords sufficient time to provide full and proper notice to Class Members before the opt-out and objection deadlines.

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN

29.     I will provide a supplemental declaration to the Court prior to the Final Approval Hearing to provide updated information regarding re-mailing totals, administration statistics, requests for exclusions and objections to the Settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 14, 2022, at Beaverton, Oregon.

Cameron R. Azari

DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND
ADEQUACY OF SETTLEMENT NOTICE PLAN

# Attachment 1

## CLASS POLICIES

**Choice 2 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL |
| | 7042CRT |
| | 7043AL |
| | 7043CRT |
| Alaska | 7042AK |
| | 7044AK |
| Arizona | 7042AZ |
| | 7044AZ |
| Arkansas | 7042AR |
| | 7044AR |
| Colorado | 7042CO |
| | 7044CO |
| Connecticut | 7042CT |
| | 7044CT |
| Connecticut Partnership | 7043CT |
| | 7045CT |
| D. C. | 7042DC |
| | 7044DC |
| Delaware | 7042DE |
| | 7044DE |
| Florida | 7042FL |
| | 7044FL |
| Georgia | 7042GA |
| | 7044GA |
| Hawaii | 7042HI |
| | 7044HI |
| Idaho | 7042ID |
| | 7044ID |
| Illinois | 7042IL |
| | 7044IL |
| Indiana | 7042IN |
| | 7044IN |
| Indiana Partnership | 7043IN |
| | 7045IN |
| Iowa | 7042IA |
| | 7044IA |
| Kansas | 7042KS |
| | 7044KS |
| Kentucky | 7042KY |
| | 7044KY |
| Louisiana | 7042LA |
| | 7044LA |

| | |
|---|---|
| Maine | 7042ME |
| | 7044ME |
| Maryland | 7042MD |
| | 7044MD |
| Massachusetts | 7042MA |
| | 7044MA |
| Michigan | 7042MI |
| | 7044MI |
| Minnesota | 7042MN |
| | 7044MN |
| Mississippi | 7042MS |
| | 7044MS |
| Missouri | 7042MO |
| | 7044MO |
| Montana | 7042MT |
| | 7044MT |
| Nebraska | 7042NE |
| | 7044NE |
| Nevada | 7042NV |
| | 7044NE |
| New Hampshire | 7042NH |
| | 7044NH |
| New Jersey | 7042NJ |
| | 7044NJ |
| New Mexico | 7042NM |
| | 7044NM |
| New York | 51012 |
| | 51014 |
| New York Partnership | 51015 |
| North Carolina | 7042NC |
| | 7044NC |
| North Dakota | 7042ND |
| | 7044ND |
| Ohio | 7042OH |
| | 7044OH |
| Oklahoma | 7042OK |
| | 7044OK |
| Oregon | 7042OR |
| | 7044OR |
| Pennsylvania | 7042PA |
| | 7044PA |
| Rhode Island | 7042RI |
| | 7044RI |
| South Carolina | 7042SC |
| | 7044SC |
| South Dakota | 7042SD |
| | 7044SD |
| Tennessee | 7042TN |

|  | 7044TN |
| Texas | 7042TX |
|  | 7044TX |
| Utah | 7042UT |
|  | 7044UT |
| Vermont | 7042VT |
|  | 7044VT |
| Virginia | 7042VA |
|  | 7044VA |
| Washington | 7042WA |
|  | 7044WA |
| West Virginia | 7042WV |
|  | 7044WV |
| Wisconsin | 7042WI |
|  | 7044WI |
| Wyoming | 7042WY |
|  | 7044WY |

**Choice 2.1 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL Rev |
| | 7044AL REV |
| Alaska | 7042AK Rev |
| | 7044AK REV |
| Arizona | 7042AZ Rev |
| | 7044AZ REV |
| Arkansas | 7042AR Rev |
| | 7044AR REV |
| Colorado | 7042CO Rev |
| | 7044CO REV |
| D.C. | 7042DC Rev |
| | 7044DC REV |
| Delaware | 7042DE Rev |
| | 7044DE REV |
| Florida | 7042FL Rev |
| | 7044FL REV |
| Georgia | 7042GA Rev |
| | 7044GA REV |
| Hawaii | 7042HI Rev |
| | 7044HI REV |
| Idaho | 7042ID Rev |
| | 7044ID REV |
| Illinois | 7042IL Rev |
| | 7044IL REV |
| Indiana | 7042IN Rev |
| | 7044IN REV |
| Indiana Partnership | 7043IN Rev |
| | 7045IN REV |
| Iowa | 7042IA Rev |
| | 7044IA |
| Kansas | 7042KS Rev |
| | 7044KS |
| Kentucky | 7042KY Rev |
| | 7044KY REV |
| Louisiana | 7042LA Rev |
| | 7044LA REV |
| Maine | 7042ME Rev |
| | 7044ME REV |
| Maryland | 7042MD Rev |
| | 7044MD REV |
| Massachusetts | 7042MA Rev |

|  | 7044MA REV |
| Michigan | 7042MI Rev |
|  | 7044MI REV |
| Minnesota | 7042MN Rev |
|  | 7044MN REV |
| Mississippi | 7042MS Rev |
|  | 7044MS REV |
| Missouri | 7042MO Rev |
|  | 7044MO REV |
| Montana | 7042MT Rev |
|  | 7044MT REV |
| Nebraska | 7042NE Rev |
|  | 7044NE REV |
| Nevada | 7042NV Rev |
|  | 7044NV REV |
| New Hampshire | 7042NH Rev |
|  | 7044NH REV |
| New Jersey | 7042NJ Rev |
|  | 7044NJ REV |
| New Mexico | 7042NM Rev |
|  | 7044NM REV |
| New York | 51012 Rev |
|  | 51014 REV |
| New York Partnership | 51015 REV |
| North Carolina | 7042NC Rev |
|  | 7044NC REV |
| North Dakota | 7042ND Rev |
|  | 7044ND REV |
| Ohio | 7042OH Rev |
|  | 7044OH REV |
| Oklahoma | 7042OK Rev |
|  | 7044OK REV |
| Oregon | 7042OR Rev |
|  | 7044OR REV |
| Pennsylvania | 7042PA Rev |
|  | 7044PA REV |
| Rhode Island | 7042RI Rev |
|  | 7044RI REV |
| South Carolina | 7042SC Rev |
|  | 7044SC REV |
| South Dakota | 7042SD Rev |
|  | 7044SD REV |
| Tennessee | 7042TN Rev |

|  | 7044TN REV |
|---|---|
| Texas | 7042TX Rev |
|  | 7044 TX REV |
| Utah | 7042UT Rev |
|  | 7044UT REV |
| Vermont | 7042VT Rev |
|  | 7044VT REV |
| Virginia | 7042VA Rev |
|  | 7044VA REV |
| Washington | 7042WA Rev |
|  | 7044WA REV |
| West Virginia | 7042WV Rev |
|  | 7044WV REV |
| Wisconsin | 7042WI Rev |
|  | 7044WI REV |
| Wyoming | 7042WY Rev |
|  | 7044WY REV |

**California CADE/Reprice/Unbundled**

| State | Policy/Certificate Form |
|---|---|
| California, CA Reprice & CA Unbundled | 7035AX REV |
| California, CA Discount Enhancement (CADE) | 7035AX REV 2009 |
| California Partnership | 7037C REV |
| California Partnership, CAP Unbundled | 7037C REV 2 |
| California Partnership, CAP CADE | 7037C REV 2009 |

# Attachment 2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually, and on behalf of all others similarly situated, | |
| *Plaintiffs*, | |
| v. | Civil Action No.: 3:23-cv-00055-REP |
| GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, | |
| *Defendants*. | |

<u>**DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF CAFA NOTICE**</u>

I, STEPHANIE J. FIERECK, ESQ., hereby declare and state as follows:

1.      My name is Stephanie Fiereck, Esq. I am over the age of 21.  I have personal knowledge of the matters set forth in this declaration, and I believe them to be true and correct. The facts in this declaration are based on what I personally know as well as information provided to me in the ordinary course of my business.

2.      I am the Director of Legal Noticing for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing, and implementing large-scale legal notification plans.  Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the proposed class notice administrator in this case.  I have overseen and handled Class Action Fairness Action ("CAFA") notice mailings for more than 350 class action settlements.

3.      At the direction of counsel for the Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York, Epiq provided the "CAFA notice" of the

DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF CAFA NOTICE

proposed settlement in this case to 52 government officials, which included the Attorney General of the United States and the State Insurance Commissioner (or comparable regulatory department head) of each of the 50 States and the District of Columbia.

4.    Epiq maintains and regularly updates a list of these State and Federal officials with contact information for the purpose of providing CAFA notice.  Prior to mailing the notice for this case, Epic checked and verified the names and addresses from Epiq's list to create the "CAFA Mailing List."  Prior to mailing, Epiq ran the addresses on the CAFA Mailing List through the Coding Accuracy Support System ("CASS") maintained by the United States Postal Service ("USPS").

5.    On April 11, 2022, Epiq, using that CAFA Mailing list, sent 52 CAFA Notice packages (the "Notice").  The Notice was mailed by USPS certified mail to the State Insurance Commissioner (or comparable regulatory department head) of each of the 50 States and the District of Columbia.  The Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.  The CAFA Mailing List that Epiq used for these mailings (which indicates delivery by USPS Certified Mail or UPS) is attached to this declaration as **Attachment 1**.

6.    The Notice sent to these officials included a cover letter, which is attached to this declaration as **Attachment 2**.

7.    Each Notice's cover letter was accompanied by a CD, which included copies of the following:

a.    Exhibit 1 – the Class Action Complaint;

b.    Exhibit 2 – the Court's order regarding preliminary approval schedule dated February 1, 2022;

DECLARATION OF STEPHANIE J. FIERECK, ESQ. ON IMPLEMENTATION OF CAFA NOTICE

2

c.      Exhibit 3 – the Declaration of Cameron R. Azari, Esq. on Settlement Notice Plan and Administration;

d.      Exhibit 4 – the proposed class notice;

e.      Exhibit 5 – the proposed publication notice;

f.      Exhibit 6 – the Joint Stipulation of Class Action Settlement and Release (with appendices);

g.      Exhibit 7 – a chart of each State's estimated proportionate share of potential settlement class members; and

h.      Exhibit 8 – a preliminary list of potential settlement class members.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 11, 2022.

Stephanie J. Fiereck, Esq.

# **Attachment 1**

**CAFA Notice Service List**
**State Insurance Commissioners**
**USPS Certified Mail**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Alabama Department of Insurance | JIM L. RIDLING | PO Box 303351 | | Montgomery | AL | 36130 |
| Alaska Dept Commerce Comm. & Econ. Dev. | LORI K. WING-HEIER | Division of Insurance | 550 West 7th Avenue Suite 1560 | Anchorage | AK | 99501 |
| Arizona Department of Insurance | EVAN G. DANIELS | 100 N 15th Ave | Suite 261 | Phoenix | AZ | 85007 |
| Arkansas Insurance Department | ALAN MCCLAIN | 1 Commerce Way Bldg 4 | Suite 502 | Little Rock | AR | 72202 |
| California Department of Insurance | RICARDO LARA | 300 Capitol Mall | Suite 1700 | Sacramento | CA | 95814 |
| Colorado Dept of Regulatory Agencies | MICHAEL CONWAY | Division of Insurance | 1560 Broadway Suite 850 | Denver | CO | 80202 |
| Connecticut Insurance Department | ANDREW N. MAIS | PO Box 816 | | Hartford | CT | 06142 |
| Delaware Department of Insurance | TRINIDAD NAVARRO | 1351 West North Street | Suite 101 | Dover | DE | 19904 |
| Government of the District of Columbia | KARIMA WOODS | Department of Insurance Securities & Banking | 1050 First Street NE Suite 801 | Washington | DC | 20002 |
| Office of Insurance Regulation | DAVID ALTMAIER | The Larson Building | 200 E. Gaines Street Rm 101A | Tallahassee | FL | 32399 |
| Office of Ins. & Safety Fire Commissioner | JOHN F. KING | Two Martin Luther King Jr. Dr. | West Tower Suite 704 Floyd Bldg. | Atlanta | GA | 30334 |
| Dept of Commerce & Consumer Affairs | COLIN M. HAYASHIDA | Insurance Division | PO Box 3614 | Honolulu | HI | 96811 |
| Idaho Department of Insurance | DEAN CAMERON | PO Box 83720 | | Boise | ID | 83720 |
| Illinois Department of Insurance | DANA POPISH SEVERINGHAUS | 320 W. Washington Street | 4th Floor | Springfield | IL | 62767 |
| Indiana Department of Insurance | AMY L. BEARD | 311 W Washington Street | Suite 103 | Indianapolis | IN | 46204 |
| Iowa Insurance Division | DOUG OMMEN | 1963 Bell Avenue | Suite 100 | Des Moines | IA | 60315 |
| Kansas Insurance Department | VICKI SCHMIDT | 1300 SW Arrowhead | | Topeka | KS | 66604 |
| Kentucky Department of Insurance | SHARON P. CLARK | PO Box 517 | | Frankfort | KY | 40602 |
| Louisiana Department of Insurance | JAMES J. DONELON | PO Box 94214 | | Baton Rouge | LA | 70804 |
| Department of Professional & Financial Reg. | ERIC A. CIOPPA | Maine Bureau of Insurance | 34 State House Station | Augusta | ME | 04333 |
| Maryland Insurance Administration | KATHLEEN A. BIRRANE | 200 St Paul Place | Suite 2700 | Baltimore | MD | 21202 |
| Office of Consumer Affairs & Business Reg. | GARY ANDERSON | Massachusetts Division of Insurance | 1000 Washington Street 8th Floor | Boston | MA | 02118 |
| Dept. of Insurance & Financial Services | ANITA G. FOX | PO Box 30220 | | Lansing | MI | 48909 |
| Minnesota Department of Commerce | GRACE ARNOLD | 85 7th Place East | Suite 280 | St Paul | MN | 55101 |
| Mississippi Insurance Department | MIKE CHANEY | PO Box 79 | | Jackson | MS | 39205 |
| Missouri Dept Ins. Fin. Institutions & Prof. Reg. | CHLORA LINDLEY-MYERS | PO Box 690 | | Jefferson City | MO | 65102 |
| Montana Office Commissioner Securities & Ins. | TROY DOWNING | Montana State Auditor | 840 Helena Avenue | Helena | MT | 59601 |
| Nebraska Department of Insurance | ERIC DUNNING | PO Box 82089 | | Lincoln | NE | 68501 |
| Nevada Dept. of Business & Industry | BARBARA RICHARDSON | Division of Insurance | 1818 East College Pkwy Suite 103 | Carson City | NV | 89706 |
| New Hampshire Insurance Department | CHRIS NICOLOPOULOS | 21 South Fruit Street | Suite 14 | Concord | NH | 03301 |
| New Jersey Department of Banking & Ins. | MARLENE CARIDE | 20 West State Street | PO Box 325 | Trenton | NJ | 08625 |
| Office of Superintendent of Insurance | RUSSELL TOAL | PO Box 1689 | | Santa Fe | NM | 87504 |
| New York State Dept. of Financial Services | ADRIENNE A. HARRIS | One State Street | | New York | NY | 10004 |
| North Carolina Department of Insurance | MIKE CAUSEY | 1201 Mail Service Center | | Raleigh | NC | 27699 |
| North Dakota Insurance Department | JON GODFREAD | State Capitol | 600 E. Boulevard Avenue 5th Floor | Bismarck | ND | 58505 |
| Ohio Department of Insurance | JUDITH L. FRENCH | 50 West Town Street | Suite 300 | Columbus | OH | 43215 |
| Oklahoma Insurance Department | GLEN MULREADY | 400 NE 50th Street | | Oklahoma City | OK | 73105 |
| Oregon Dept. of Consumer & Bus Srvcs | ANDREW STOLFI | Division of Financial Regulation | PO Box 14480 | Salem | OR | 97309 |
| Pennsylvania Insurance Department | MICHAEL HUMPHREYS | 1326 Strawberry Square | | Harrisburg | PA | 17120 |
| State of Rhode Island Dept of Business Reg. | ELIZABETH KELLEHER DWYER | Division of Insurance | 1511 Pontiac Avenue Building 69-2 | Cranston | RI | 02920 |
| South Carolina Department of Insurance | RAYMOND G. FARMER | PO Box 100105 | | Columbia | SC | 29202 |
| South Dakota Dept of Labor & Reg. Div. of Ins. | LARRY DEITER | South Dakota Division of Insurance | 124 South Euclid Avenue 2nd Floor | Pierre | SD | 57501 |
| Tennessee Department of Commerce & Ins. | CARTER LAWRENCE | Davy Crockett Tower Twelfth Floor | 500 James Robertson Parkway | Nashville | TN | 37243 |
| Texas Department of Insurance | CASSIE BROWN | PO Box 149104 | | Austin | TX | 78714 |
| Utah Insurance Department | JONATHAN T. PIKE | PO Box 146901 | | Salt Lake City | UT | 84114 |
| Department of Financial Regulation | MICHAEL S. PIECIAK | 89 Main Street | | Montpelier | VT | 05620 |
| Virginia State Corporation Commission | SCOTT A. WHITE | Bureau of Insurance | PO Box 1157 | Richmond | VA | 23218 |
| Washington State Office of the Ins. Comm. | MIKE KREIDLER | PO Box 40255 | | Olympia | WA | 98504 |
| West Virginia Office of the Insurance Comm. | ALLAN L. MCVEY | PO Box 50540 | | Charleston | WV | 25305 |
| State of Wisconsin Office of the Comm. of Ins. | NATHAN HOUDEK | PO Box 7873 | | Madison | WI | 53707 |
| Wyoming Insurance Department | JEFF RUDE | 106 East 6th Avenue | | Cheyenne | WY | 82002 |

