IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **FRED HANEY,** *et al.*, <br> individually, and on behalf of <br> all others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **GENWORTH LIFE INSURANCE COMPANY,** *et al.*, <br><br> **Defendants.** | Civil Action No. 3:22-cv-55 |

**OBJECTOR JANE BELKIN'S BRIEF IN SUPPORT OF**
**MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES**

Objector, Jane Belkin ("Belkin"), by counsel, pursuant to the Court's directive at the hearing on November 17, 2022 (*see* ECF No. 94), hereby respectfully submits this brief in support of her Motion for Incentive Award and Attorneys' Fees (ECF No. 103), stating as follows:

**INTRODUCTION**

Belkin has a Long-Term Care Insurance Policy, Policy No. AAA5046312 (the "Policy"), with General Electric Capital Assurance Company, now Genworth Life Insurance Company ("Genworth"), with an effective date of July 27, 2004. (ECF No. 53). The Policy has a "Lifetime Maximum" of "Unlimited." (*Id.*).

On July 6, 2022, Plaintiffs, Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Plaintiffs") and Defendants, Genworth Life Insurance Company and Genworth Life Insurance Company of New York ("Defendants" or "Genworth"), filed a Joint Stipulation of Amended Settlement Agreement (the "Settlement Agreement"). (*See* ECF Nos. 33, 33-1).

On September 30, 2022, pursuant to the Court's Order Granting Preliminary Approval of Settlement and Directing Notice to Class (ECF No. 31), Belkin timely filed an Objection to the Settlement Agreement. (*See* ECF No. 53). In relevant part, Belkin objected to the Settlement Agreement because if Class Members wanted to keep their inflation protection ("BIO") they would have to forego the Special Election Options and Cash Damages. (*See id.*). Specifically, Belkin argued that "**the Special Election Options provide no compensatory relief for policy holders and class members like Ms. Belkin who maintain their current benefits at their existing filed rates.**" (*See id.* (emphasis in original)). Thereafter, Belkin, by counsel, Class Counsel, and counsel for Defendants engaged in negotiations and reached an agreement to modify the Settlement Agreement to provide additional Special Election Options that would be available to class members such as Belkin. (*See also* Joint Stipulation of Settlement with Objectors, ¶ 15).

Belkin's counsel negotiated a modification to the Settlement Agreement to include two additional Special Election Options as follows:

<u>**Appendix C (Special Election Options)**</u>:

    **I.   Special Election Options For Class Members With Policies That Are Not In Non-Forfeiture Status**

\*\*\*

    **B.  Reduced Benefit Options ("RBOs")**

Class Members who currently have in force policies, *excluding* (1) Class Members who previously elected a SPO, or FBO, and/or (2) Class Members whose level of benefits are below the level of benefits available in the defined option, will have the following options:

\*\*\*

    4. For Class Members with BIO and a lifetime benefit period, a settlement option consisting of two components: **(a)** a reduction of the Class Member's existing lifetime benefit period to a six year benefit period and a reduction to his or her current D/M BA (after benefit inflation) by 25%, and **(b)** a damages payment equal to $3,000.

Class Members who currently have in force policies, *excluding* Class Members who previously elected an FBO, and/or Class Members whose level of benefits are below the level of benefits available in the defined option, will have the following option:

    5. A settlement option consisting of two components: **(a)** a reduction of the Class Member's current D/M BA by 25%, and **(b)** a damages payment of $1,200.

\*\*\*

(*See* Joint Stipulation of Settlement with Objectors, ¶¶ 32, 35(d)). These Special Election Options provide significant relief to class members and, particularly, to class members with a "Lifetime Maximum" of "Unlimited" benefits such as Belkin.

Genworth has agreed, after extensive arms-length negotiations, to not oppose Objectors' Counsels' request for attorneys' fees up to $195,000 for ThorsenAllen, LLP and Jeffrey A. Belkin, Esq., combined, and an incentive award up to $7,500 per Settling Objector, if and as ordered by the Court. (*See* Joint Stipulation of Settlement with Objectors, ¶¶ 35(a), (c), (d)). Further, no payments for Belkin's incentive award or Belkin's attorneys' fees shall be deducted from any payments to Class Members. (*See id.* ¶¶ 35(b), (f)).

On November 17, 2022, the Court held a hearing on Final Approval and ordered the Plaintiffs and Genworth to submit a further amended Settlement Agreement by November 30, 2022, including the agreement with Belkin. (*See* ECF No. 94).