**CAFA Notice Service List**

**UPS**

| Company | FullName | Address1 | Address2 | City | State | Zip |
|---------|----------|----------|----------|------|-------|-----|
| US Department of Justice | Merrick B. Garland | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |

# **Attachment 2**

大成 **DENTONS**

**Michael J. Duvall**
Partner

michael.duvall@dentons.com
D    +1 213 892 2818

Dentons US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
United States

April 11, 2022

**By UPS or USPS Certified Mail**

| **Class Action Fairness Act – Notice to Federal and State Officials** |
| --- |

Re:    Notice of Proposed Settlement Pursuant to 28 U.S.C. § 1715 in *Fred Haney, et al. v. Genworth Life Insurance Company and Genworth Life Insurance Company of New York*, Case No. 3:22-CV-55-REP, United States District Court for the Eastern District of Virginia, Richmond Division

Dear Sir or Madam:

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (together, GLIC and GLICNY, "Genworth") provide notice of the proposed settlement with the plaintiffs in the above-entitled action (the "Action").

**I.    Background**

On January 28, 2022, Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Named Plaintiffs") filed a putative class action complaint (the "Complaint") against Genworth for alleged failures to disclose material information and alleged misrepresentations in premium rate increase letters sent for certain GLIC and GLICNY Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled long-term care insurance policies. Named Plaintiffs sought to represent a class of such policyholders in all fifty States and the District of Columbia. Named Plaintiffs asserted claims for fraudulent inducement by omission and for declaratory relief.

Genworth denies Named Plaintiffs' allegations and contends that neither Named Plaintiffs nor the putative class are entitled to relief.

Nevertheless, Genworth has concluded that further litigation will likely be protracted and expensive and therefore has agreed to settle Named Plaintiffs' and the putative class' claims pursuant to the terms of a Joint Stipulation of Settlement and Release (the "Stipulation of Settlement"), which is enclosed as Exhibit 6.  On April 1, 2022, Named Plaintiffs filed in the United States District Court for the Eastern District of Virginia a

Motion to Direct Notice of Proposed Settlement to the Class, together with a copy of the parties' Stipulation of Settlement and various related documents.

If the Court grants final approval of the Settlement, Class Members will receive a Special Election Letter with two primary components—additional Disclosures and Special Election Options. The Disclosures concern Genworth's current plans (if any) for future rate increases on each Class Member's respective policy and Genworth's financial condition. The Special Election Options allow each Class Member to make an election (as available based on his or her particular policy) to (1) stop paying premiums and receive a reduced paid-up benefit, or (2) reduce his or her premiums and benefits. Some of the Special Election Options also include a cash damages payment. Class Members are not required to elect any Special Election Option and may keep their respective policies as-is. For more details about the Special Election Letter, the Disclosures, and the Special Election Options, please see Appendices B, C, and D of the Stipulation of Settlement (Exhibit 6).

This Notice is served to comply with the subsequent required notice provisions of 28 U.S.C. §1715. A copy of this Notice is concurrently being provided to the United States Attorney General and the insurance regulators of the 50 states, and the District of Columbia.

## II.  Compliance with 28 U.S.C. § 1715

Each of the requirements of notice pursuant to 28 U.S.C. §§ 1715(b)(1)-(8) is addressed below, along with the documents enclosed with this Notice.

### 1.    Complaints and Related Materials (28 U.S.C. § 1715(b)(1))

Enclosed as Exhibit 1 is a copy of the Complaint.

### 2.    Notice of Any Scheduled Judicial Hearing (28 U.S.C. § 1715(b)(2))

Enclosed as Exhibit 2 is a copy of the Court's Order setting a hearing on Plaintiffs' Motion to Direct Notice of Proposed Settlement to the Class on May 2, 2022 at 10:00 a.m. in the Courtroom of the Honorable Robert E. Payne in the United States District Court Eastern District of Virginia, Richmond Division, located at the Spottswood W. Robinson III and Robert R. Merhige, Jr. Federal Courthouse, 701 East Broad Street, Richmond, VA 23219.

### 3.    Proposed Notification to Class Members (28 U.S.C. § 1715(b)(3))

The proposed notice plan is described in Paragraphs 10 through 23 of the Declaration of Cameron R. Azari, Esq. on Settlement Notice Plan and Administration, and is enclosed as Exhibit 3.

CAFA Notice to Federal and State Officials
April 11, 2022
Page 3

Subject to Court approval, the proposed notice administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), will mail a long-form notice ("Class Notice") to settlement class members and post it on the settlement website.  The proposed Class Notice is enclosed as Exhibit 4.

Subject to Court approval, Epiq also will provide publication notice in the national editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*.  A copy of the proposed publication notice is enclosed as Exhibit 5.

Subject to Court approval, once settlement class members receive Class Notice, the deadline for them to opt-out of the Settlement or object in writing to the Court will be sixty (60) calendar days after the Class Notice is mailed.

### 4.      Proposed Class Action Settlement Agreement (28 U.S.C. § 1715(b)(4))

A copy of the executed Stipulation of Settlement is enclosed as Exhibit 6.

### 5.      Any Settlement or Other Agreement (28 U.S.C. § 1715(b)(5))

No other contemporaneous written agreement has been made between Genworth and Named Plaintiffs.

### 6.      Class Member Estimates and Estimated Proportionate Share of Claims of Such Members (28 U.S.C. § 1715(b)(7))

The parties estimate the total putative nationwide settlement class size to include approximately 343,865 persons. A chart of each State's estimated proportionate share of potential settlement class members is attached as Exhibit 7. Genworth has preliminarily identified potential settlement class members, and a list of such persons in your State or territory is attached as Exhibit 8.[1]

Genworth is providing these names of potential settlement class members pursuant to its obligations under 28 U.S.C. § 1715(b)(7)(a), but requests that these names not be publicly disclosed, in order to protect the confidentiality and privacy of the persons listed.

---

[1] Genworth's identification of potential settlement class members is preliminary and reflects Genworth's best efforts as of April 6, 2022, and is subject to modifications and corrections through the time of class notice. Genworth specifically notes that where a single insurance policy or certificate identified as within the Settlement insures more than one person, only the primary owner of the policy or certificate is listed on the enclosed list.

大成 DENTONS                                                              dentons.com

CAFA Notice to Federal and State Officials
April 11, 2022
Page 4

### 7.      Judicial Opinions Related to Settlement (28 U.S.C. § 1715(b)(8))

At this time, there has been no final judgment or notice of dismissal, and there are no written judicial opinions relating to the materials described under subparagraphs (3) through (6) of § 1715(b), including with respect to the proposed class notice, the Settlement Agreement, or a proposed final order and judgment.

If you have any questions about this notice, this lawsuit, or the enclosed materials, please feel free to contact undersigned counsel for Genworth.

Sincerely,

/s/ Michael J. Duvall
Michael J. Duvall
Partner


Enclosures

Attachment 3

Haney v. Genworth
P.O. Box 2860
Portland, OR 97208-2860



# This Page Intentionally Left Blank

<u>**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT**</u>

*Haney, et al. v. Genworth Life Insurance Company, et al.*

United States District Court for the Eastern District of Virginia (Richmond Division), Case No.
3:22-cv-00055-REP

**TO: POLICYHOLDERS OF GENWORTH LIFE INSURANCE COMPANY ("GLIC") AND GENWORTH LIFE INSURANCE COMPANY OF NEW YORK ("GLICNY") (collectively GLIC and GLICNY are referred to as "Genworth") LONG-TERM CARE INSURANCE POLICIES ON POLICY FORMS OR CERTIFICATES IDENTIFIED IN THE ATTACHED APPENDIX 1 (the "Class Policies") IN FORCE ON OR AFTER JANUARY 1, 2013, WHOSE POLICIES HAVE NOT LAPSED OR BEEN TERMINATED (AND NOT REINSTATED) ON OR BEFORE JANUARY 1, 2014.**

YOU ARE HEREBY NOTIFIED that a proposed settlement of the above-entitled class action lawsuit ("the Class Action") pending in the United States District Court for the Eastern District of Virginia (the "Court") has been reached between Genworth and Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Named Plaintiffs"), on behalf of themselves and the putative class of individuals defined as "Class Members" below (collectively, "Plaintiffs") (together, Genworth and Plaintiffs are referred to as the "Parties"), and on May 2, 2022, the settlement was granted preliminary approval by the Court supervising the lawsuit.

THE PURPOSE OF THIS NOTICE is to describe the Class Action, to inform you of the proposed settlement terms, and to inform you of your potential rights and options in connection with the settlement. You are encouraged to visit the settlement website at **www.Choice2LongTermCareInsuranceSettlement.com** for the precise terms and conditions of the settlement, the complete Settlement Agreement, pleadings and documents on file in this case, and other information about this settlement, including important dates, and a full description of the settlement options you may be offered if the Court approves the settlement.

The settlement will resolve all claims in the above-entitled Class Action. A court hearing concerning the fairness of the settlement (the "Final Approval Hearing") will be held on November 17, 2022 at 10:00 AM ET at the following address: The Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, VA 23219, Richmond Court Room 7400 to determine whether the settlement should be given final approval by the Court. You are <u>not</u> required to attend the hearing in order to participate in the settlement. BECAUSE YOUR RIGHTS MAY BE AFFECTED, IT IS EXTREMELY IMPORTANT THAT YOU READ THIS ENTIRE NOTICE CAREFULLY.

If you have any questions, you may contact Epiq (the "Settlement Administrator") toll-free at (855) 662-0078, or you may call Class Counsel at (800) 348-6192. You should not contact the Court, Genworth, or Genworth's counsel with questions about this Notice or the settlement, although you may contact Genworth, as usual, about your policy, benefits, or any election letter received.

AG7711 v.05

## A.  DESCRIPTION OF THE CLASS ACTION

On January 28, 2022, five individuals with GLIC or GLICNY Choice 2, Choice 2.1, California CADE, California Reprice, and/or California Unbundled long term care insurance policies, Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten, filed a Class Action Complaint against Genworth in the United States District Court for the Eastern District of Virginia, alleging that Genworth intentionally withheld material information from Policyholders with respect to the full scope and magnitude of Genworth's rate increase action plans and its reliance on Policyholders paying increased rates to pay future claims (the "Complaint"). The Named Plaintiffs' Complaint alleged that they did not challenge Genworth's right to increase premiums under the policies or Genworth's justification for rate increases. Instead, the Complaint asserted claims for Fraudulent Inducement by Omission and for Declaratory Relief.

Genworth denies any wrongdoing or legal liability for any alleged wrongdoing in connection with any facts or claims that have been or could have been alleged in Named Plaintiffs' lawsuit, whether on behalf of the Named Plaintiffs or Class Members. Genworth contends that the Named Plaintiffs' and Class Members' claims challenged Genworth's right to increase premiums and thus are barred by the filed-rate doctrine, and that neither Named Plaintiffs nor the putative Class has been injured or is entitled to any relief. The Court has not ruled on the merits of the claims or defenses.

All Parties believe in the merits of their respective claims and defenses. Nevertheless, due to the uncertainties, risks, expenses, and business disruption of continued litigation, the Parties have agreed to settle the lawsuit after voluntary mediation proceedings involving a mediator. The Parties have entered into a Joint Stipulation of Class Action Settlement and Release, which the Court has preliminarily approved as fair and reasonable, and which was amended and superseded by an Amended Joint Stipulation of Class Action Settlement and Release on July 6, 2022 ("Settlement Agreement"). The principal terms of the Settlement Agreement are summarized in this Notice. The full Settlement Agreement is on file with the Court and available at:

### www.Choice2LongTermCareInsuranceSettlement.com

The attorneys for Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten have been designated by the Court as "Class Counsel" to represent all Class Members affected by the Settlement Agreement. Class Counsel believes that the Settlement Agreement summarized by this Notice is fair, reasonable, and adequate and in the best interests of the Class Members.

The following law firms are Class Counsel and represent the Class Members:

| GOLDMAN SCARLATO & PENNY, P.C.<br>Brian D. Penny<br>161 Washington Street, Suite 1025<br>Conshohocken, PA 19428 | ROBBINS GELLER RUDMAN & DOWD LLP<br>Stuart A. Davidson<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432 |
|---|---|
| PHELAN PETTY, PLC<br>Jonathan M. Petty<br>3315 West Broad Street<br>Richmond, VA 23230 | BERGER MONTAGUE PC<br>Glen L. Abramson<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103 |
| CLASS COUNSEL'S TOLL-FREE NUMBER: (800) 348-6192 ||

The Settlement Administrator is Epiq. Epiq's phone number is (855) 662-0078; and its mailing address is: P.O. Box 2860, Portland, OR 97208-2860.