On November 30, 2022, Plaintiffs, Genworth, and the Settling Objectors filed a Joint Motion to Approve Settlement Agreement with Objectors and a Joint Stipulation of Settlement with Objectors.

**ARGUMENT**

"Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with forgoing or withdrawing an objection." Fed. R. Civ. P. 23(e)(5)(B)(i). "If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees." *See* Fed. R. Civ. P. 23 advisory committee's note. "In some situations, there may be a basis for making an award to . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) . . . ." *See id.* "Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance under Rule 23(h)." *See id.* "The analysis of [an] objector['s] attorneys' petition for attorney fees and incentive payments . . . follow[s] the same form of analysis that guides a Court's assessment of fee petitions for class counsel." *Halcom v. Genworth Life Ins. Co.*, No. 3:21-CV-19, 2022 WL 2317435, at *10 (E.D. Va. June 28, 2022).

**I. BELKIN'S ATTORNEYS' FEES ARE REASONABLE.**

Pursuant to Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorney fees are generally calculated by one of two methods. The lodestar method calculates the product of hours worked by each attorney multiplied by each attorney's

4

respective hourly rate. The common fund method apportions counsel a percentage of the settlement fund paid out to plaintiffs by defendants." *Halcom*, 2022 WL 2317435, at *8. "[C]ourts will typically employ one method as the primary calculation method and use the other method as a cross check on the reasonableness of the first." *Skochin v. Genworth Fin., Inc.*, No. 3:19-CV-49, 2020 WL 6536140, at *4 (E.D. Va. Nov. 5, 2020).

In similar cases, *Halcom* and *Skochin*, this Court applied a "percent-of-fund approach" with "a lodestar cross-check" for fee awards to class counsel. *See Halcom*, 2022 WL 2317435, at *9. In such cases, the Court upheld a fifteen percent (15%) contingency fee with a cap. *See, e.g.*, *Halcom*, 2022 WL 2317435 ("treating 15% as a ceiling for the proportion of attorney fees to plaintiff class damage payments, with that proportion to shrink for any damage payment total above $123.33 million"); *Skochin*, 2020 WL 6536140, at *7 (finding "a fee award of $2,000,000 plus a 15% contingent fee with a cap of $24.5 million is reasonable so long as there is no $10 million floor for contingent attorneys' fees"). Further, the Court upheld lodestar cross-check multipliers of 9.05x in *Skochin* and 8.4x in *Halcom* for class counsel. *See, e.g.*, *Halcom*, 2022 WL 2317435, at *13; *Skochin*, 2020 WL 6536140, at *10 (noting multipliers of 0.68x and 4.1x "are clearly within the range of reasonable awards applied in this circuit" and 9.05x "is not outside of the realm of reasonableness"). Meanwhile, the "constructive common fund approach is not practical where the benefit conferred on the class . . . is in the form of non-quantifiable changes to the settlement agreement." *See Halcom*, 2022 WL 2317435, at *13. Regardless which approach the Court applies, the Court further considers the reasonableness factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (1974) and *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).[1]

---

[1] *See infra* Section I.A.

This Court has previously awarded attorneys' fees to objectors' counsel in *Halcom*. *See* 2022 WL 2317435, at *15. In that case, the "constructive common fund" approach was not practical. *See id.* at *13. Instead, the objectors' counsel sought a fee award of $1.4 million, "represent[ing] the attorneys' lodestar fee ($502,100) with a multiplier of 2.8x." *See id.* at *14. The Court, however, found that objectors' counsel was not fully successful as the objectors "originally pressed a variety of objections to the settlement agreement that had little to nothing to do with the grounds on which the Court eventually required the parties to modify the language in the release." *See id.* Objectors' counsel proposed "reducing their requested fee by lowering the lodestar multiplier rather than recalculating the number of hours worked." *See id.* at *15. "The Court accepted this concession, resulting in a fee award of $1.2 million (at a multiplier of approximately 2.4x)." *Id.*

Unlike for the objectors in *Halcom*, the constructive common fund approach is practical in this case. Here, the benefit conferred on the class by Belkin's attorneys' work is substantial and quantifiable. Belkin recognizes, however, that a percent-of-fund fee structure similar to that proposed by class counsel in this case, or in *Halcom* or *Skochin*, is not likely to be reasonable. That said, Belkin proposes a lodestar method with a 3.725x multiplier—similar to that employed by this Court for the objectors' attorneys in *Halcom*—with a percent-of-fund cross check for reasonableness. As set forth below, Belkin's attorneys request reasonable attorneys' fees of $195,000.00, consisting of a lodestar figure of $52,340.00 with a 3.725x multiplier.