AG7712 v.05

## B. CLASS MEMBERS

The "Class Members" for purposes of this settlement are defined as all Policyholders[1] of GLIC and GLICNY long-term care insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policies, and State variations of those policies in force at any time during the Class Period and issued in any of the fifty (50) States of the United States or the District of Columbia (the "States")[2] excluding: (1) those Policyholders whose policies went into Non-Forfeiture Status[3] or a Fully Paid-Up Status[4] prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed[5] and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated,[6] as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter[7] would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time prior to sending their Special Election Option to Genworth; (4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and (5) Judge Robert E. Payne and his immediate family and staff.

Changes to your policy status or coverage (including, for example, whether your policy lapses or is terminated) may also impact whether you are in the proposed settlement class. If your policy lapses after the date of this notice, it must be reinstated within your applicable auto-reinstatement period if you wish to exercise rights and options in the settlement.

---

[1] "Policyholder(s)" means the policy owner, except: (a) where a single policy or certificate insures both a policy or certificate owner and another insured person, "Policyholder(s)" means both the policy or certificate owner and the other insured person jointly; (b) where the Class Policy at issue is certificate 7042CRT, 7044CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.
[2] A list of Class Policy forms is attached hereto as **Appendix 1**.
[3] "Non-Forfeiture Status" means a policy status where the Policyholder (defined below) has exercised a "Non-Forfeiture Option." "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to: an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option; the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.
[4] "Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed. A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status.
[5] "Lapse" or "Lapsed" means a status whereby a policy is no longer in force because premium was not paid as required. A Lapsed policy terminates and cannot be reinstated if it is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium. For purposes of this Settlement Agreement, a policy in Non-Forfeiture Status is not a Lapsed policy.
[6] "Terminated" means a status whereby a Class Policy is no longer in force and is unable to be automatically reinstated by the Policyholder with payment of past due premium. It includes, for example, a Class Policy that has Lapsed beyond the period permitted for automatic reinstatement, a Class Policy that has been cancelled, or a Class Policy (including a policy in Non-Forfeiture Status) that is no longer in force because all available benefits have been exhausted.
[7] A "Special Election Letter" is an individualized letter to be sent to all Class Members who have not opted-out providing certain disclosures and settlement options available to that Class Member.

AG7713 v.05

## C. YOUR OPTIONS

As a Class Member, you have several options and you should read this entire Notice carefully before acting.

**OPTION #1:** If you do not oppose the settlement of the lawsuit, then simply do nothing. You do not need to send any documents to the Settlement Administrator. IF YOU DO NOTHING, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT, INCLUDING THE RELEASE. If you do nothing, you will not have the right to pursue your own action for the claims covered by the Class Action Release. If the Settlement Agreement is approved by the Court, you will then be sent another correspondence with options to elect to receive benefits under the Settlement Agreement.

**OPTION #2:** If you do NOT want to be bound by the Settlement Agreement and wish to retain the right to proceed against GLIC and/or GLICNY on your own as to the claims that were alleged, or that have a reasonable connection with any matter of fact set forth in the Class Action, subject to any defenses that may be available to GLIC and/or GLICNY to any claims you may have, including, but not limited to, statutes of limitation and statutes of repose, then you must notify the Settlement Administrator that you wish to exclude yourself from the Settlement Agreement and the Class (also known as "opting out").

To do so, you must send a signed letter to the Settlement Administrator, which includes: (1) your name, (2) your address, (3) if available, your policy number, (4) a statement that you are "requesting exclusion" from the Settlement Agreement, (5) the name of the case and case number (*Haney, et al. v. Genworth Life Insurance Company, et al.*, Case No. 3:22-cv-00055-REP), and (6) your signature.

Opt-out letters can be mailed to the Settlement Administrator at the following mailing address: P.O. Box 2860, Portland, OR 97208-2860.

The letter requesting exclusion must be postmarked no later than **September 30, 2022**. Any request for exclusion received with a postmark after that date will be invalid.

**IF YOU CHOOSE TO EXCLUDE YOURSELF, YOU WILL <u>NOT</u> RECEIVE THE SETTLEMENT AGREEMENT POLICY ELECTION OPTIONS OR OTHER RELIEF AND THE TERMS OF THE SETTLEMENT WILL NOT APPLY TO YOU.**

**OPTION #3: If you want to remain in the Settlement Agreement and be bound by its terms, but you oppose any aspect of the Settlement Agreement, or Class Counsel's application for an award of fees and expenses, you may object to the Settlement Agreement.**

In order to object, you must file a written Objection with the Clerk of United States District Court for the Eastern District of Virginia, located at 701 East Broad Street, Richmond, VA 23219, and you must serve a copy of the written Objection on the Settlement Administrator at the following address: P.O. Box 2860, Portland, OR 97208-2860.

A written Objection must include: (1) your full name, (2) your current address, (3) the name of the case and the case number (*Haney et al. v. Genworth Life Insurance Company et al.*, Case No. 3:22-cv-00055-REP), (5) the basis or reason(s) for your objection(s), (6) your signature, and (7) if you (or someone on your behalf such as an attorney) intends to appear at the Final Approval Hearing, a statement stating that you (or someone on your behalf) intend to appear at the Final Approval Hearing.

**Questions?  Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com**

**4**

AG7714 v.05

Any written Objection must be filed with the Court **and** sent to the Settlement Administrator with a postmark no later than **September 30, 2022**. Any written Objection filed and/or mailed with a post-mark after this deadline will be invalid.

You may be permitted to appear personally (or through an attorney) at the Final Approval Hearing to present your objections directly to the Court **if you first timely file and serve a written Objection and do not submit a request for exclusion**. A written Objection must state whether you (or someone on your behalf, such as an attorney) intends to appear at the Final Approval Hearing. If you wish to have an attorney represent you in connection with any written Objection, including to appear at the Final Approval Hearing, you will be responsible for any fees or expenses of that attorney. If you submit a written Objection, you will remain a Class Members and, if the Court rejects your objection(s), you will still be bound by the terms of the Settlement Agreement, including the Release.

### D. SUMMARY OF PROPOSED SETTLEMENT TERMS

This Settlement Agreement is conditioned upon the Court entering an order granting final approval of the Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Class. Subject to the Settlement Agreement becoming final, the terms of the Settlement Agreement are as follows:

1. **Special Election Disclosures and Options:** In consideration for a Release as described in Paragraph D.2, and as a direct result of the Class Action and the Settlement Agreement, Genworth will send a special election letter ("Special Election Letter") to all Class Members after the Settlement has been finally approved. The Special Election Letter will contain, subject to approval by the Court and being approved by and/or not objected to by State insurance regulators:

   (a) Disclosure of certain information about GLIC's and/or GLICNY's future rate increase plans and need for future rate increases (the "Disclosures"); and

   (b) Class Members' right to make an election of either (1) maintaining current benefits at existing filed rates (subject to the future approved rate increases), or (2) electing from a selection of reduced paid-up benefit options or reduced benefit options (the "Special Election Options"), subject to the availability of those options depending on each Class Member' current policy terms and benefits and certain State Partnership Plan ("Partnership Plan") requirements. Special Election Options that may be available could increase the amount of your current non-forfeiture paid-up benefit or entitle you to cash damages pay-outs. The actual Special Election Options available to you will depend upon many factors including, but not limited to, your current policy status and benefits, final court approval, and State regulatory review and comment.

   (c) Please visit the settlement website, **www.Choice2LongTermCareInsuranceSettlement.com**, for a full description of these options and a sample of the Special Election Letter.

2. **Release:** Each member of the Class who does not timely and validly opt out of the Class, will forever release and discharge GLIC and GLICNY (collectively "Genworth") and each of those entities' respective affiliates, predecessors, successors, parents, subsidiaries, and, for each of the foregoing, their current, former, and future directors, officers, direct and indirect owners, members, managers, attorneys, representatives, employees, and agents (the "Genworth Released Parties") of and from any and all known or unknown, contingent or absolute, matured or unmatured, suspected or unsuspected, disclosed or undisclosed,

**Questions? Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com**

**5**

AG7715 v.05

foreseeable or unforeseeable, liquidated or unliquidated, existing or arising in the future, and accrued or unaccrued claims, demands, interest, penalties, fines, and causes of action, that the Named Plaintiffs and Class Members may have from the beginning of time through and including the Final Settlement Date that relate to claims alleged, or that have a reasonable connection with any matter of fact set forth in the Class Action including, but not limited to, any claims relating to rate increases on Class Policies prior to the Final Settlement Date. This release specifically includes any legal or equitable claim arising from or related to any election or policy change made or not made by any Class Members to his or her policy benefits prior to the Final Settlement Date. Named Plaintiffs and Class Members, subject to the exception set forth below, will further release the Genworth Released Parties and Class Counsel from any claims relating to or arising out of the Disclosures or the Special Election Letters the Class Members are provided as part of the Settlement Agreement, including (but not limited to) claims specifically relating to any alleged omissions in the Disclosures or the Special Election Letters or to any decision, or non-decision, to maintain, modify, or give up coverage based on the Disclosures, the Special Election Letters, or the Special Election Options offered. A claim that a Class Member was harmed by an express and intentional misrepresentation: in the completed portion of the Disclosures that currently is bracketed in the template Special Election Letter appended as Appendix D to the Settlement Agreement, in the completed portions of the Special Election Options that are made available to that Class Member that currently are bracketed in the template Special Election Letter, or by the Genworth Released Parties or Class Counsel about the Disclosures, shall not be a Released Claim. A Class Member may pursue such a claim in the Court via complaint or petition within three years of the date the Class Member makes a Special Election or three years of the deadline for the Class Member to make a Special Election, whichever is earlier, provided that, before filing any such claim, the Class Member shall first notify the Parties of the basis for the claim and provide them with a reasonable opportunity to investigate and, if appropriate, remedy the alleged harm.

This Release will not prevent a Class Member from making a claim for benefits under his or her long-term care insurance policy consistent with his or her policy coverage, nor shall it include a Class Member's challenge or appeal of Genworth's denial of benefits under his or her Class Policy.

This Class Notice only contains a summary of the actual benefits and release language contained in the Stipulation of Settlement, which is on file with the Court and available for your review, including on the settlement website described below. If the Settlement Agreement is not approved by the Court or does not become final for any reason, the Class Action will continue, this Release will not be binding, and the Special Election Options will not be available.

3. **Attorneys' Fees and Litigation Expenses:** As part of the request for Final Approval of the Settlement Agreement, Class Counsel will file a request seeking to be paid a contingent payment of 15% of certain amounts related to Special Election Options selected by the Class, which shall be no greater than $13,000,000.00. **None** of the attorneys' fees will be deducted from payments made by Genworth to Class Members.

Class Counsel will also file a request for an award of reasonable litigation expenses in this case. These expenses will be no more than $50,000.

These are the only attorneys' fees and litigation expenses that Class Counsel will be paid as a result of the Settlement. Class members will not be required to separately pay Class Counsel for any other attorneys' fees or expenses. Genworth has agreed to pay all fees and

AG7716 v.05

expenses separately. The actual amounts of attorneys' fees and litigation expenses to be paid to Class Counsel will be determined by the Court, and these amounts will be paid by Genworth directly to Class Counsel.

This Class Notice only contains a summary of the actual Attorneys' Fees and Litigation Expenses provisions contained in the Settlement Agreement, which is on file with the Court and available for your review, including on the settlement website described below.

4. **Class Representative Service Payment:** Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten have been appointed as class representatives by the Court. As part of the request for Final Approval of the Settlement Agreement, Class Counsel will request that service payments be awarded to each class representative in an amount of up to $15,000 for each of them for the time, work, and risk they undertook in bringing this Class Action and achieving a settlement on behalf of all Class Members. None of the service payments approved by the Court will be deducted from payments made by Genworth to Class Members.

## E.  FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT

The Final Approval Hearing on the fairness and adequacy of the Settlement Agreement will be held on **November 17, 2022**, at 10:00 AM ET in Courtroom 7400 in The Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, VA 23219. You are not required to attend the Final Approval Hearing in order to participate in the Settlement Agreement, although you are free to do so if you choose. The Court, in its discretion, may continue the Final Approval Hearing to a later date, in which case no additional written notice will be sent to Class Members, so it is incumbent upon you to check the settlement website regarding the Final Approval Hearing date and time if you wish to attend.

## F.  ADDITIONAL IMPORTANT INFORMATION

The Special Election Options described in this notice still require final approval by the Court and are subject to review by State insurance regulators.

You should also consider the following additional information, which may impact the availability of Special Election Options under this settlement:

1. **If you currently have a long-term care policy with Genworth, you must continue to pay premiums (unless they have been waived) to keep your policy in force so that it is eligible for Special Election Options under this settlement.** Your premiums also remain subject to any rate increases that may be approved or otherwise permitted.

2. **Changes to your policy status or coverage (including lapse or termination) may impact whether you are in the proposed settlement class and/or whether Special Election Options will be available to you.**

   - If your policy lapses after the date of this notice but is still in the period during which your policy can be automatically reinstated by paying any past-due premium, you will need to reinstate your policy by paying the past-due premium to exercise any rights and options under the settlement.

   - If, before you are sent a Special Election Letter, your policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium, or terminates for any other reason, then you will be excluded from the Settlement Class and the Special Election Options will not be available to you.

**Questions?  Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com**

AG7717 v.05

- If, after you have been sent a Special Election Letter, your policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium, or terminates for any other reason, then you will remain in the Settlement Class and release your claims, but you will no longer be eligible for the Special Election Options.

3. **If you reduce your coverage, including in response to a rate increase on your policy, your reduction in coverage may affect the Special Election Options that otherwise may become available to you under this settlement.** As a Policyholder, you have options to reduce your coverage that are separate from the Special Election Options that may become available to you under this settlement. For example, if there is a premium rate increase on your policy, you will have options for reducing your coverage. Those options will be different from any Special Election Options that may become available under this settlement and do not include the possibility of a cash damages payout. If you select an option to reduce your coverage separate from the Special Election Options that may be available under this settlement, you may eliminate or reduce the availability of any future Special Election Options or the value of any corresponding cash damages payments that may be available. Whether one of these options or any Special Election Option will best meet your needs will depend on your specific circumstances.

This Notice is only a summary of the Settlement Agreement. For the precise terms and conditions of the settlement, the complete Settlement Agreement, pleadings and documents on file in this case, and other information about this settlement including important dates, PLEASE VISIT THE SETTLEMENT WEBSITE AT **www.Choice2LongTermCareInsuranceSettlement.com** OR CALL THE SETTLEMENT ADMINISTRATOR AT (855) 662-0078.