A.    **Belkin's Attorneys' Lodestar Figure is $52,340.00.**

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "When making this calculation, the court must exclude any

hours that are 'excessive, redundant, or otherwise unnecessary,' as such hours are not reasonably expended on the litigation." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). This number must represent the product of "billing judgment." *Hensley*, 461 U.S. at 437. Meanwhile, "'reasonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

In this case, Mr. Thorsen reasonably expended 33.10 total hours at a reasonable hourly rate of $600.00, resulting in a lodestar amount of $19,860.00 as of the date of the accompanying affidavit. (*See* James B. Thorsen Aff. ¶ 8, attached as Exhibit B; *see also* Ex. A). Mr. Belkin reasonably expended 42.25 total hours at a reasonable hourly rate of $500.00, resulting in a lodestar amount of $21,125.00 as of the date of the accompanying affidavit. (*See* Jeffrey A. Belkin Aff. ¶ 6, attached as Exhibit C; *see also* Ex. A). Mr. Roche reasonably expended 26.70 total hours on this litigation at a reasonable hourly rate of $400.00, resulting in a lodestar amount of $10,680.00 as of the date of the accompanying declaration. (*See generally* Jesse A. Roche Decl. ¶ 5, attached as Exhibit D; *see also* Ex. A). Ms. Maiden, paralegal and legal assistant, reasonably expended 4.50 hours on this litigation at a reasonable hourly rate of $150.00, resulting in a lodestar amount of $675.00. (*See* Thorsen Aff. ¶ 8; *see also* Ex. A). In sum, Belkin's attorneys incurred total fees of $52,340.00.

        **1.    Belkin's Attorneys' Fees are Consistent with Prevailing Market Rates in Richmond, Virginia.**

"[D]etermination of the hourly rate will generally be the critical inquiry in setting the 'reasonable fee,' and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

> The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). "The relevant community for determining the market rate is ordinarily the district where the case was tried." *Project Vote/Voting for America, Inc.*, 887 F. Supp. 2d at 710.

Notably, this Court recently found an hourly rate of $550.00 for Mr. Thorsen and $350.00 for Mr. Roche to be reasonable for a case initiated in 2020 that involved a claim under the Age Discrimination in Employment Act. *See Cannada v. Old Dominion Brush, Co., Inc.*, No. 3:20-CV-952-HEH, 2022 WL 1213128, at *1 (E.D. Va. Apr. 25, 2022).

In this case, the relevant community for determining the market rate is the Eastern District of Virginia and, specifically, the Richmond Division. To establish the prevailing market rate, Belkin attaches and incorporates the affidavits of Mr. Thorsen and Mr. Belkin, lead counsel for Belkin in this matter, and the declaration of Mr. Roche, associate counsel for Belkin in this matter. (*See* Thorsen Aff. ¶ 10; Belkin Aff. ¶ 6; Roche Decl. ¶ 7). In addition, Belkin attaches and incorporates the declaration of Tim Schulte, Esquire ("Mr. Schulte"), a partner in the firm Shelley Cupp Schulte, P.C., a well-recognized employment litigation attorney unassociated with any party or counsel in connection with this case and without interest in the outcome of this matter who practices in the community of Richmond, Virginia. (*See generally* Tim Schulte Decl., attached as Exhibit E). In his declaration, Mr. Schulte states, "[m]y hourly rate is $500 an hour and my partners' rates are $500 an hour for Shelley and $500 Cupp." (*Id.* ¶ 7). Mr. Schulte attests that the rates charged by Mr. Thorsen, Mr. Roche, and Ms. Maiden are reasonable and consistent with prevailing market rates for federal court litigation in the Richmond Division of the Eastern District

8

of Virginia. (*See id.* ¶ 8). Finally, the rates charged by Mr. Thorsen, Mr. Belkin, Mr. Roche, and Ms. Maiden are well within or below the market rates set forth by class counsel. (*See* ECF No. 42, at 24; *see* Butler Decl. ¶¶ 17-26, ECF No. 43-9).