Questions?  Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com

8

AG7718 v.05

000 0000006 00000000 0006 0016 00002 INS:

## APPENDIX 1 TO CLASS NOTICE

## CLASS POLICIES

### Choice 2 Class Policies

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL |
| | 7042CRT |
| | 7043AL |
| | 7043CRT |
| Alaska | 7042AK |
| | 7044AK |
| Arizona | 7042AZ |
| | 7044AZ |
| Arkansas | 7042AR |
| | 7044AR |
| Colorado | 7042CO |
| | 7044CO |
| Connecticut | 7042CT |
| | 7044CT |
| Connecticut Partnership | 7043CT |
| | 7045CT |
| D. C. | 7042DC |
| | 7044DC |
| Delaware | 7042DE |
| | 7044DE |
| Florida | 7042FL |
| | 7044FL |
| Georgia | 7042GA |
| | 7044GA |
| Hawaii | 7042HI |
| | 7044HI |
| Idaho | 7042ID |
| | 7044ID |
| Illinois | 7042IL |
| | 7044IL |
| Indiana | 7042IN |
| | 7044IN |
| Indiana Partnership | 7043IN |
| | 7045IN |
| Iowa | 7042IA |
| | 7044IA |
| Kansas | 7042KS |
| | 7044KS |

Questions?  Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com

9

AG7719 v.05

| State | Policy/Certificate Form |
|---|---|
| Kentucky | 7042KY |
| | 7044KY |
| Louisiana | 7042LA |
| | 7044LA |
| Maine | 7042ME |
| | 7044ME |
| Maryland | 7042MD |
| | 7044MD |
| Massachusetts | 7042MA |
| | 7044MA |
| Michigan | 7042MI |
| | 7044MI |
| Minnesota | 7042MN |
| | 7044MN |
| Mississippi | 7042MS |
| | 7044MS |
| Missouri | 7042MO |
| | 7044MO |
| Montana | 7042MT |
| | 7044MT |
| Nebraska | 7042NE |
| | 7044NE |
| Nevada | 7042NV |
| | 7044NV |
| New Hampshire | 7042NH |
| | 7044NH |
| New Jersey | 7042NJ |
| | 7044NJ |
| New Mexico | 7042NM |
| | 7044NM |
| New York | 51012 |
| | 51014 |
| New York Partnership | 51015 |
| North Carolina | 7042NC |
| | 7044NC |
| North Dakota | 7042ND |
| | 7044ND |
| Ohio | 7042OH |
| | 7044OH |
| Oklahoma | 7042OK |
| | 7044OK |
| Oregon | 7042OR |
| | 7044OR |
| Pennsylvania | 7042PA |
| | 7044PA |

AG77110 v.05

| State | Policy/Certificate Form |
|---|---|
| Rhode Island | 7042RI |
| | 7044RI |
| South Carolina | 7042SC |
| | 7044SC |
| South Dakota | 7042SD |
| | 7044SD |
| Tennessee | 7042TN |
| | 7044TN |
| Texas | 7042TX |
| | 7044TX |
| Utah | 7042UT |
| | 7044UT |
| Vermont | 7042VT |
| | 7044VT |
| Virginia | 7042VA |
| | 7044VA |
| Washington | 7042WA |
| | 7044WA |
| West Virginia | 7042WV |
| | 7044WV |
| Wisconsin | 7042WI |
| | 7044WI |
| Wyoming | 7042WY |
| | 7044WY |

**Questions?  Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com**

11

AG77111 v.05

**Choice 2.1 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL REV |
| | 7044AL Rev |
| Alaska | 7042AK REV |
| | 7044AK Rev |
| Arizona | 7042AZ REV |
| | 7044AZ Rev |
| Arkansas | 7042AR REV |
| | 7044AR Rev |
| Colorado | 7042CO REV |
| | 7044CO Rev |
| D.C. | 7042DC REV |
| | 7044DC Rev |
| Delaware | 7042DE REV |
| | 7044DE Rev |
| Florida | 7042FL REV |
| | 7044FL Rev |
| Georgia | 7042GA REV |
| | 7044GA Rev |
| Hawaii | 7042HI REV |
| | 7044HI Rev |
| Idaho | 7042ID REV |
| | 7044ID Rev |
| Illinois | 7042IL REV |
| | 7044IL Rev |
| Indiana | 7042IN REV |
| | 7044IN Rev |
| Indiana Partnership | 7043IN REV |
| | 7045IN Rev |
| Iowa | 7042IA |
| | 7044IA Rev |
| Kansas | 7042KS |
| | 7044KS Rev |
| Kentucky | 7042KY REV |
| | 7044KY Rev |
| Louisiana | 7042LA REV |
| | 7044LA Rev |
| Maine | 7042ME REV |
| | 7044ME Rev |

**Questions? Call 1-855-662-0078 or visit www.Choice2LongTermCareInsuranceSettlement.com**
**12**

AG77112 v.05

| State | Policy/Certificate Form |
|---|---|
| Maryland | 7042MD REV |
| | 7044MD Rev |
| Massachusetts | 7042MA REV |
| | 7044MA Rev |
| Michigan | 7042MI REV |
| | 7044MI Rev |
| Minnesota | 7042MN REV |
| | 7044MN Rev |
| Mississippi | 7042MS REV |
| | 7044MS Rev |
| Missouri | 7042MO REV |
| | 7044MO Rev |
| Montana | 7042MT REV |
| | 7044MT Rev |
| Nebraska | 7042NE REV |
| | 7044NE Rev |
| Nevada | 7042NV REV |
| | 7044NV Rev |
| New Hampshire | 7042NH REV |
| | 7044NH Rev |
| New Jersey | 7042NJ REV |
| | 7044NJ Rev |
| New Mexico | 7042NM REV |
| | 7044NM Rev |
| New York | 51012 REV |
| | 51014 Rev |
| New York Partnership | 51015 REV |
| North Carolina | 7042NC REV |
| | 7044NC Rev |
| North Dakota | 7042ND REV |
| | 7044ND Rev |
| Ohio | 7042OH REV |
| | 7044OH Rev |
| Oklahoma | 7042OK REV |
| | 7044OK Rev |
| Oregon | 7042OR REV |
| | 7044OR Rev |
| Pennsylvania | 7042PA REV |
| | 7044PA Rev |
| Rhode Island | 7042RI REV |
| | 7044RI Rev |

AG77113 v.05

| State | Policy/Certificate Form |
|---|---|
| South Carolina | 7042SC REV |
| | 7044SC Rev |
| South Dakota | 7042SD REV |
| | 7044SD Rev |
| Tennessee | 7042TN REV |
| | 7044TN Rev |
| Texas | 7042TX REV |
| | 7044 TX Rev |
| Utah | 7042UT REV |
| | 7044UT Rev |
| Vermont | 7042VT REV |
| | 7044VT Rev |
| Virginia | 7042VA REV |
| | 7044VA Rev |
| Washington | 7042WA REV |
| | 7044WA Rev |
| West Virginia | 7042WV REV |
| | 7044WV Rev |
| Wisconsin | 7042WI REV |
| | 7044WI Rev |
| Wyoming | 7042WY REV |
| | 7044WY Rev |

**California CADE/Reprice/Unbundled**

| State | Policy/Certificate Form |
|---|---|
| California, CA Reprice & CA Unbundled | 7035AX REV |
| California, CA Discount Enhancement (CADE) | 7035AX REV 2009 |
| California Partnership | 7037C REV |
| California Partnership, CAP Unbundled | 7037C REV 2 |
| California Partnership, CAP CADE | 7037C REV 2009 |

AG77114 v.05

Attachment 4

# Genworth Long-Term Care Insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled Class Action

Do you own a Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled long-term care insurance policy issued by Genworth Life Insurance Company or Genworth Life Insurance Company of New York? If so, you may be part of a class action settlement. Genworth has agreed to settle a proposed class action involving certain Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled long-term care policies.

In January 2022, five policyholders brought a lawsuit on behalf of a class alleging that Genworth should have included certain additional information in letters sent to Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders about premium rate increases. Genworth denies all allegations and maintains that its disclosures to policyholders were reasonable, appropriate and truthful.

Pending final Court approval and subject to certain conditions, impacted policyholders may receive certain disclosures and policy options, including potential payments or credits. If you are a class member, you may be entitled to obtain this relief, and you may have other rights relating to the proposed settlement. To learn more about the settlement (including whether you are a class member and how to be excluded from or object to the settlement), you may visit this website, www.Choice2LongTermCareInsuranceSettlement.com, or call the Settlement Administrator at (855) 662-0078.

Attachment 5

# Union Bids and Rising Costs Await as Starbucks Picks a New Chief

By ANDREW ROSS SORKIN and MICHAEL J. de la MERCED

Starbucks has hired Laxman Narasimhan as its next chief executive, the company announced on Thursday, putting him in charge of the world's largest coffee chain as it grapples with a growing unionization movement, rising inflation and losses in China.

Mr. Narasimhan will take over in April from Howard Schultz, Starbucks's longtime leader, who took back the reins of the company last April after Kevin Johnson stepped down as chief executive.

"We were looking for somebody that was a true servant leader that had a deep sense of humility," Mr. Schultz said in an interview. "Laxman first and foremost is a true servant leader."

Mr. Narasimhan, 55, will be thrust into one of the world's most prominent corporate leadership roles, overseeing roughly 35,000 stores and 383,000 employees globally. A former senior PepsiCo executive, he has most recently led Reckitt Benckiser, the British conglomerate that makes Lysol disinfectant and Durex condoms.

Born in Pune, India, Mr. Narasimhan moved to the United States in 1991 to attend the University of Pennsylvania's Wharton School. He then joined the consulting giant McKinsey & Company, eventually becoming a senior partner. In 2012, he moved to PepsiCo, where he rose through the ranks, overseeing operations in Latin America, Europe and sub-Saharan Africa, and becoming chief commercial officer.

He was hired at Reckitt in 2019 to revive the conglomerate, which had been burdened by the $16.6 billion takeover of the infant products maker Mead Johnson and an ill-fated move to split the company. He drew praise from investors and analysts for selling underperforming operations and steering the company through the pandemic.

Shares in Reckitt fell more than 5 percent on Thursday after the company unexpectedly announced that Mr. Narasimhan would step down as its chief executive on Sept. 30 — explaining only that he "has been approached for an opportunity that enables him to live" in the United States. He had been looking for a job that would return him to the United States, where his two adult children live.

It was that breadth of experience across industries and international borders that drew Starbucks to Mr. Narasimhan. "He's a true operator and has the DNA of an entrepreneur," Mr. Schultz said, adding that his background in technology and supply chains would be invaluable to the company.

Mr. Schultz is expected to remain the company's interim chief executive until April, and then become an adviser to Mr. Narasimhan. Mr. Schultz will remain on the company's board as well.

In Starbucks's most recent earnings report, in August, Mr. Schultz spoke of the company's early progress in reinventing itself — a task that will now fall to Mr. Narasimhan.

The coffee chain has become a focal point for a resurgent unionization movement over the past year, as workers press for higher pay and better working conditions. Since December, Starbucks has gone from no unions at its roughly 9,000 company-owned stores in the United States to 230 as of Monday.

Labor organizers and the National Labor Relations Board have accused Starbucks of illegally interfering with unionization drives and retaliating by closing stores and firing pro-union workers. The



Laxman Narasimhan is a former senior executive for PepsiCo.

GUILLERMO GUTIERREZ/BLOOMBERG

company has denied those claims, though it continues to resist unionization efforts. Last month, it raised wages for baristas except those at unionized stores, saying workers there needed to collectively bargain with management.

Mr. Schultz — who has pushed Starbucks to take progressive stands on issues like same-sex marriage and race relations, drawing criticism from conservatives — has said he opposes unions among the company's employees. "We don't believe that a third party should lead our people," he said in June.

Still, the labor organization effort faces challenges, including reaching collective bargaining agreements at newly unionized stores. The pace of new union petitions filed with the National Labor Relations Board, which peaked in the spring, has fallen sharply since.

Starbucks faces other challenges as well. In its earnings report last month, the company said that its profit margins had fallen, under pressure from the rising costs of ingredients and higher wages. It also suffered from lower sales in China, one of its biggest markets outside the United States, tied to pandemic restrictions in the country, though customers had begun to return.

Mr. Schultz has also spoken about an even more transformative shift in Starbucks's business model.

The chain has long described itself as a "third place," between work and home, where customers could lounge for hours. But the pandemic upended that hanging-

out model. So too has the rise of pickup and drive-through orders that drastically cuts customers' time in stores and increases expectations of quick service, putting more pressure on baristas.

Even consumers' evolving drink preferences are driving change. As customized frozen drinks, which require more intricate and labor-intensive preparation, grow in popularity, the company has been forced to retool its stores to account for ice storage and new layouts to help its baristas.

Mr. Narasimhan will join the company in October, Mr. Schultz said, spending the next several months getting "immersed" in the culture of Starbucks, traveling to stores around the world and even working behind the counter at some before officially taking over.

"He will make us better," Mr. Schultz said.

DealBook/

DealBook helps you make sense of the day's most important business and policy headlines. Sign up for the newsletter at
nytimes.com/dealbook

---

## Abortion Rights Looming Large As a Start-Up Stirs Investors

By EPHRAT LIVNI

In recent years, funds focused in investments that have a social impact have emerged to bet on start-ups advancing reproductive health and innovation. After the Supreme Court decision in June to overturn the constitutional right to an abortion, individual investors turned their attention to reproductive health care.

Almost immediately after the court's decision, Alinea, an investing app geared toward young adults, saw a new investment focus on companies that support reproductive health, said Alinea's founders, Eve Halimi and Anam Lakhani.

*Alinea's app identifies companies that back reproductive health.*

— as in a basket of stocks — "with companies that were supporting the cause," Ms. Halimi told the DealBook newsletter. "We saw a rush of activity."

That first, spontaneous user-created playlist included companies that were taking a stand to support abortion access, rather than those connected to women's health, echoing public demand for businesses to weigh in on the issue.

Later, users asked for an updated version of the playlist, and the founders adopted that same standard. It now includes about 50 firms — Levi's, Apple, Pfizer and Tesla among them — that have taken a stand against the overturning of Roe v. Wade or help pay for employees' access to abortion services, or both.

Data from the platform shows reproductive rights looming large in investment decisions. But location and gender matter. One month after the decision, Alinea had about 10,000 female users. Of those:

■ About 11 percent are in Texas, where abortion access was threatened, and slightly more than half are now investing in companies that support abortion access.

■ About 25 percent are in New York City, where reproductive rights remain robust, and only about 40 percent of them are investing in companies that support abortion access.

■ More than 30 percent of new app users now cite the change in reproductive rights as a reason for their interest in both investing and financial independence.

■ No male users have invested in playlists that are made up of companies supporting abortion rights.

Reproductive rights at the corporate level are the newest frontier for the environmental, social and governance investing framework, according to Confluence Philanthropy, a network of investment managers, shareholder activists and others that convened a panel discussion on the matter in June. Expect a flurry of proxy proposals as activists plan to push deeper into the corporate arena. Previous efforts have failed, but E.S.G. experts are certainly telling companies to start preparing.

---

## A Solar Company Plans Off-Grid Neighborhoods in California

FROM FIRST BUSINESS PAGE

owned utilities like Pacific Gas & Electric and Southern California Edison. If approved by regulators, the micro-utility model, also known as a microgrid, could undermine the growth of those larger utilities by depriving them access to new homes or forcing them to lower their rates to keep that business.

Sunnova executives argue that the approach they are seeking approval for was authorized under a California law passed almost two decades ago for a resort just south of Lake Tahoe. In addition, the company says advances in solar and battery technology mean that neighborhoods can be designed to generate more than enough electricity to meet their own needs at a lower cost than relying on the grid.

"If they don't want to choose me, that should be their right; if they don't want to choose you, that should be their right, too," said John Berger, the chief executive of Sunnova.