Based upon the prevailing market rates established by undersigned counsel and the class counsel, and recent fee awards by this Court in comparable cases within the prevailing market, the hourly rates charged by Mr. Thorsen, Mr. Belkin, Mr. Roche, and Ms. Maiden are reasonable.

### 2. Belkin's Attorneys' Expended a Reasonable Number of Hours on the Litigation and Exercised Billing Judgment.

Counsel requesting attorneys' fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley*, 461 U.S. at 434.

> "Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." Indeed, fee claimants must submit documentation that reflects "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity," sufficient to permit the court to weigh the hours claimed and exclude hours that were not "reasonably expended." Inadequate documentation includes the practice of grouping, or "lumping," several tasks together under a single entry, without specifying the amount of time spent on each particular task. . . .
>
> Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case. Such a reduction can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved.

*Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (alterations accepted and citations omitted).

In this case, Mr. Thorsen, Mr. Belkin, Mr. Roche, and Ms. Maiden made a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours, and provided detailed and

reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity without improper "block billing." (*See* Ex. A; Thorsen Aff. ¶¶ 9, 10; Belkin Aff. ¶ 7; Roche Decl. ¶¶ 6, 7). Mr. Schulte affirms "the time the attorneys and their paralegal seek to recover for in this action are reasonable and a necessary use of time and resources in prosecuting this case and bringing out a modification to the Settlement Agreement that provides substantial relief to the class," and Objector's counsel "have exercised appropriate billing judgment in reducing hours that may have been redundant." (*See* Schulte Decl. ¶ 9).

Specifically, Mr. Thorsen billed 33.10 hours, Mr. Belkin billed 42.25 hours, Mr. Roche billed 26.70 hours, and Ms. Maiden billed 4.50 hours. (*See* Ex. A). These hours pale in comparison to the hours billed on behalf of the objectors in *Halcom*. (*See* Objectors' Petition for Incentive Awards and Attorneys' Fees, at 22, Case No. 3:21-cv-19, ECF No. 106 (noting objectors' counsel expended 768 total hours)). Further, all hours billed relate to Belkin's objection, to which Belkin's attorneys obtained an amendment to the Settlement Agreement that included special elections specifically tailored to address Belkin's objection. As such, Belkin "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. Indeed, the Supreme Court has recognized:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435 (internal citations omitted). Here, and humbly stated, Belkin's attorneys obtained an exceptional result with skill and efficiency.

### B. The *Johnson* and *Gunter* Factors Support the Lodestar Amount.

The Court further considers the reasonableness factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for legal work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation[,] and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). In common fund cases, the Court also considers the factors set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000):

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*See id.* at 195 n.1.

In assessing the reasonableness of the objectors' attorneys' fees in *Halcom*, the Court found, in part:

> Of the Johnson factors, numbers (4) and (8) tell most in favor of the reasonableness of this fee award. The opportunity cost for the attorneys involved was certainly substantial and the work was undertaken with no assurance whatever that their objections would prevail or that they would be in a position to obtain compensation for their efforts. Additionally, the amount in controversy and the results obtained likewise tell in favor of the fee award. This is a significant case representing the interests of well over 100,000 people and having tens or hundreds of millions of dollars at stake. In a case on such a substantial scale, even modest improvement to the terms of settlement has a considerable aggregate value.

2022 WL 2317435, at *15.

11

In this case, like *Halcom*, Belkin's attorneys incurred opportunity cost with no guarantees of compensation while obtaining significant relief for a large portion of the class with skill and efficiency. In addition, also like *Halcom*, the fee award will be paid out by Genworth and the plaintiff class's benefit will in no way be reduced; the hourly rates for Belkin's attorneys are *lower* than the range of rates sought by class counsel and awarded in similar cases; and Belkin's attorneys are not requesting compensation for expenses. See *Halcom*, 2022 WL 2317435, at *16.

Further, while Belkin's attorneys do not propose a percent-of-fund approach here, nevertheless, *Gunter* factors, numbers (1), (3), (5), and (7), clearly support the fee award requested herein. Indeed, if approximately four percent (1,808) of eligible class members with unlimited policies (45,222) selected a $3,000 damages payment, the total damages amount would be $5,424,000.00, and fifteen percent of that amount is $813,600.00.[2] The requested fee of $195,000.00 is approximately equivalent to a percent-of-fund fee if less than one percent (1%) of eligible class members select the $3,000 damages payment.[3] As such, there is nominal risk of "a windfall payment for a settlement that was not perceived as useful by the class." *Skochin*, 2020 WL 6536140, at *9.