A small number of homeowners have gone off the grid as the cost of solar panels and batteries has fallen. But doing so can be hard or impossible. Some local governments have rejected permits for off-grid homes on health and safety grounds, arguing that a connection to the grid is essential.

But connecting a single home to the grid can cost tens or even hundreds of thousands of dollars, which means an off-grid system may actually be cheaper — especially for properties in remote areas, or in places where the local grid is at its capacity and would require significant upgrades to serve more homes.

Off-grid setups can also be appealing because once a system is paid off, the cost of operating and maintaining it is often modest and predictable, whereas utility rates can move up sharply. In recent months, electric bills have surged because the war in Ukraine has caused the cost of natural gas to jump. The nationwide average retail electricity rate increased 11 percent in June from a year earlier, according to the Energy Information Administration.

But the kind of micro-utilities that Sunnova hopes to create have also had problems. The utopian visions of generating electricity where it is used have often run into maintenance and other problems. Many tiny utilities created under such models in the United States and Canada were later swallowed up by larger power companies.

In California, the Kirkwood Mountain Resort near Lake Tahoe used a micro-utility to provide power to residents and tourists for years. But the electricity it produced sometimes cost up to 70 cents a kilowatt-hour, or three to five times the rates charged by larger utilities in the state. Eventually, the town of Kirkwood took over the utility and connected it to the state electric grid.

Sunnova's microgrid approach could suffer a similar fate. But the costs of solar panels and batteries have tumbled over the last decade, making the energy that off-grid systems generate much more affordable than when the diesel-based system in Kirkwood was built. Sunnova is asking the state utilities commission to allow it to become a micro-utility under the same state law that allowed the one in Kirkwood. Mr. Berger said his company would work with developers to install solar panels and batteries and be a power source for new homes to be built in California's hot, arid regions with fewer than 2,000 units.

The company has lined up sup-



Sunnova Energy would work with developers to install solar panels and batteries in some homes.

CALLAGHAN O'HARE FOR THE NEW YORK TIMES

port from at least one large home builder, Lennar, which said it would consider using Sunnova's microgrids if regulators approve them.

"We are a proud partner of Sunnova's and support highly qualified participants seeking to solve some of the world's most important problems," said Stuart Miller, Lennar's executive chairman. "We value the current electric grid and we're intrigued by new microgrid solutions that can supplement and support the traditional utility grid and help solve reliability during extreme weather and peak demand."

The utilities commission said it would review the Sunnova application, a process that would include soliciting public responses. Representatives for investor-owned utilities said that they could not comment on the proposal and that they needed more time to review it.

Solar panels and batteries will be installed at each home and in common areas like at clubhouses. All of that equipment would be tied together, Sunnova executives said. The company expects such microgrids to experience outages of 30 minutes or less annually, compared with an average of two

hours a year at California's large investor-owned utilities.

Consumers would get a single, simplified electric bill showing how much electricity the system on their own properties produced, how much they used and their net benefit or cost.

New homes and developments offer the most realistic opportunity to create microgrids because existing homes are generally already served by investor-owned, municipal or cooperative utilities.

Sunnova said its systems would not be completely isolated. It plans to connect them to the larger statewide grid so it could send excess power to other utilities or draw energy in case of an emergency. But its systems would not be owned or operated by the three major power providers in the state — Pacific Gas & Electric, Southern California Edison or San Diego Gas & Electric.

That, Sunnova says, would reduce consumers' electricity cost by as much as $60 a month for the typical California home, based on the state's average electricity rate in June. The recent increase in rates is evidence for the superiority of Sunnova's approach, Mr. Berger said.

"People aren't just going to take getting a bigger and bigger power bill every quarter," he said.

Still, energy experts said the odds were stacked against Sunnova. The utility industry and its

*Seeking permission from state regulators for a 'micro-utility.'*

regulators, including California's utilities commission, have a strong interest in preserving the status quo. The companies typically are much bigger and more politically influential than rooftop solar power installers like Sunnova or Sunrun, the largest rooftop solar business in the country.

Bernard McNamee is a former member of the Federal Energy Regulatory Commission, which regulates transmission lines, gas pipelines and other parts of the

energy industry. He said that the traditional regulated utility monopoly model might seem antiquated but that it had ensured that everyone, regardless of income, had access to a generally reliable electric grid.

"What we need to make sure of is that the system is designed to provide reliable, affordable electric service to every customer," said Mr. McNamee, a partner at McGuireWoods, a law firm. "People throw around things like competition and markets. All of these things are complicated."

But Mr. McNamee acknowledged that regulators needed to figure out how to treat popular new technologies like residential solar and battery systems, which could make it possible for some homes or neighborhoods to generate enough electricity to function without having to draw power from the grid most of the time.

Utilities have been pressing regulators to reduce the compensation homeowners receive for the excess solar energy their rooftop systems send to the grid. The companies have argued that customers with solar panels are being offered generous credits for power that they are not contributing adequately toward the cost of maintaining power lines and other grid equipment.

California's utilities commission is expected to soon release a proposal on rooftop solar compensation after it scrapped an earlier proposal that many rooftop companies and homeowners criticized for being too favorable to utilities.

Rooftop solar businesses, which have grown fast in recent years, are confronting their own challenges, especially figuring out how to become consistently profitable. Many of them are reliant on the tax credits that the federal government offers to encourage the use of renewable energy. The Inflation Reduction Act, which President Biden signed recently, expanded and extended those credits.

Building and operating microgrids could provide a steady source of income to companies like Sunnova. That could essentially transform the rooftop solar companies into the kinds of utilities that they have long fought against.

---

LEGAL NOTICE

## Genworth Long-Term Care Insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled Class Action

Do you own a Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled long-term care insurance policy issued by Genworth Life Insurance Company or Genworth Life Insurance Company of New York? If so, you may be part of a class action settlement. Genworth has agreed to settle a proposed class action involving certain Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled long-term care policies.

In January 2022, five policyholders brought a lawsuit on behalf of a class alleging that Genworth should have included certain additional information in letters sent to Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders about premium rate increases. Genworth denies all allegations and maintains that its disclosures to policyholders were reasonable, appropriate and truthful.

Pending final Court approval and subject to certain conditions, impacted policyholders may receive certain disclosures and policy options, including potential payments or credits. If you are a class member, you may be entitled to obtain this relief, and you may have other rights relating to the proposed settlement. To learn more about the settlement (including whether you are a class member and how to be excluded from or object to the settlement), you may visit this website, www.Choice2LongTermCareInsuranceSettlement.com, or call the Settlement Administrator at (855) 662-0078.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: MASTEN SPACE SYSTEMS, INC.,¹ Chapter 11
Debtor. Case No. 22-10647 (BLS)

NOTICE OF DEADLINE FOR THE FILING OF PROOFS OF CLAIM,
INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9)
OF THE BANKRUPTCY CODE (GENERAL BAR DATE SEPTEMBER
26, 2022 AT 5:00 PM. (PREVAILING EASTERN TIME))

PLEASE TAKE NOTICE OF THE FOLLOWING:

On July 28, 2022 (the "Petition Date"), Masten Space Systems, Inc.
(the "Debtor") filed a voluntary petition for relief under chapter 11 of
the Bankruptcy Code with the United States Bankruptcy Court for the
District of Delaware (the "Court"). On August 31, 2022, the Court entered
an order [D.I. 112] (the "Bar Date Order") establishing certain deadlines
for the filing of proofs of claim in the above-captioned chapter 11 case
(the "Chapter 11 Case").

Pursuant to the Bar Date Order, each person or entity (including,
without limitation, each individual, partnership, joint venture, corpora-
tion, estate, and trust) that holds or seeks to assert a claim (as defined in
section 101(5) of the Bankruptcy Code) against the Debtor that arose or
is deemed to have arisen prior to the Petition Date (including, without
limitation, claims entitled to administrative priority status under section
503(b)(9) of the Bankruptcy Code), no matter how remote or contingent
such right to payment or equitable remedy may be, MUST FILE A PROOF
OF CLAIM on or before 5:00 p.m. (prevailing Eastern Time) on September
26, 2022 (the "General Bar Date"), by sending such original proof of claim
form as follows: (i) mailing the original proof of claim by regular mail,
overnight mail, courier service, hand delivery, or in person to: United
States Bankruptcy Court (District of Delaware, 824 N. Market Street, 3rd
Floor, Wilmington, DE 19801; or (ii) completing the online proof of claim
form available at http://www.kccllc.net/mastenspace (the information re-
quired to be submitted electronically). Proofs of claim will be deemed timely
filed only if actually received by the Clerk of Court on or before the General
Bar Date. Proofs of claim received by mail must be postmarked by the General
Bar Date.

A copy of the Bar Date Order and proof of claim form may be obtained
by contacting the Debtor's counsel, or writing, at Morris James LLP,
500 Delaware Avenue, Suite 1500, Wilmington, DE 19801, Attn: Sarah
M. Ennis, Esq. You may also obtain a copy of these documents for free of
charge by accessing the Debtor's case website at http://www.kccllc.net/
mastenspace or you can request a copy from the Debtor's counsel at
sennis@morrisjames.com.

MARKETS & FINANCE

# Dow, S&P Gain After Days of Declines

## Oil prices extend run of losses amid demand fears and China lockdown worry

By Paul Vigna And Will Horner

U.S. stocks broke their losing streak, with the S&P 500 and Dow Jones Industrial Average rising slightly even as expectations of higher-for-longer interest rates pummeled other markets.

**THURSDAY'S MARKETS** The S&P 500 added 11.85 points, or 0.3%, to 3966.85, after falling as much as 1.3% earlier in the session. The Dow rose 145.99 points, or 0.5%, to 31656.42. The Nasdaq Composite slipped 31.08 points, or 0.3%, to 11785.13, a fifth straight down day. In the morning, it fell more than 2%.

The afternoon bounce was a slight respite for a battered market. The major indexes had suffered their fourth day of losses Wednesday, continuing a selloff that saw them end August with declines of between 4% and 5%.

Gold, oil and other commodities fell, and bond yields hit their highest levels since June, driven by strength in the dollar that pushed the U.S. currency to its highest point in two decades.

The market is looking at relatively strong economic reports, like Thursday morning's jobless-claims data, and expecting they will compel the Federal Reserve to keep raising rates aggressively, said Thomas Hayes, chairman of Great Hill Capital.

"The bears are going to be in control until the 13th," Mr. Hayes said, referring the date of the next inflation report.

Comments from Fed Chairman Jerome Powell last week that doubled down on his message that interest rates must continue rising to tame inflation—even if the economy suffers—have sent stocks tumbling. The recent declines have reversed much of the gains made during a summer rally that had lifted stocks and bonds from their lows.

The fall has come as investors reassessed hopes that the Fed could ease off its campaign of big interest-rate increases. Instead, many are girding for a lengthier period of higher interest rates, though expectations of when the Fed will start cutting interest rates are likely still too hopeful, said David Donabedian, chief investment officer of CIBC Private Wealth US.

"There was too much Fed optimism. The idea that the Fed was getting close to the end of tightening and would begin cutting rates next spring never really made sense to us," he said.

"I feel a bit more optimistic about the market now over the next three to six months. There has been a reality check and a reassessment of expectations, and I prefer it when the market is in a sober mood rather than a euphoric one," Mr. Donabedian said.

Yields on benchmark U.S. government bonds climbed to their highest levels since June. The yield on the 10-year Treasury note rose to 3.264% from 3.131% on Wednesday.

Thursday's data provided new clues on the economy and the employment market ahead of Friday's highly anticipated jobs report. U.S. workers' filings for unemployment benefits fell last week, suggesting layoffs are holding at a low level in a tight job market.

A survey of U.S. manufacturing activity for August came in stronger than expected. The ISM Manufacturing PMI came in at 52.8, even with July and above expectations of 51.8.

In commodity markets, oil extended a streak of declines, falling for a third consecutive day, as worries about global demand mount. U.S. crude futures fell 3.3% to $86.61.

Fresh Covid-19 lockdowns in China are threatening to weaken oil demand, adding to jitters about flagging global growth. The city of Chengdu, with 21 million people, became the latest to impose restrictions.

Overseas, major indexes fell across the board. In Europe, the pan-continental Stoxx Europe 600 retreated 1.8%, led by losses among resource stocks. In Asia, stocks closed lower. At midday Friday, Japan's Nikkei 225 was down 0.2% and the Hang Seng in Hong Kong dropped 0.7%. In mainland China, the Shanghai Composite was up 0.1%.

*—Raffaele Huang contributed to this article.*

Index performance Thursday

Source: FactSet

### AUCTION RESULTS

Here are the results of Thursday's Treasury auctions. All bids are awarded at a single price at the market-clearing yield. Rates are determined by the difference between that price and the face value.

**FOUR-WEEK BILLS**

| | |
|---|---|
| Applications | $135,200,634,100 |
| Accepted bids | $52,779,714,100 |
| " noncompetitively | $1,495,457,400 |
| " foreign noncompetitively | $146,000,000 |
| Auction price (rate) | 99.807889 (2.470%) |
| Coupon equivalent | 2.509% |
| Bids at clearing yield accepted | 38.68% |
| Cusip number | 912796YC7 |

The bills, dated Sept. 6, 2022, mature on Oct. 4, 2022.

**EIGHT-WEEK BILLS**

| | |
|---|---|
| Applications | $138,211,217,100 |
| Accepted bids | $47,502,077,100 |
| " noncompetitively | $576,360,400 |
| " foreign noncompetitively | $100,000,000 |
| Auction price (rate) | 99.575333 (2.730%) |
| Coupon equivalent | 2.780% |
| Bids at clearing yield accepted | 79.86% |
| Cusip number | 912796YG8 |

The bills, dated Sept. 6, 2022, mature on Nov. 1, 2022.

# Secondary Buyers Expect Investors to Seek Exits

By Laura Kreutzer

Wealthy individuals, including so-called accredited investors, poured billions of dollars into private-equity funds and other alternative investments in recent years. Now, more firms that trade in secondhand stakes of private assets are betting some investors will want out.

A survey of around 30 secondary buyers conducted in early 2022 by WSJ Pro Private Equity found 80% of respondents expect to see increased deal volume from family offices and high-net-worth individuals in the next 12 months, up from 70% of buyers who responded to a similar survey in 2021 and 55% in 2020.

Wealthy investors flocked to private equity in recent years in pursuit of higher returns, often through vehicles called feeder funds that aggregate many investments into a single commitment to one fund.

Over the past decade, a host of companies have also emerged, such as **Moonfare** GmbH, **Beneficient Co.** Group LP and **Institutional Capital Network** Inc., commonly known as iCapital, offering technology or investment structures to help high-net-worth investors access private-markets funds, often by working with advisers.

Even in good times, however, some investors want to cash out of investments before the end of a fund's term. Terms typically range from 10 to 12 years. A survey of 600 mid- to high-net-worth investors last year by Beneficient and marketing consultant VSA Partners LLC found 82% of respondents tried to seek liquidity for their alternative assets

**112**

number of Kline Hill Partners deals below $1 million

at least once over the previous five years.

But the relatively small investments wealthy individuals typically make and the complexities associated with feeder funds they use can make cashing out early from holdings difficult and costly.

"There are a lot of [secondary] buyers that won't even take a call for [deals of] less than $50 million," said Verdun Perry, senior managing director at **Blackstone** Inc. and global head of the firm's Strategic Partners unit.