Finally, Belkin's attorneys, Class Counsel, and Genworth's attorneys have negotiated this fee. See *Skochin*, 2020 WL 6536140, at *6 (noting "the fact that the parties negotiated a fee is not an explicit part of the reasonableness analysis under either the Johnson or Gunter tests, though a court should still be cognizant that '[a] request for attorneys' fees should not result in a second

---

[2] Counsel for Genworth estimates that 292,297 Class Members will be eligible for the I.B.5 Special Election (25% DBA reduction/$1,200 Cash Damages SEO) and that 45,222 Class Members will be eligible for the I.B.4 Special Election (the Lifetime-6 years/25% DBA reduction/$3,000 Cash Damages SEO).

[3] If 434 eligible class members with unlimited policies (0.96%) selected a $3,000 damages payment, the total damages amount would be approximately $1,335,000.00, and fifteen percent of that amount is $195,300.00.

major litigation' and '[i]deally, of course, litigants will settle the amount of a fee'" (quoting *Hensley*, 461 U.S. at 437)).

## II. INCENTIVE AWARD

"Trial courts will typically authorize service awards to class representatives for the time and effort they expended for the benefit of the class." *Skochin*, 2020 WL 6536140, at *10. "Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (internal quotations omitted).

In *Halcom*, this Court found a request for incentive payments of $7,500 for each of the represented objectors to be reasonable. *See* 2022 WL 2317435, at *16 (noting "the value of these awards is one-half the value of the awards for named plaintiffs and less than one-third the value of the awards for named plaintiffs in Skochin").

In this case, Belkin's efforts in pursuing her good faith objection to the Settlement Agreement resulted in an amendment that provides substantial value and relief to the class. These efforts included, but are not limited to, contacting and retaining counsel, discussing her policy and her objections to the Settlement Agreement with counsel, reviewing numerous court filings, and discussing potential proposals to modify the Settlement Agreement with her counsel. (*See* Jane Belkin Decl. ¶ 3, attached as Exhibit F). Further, like in *Halcom*, this incentive award to Belkin will not detract from the value of the relief obtained by the class. *See* 2022 WL 2317435, at *16.

## **CONCLUSION**

WHEREFORE, Objector, Jane Belkin, by counsel, respectfully requests this Court approve the requested incentive award for Belkin and the requested attorneys' fees for Belkin's attorneys and provide any further relief this Court deems just and appropriate.

        Respectfully submitted,

        **JANE BELKIN**
        *Objector*,

By: _____/s/_____
        James B. Thorsen, Esq.
        VSB No. 18113
        Jesse A. Roche, Esq.
        VSB No. 82579
        Attorneys for Jane Belkin
        THORSENALLEN LLP
        5413 Patterson Avenue, Suite 201
        P. O. Box 17094
        Richmond, Virginia 23226
        Telephone: (804) 447-7234
        Facsimile: (804) 447-7813
        E-mail: jthorsen@thorsenallen.com
        E-mail: jroche@thorsenallen.com

        Jeffrey A. Belkin, Esquire (*pro hac vice*)
        Ohio Supreme Court No. 0018294
        Attorney for Jane Belkin
        Jeffrey A. Belkin LLC
        2519 Lafayette Drive
        University Heights, OH 44118
        Telephone: (216) 469-5294
        Facsimile: (216) 862-9870
        E-mail: jab@jabelkinlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 30th day of November, 2022, a copy of the foregoing was filed electronically with the clerk of court using CM/ECF system, which will send a notice of electronic filing (NEF) to all registered users.

                                                                   /s/
                                         James B. Thorsen, Esquire
                                         VSB No. 18113
                                         Jesse A. Roche, Esquire
                                         VSB No. 82579
                                         Attorneys for Jane Belkin
                                         THORSENALLEN LLP
                                         5413 Patterson Avenue, Suite 201
                                         P. O. Box 17094
                                         Richmond, Virginia 23226
                                         Telephone: (804) 447-7234
                                         Facsimile: (804) 447-7813
                                         E-mail: jthorsen@thorsenallen.com
                                         E-mail: jroche@thorsenallen.com