Over the past five years, Blackstone completed more than 50 such transactions, including some as small as $250,000, according to the New York firm. Prospective buyers of private-fund stakes from wealthy individuals often need to educate sellers about the structures and terms associated with such deals, Mr. Perry added.

"You have to understand that these people have made their livings as doctors, professors and entrepreneurs," Mr. Perry said. "So they may not be as familiar with [secondary transactions] as people who do it all the time."

The structures of feeder vehicles used to invest in private funds, often through banks and other financial institutions, can also make cashing out early more complex.

The feeder fund "may be a different entity with a different fee load or a different cash flow profile," said Tom Kerr, global head of secondaries at private-markets firm Hamilton Lane Inc. "And they are typically raised on a bank platform, so you're not interacting directly with the investor, but with the institution that created that" feeder fund.

Some secondary firms have built reputations by backing smaller deals. Since its inception in 2015 to late March, Greenwich, Conn.-based **Kline Hill Partners** invested in 112 deals below $1 million each and 338 deals below $10 million each, according to founder and managing partner Mike Bego.

"A lot of wealth managers approach us specifically because we will spend time on the smaller stuff," Mr. Bego said. "They know we will take the time to understand the value of their assets, versus a bigger fund that will put in a lowball bid just to be safe."

Platforms like those run by Moonfare, Beneficient and **Yieldstreet** Inc. also have sought to bolster liquidity options for investors using their systems.

# Tech Companies Say Going Private Comes With Benefits

By Angus Loten And Isabelle Bousquette

Private-equity firms are snapping up public companies at a record pace, a move that can rattle chief information officers as trusted tech vendors come under new management.

Newly private tech firms and their private-equity owners say the change is for the better, partly because the companies can focus on the long term instead of on delivering quarterly profits—although the shift typically comes with some growing pains and concerns.

"One of the biggest risks as a CIO when one of your vendors gets acquired is the product you have: Is that the one that will get killed to cut costs?" said Garrett Bekker, principal research analyst at S&P Global Market Intelligence.

"From our standpoint, we know customers and other stakeholders get nervous," said Monti Saroya, senior managing director and co-head of **Vista Equity Partners**' Flagship Fund. Vista said this year that it planned to acquire software company Citrix Systems Inc. in a deal valued at $16.5 billion, including debt, and in August said it would buy cloud-based tax-management software maker Avalara Inc. for $8.4 billion.

Mr. Saroya said customers' concerns are typically addressed quickly because Vista focuses on helping its acquisitions scale up their offerings. "In a private setting, we're very much more focused on long-term growth and we worry less about quarterly performance," he said.

Private-equity firms globally spent a record $220.83 billion on take-private deals in the first half of 2022, up from $162.81 billion in the comparable period last year, according to data provider Dealogic. In the U.S., private-equity firms spent $130.23 billion on take-private deals between January and June, nearly double the year-earlier amount. The transactions included Vista's acquisition of Citrix, one of this year's largest deals.

Many buyout firms and investor groups striking deals this year were motivated by the potential for deep discounts for public enterprise-tech vendors, analysts said. The tech-heavy Nasdaq dropped roughly 30% since the start of the year.

Jason Greenberg, head of global technology mergers and acquisitions at investment bank Jefferies Financial Group Inc., said enterprise-tech companies are attractive acquisition targets for private-equity firms: "They combine predictable revenue streams and, especially for software companies, the potential for expanding profit margins from enhanced scale."

Kurt Shintaffer, chief financial officer and co-founder of software provider Apptio Inc., said "there were pockets of concern" about its acquisition by Vista, a deal that closed in 2019. The shift led to some employee departures and the senior leadership team needed to learn to cede some control to a board that was much more engaged in daily operations, Mr. Shintaffer said, although overall he believed the move was for the better.

Free from the scrutiny of its stock price and the pressure of demonstrating quarterly returns, he said the company was able to make longer-term investments such as accelerating the move of its products to the cloud and making acquisitions.

RICHARD DREW/ASSOCIATED PRESS

Avalara CEO Scott McFarlane ringing the bell at the New York Stock Exchange on the day his company started trading in 2018.

## New Highs and Lows

Continued From Page B10

| Stock | Sym | 52-Wk Hi/Lo | % Chg |
|---|---|---|---|
| PolestarAuto | PSNY | 6.72 | -11.9 |
| PonoCapitalWt | PONOW | 0.02 | ... |
| PowerIntegrations | POWI | 65.69 | -4.0 |
| PriceSmart | PSMT | 62.47 | -0.9 |
| PrimorisSvcs | PRIM | 19.75 | -0.6 |
| ProspectorCapWt | PRSRW | 0.02 | -33.0 |
| ProtoLabs | PRLB | 37.35 | -0.8 |
| ProvidentBncp | PVBC | 14.02 | -2.6 |
| PrudentialNts2062 | PRH | 24.79 | -0.4 |
| Prudential | PUK | 20.26 | -2.2 |
| PurpleInnovation | PRPL | 2.69 | 20.3 |
| Qorvo | QRVO | 87.05 | 0.3 |
| QuanergySystems | QNGY | 0.27 | -4.9 |
| QuantumFinWt | QFTA.WS | 0.01 | -45.7 |
| QuestDiag | DGX | 124.28 | 0.6 |
| QuinceTherap | QNCX | 1.59 | -6.3 |
| QuoinPharm | QNRX | 2.94 | -7.0 |
| Quotient | QTNT | 0.18 | -6.6 |
| QuotientTech | QUOT | 1.73 | -4.3 |
| RackspaceTech | RXT | 4.19 | 3.1 |
| RailVisionWt | RVSNW | 0.09 | -10.3 |
| Rapid7 | RPD | 53.40 | -6.0 |
| RealReal | REAL | 1.97 | -1.9 |
| RedwireWt | RDW.WS | 0.38 | 2.1 |
| RegionalMgmt | RM | 32.53 | -2.5 |
| RegulusTherap | RGLS | 1.35 | -4.9 |
| RekorSystems | REKR | 1.28 | -7.0 |
| Repay | RPAY | 8.90 | 1.4 |
| ReShapeLife | RSLS | 0.37 | -6.1 |
| ReToEcoSol | RETO | 0.55 | -3.3 |
| RetractableTechs | RVP | 2.10 | -2.6 |
| RevelationBio | REVB | 0.38 | -2.5 |
| RiceBranTech | RIBT | 2.18 | 18.6 |
| RigettiCompWt | RGTIW | 0.49 | -16.7 |
| RingCentral | RNG | 40.59 | -0.8 |
| RioTinto | RIO | 53.61 | -3.5 |
| RithmCapPfdB | RITMpB | 20.01 | -4.3 |
| RiverNorthRt | OPPr | 0.02 | -2.4 |
| RogersComm B | RCI | 42.61 | -0.2 |
| Root | ROOT | 11.11 | -8.0 |
| RoyalGold | RGLD | 88.64 | -3.1 |
| SAB Biotherap | SABS | 0.65 | 1.8 |
| SAP | SAP | 82.41 | -1.5 |
| SLGreenRealty | SLG | 42.74 | -1.4 |
| SLM | SLM | 14.35 | -2.6 |
| SSR Mining | SSRM | 12.92 | -3.5 |
| SachemNts2027 | SCCG | 24.66 | -0.2 |
| Salesforce | CRM | 150.87 | -1.7 |
| Science37 | SNCE | 1.48 | -1.9 |
| ScopusBio | SCPS | 0.31 | -1.9 |
| ScottsMiracleGro | SMG | 60.82 | -6.5 |
| Seagate | STX | 63.50 | -1.6 |
| SealedAir | SEE | 53.14 | -0.5 |
| SeanergyMaritime | SHIP | 0.52 | -2.7 |
| SelectQuote | SLQT | 1.02 | -2.7 |
| Sema4 | SMFR | 0.96 | -2.9 |
| Semtech | SMTC | 29.52 | -27.1 |
| ShawComm B | SJR | 25.40 | 0.7 |
| Shineco | SISI | 0.57 | -9.0 |
| Sibanye-Stillwater | SBSW | 8.53 | -3.8 |
| Sientra | SIEN | 0.60 | -2.4 |
| SierraBancorp | BSRR | 20.57 | 0.8 |
| SierraMetals | SMTS | 0.42 | -8.1 |
| SigilonTherap | SGTX | 0.59 | -3.5 |
| SigmaAdditive | SASI | 0.93 | -4.4 |
| SiliconLab | SLAB | 113.48 | -5.6 |
| SilverCrestAcqn | SLCRU | 8.60 | -2.6 |
| SilvercorpMetals | SVM | 2.13 | -3.5 |
| SilverCrestMetals | SILV | 5.04 | -6.4 |
| Similarweb | SMWB | 7.03 | -3.0 |
| SimplyGoodFoods | SMPL | 29.70 | -0.7 |
| SingularGenomics | OMIC | 2.38 | -4.5 |
| SiTime | SITM | 96.11 | -6.2 |
| SiyataMobile | SYTA | 0.63 | -6.1 |
| Skillsoft | SKIL | 3.01 | -5.3 |
| SkillsoftWt | SKIL.WS | 0.33 | -11.4 |
| SmartSand | SND | 1.66 | -7.2 |
| SmartRent | SMRT | 2.65 | -13.0 |
| SolarWinds | SWI | 8.70 | -3.9 |
| SolunaPfdA | SLNHP | 7.47 | 0.1 |
| SomaLogic | SLGC | 3.51 | ... |
| Sonos | SONO | 14.62 | -0.6 |
| Sony | SONY | 78.04 | -0.6 |
| SoCopper | SCCO | 44.66 | -3.6 |
| SpectrumBrands | SPB | 60.58 | -1.2 |
| SpindletopHlthWt | SHCAW | 0.02 | -31.8 |
| SportsmansWrhs | SPWH | 7.75 | -0.6 |
| St.Joe | JOE | 36.96 | -0.7 |
| StanleyBlackDck | SWK | 85.98 | -0.5 |
| StanleyB&D Un | SWT | 55.02 | -0.9 |
| Starbox | STBX | 4.55 | -9.0 |
| StarryGroup | STRY | 2.07 | -1.8 |
| StarryGroupWt | STRY.WS | 0.14 | -13.6 |
| StateraBio | STAB | 0.17 | ... |
| StevenMadden | SHOO | 28.42 | -0.3 |
| Strattec | STRT | 25.21 | -4.7 |
| StrongholdDig | SDIG | 1.28 | -1.4 |
| SurfaceOncol | SURF | 1.23 | -4.4 |
| SurgeryPartners | SGRY | 24.05 | -5.3 |
| Synaptics | SYNA | 108.51 | -2.3 |
| SyneosHealth | SYNH | 58.39 | -0.9 |
| Ternium | TX | 29.30 | -4.2 |
| TOP Ships | TOPS | 0.28 | -4.6 |
| TPG RE FinPfdC | TRTXpC | 18.05 | -2.4 |
| TTEC | TTEC | 50.75 | -0.6 |
| Taboola | TBLA | 2.37 | -1.2 |
| TakungArt | TKAT | 1.45 | -8.1 |
| TandemDiabetes | TNDM | 42.90 | -2.5 |
| TastemakerWt | TMKRW | 0.07 | -10.1 |
| Telefonica | TEF | 4.06 | 0.5 |
| Telesat | TSAT | 10.05 | -6.4 |
| 10xGenomics | TXG | 31.01 | -2.2 |
| Tenable | TENB | 36.24 | -6.1 |
| TenayaTherap | TNYA | 4.15 | 3.2 |
| TVA Bds D | TVC | 21.80 | ... |
| Teradata | TDC | 32.06 | -1.1 |
| Teradyne | TER | 80.41 | -2.2 |
| TesscoTech | TESS | 4.60 | -6.7 |
| ThirdCoastBcshs | TCBX | 17.80 | ... |
| Thoughtworks | TWKS | 12.36 | -1.6 |
| TonixPharm | TNXP | 0.94 | -4.0 |
| ToyotaMotor | TM | 145.61 | -1.7 |
| Transalta | TAC | 9.17 | -0.6 |
| TremorIntl | TRMR | 7.10 | -5.0 |
| Trex | TREX | 45.38 | -0.3 |
| Trinseo | TSE | 25.21 | -0.2 |
| Tronox | TROX | 14.26 | -1.0 |
| TrueCar | TRUE | 2.06 | -2.8 |
| TurtleBeach | HEAR | 8.12 | -12.1 |
| TutorPerini | TPC | 6.63 | -1.3 |
| Tuya | TUYA | 1.24 | -2.3 |
| 22ndCentury | XXII | 1.25 | ... |
| Twilio | TWLO | 64.29 | -2.8 |
| 2U | TWOU | 6.71 | 0.7 |
| TysonFoods | TSN | 73.92 | -0.7 |
| USD Partners | USDP | 4.69 | -0.6 |
| USHG Acqn Wt | HUGS.WS | 0.04 | ... |
| US PhysTherapy | USPH | 80.01 | -2.1 |
| uCloudlink | UCL | 0.53 | -6.9 |
| Unifi | UFI | 11.22 | -1.0 |
| Unisys | UIS | 8.95 | -0.5 |
| US GlobalInv | GROW | 3.73 | -0.8 |
| UnityBiotech | UBX | 0.43 | -3.2 |
| UnivElectro | UEIC | 21.13 | -1.7 |
| UniversalHealthB | UHS | 94.70 | -0.6 |
| UplandSoftware | UPLD | 9.32 | -6.9 |
| UsanaHealth | USNA | 62.83 | -0.9 |
| UserTesting | USER | 3.90 | -0.2 |
| VF | VFC | 40.65 | -0.1 |
| VIQSolutions | VQS | 0.75 | -1.5 |
| Vaccinex | VCNX | 0.79 | -6.0 |
| VenusAcqnWt | VENAW | 0.02 | -66.2 |
| VenusConcept | VERO | 0.29 | 13.3 |
| VeraBradley | VRA | 3.39 | -8.1 |
| VerbTechWt | VERBW | 0.10 | -26.1 |
| Verizon | VZ | 41.64 | ... |
| ViantTech | DSP | 4.41 | 0.9 |
| Viatris | VTRS | 9.32 | 0.2 |
| VislinkTech | VISL | 0.51 | -2.8 |
| Vodafone | VOD | 12.97 | -2.5 |
| VornadoRealty | VNO | 25.27 | -2.3 |
| WPP | WPP | 41.60 | -1.5 |
| WW Intl | WW | 5.01 | 1.5 |
| Wag! | PET | 4.02 | -1.4 |
| Wag!Wt | PETWW | 0.11 | 4.3 |
| WalgreensBoots | WBA | 34.53 | 0.6 |
| WashingtonREIT | WRE | 19.21 | 1.5 |
| WaveDancer | WAVD | 1.08 | 1.8 |
| Wejo | WEJO | 1.01 | -8.8 |
| Welltower | WELL | 75.80 | -0.1 |
| WesternDigital | WDC | 40.38 | -0.6 |
| WesternUnion | WU | 14.51 | -0.8 |
| WeWork | WE | 3.82 | -3.7 |
| WheatonPrecMet | WPM | 29.66 | -2.4 |
| WheelsUp | UP | 1.74 | -2.1 |
| WholeEarthBrds | FREE | 4.92 | -2.0 |
| Willdan | WLDN | 21.73 | -1.6 |
| XBiotech | XBIT | 3.90 | ... |
| Xos | XOS | 1.44 | -3.3 |
| XosWt | XOSWW | 0.15 | -5.3 |
| XPeng | XPEV | 16.91 | -6.4 |
| Yeti | YETI | 35.35 | -1.0 |
| Yext | YEXT | 4.00 | -6.5 |
| ZimIntShipping | ZIM | 34.93 | -2.8 |
| ZimVie | ZIMV | 14.84 | 1.2 |
| ZoomVideo | ZM | 77.79 | 0.9 |
| Zovio | ZVO | 0.25 | 0.6 |
| Zuora | ZUO | 7.41 | 4.9 |

ADVERTISEMENT

The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

CLASS ACTIONS

LEGAL NOTICE

Genworth Long-Term Care Insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled Class Action

Do you own a Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled long-term care insurance policy issued by Genworth Life Insurance Company or Genworth Life Insurance Company of New York? If so, you may be part of a class action settlement. Genworth has agreed to settle a proposed class action involving certain Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled long-term care policies.

In January 2022, five policyholders brought a lawsuit on behalf of a class alleging that Genworth should have included certain additional information in letters sent to Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders about premium rate increases. Genworth denies all allegations and maintains that its disclosures to policyholders were reasonable, appropriate and truthful.

Pending final Court approval and subject to certain conditions, impacted policyholders may receive certain disclosures and policy options, including potential payments or credits. If you are a class member, you may be entitled to obtain this relief, and you may have other rights relating to the proposed settlement. To learn more about the settlement (including whether you are a class member and how to be excluded from or object to the settlement), you may visit this website, www.Choice2LongTermCareInsuranceSettlement.com, or call the Settlement Administrator at (855) 662-0078.

COMMERCIAL REAL ESTATE

Business For Sale By Owner

Turn key roll off dumpster rental business. Upstate NY. Great reputation and room to grow clientele. Serious Inquiries only. Rent current garage and storage yard or move to own location.
518-429-0575

THE WALL STREET JOURNAL.

THE MARKETPLACE

ADVERTISE TODAY

(800) 366-3975 | sales.mart@wsj.com

© 2022 Dow Jones & Company, Inc. All Rights Reserved. DOW JONES

**4C** ■ FRIDAY SEPTEMBER 2, 2022 ■ **USA TODAY** E3

<span style="color:red">**SPORTS**</span>

## SCOREBOARD

All times Eastern

### MLB

**American League Glance**

**East Division**

| | W | L | Pct | GB |
|---|---|---|---|---|
| New York | 79 | 52 | .603 | — |
| Tampa Bay | 72 | 57 | .558 | 6 |
| Toronto | 70 | 59 | .543 | 8 |
| Baltimore | 68 | 61 | .527 | 10 |
| Boston | 63 | 68 | .481 | 16 |

**Central Division**

| | W | L | Pct | GB |
|---|---|---|---|---|
| Cleveland | 68 | 60 | .531 | — |
| Minnesota | 67 | 62 | .519 | 1½ |
| Chicago | 65 | 66 | .496 | 4½ |
| Kansas City | 53 | 79 | .402 | 17 |
| Detroit | 50 | 81 | .382 | 19½ |

**West Division**

| | W | L | Pct | GB |
|---|---|---|---|---|
| Houston | 84 | 47 | .641 | — |
| Seattle | 73 | 58 | .557 | 11 |
| Texas | 58 | 71 | .450 | 25 |
| Los Angeles | 57 | 74 | .435 | 27 |
| Oakland | 49 | 83 | .371 | 35½ |

**Wednesday's Games**

Houston 5, Texas 3
Baltimore 4, Cleveland 0
Tampa Bay 2, Miami 1, 10 innings
Washington 5, Oakland 1
Seattle 5, Detroit 3
Chicago Cubs 7, Toronto 5
Chicago White Sox 4, Kansas City 2
Boston 6, Minnesota 5
L.A. Angels 3, N.Y. Yankees 2

**Thursday's Games**

Seattle 7, Detroit 0
Chicago White Sox 7, Kansas City 1
Washington 7, Oakland 5, 10 innings
Baltimore at Cleveland, late
Texas at Boston, late

**Friday's Games**

Toronto (Manoah 12-7) at Pittsburgh (Beede 1-4), 6:35 p.m.
Oakland (Sears 5-1) at Baltimore (Kremer 6-4), 7:05 p.m.
Kansas City (Lynch 4-9) at Detroit (Hutchison 2-7), 7:10 p.m.
N.Y. Yankees (Germán 2-2) at Tampa Bay (TBD), 7:10 p.m.
Seattle (Castillo 5-5) at Cleveland (Plesac 3-11), 7:10 p.m.
Texas (Ragans 0-2) at Houston (Urquidy 11-5), 8:10 p.m.
Minnesota (Gray 7-4) at Chicago White Sox (Martin 3-4), 8:10 p.m.
Houston (McCullers Jr. 1-1) at Angels (Detmers 5-4), 9:38 p.m.

**National League Glance**

**East Division**

| | W | L | Pct | GB |
|---|---|---|---|---|
| New York | 84 | 48 | .636 | — |
| Atlanta | 80 | 51 | .611 | 3½ |
| Philadelphia | 73 | 58 | .557 | 10½ |
| Miami | 55 | 75 | .423 | 28 |
| Washington | 45 | 85 | .346 | 38 |

**Central Division**

| | W | L | Pct | GB |
|---|---|---|---|---|
| St. Louis | 76 | 55 | .580 | — |
| Milwaukee | 69 | 60 | .535 | 6 |
| Chicago | 56 | 74 | .431 | 19½ |
| Cincinnati | 51 | 78 | .395 | 24 |
| Pittsburgh | 49 | 81 | .377 | 26½ |

**West Division**

| | W | L | Pct | GB |
|---|---|---|---|---|
| Los Angeles | 90 | 40 | .692 | — |
| San Diego | 73 | 59 | .553 | 18 |
| Arizona | 61 | 68 | .473 | 28½ |
| San Francisco | 61 | 68 | .473 | 28½ |
| Colorado | 55 | 76 | .420 | 35½ |

**Wednesday's Games**

Milwaukee 6, Pittsburgh 1
Tampa Bay 2, Miami 1, 10 innings
N.Y. Mets 2, L.A. Dodgers 1
Tampa Bay 2, Miami 1, 10 innings
Atlanta 3, Colorado 2
Washington 5, Oakland 1
Chicago Cubs 7, Toronto 5
St. Louis 5, Cincinnati 3, 13 innings
Philadelphia 18, Arizona 2

**Thursday's Games**

Washington 7, Oakland 5, 10 innings
N.Y. Mets 5, L.A. Dodgers 3
Colorado at Atlanta, late
Milwaukee at Arizona, late

**Friday's Games**

Toronto (Manoah 12-7) at Pittsburgh (Beede 1-4), 6:35 p.m.
Colorado (Freeland 7-9) at Cincinnati (Cessa 3-2), 6:40 p.m.
Washington (Gray 7-8) at N.Y. Mets (TBD), 7:10 p.m.
Milwaukee (Lauer 9-5) at Chicago Cubs (Sampson 1-4) at St. Louis

(Montgomery 7-3), 8:15 p.m.
Milwaukee (Lauer 10-5) at Arizona (Davies 2-4), 9:40 p.m.
San Diego (Darvish 11-7) at L.A. Dodgers (May 1-1), 10:10 p.m.
Philadelphia (Gibson 9-5) at San Francisco (Cobb 4-6), 10:15 p.m.

### SOCCER

**MLS EASTERN CONFERENCE**

| | W | L | T | Pts | GF | GA |
|---|---|---|---|---|---|---|
| Philadelphia | 16 | 4 | 9 | 57 | 61 | 21 |
| CF Montréal | 15 | 9 | 4 | 49 | 49 | 42 |
| New York | 13 | 8 | 8 | 47 | 45 | 34 |
| NY City FC | 13 | 9 | 6 | 45 | 50 | 34 |
| Orlando City | 12 | 10 | 6 | 42 | 35 | 39 |
| Columbus | 9 | 6 | 12 | 39 | 40 | 33 |
| Inter Miami CF | 10 | 12 | 6 | 36 | 35 | 46 |
| Cincinnati | 8 | 9 | 11 | 35 | 46 | 53 |
| New England | 8 | 9 | 11 | 35 | 39 | 42 |
| Toronto FC | 9 | 13 | 7 | 34 | 44 | 49 |
| Atlanta | 8 | 11 | 9 | 33 | 40 | 46 |
| Charlotte FC | 10 | 16 | 2 | 32 | 34 | 44 |
| Chicago | 8 | 13 | 7 | 31 | 28 | 38 |
| D.C. United | 7 | 17 | 4 | 25 | 32 | 59 |

**WESTERN CONFERENCE**

| | W | L | T | Pts | GF | GA |
|---|---|---|---|---|---|---|
| Los Angeles FC | 18 | 7 | 3 | 57 | 57 | 32 |
| Austin FC | 15 | 7 | 6 | 51 | 60 | 39 |
| FC Dallas | 13 | 7 | 8 | 47 | 44 | 33 |
| Real Salt Lake | 11 | 8 | 9 | 42 | 38 | 37 |
| Portland | 9 | 8 | 10 | 37 | 44 | 44 |
| LA Galaxy | 11 | 11 | 5 | 38 | 44 | 40 |
| Vancouver | 9 | 12 | 7 | 34 | 42 | 42 |
| Seattle | 10 | 15 | 3 | 33 | 38 | 39 |
| Colorado | 8 | 12 | 8 | 32 | 30 | 36 |
| Houston | 8 | 15 | 5 | 29 | 35 | 46 |
| Sporting KC | 8 | 15 | 5 | 29 | 31 | 49 |
| San Jose | 6 | 12 | 9 | 27 | 42 | 59 |

**Friday, Aug. 26**

Austin FC 4, Los Angeles FC 1
Portland 2, Seattle 1
**Saturday, Aug. 27**
Minnesota 2, Vancouver 1
New York 3, Miami 1
Columbus 2, Cincinnati 2, tie
Philadelphia 6, Colorado 0
CF Montréal 2, Chicago 0
Nashville 2, Charlotte FC 0
Sporting KC 1, San Jose 0
Real Salt Lake 1, FC Dallas 1, tie
Nashville 3, Vancouver 0
**Sunday, Aug. 28**
Atlanta 3, D.C. United 2
Orlando City 2, NY City FC 1
LA Galaxy 2, New York 1
**Wednesday, Aug. 31**
Philadelphia 4, Atlanta 1
Columbus 1, Miami 0
New York 1, CF Montréal 0
Chicago 0, New England 0, tie
LA Galaxy 2, Toronto FC 2, tie
D.C. United 2, NY City FC 1
Houston 2, Los Angeles FC 1
Nashville 4, Colorado 1
Orlando City 3, Seattle 2
Real Salt Lake 3, Minnesota 0
Portland 2, Austin FC 1
**Saturday, Sept. 3**
FC Dallas at Minnesota, 3:30 p.m.
Chicago at Columbus, 5:30 p.m.
Philadelphia at New York, 7 p.m.
Charlotte FC at Cincinnati, 7:30 p.m.
Austin FC at Nashville, 8:30 p.m.
**Sunday, Sept. 4**
Atlanta at Portland, 5:30 p.m.
Colorado at D.C. United, 7:30 p.m.
CF Montréal at Toronto FC, 7:30 p.m.
Sporting KC at LA Galaxy, 9:30 p.m.
Orlando City at Miami, 8 p.m.
NY City FC at New England, 8 p.m.
Houston at Seattle, 9 p.m.
Vancouver at San Jose, 9:30 p.m.
Real Salt Lake at Los Angeles FC, 10:30 p.m.
**Wednesday, Sept. 7**
New York at Atlanta, 7:30 p.m.
**Friday, Sept. 9**
NY City FC at Charlotte FC, 7 p.m.
LA Galaxy at Nashville, 8:30 p.m.
New England at New York, 6 p.m.
Toronto FC at Atlanta, 7:30 p.m.
San Jose at Cincinnati, 7:30 p.m.
Orlando City at Philadelphia, 7:30 p.m.
Miami at Chicago, 8 p.m.
Austin FC at Seattle, 6 p.m.
FC Dallas at Vancouver, 8:30 p.m.
Sporting KC at Houston, 8:30 p.m.
Vancouver at Colorado, 9:30 p.m.
D.C. United at Real Salt Lake, 9:30 p.m.
Minnesota at Portland, 10 p.m.

### NWSL

| | W | L | T | Pts | GF | GA |
|---|---|---|---|---|---|---|
| San Diego | 9 | 5 | 4 | 31 | 26 | 15 |
| Houston | 9 | 5 | 4 | 31 | 25 | 16 |
| Kansas City | 8 | 4 | 5 | 29 | 24 | 23 |
| Portland | 7 | 3 | 7 | 28 | 37 | 20 |
| OL Reign | 7 | 4 | 6 | 27 | 22 | 16 |
| Chicago | 7 | 5 | 5 | 26 | 26 | 22 |
| Orlando | 5 | 5 | 7 | 22 | 18 | 22 |
| Washington | 4 | 7 | 6 | 18 | 23 | 29 |
| North Carolina | 5 | 8 | 4 | 19 | 22 | 24 |
| Louisville | 2 | 7 | 8 | 14 | 16 | 26 |
| Washington | 1 | 6 | 10 | 13 | 18 | 23 |
| Gotham FC | 4 | 12 | 0 | 12 | 13 | 35 |

**Wednesday, Aug. 24**
North Carolina 3, Portland 1
**Friday, Aug. 26**
OL Reign 2, Orlando 1
**Saturday, Aug. 27**
Chicago 4, Louisville 0
Washington 1, Houston 1, tie
New Jersey 2, Kansas City 1
**Sunday, Aug. 28**
Angel City 3, Gotham FC 1
Kansas City 3, North Carolina 2
**Friday, Sept. 2**
Portland at Orlando, 7 p.m.
Chicago at OL Reign, 10 p.m.
**Saturday, Sept. 3**
San Diego at Washington, 1 p.m.
Louisville at North Carolina, 7 p.m.
**Sunday, Sept. 11**
Kansas City at Gotham FC, 6 p.m.
Angel City at Houston, 7 p.m.

**English Premier League**

| | GP | W | D | L | GF | GA | Pts |
|---|---|---|---|---|---|---|---|
| Arsenal | 5 | 5 | 0 | 0 | 13 | 4 | 15 |
| Man City | 5 | 4 | 1 | 0 | 19 | 5 | 13 |
| Tottenham | 5 | 3 | 2 | 0 | 10 | 4 | 11 |
| Brighton | 5 | 3 | 1 | 1 | 8 | 3 | 10 |
| Man United | 5 | 3 | 0 | 2 | 5 | 6 | 9 |
| Liverpool | 5 | 2 | 2 | 1 | 15 | 6 | 8 |
| Leeds | 5 | 2 | 2 | 1 | 8 | 5 | 8 |
| Fulham | 5 | 2 | 2 | 1 | 8 | 7 | 8 |
| Southampton | 5 | 2 | 1 | 2 | 7 | 9 | 7 |
| Chelsea | 5 | 2 | 1 | 2 | 6 | 6 | 7 |
| Brentford | 5 | 1 | 3 | 1 | 10 | 7 | 6 |
| Newcastle | 5 | 1 | 3 | 1 | 7 | 6 | 6 |
| Crystal Palace | 5 | 1 | 2 | 2 | 7 | 6 | 5 |
| West Ham | 5 | 1 | 1 | 3 | 4 | 6 | 4 |
| Nottingham | | | | | | | |
| Forest | 5 | 1 | 1 | 3 | 2 | 11 | 4 |
| Bournemouth | 5 | 1 | 1 | 3 | 6 | 16 | 4 |
| Everton | 5 | 0 | 3 | 2 | 4 | 6 | 3 |
| Wolverhampton | 5 | 0 | 2 | 3 | 2 | 5 | 2 |
| Aston Villa | 5 | 1 | 0 | 4 | 4 | 9 | 3 |
| Leicester | 5 | 0 | 1 | 4 | 6 | 15 | 1 |

**Saturday, Aug. 27**
Southampton 0, Man United 1
Brentford 1, Everton 1
Brighton 1, Leeds 0
Chelsea 2, Leicester 1
Liverpool 9, Bournemouth 0
Man City 4, Crystal Palace 2
Arsenal 2, Fulham 1
**Sunday, Aug. 28**
Aston Villa 0, West Ham 1
Wolverhampton 1, Newcastle 1
Nottingham Forest 0, Tottenham 2
**Tuesday, Aug. 30**
Fulham 2, Brighton 1
Crystal Palace 1, Brentford 1
Southampton 2, Chelsea 1
Leeds 1, Everton 1
**Wednesday, Aug. 31**
Bournemouth 0, Wolverhampton 0
Arsenal 2, Aston Villa 1
Man City 6, Nottingham Forest 0
West Ham 1, Tottenham 1
Liverpool 2, Newcastle 1
**Thursday, Sept. 1**
Leicester 0, Man United 1
**Saturday, Sept. 3**
Everton vs. Liverpool, 7:30 a.m.
Brentford vs. Leeds, 10 a.m.
Chelsea vs. West Ham, 10 a.m.
Newcastle vs. Crystal Palace, 10 a.m.
Nottingham Forest vs. Bournemouth, 10 a.m.
Tottenham vs. Fulham, 10 a.m.
Wolverhampton vs. Southampton, 10 a.m.
Aston Villa vs. Man City, 12:30 p.m.
**Sunday, Sept. 4**
Brighton vs. Leicester, 9 a.m.
Man United vs. Arsenal, 11:30 a.m.
**Tuesday, Sept. 6**
Bournemouth vs. Wolverhampton, 2 p.m.
West Ham vs. Tottenham, 2 p.m.
Leeds vs. Nottingham Forest, 3 p.m.

### WNBA

**Playoff Glance**

**First Round**
(Best-of-3)
Wednesday, August 17: Las Vegas 79, Phoenix 63
Saturday, August 20: Las Vegas 117, Phoenix 80

**Chicago 2, New York 1**
Wednesday, August 17: New York 98, Chicago 91
Tuesday, August 23: Chicago 90, New York 72
Thursday, August 18: Connecticut 93, Dallas 68
Sunday, August 21: Dallas 89, Connecticut 79
Wednesday, August 24: Connecticut 73, Dallas 58

**Seattle 2, Washington 0**
Thursday, August 18: Seattle 86, Washington 83
Sunday, August 21: Seattle 97, Washington 84

**Semifinals**
(Best-of-5)

**Las Vegas 1, Seattle 1**
Sunday, August 28: Seattle 76, Las Vegas 73
Tuesday, August 30: Las Vegas 78, Seattle 73
Sunday, September 4: Las Vegas at Seattle, 3 p.m.
x-Tuesday, September 6: Seattle at Las Vegas, 10 p.m.

**Chicago 1, Connecticut 1**
Sunday, August 28: Connecticut 68, Chicago 63
Wednesday, August 31: Chicago 85, Connecticut 77
Sunday, September 4: Chicago at Connecticut, 1 p.m.
x-Tuesday, September 6: Connecticut at Chicago, 8 p.m.

**Finals**
(Best-of-5)
Las Vegas/Seattle winner vs. Chicago/Connecticut winner

### TENNIS

**US Open Results**
**Thursday**
**At USTA Billie Jean King National Tennis Center**
**New York**
Surface: Hardcourt outdoor

**Men's Singles**
**Second Round**
Holger Rune (24), Denmark, def. John Isner, United States, walkover.
Marin Cilic (7), Croatia, def. Albert Ramos-Vinolas, Spain, 6-3, 7-6 (4), 6-3.
Daniel Evans (20), Britain, def. James Duckworth, Australia, 6-3, 6-2, 6-4.
Jenson Brooksby, United States, def. Borna Coric (25), Croatia, 7-6, 6-2.
Jannik Sinner (11), Italy, def. Christopher Eubanks, United States, 6-4, 7-5, 6-4.
Carlos Alcaraz (3), Spain, def. Federico Coria, Argentina, 6-2, 6-1, 7-5.
Andrey Rublev (9), Russia, def. Keon Soon Woo, South Korea, 6-3, 6-1, 6-4.
Cameron Norrie (7), Britain, def. Joao Sousa, Portugal, 6-4, 6-4, 7-6 (4).
Lorenzo Musetti (18), Italy, def. Diego Schwartzman, Argentina.
Nick Kyrgios (23), Australia, def. Benjamin Bonzi, France, 7-6 (3), 6-4, 6-3.

**Women's Singles**
**Second Round**
Petra Kvitova (21), Czech Republic, def. Anhelina Kalinina, Ukraine, walkover.
Jessica Pegula (8), United States, def. Aliaksandra Sasnovich, Belarus, 6-4, 6-4.
Victoria Azarenka (26), Belarus, def. Marta Kostyuk, Ukraine, 6-2, 6-3.
Lauren Davis, United States, def. Ekaterina Alexandrova (28), Russia, 0-6, 6-4, 7-6 (5).
Iga Swiatek (1), Poland, def. Sloane Stephens, United States, 6-3, 6-2.
Belinda Bencic (13), Switzerland, def. Sorana Cirstea, Romania, 3-6, 7-5, 6-2.
Jule Niemeier, Germany, def. Paula Badosa (4), Spain, 6-2, 6-1.
Petra Martic, Croatia, def. Paula Ormaechea, Argentina, 6-4, 6-2.
Zheng Qinwen, China, def. Anastasia Potapova, Russia, 7-6 (4), 7-6 (3).
Yuan Yue, China, def. Irina-Camelia Begu, Romania, 6-3, 7-6 (6).
Garbine Muguruza (9), Spain, def. Linda Fruhvirtova, Czech Republic, 6-0, 6-4.
Alize Cornet, France, def. Katerina Siniakova, Czech Republic, 6-1, 1-6, 6-4.
Karolina Pliskova (22), Czech Republic, def. Mirra Bouzkova, Czech Republic, 6-2, 6-7 (6), 6-3.
Aryna Sabalenka (6), Belarus, def. Kaia Kanepi, Estonia, 2-6, 7-6 (8), 6-4.

### TRANSACTIONS

**BASEBALL**

**Major League Baseball**

MLB — Suspended free agent pitcher Carlos Martínez for 85 games without pay, retroactive to June 19 for violating joint domestic violence, sexual assault and child abuse policy.

**American League**

BALTIMORE ORIOLES — Selected the contract of INF Jesus Aguilar from Norfolk (IL). Recalled LHP D.L. Hall from Norfolk. Designated INF Richie Martin for assignment.
BOSTON RED SOX — Recalled C Connor Wong from Worcester (IL). Selected the contract of RHP Eduard Bazardo from Worcester.
CHICAGO WHITE SOX — Recalled RHP Matt Foster and CF Adam Haseley from Charlotte (IL).
CLEVELAND GUARDIANS — Reinstated RHP Cody Morris from the 15-day IL. Designated RHP Anthony Castro for assignment. Recalled 2B Ernie Clement from Columbus (IL).
DETROIT TIGERS — Selected the contract of INF Ryan Kreidler from Toledo (IL). Recalled INF Spencer Torkelson from Toledo. Reinstated RHP Michael Pineda from the 15-day IL. Optioned INF Zack Short to Toledo. Transferred RHP Tony Garcia from the 15-day IL to the 60-day IL.
KANSAS CITY ROYALS — Selected the contract of RHP Daniel Mengden from Omaha (IL). Recalled OF Nate Eaton from Omaha.
MINNESOTA TWINS — Reinstated LHP Austin Davis from the 15-day IL. Selected the contract of OF Billy Hamilton from St. Paul (IL). Transferred SS Trevor Larnach from the 15-day IL to the 60-day IL.
OAKLAND ATHLETICS — Selected the contract of LHP Ken Waldichuk from Las Vegas (PCL). Recalled OF Cody Thomas from Las Vegas. Designated RHP David McKay for assignment.
SEATTLE MARINERS — Reinstated LHP Matt Boyd from the 60-day IL. Recalled OF Taylor Trammell from Tacoma (PCL).
TAMPA BAY RAYS — Recalled 2B Jonathan Aranda from Durham (IL).
TEXAS RANGERS — Recalled OF Nick Solak from Round Rock (PCL). Selected the contract of RHP Jesus Tinoco from Round Rock. Transferred RHP Josh Sborz from the 15-day IL to the 60-day IL.
TORONTO BLUE JAYS — Activated CF Bradley Zimmer. Recalled RHP Casey Lawrence from Buffalo (IL).

**National League**

ATLANTA BRAVES — Reinstated RHP Mike Soroka from the 60-day IL and optioned him to Gwinnett (IL). Reinstated LHP Kirby Yates from the 15-day IL. Reinstated SS Orlando Arcia from the 10-day IL. Recalled INF Vaughn Grissom and OF Justin Dean from Gwinnett. Transferred RHP Huascar Ynoa from the 15-day IL to the 60-day IL. Selected the contracts of RHP Jackson Stephens and RHP Darren Hickey from Gwinnett. Transferred LHP Max Fried from the 60-day IL to the 15-day IL.
CINCINNATI REDS — Selected the contracts of RHP Fernando Cruz and INF Spencer Steer from Louisville (IL). Transferred INF Jeff Hoffman and INF Mike Moustakas from the 15-day IL to the 60-day IL. Sent RHP Hunter Greene to Louisville on a rehab assignment.
COLORADO ROCKIES — Recalled RHP Chad Smith and INF Alan Trejo from Albuquerque (PCL).
LOS ANGELES DODGERS — Recalled RHP Phil Bickford and INF Miguel Vargas from Oklahoma City (PCL). Placed RHP Brusdar Graterol on the 15-day IL, retroactive to August 31. Reinstated LHP Clayton Kershaw from the 15-day IL.
NEW YORK METS — Selected INF Deven Marrero from Syracuse (IL). Recalled RHP Adonis Medina from Syracuse. Designated RHP Connor Grey for assignment.
PITTSBURGH PIRATES — Recalled RHP Johan Oviedo and OF Cal Mitchell from Indianapolis (IL).
SAN FRANCISCO GIANTS — Agreed to terms with INF Jean Carlos Sio on a minor league

contract. Sent LHPs Andrew Vasquez and Jonathan Bermudez outright to Sacramento (PCL). Recalled INF David Villar from Sacramento. Acquired OF Lewis Brinson from Houston in exchange for cash considerations.
WASHINGTON NATIONALS — Recalled C Tres Barrera and RHP Mason Thompson from Rochester (IL).

**FOOTBALL**

**National Football League**

ATLANTA FALCONS — Placed LB Deion Jones, CB Isaiah Oliver, DE Marlon Davidson, OT Jalen Mayfield and TE John FitzPatrick on injured reserve. Re-signed DL Abdullah Anderson LB Nick Kwiatkoski and OL Colby Gossett. Claimed OT Chuma Edoga off waivers from New York Jets and DT Matt Dickerson off waivers from Kansas City.
BUFFALO BILLS — Signed TE Zach Davidson, CB Kyler McMichael and T Ryan Demark.
CAROLINA PANTHERS — Placed QB Sam Darnold on injured reserve.
CHICAGO BEARS — Placed WR N'Keal Harry on injured reserve. Signed OL Kellen Diesch and LB Joe Thomas to the practice squad. Claimed WR Dante Pettis off waivers from Minnesota.
CINCINNATI BENGALS — Re-signed WR Mike D. Thomas. Placed DE Khalid Kareem and CB Cam Taylor Britt on injured reserve. Signed TE Nick Bowers, S Yusuf Corker and CB Marvell Tell III to the practice squad.
CLEVELAND BROWNS — Signed QB Josh Rosen and TE Isaac Rochell to the practice squad.
DALLAS COWBOYS — Signed RB Qadree Ollison and C Dakoda Shepley to the practice squad.
DENVER BRONCOS — Signed CB Darius Phillips. Waived CB Essang Bassey. Signed OL Will Sherman to the practice squad.
GREEN BAY PACKERS — Signed TE Shaun Beyer, CB Benjie Franklin and WR Juwann Winfree to the practice squad.
HOUSTON TEXANS — Placed LB Christian Harris, DE Demarvin Leal and OT Teagan Quitoriano on injured reserve. Re-signed RB Royce Freeman, WR Chris Conley and CB Isaac Yiadom. Signed RB Paul Quessenberry to the practice squad.
INDIANAPOLIS COLTS — Signed OL Arlington Hambright and LB Segun Olubi to the practice squad.
JACKSONVILLE JAGUARS — Claimed LB Caleb Johnson off waivers from Chicago.
KANSAS CITY CHIEFS — Signed TE Kendall Blanton and LB Cole Christiansen to the practice squad.
MIAMI DOLPHINS — Signed CB Justin Bethel.
TENNESSEE TITANS — Signed WR Josh Gordon and TE Kevin Rader to the practice squad.
MINNESOTA VIKINGS — Signed CB Tay Gowan and WR Travis Toivonen to the practice squad.
NEW ENGLAND PATRIOTS — Signed WR Lynn Bowden to the practice squad.
NEW ORLEANS SAINTS — Placed OT Trevor Penning and DL Malcolm Roach on injured reserve. Signed RB Dwayne Washington and G Drew Desjarlais to the practice squad.
NEW YORK GIANTS — Signed WR Kalil Pimpleton to the practice squad. Claimed OL Tyre Phillips off waivers from Baltimore.
PHILADELPHIA EAGLES — Claimed RB Trey Sermon off waivers from San Francisco.
PITTSBURGH STEELERS — Placed S Damontae Kazee and WR Calvin Austin on injured reserve. Signed LB Marcus Allen and DL Trent Scott to the practice squad.
SAN FRANCISCO 49ERS — Signed RB Jordan Mason and OL Leroy Watson to the practice squad. Signed LB Curtis Bolton and DL Kevin Atkins to the practice squad.
WASHINGTON COMMANDERS — Re-signed LBs David Mayo and Jon Bostic. Placed TE Curtis Hodges on injured reserve. Placed RB Brian Robinson Jr. on the non-football injury (NFI) list.

**HOCKEY**

**National Hockey League**

DALLAS STARS — Signed D Jake Oettinger to a three-year contract.

**COLLEGE**

MARYLAND — Announced softball head coach Mark Montgomery has resigned after a four-year contract extension.