# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually, and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No. 3:22-CV-00055-REP** |
| **vs.** | ) ) | **CLASS ACTION** |
| **GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## SECOND AMENDED JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

## TABLE OF CONTENTS

I.    RECITALS ................................................................................................................. 1

II.   DEFINITIONS ........................................................................................................... 6

      29.   Class Counsel ................................................................................................ 6

      30.   Class Notice ................................................................................................... 6

      31.   Class or Class Members ................................................................................ 6

      32.   Class Period ................................................................................................... 7

      33.   Class Policy or Class Policies ...................................................................... 7

      34.   Court .............................................................................................................. 7

      35.   Fee Award ..................................................................................................... 7

      36.   Final Approval Hearing ................................................................................ 7

      37.   Final Fee Award ............................................................................................ 7

      38.   Final Order and Judgment ............................................................................ 8

      39.   Final Settlement Date .................................................................................... 8

      40.   Flexible Benefit Option ................................................................................ 8

      41.   Fully Paid-Up Status ..................................................................................... 8

      42.   Genworth Released Parties ........................................................................... 9

      43.   Lapse or Lapsed ............................................................................................ 9

      44.   Non-Forfeiture Status ................................................................................... 9

      45.   Partnership Plan ............................................................................................ 9

      46.   Policyholder(s) .............................................................................................. 9

      47.   Publication Notice ....................................................................................... 10

      48.   Quarter(s) .................................................................................................... 10

      49.   Stable Premium Option or SPO .................................................................. 10

      50.   States ........................................................................................................... 10

| | | |
|---|---|---|
| 51. | State Regulator(s) | 11 |
| 52. | Terminated | 11 |
| III. | TERMS OF SETTLEMENT | 11 |
| 54. | Class Certification | 11 |
| 55. | Consideration to Class | 12 |
| 56. | Mailing of the Special Election Letter(s) | 14 |
| 57. | Return of the Special Election Letter(s) | 14 |
| 58. | State Regulatory Review and Conflict Carve-Out | 15 |
| 59. | Release by Named Plaintiffs and the Class | 17 |
| 60. | Covenant Not to Sue by Named Plaintiffs and the Class | 19 |
| 61. | Release by Genworth | 20 |
| 62. | No Admission of Liability | 20 |
| 63. | Potential Tax and Partnership Plan Consequences | 21 |
| 64. | Payment of Class Counsel's Attorneys' Fees | 21 |
| 65. | Payment of Class Counsel's Reasonable Expenses | 22 |
| 66. | Named Plaintiffs' Service Payments | 22 |
| 67. | Non-Disparagement, Confidentiality, and Public Statements | 22 |
| 68. | Settlement Administrator | 24 |
| 69. | Class Notice | 24 |
| 70. | Websites | 25 |
| 71. | Requests for Exclusion | 25 |
| 72. | Termination | 25 |
| 73. | Objections | 26 |
| 74. | Special Election Letter and Option Questions | 26 |
| 75. | Audit by Settlement Administrator | 27 |

76.   Defendants' Representations ............................................................................ 28

77.   Calculation of Deadlines ................................................................................... 29

78.   Enforceability ..................................................................................................... 29

79.   Mutual Full Cooperation ................................................................................... 29

80.   No Prior Assignments ........................................................................................ 30

81.   Construction and Choice of Law ...................................................................... 30

82.   Modification ....................................................................................................... 30

83.   Notice ................................................................................................................. 30

84.   Entire Agreement ............................................................................................... 31

85.   Counterparts ....................................................................................................... 32

86.   Representations .................................................................................................. 32

APPENDIX A ......................................................................................................................... 38

APPENDIX B ......................................................................................................................... 44

APPENDIX C ......................................................................................................................... 46

APPENDIX D ......................................................................................................................... 50

APPENDIX E ......................................................................................................................... 62

APPENDIX F .......................................................................................................................... 80

This Second Amended Joint Stipulation of Class Action Settlement and Release (the "Second Amended Settlement Agreement") is made and entered into by and between Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Named Plaintiffs"), on behalf of themselves and the putative class of individuals defined in this Second Amended Settlement Agreement (collectively, "Plaintiffs"), on the one hand, and Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (together, GLIC and GLICNY, "Genworth" or "Defendants"), on the other hand.  Collectively, Plaintiffs and Defendants are referred to herein as the "Parties," and individually, each as a "Party."  Subject to Court approval as required by Federal Rule of Civil Procedure ("FRCP") 23, the Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Second Amended Settlement Agreement and upon entry by the Court of a final order and judgment and resolution of any appeals from that final order and judgment, this action shall be settled and compromised in accordance with the terms of this Second Amended Settlement Agreement.

## I.      RECITALS

1.      WHEREAS, on August 11, 2021, counsel for Plaintiffs provided pre-suit notice of this class action lawsuit to Genworth, alleging a course of conduct similar to that alleged in *Skochin v. Genworth Life Ins. Co.*, No. 3:19-cv-00049-REP (E.D. Va.) ("*Skochin*") and *Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-00019-REP (E.D. Va.) ("*Halcom*"), but on behalf of policyholders with policies not included in those prior lawsuits;

2.      WHEREAS, the Parties have engaged in significant settlement efforts, including three full days of in-person mediation sessions on November 8, 2021, January 14, 2022, and January 15, 2022, before an experienced and highly qualified mediator, Rodney A. Max, who

successfully mediated both the *Skochin* and *Halcom* settlements, and numerous additional

discussions through counsel, and this Settlement Agreement is a result of those significant, arms-

length negotiations;

       3.      WHEREAS, the Parties have exchanged information and documents concerning

the Named Plaintiffs' and putative class claims as a part of the mediation process;

       4.      WHEREAS, the Parties reached a settlement in principal on January 15, 2022, the

material terms of which were memorialized in a Memorandum of Understanding

("Memorandum of Understanding");

       5.      WHEREAS, on January 28, 2022, Named Plaintiffs filed a complaint (the

"Complaint") against Defendants for alleged misrepresentations based on the alleged failure to

disclose material information in the premium rate increase letters sent for certain long-term care

insurance policies issued by GLIC and GLICNY in the action styled *Haney v. Genworth Life

Insurance Company*, No. 3:22-cv-00055-REP, in the United States District Court for the Eastern

District of Virginia (the "Action").  Named Plaintiffs seek to represent a class of all

Policyholders (defined below) who had received such letters in all fifty states and the District of

Columbia, and Named Plaintiffs asserted claims for Fraudulent Inducement by Omission and for

Declaratory Relief;

       6.      WHEREAS, Named Plaintiffs seek relief including compensatory, consequential,

and general damages in an amount to be determined at trial, injunctive relief, costs and

disbursements of the action, pre- and post-judgment interest, reasonable attorneys' fees, and such

other and further relief as this Court may deem just and proper;

       7.      WHEREAS, on January 28, 2022, the Parties filed a Joint Motion for Entry of

Scheduling Order, which the Court granted on February 1, 2022;

8.      WHEREAS, on February 28, 2022, Defendants filed an Answer to the Complaint denying that Named Plaintiffs are entitled to any of the relief sought in the Complaint and asserting affirmative and other defenses to the Complaint;

9.      WHEREAS, on April 1, 2022, the Parties entered into a Joint Stipulation of Class Action Settlement and Release that superseded and replaced the Memorandum of Understanding (the "April 1, 2022 Class Action Settlement Agreement") (ECF No. 28-1);

10.     WHEREAS, on April 1, 2022, Named Plaintiffs filed a Motion to Direct Notice of the Proposed Settlement to the Class (ECF Nos. 26-28), and on May 2, 2022, the Court issued an Order Granting Preliminary Approval of Settlement and Directing Notice to the Class (ECF No. 31);

11.     WHEREAS, on July 6, 2022, the Parties entered into an Amended Joint Stipulation of Class Action Settlement and Release (the "Amended Class Action Settlement Agreement");

12.     WHEREAS on July 7, 2022, the Court issued an Order Granting Preliminary Approval of the Amended Class Action Settlement Agreement and directing dissemination of the Notice (ECF No. 34);

13.     WHEREAS, on August 1, 2022 the Claims Administrator sent the Class Notice to the Class (see ECF No. 28-5);

14.     WHEREAS, on September 16, 2022, Plaintiffs filed a Motion for Final Approval of the Amended Settlement Agreement (ECF Nos. 33-1, 39, 40);

15.     WHEREAS, on September 16, 2022, Class Counsel filed a Motion for an Award of Attorneys' Fees and Expenses and Service Awards to the Named Plaintiffs (ECF Nos. 41–42);

16.     WHEREAS, Class Counsel initiated conversations with Genworth's counsel regarding additional benefits that might be offered in the Settlement;

17.     WHEREAS, certain Class Members objected to the Amended Settlement Agreement, filing those objections between August 12, 2022 and October 19, 2022;

18.     WHEREAS, on November 3, 2022, Plaintiffs filed a Reply Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Plaintiffs' Reply Memorandum in Support of Final Approval") (ECF No. 79);

19.     WHEREAS, following extensive, arms-length negotiations, the Parties reached agreements with Objectors Jane and Jeff Belkin, William and Linda Dudley, Doug and Bonnie Ebstyne, David Friedman, James Perry, Michael Podoll, and Thomas Toman (the "Settling Objectors") to withdraw their objections in exchange for certain modifications to the Amended Settlement Agreement, subject to approval by the Court, and the Parties notified the Court of those agreements on November 16, 2022;

20.     WHEREAS, the Parties wish to enter into this Second Amended Settlement Agreement, subject to approval by the Court of this Second Amended Settlement Agreement and of the Objectors' Settlement, to further amend the Amended Class Action Settlement Agreement by expanding the availability of one of the Special Election Options and increasing its Cash Damages payment, adding a new Special Election Option, increasing Cash Damages payment for the Special Election Option for Non-Forfeiture Status Class Members, and making certain modifications to the Special Election Letter template;

21.     WHEREAS, the Parties have engaged in significant discovery relating to Named Plaintiffs' and the Class claims alleged;

22.     WHEREAS, Genworth denies and continues to deny any wrongdoing or legal liability for any alleged wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or legal liability in connection with any facts or claims that have been or could have been alleged in the Action, and contends that neither Named Plaintiffs nor the putative class have been injured or are entitled to any relief;

23.     WHEREAS, Genworth denies that this case is suitable for class treatment other than in the context of a settlement or that Named Plaintiffs would be able to demonstrate on contested motion that any non-settlement class should be certified;

24.     WHEREAS, Named Plaintiffs believe all the claims alleged in the Action have merit and that the Action would be certified as a class action for trial under FRCP 23(b)(1), (b)(2) and (b)(3);

25.     WHEREAS, the Parties reached this Settlement Agreement as a compromise of the disputed matters described herein and due to the uncertainties, risks, expenses, and business disruptions of continued litigation;

26.     WHEREAS, the Parties have agreed that this Second Amended Settlement Agreement, if approved by the Court, supersedes and replaces the Amended Settlement Agreement, Original Settlement Agreement, and the Memorandum of Understanding;

27.     WHEREAS, nothing in the Memorandum of Understanding, the Original Settlement Agreement, the Amended Settlement Agreement, the Second Amended Settlement Agreement, or in the settlement process should be construed as an admission of any liability, fault, or wrongdoing by Genworth; and

28.     WHEREAS, the Parties and their respective counsel have agreed that the Second Amended Settlement Agreement is fair, reasonable, and adequate, and in the best interests of

Named Plaintiffs and the Class (defined below), and have agreed to settle the Action taking into account the strengths and weaknesses of their respective claims and defenses and the risks of uncertainty absent settlement;

NOW THEREFORE, in consideration of the foregoing facts and of the agreements and consideration set forth below, the Parties mutually agree as follows:

## II.    DEFINITIONS

29.    <u>Class Counsel</u>:  "Class Counsel" shall be defined as Goldman Scarlato & Penny, P.C., Robbins Geller Rudman & Dowd LLP, Berger Montague PC, and Phelan Petty PLC.

30.    <u>Class Notice</u>:  "Class Notice" means the Court-directed appropriate notice pursuant to FRCP 23(e), the form of which is in **Appendix E**.

31.    <u>Class or Class Members</u>:  "Class" or "Class Members" shall be defined as all Policyholders (defined below) of GLIC and GLICNY long-term care insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policies and state variations of those Class Policies (defined below) in force at any time during the Class Period (defined below) and issued in any of the States (defined below)[1] excluding: (1) those Policyholders whose policies entered Non-Forfeiture Status (defined below) or entered a Fully Paid-Up Status (defined below) prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed (defined below) and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated (defined below), as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be

---

[1] The complete list of the Class Policy forms that are included within the definition of Class is attached hereto as **Appendix A**.

automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter (defined below) would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time before their signed Special Election Option (defined below) is post-marked for mailing to Genworth, or is faxed or emailed to Genworth; (4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and (5) Judge Robert E. Payne and his immediate family and staff.

32.     Class Period:  The "Class Period" means any time on or between January 1, 2013 and the date the Class Notice is mailed.

33.     Class Policy or Class Policies:  "Class Policy" or "Class Policies" means Genworth long-term care insurance policies, or, for group policies, certificate forms identified in **Appendix A** to this Settlement Agreement in force at any time during the Class Period and issued in any of the States.

34.     Court:  "Court" means the United States District Court for the Eastern District of Virginia.

35.     Fee Award:  "Fee Award" means the attorneys' fees, costs, and/or expenses approved and awarded by the Court to Class Counsel, not to exceed the amounts stated in paragraphs 64 and 65 below.

36.     Final Approval Hearing:  "Final Approval Hearing" means the hearing at or after which the Court will consider the Parties' positions and make its decision whether to finally approve the settlement as fair, reasonable, and adequate under FRCP 23(e)(2).

37.     Final Fee Award:  "Final Fee Award" means the date on which the Fee Award becomes "Final."  For purposes of this provision:  (1) if no appeal has been taken from the Fee Award, "Final" means that the time to appeal or seek any review therefrom has expired; or (2) if

there is either an appeal or review of the Fee Award, "Final" means that all available appeals or review, including any petition for rehearing or reargument, petition for rehearing *en banc*, further appeals at any level, petition for certiorari, or any other form of review, have been fully disposed.

38.    Final Order and Judgment:  "Final Order and Judgment" means the order issued by the Court finally approving the Settlement Agreement in all material respects together with the judgment entered pursuant to that order after the Final Approval Hearing.

39.    Final Settlement Date:  "Final Settlement Date" means the date on which the Final Order and Judgment becomes "Final."  For purposes of this provision:  (1) if no appeal has been taken from the Final Order and Judgment, "Final" means that the time to appeal or seek any review therefrom has expired; or (2) if any appeal or review has been taken from the Final Order and Judgment, "Final" means that all available appeals or review therefrom, including any petition for rehearing or reargument, petition for rehearing *en banc*, further appeals at any level, petition for certiorari, or any other form of review, have been finally disposed of in a manner that fully affirms the Final Order and Judgment.

40.    Flexible Benefit Option:  "Flexible Benefit Option" or "FBO" means an option that allows Class Members to adjust their coverage to a specific set of benefits to mitigate current and/or planned future rate increases and includes a new set premium rate that will not increase until at least January 1, 2025.

41.    Fully Paid-Up Status:  "Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed.  A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status (defined below).

42.     <u>Genworth Released Parties</u>:  "Genworth Released Parties" means Defendants and each of Defendants' respective affiliates, predecessors, successors, parents, subsidiaries, and, for each of the foregoing, their current, former, and future directors, officers, direct and indirect owners, members, managers, attorneys, representatives, employees, and agents.

43.     <u>Lapse or Lapsed</u>:  "Lapse" or "Lapsed" means a status whereby a policy is no longer in force because premium was not paid as required.  A Lapsed policy terminates and cannot be reinstated if it is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium.  For purposes of this Settlement Agreement, a policy in Non-Forfeiture Status (defined below) is not a Lapsed policy.

44.     <u>Non-Forfeiture Status</u>:  "Non-Forfeiture Status" means a policy status where the Policyholder (defined below) has exercised a "Non-Forfeiture Option."  "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to: an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option; the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.

45.     <u>Partnership Plan</u>:  "Partnership Plan" means the Long-Term Care Partnership Program, which is part of a federally supported, state-operated initiative that allows individuals who purchase qualified long term care insurance policies or coverage to protect a portion of assets that they would typically need to spend down prior to qualifying for Medicaid coverage.

46.     <u>Policyholder(s)</u>:  "Policyholder(s)" means the policy owner, except:

(a)      where a single policy or certificate insures both a policy or certificate owner and another insured person, "Policyholder(s)" means both the policy or certificate owner and the other insured person jointly;

(b)      where the Class Policy at issue is certificate 7042CRT, 7044CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.

47.      Publication Notice:  "Publication Notice" means the notice of the Settlement Agreement recommended by the Settlement Administrator (defined below), subject to approval from the Parties, to be published on one business day in the national editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*, no later than fifteen (15) days before the deadline for submitting Requests for Exclusion (defined below) from the Class in the form attached hereto as **Appendix F**.

48.      Quarter(s):  "Quarters" mean the following time periods within a calendar year, (where each time period is one "Quarter"):  January 1 to March 31, April 1 to June 30, July 1 to September 30, and October 1 to December 31.

49.      Stable Premium Option or SPO:  "Stable Premium Option" or "SPO" means an option that allows Class Members to adjust their coverage to a specific set of benefits to mitigate current and/or planned future rate increases and includes a new set premium rate that will not increase until at least January 1, 2024.

50.      States:  "States" means the fifty (50) States of the United States and the District of Columbia.

51.    <u>State Regulator(s)</u>:  "State Regulator(s)" means the applicable insurance regulator(s) with authority for regulating long-term care insurance products in the State(s) in which Class Members' Class Policies were issued.

52.    <u>Terminated</u>:  "Terminated" means a status whereby a Class Policy is no longer in force and is unable to be automatically reinstated by the Policyholder with payment of past due premium.  It includes, for example, a Class Policy that has Lapsed beyond the period permitted for automatic reinstatement, a Class Policy that has been cancelled, or a Class Policy (including a policy in Non-Forfeiture Status) that is no longer in force because all available benefits have been exhausted.

53.    Other capitalized terms used in this Settlement Agreement but not defined in Section II shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

### III.    TERMS OF SETTLEMENT

54.    <u>Class Certification</u>:

(a)    For purposes of settlement only, Genworth will not oppose Named Plaintiffs' motion seeking certification of the Class under FRCP 23(b)(3) and 23(e).  Genworth expressly reserves its rights to oppose class certification if the Settlement Agreement is not approved or is terminated and does not admit that a class could otherwise be certified for trial.  If this Settlement Agreement is not completed for any reason, Named Plaintiffs will not offer or use as evidence in this Action or in any other proceeding for any reason the fact that Genworth has agreed not to oppose a class for purposes of this Settlement Agreement.

(b)    Genworth and its counsel shall have the right to review and comment on the draft motion for final approval of this settlement before such motion is filed with the Court.  Plaintiffs will cooperate in good faith with Genworth and will not unreasonably refuse to accept and

implement Genworth's suggestions or changes to the draft motion.

(c)     Class Notice will be provided to the Class Members in the manner approved by the Court.  Class Members will be afforded an opportunity to object to the settlement or opt-out of the Class.

55.     <u>Consideration to Class</u>:  In consideration for the Releases (paragraph 59 below), Genworth will provide Class Members with certain disclosures and settlement options (described in paragraphs 55(a)-(h) below) as approved by the Court, subject to review and/or approval by State Regulators as set forth in paragraph 58 below.

(a)     Genworth will send a special election letter ("Special Election Letter") to all Class Members providing the disclosures and offering settlement options that will be available to each Class Member.

(b)     The disclosures in the Special Election Letter will be in the form and substance attached as **Appendix B** (the "Disclosures").  The options offered to Class Members in the Special Election Letter will include maintaining their current benefits at their existing filed rates (subject to any and all future rate increases that may be approved or otherwise permitted) or to elect from a selection of paid-up reduced benefit options and/or reduced benefit options (also subject to any and all future rate increases that may be approved or otherwise permitted) described in **Appendix C** (the "Special Election Options"), some of which also entitle Class Members to damages payments.

(c)     Each Class Member may elect only one Special Election Option per Class Policy and, where a Class Policy insures a Class Member and another insured person (whether the other insured person is a Class Member or not), both the Class Member and the other insured person shall sign the form indicating their mutual choice of a Special Election Option.

(d)     A template of the Special Election Letter, which will be customized for each Class Member's circumstances, is attached as **Appendix D**.  Customization includes situations where not all Special Election Options will be offered to each Class Member, as described in paragraphs 55(e)-(g) below.

(e)     The specific Special Election Options offered to each Class Member will differ because they will be subject to:  (i) the availability of those options based on each Class Member's current policy terms and benefits, (ii) whether the election of the option would result in the loss of Partnership Plan status for Class Policies issued in California, Connecticut, Indiana or New York ("Restrictive Partnership States"), and (iii) any State Regulator's review and input as described in paragraph 58 below.  No Class Member shall be eligible to elect a Special Election Option that increases the amount of their current annual premium.

(f)     The Special Election Options available to Class Members will be based on the Class Member's policy status and/or benefits at the time he or she makes an election, if any. Thus, in some instances where the Class Member's policy status and/or benefits change between the time his/her Special Election Letter is generated and the time the Class Member makes an election, the Special Election Options available to a Class Member may differ from what is reflected in his or her Special Election Letter.

(g)     The Special Election Option described in **Appendix C**, I.B.2 will only be available for Class Policies regulated by States that have specifically approved the availability of 1% compound BIO.

(h)     A Class Member can only elect available Special Election Options while the Class Member's policy is in force.  If, before electing a Special Election Option, a Class Member's policy Lapses and is outside any period Genworth allows for the policy to be automatically

reinstated with payment of past due premiums, or the policy otherwise Terminates, then Special

Election Options will not be available to that Class Member; if a Class Member's policy Lapses

but is still in the period where Genworth allows for the policy to be automatically reinstated by

paying any past-due premium, then the past due premium must be paid before the Class Member

can elect a Special Election Option.

56.     Mailing of the Special Election Letter(s):

(a)     The Special Election Letter shall be a mailing separate from the Class Notice.

(b)     The Special Election Letter shall be sent after the Final Settlement Date and is

subject to paragraph 58 below.

(c)     The Special Election Letter will be sent after GLIC and GLICNY have had

sufficient time to properly prepare their administration systems for the mailing, processing, and

servicing of Special Election Letters and elections, after the Final Settlement Date.

(d)     Once the preparation of the administration systems is complete ("Systems

Administration Completion") and subject to any ongoing communications with any State

Regulator(s) as discussed in paragraph 58, Special Election Letters will be mailed approximately

six (6) to nine (9) months before each Class Member's next billing anniversary date for his or her

Class Policy following Systems Administration Completion.

(e)     Genworth shall have the option to mail additional letters to Class Members,

approximately thirty (30) days and approximately sixty (60) days after the mailing of the Special

Election Letter, for the purpose of reminding Class Members that they may respond to their

Special Election Letters.

57.     Return of the Special Election Letter(s):

(a)     Class Members are not required to choose any Special Election Option and can

14

leave their current Class Policy benefits unchanged, in which case they do not have to complete or return a special election form. Class Members who wish to select a Special Election Option shall have ninety (90) calendar days after the date the Special Election Letter is mailed to choose a Special Election Option by sending Genworth a completed form indicating their selection of a Special Election Option postmarked for return mailing by that date or, in the alternative, by fax or email received by Genworth by that date.

(b)     Class Members who do not communicate a Special Election Option selection to Genworth (by form postmarked for return mailing or, in the alternative, by fax or email) within ninety (90) calendar days forever waive their ability to select a Special Election Option and shall still be members of the Class for purposes of this Settlement Agreement, including, but not limited to, the Released Claims (paragraph 59 below). However, Genworth may, at its option, process late Special Election Option forms. Genworth shall have no obligation to audit postmark return dates.

(c)     Once a Class Member communicates a Special Election Option selection to Genworth, he or she will not be allowed to select any other Special Election Option or reverse or change his or her decision.

(d)     If a Class Member elects a Special Election Option for which he or she is not eligible at the time of the election (*see, e.g.*, ¶ 55(f)), Genworth may provide that Class Member an additional ninety (90) days to make an election from available Special Election Options.

58.     <u>State Regulatory Review and Conflict Carve-Out</u>:

(a)     Genworth shall provide the form of the Special Election Letter preliminarily approved by the Court to each State's State Regulator for review prior to a Special Election Letter being sent to any Class Members whose Class Policy was issued in that State. This

submission may, at Genworth's option, be a separate submission from the requirements of 28 U.S.C. § 1715(b).

(b)   In connection with preliminary approval, the Parties asked the Court to set a date by which Genworth will report to the Court any concerns or proposed changes to the Disclosures, the Special Election Options, or the Special Election Letter received from State Regulators, if any.

(c)   If any State Regulator raises a concern about, objects to, or prohibits all or part of the Special Election Letter or the Disclosures, Genworth, in consultation with Class Counsel, shall have a right to decide:  (1) whether to not send the Special Election Letter; and/or (2) whether to modify the Special Election Letter for Class Members whose policies were issued in such State to meet such State Regulator's concerns.

(d)   If any State Regulator objects to or prohibits all or part of a particular Special Election Option being offered to Class Members whose Class Policies were issued in that State, Genworth, in consultation with Class Counsel, shall have the right to modify the Special Election Letter and/or Special Election Option in response to the State Regulator's stated concern or objection.

(e)   To allow Genworth to conclude its communications with State Regulator(s), Genworth shall also have the option to delay the mailing of the Special Election Letters to Class Members whose Class Policies were issued in any State(s) whose State Regulator(s) has/have raised a concern about or objected to all or part of the Special Election Letter or Disclosures or whose State Regulator(s) have not responded to the Special Election Letter or Disclosures.

(f)   Genworth and Class Counsel shall confer about and make good faith efforts to agree upon any modification to the Disclosures, the Special Election Letter or the Special

16

Election Options before final resolution of those issues with any State Regulator(s), but Genworth will have sole discretion to agree to any such resolution with any State Regulator.

(g)      Only in the event that a State Regulator objects to or prevents Genworth from providing the substance of the Disclosures contained in **Appendix B** in any form and objects to or refuses to allow Genworth to offer any form of the Special Election Options, then Genworth, in consultation with Class Counsel, will follow such direction from the State Regulator, not send the Special Election Letter, and instead offer the impacted Class Members an election to obtain:

(i)      For Class Members whose policies are still in premium paying status, a $100 credit against future Class Policy premiums; or

(ii)      For Class Members whose Class Policies are in Non-Forfeiture Status only, a $100 one-time addition to the Class Member's Non-Forfeiture Option benefit pool.

59.      <u>Release by Named Plaintiffs and the Class:</u>

(a)      Upon the Final Settlement Date, each Class Member, as well as each Named Plaintiff, forever releases and discharges the Genworth Released Parties of and from any and all known or unknown, contingent or absolute, matured or unmatured, suspected or unsuspected, disclosed or undisclosed, foreseeable or unforeseeable, liquidated or unliquidated, existing or arising in the future, and accrued or unaccrued claims, demands, interest, penalties, fines, and causes of action, that the Named Plaintiffs and Class Members may have from the beginning of time through and including the Final Settlement Date that relate to claims alleged, or that have a reasonable connection with any matter of fact set forth in the Action including, but not limited to, any claims relating to rate increases on Class Policies prior to the Final Settlement Date.  This release specifically includes any legal or equitable claim arising from or related to any election or policy change made or not made by any Class Members to his or her policy benefits prior to

17

the Final Settlement Date.  Named Plaintiffs and Class Members, subject to the exception set

forth below, will further release the Genworth Released Parties and Class Counsel from any

claims relating to or arising out of the Disclosures or the Special Election Letters the Class

Members are provided as part of the Settlement Agreement, including (but not limited to) claims

specifically relating to any alleged omissions in the Disclosures or the Special Election Letters or

to any decision, or non-decision, to maintain, modify, or give up coverage based on the

Disclosures, the Special Election Letters, or the Special Election Options offered.  Collectively,

the claims described in this paragraph shall be referred to as the "Released Claims."  A claim that

a Class Member was harmed by an express and intentional misrepresentation:  in the completed

portion of the Disclosures that currently is bracketed in the template Special Election Letter

appended as **Appendix D** to this Settlement Agreement, in the completed portions of the Special

Election Options that are made available to that Class Member that currently are bracketed in the

template Special Election Letter, or by the Genworth Released Parties or Class Counsel about the

Disclosures, shall not be a Released Claim.  A Class Member may pursue such a claim in this

Court via complaint or petition within three years of the date the Class Member makes a Special

Election or three years of the deadline for the Class Member to make a Special Election,

whichever is earlier, provided that, before filing any such claim, the Class Member shall first

notify the Parties of the basis for the claim and provide them with a reasonable opportunity to

investigate and, if appropriate, remedy the alleged harm.

(b)     The Released Claims shall not include a Class Member's claim for benefits under

his or her Class Policy consistent with his or her policy coverage, nor shall it include a Class

Member's challenge or appeal of Genworth's denial of benefits under his or her Class Policy.

(c)     Upon the Final Settlement Date, each Class Member and each Named Plaintiff expressly waives and releases any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each Named Plaintiff and each Class Member similarly waives any and all rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.  Each Named Plaintiff and each Class Member may hereafter discover facts other than or different from those which he or she knows or believes to be true with respect to the Released Claims, but each Named Plaintiff and each Class Member hereby expressly waives and fully, finally, and forever settles and releases, upon the Final Settlement Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

60.     <u>Covenant Not to Sue by Named Plaintiffs and the Class</u>:  Class Members and Named Plaintiffs covenant not to sue, directly or indirectly, any of the Genworth Released Parties or Class Counsel with respect to any of the Released Claims.  Class Members and Named Plaintiffs shall forever be barred and enjoined from directly or indirectly filing, commencing, instituting, prosecuting, maintaining, joining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, or before any tribunal or administrative body (including any State Regulator, State Department of Insurance or other

regulatory entity) whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any of the Released Claims.  If any Class Member or Named Plaintiff breaches this covenant not to sue, the Genworth Released Parties or Class Counsel, as the case may be, shall be entitled to all damages resulting from that breach including but not limited to attorneys' fees and costs in defending such an action or enforcing the covenant not to sue.

61.    Release by Genworth:  Upon the Final Settlement Date, Genworth shall release and discharge Named Plaintiffs, the Class, and Class Counsel from any and all claims that arise out of or relate to the institution, prosecution, or settlement of the claims against Genworth in the Action, except for claims relating to the breach or enforcement of this Settlement Agreement.

62.    No Admission of Liability:  This Settlement Agreement is a compromise of disputed claims and the consideration provided for herein is not to be construed as an admission on the part of any Party hereto.  Genworth denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit and further denies, for any purpose other than that of settling the Action, that this lawsuit is appropriate for class treatment.  Genworth shall not make any allegation that this lawsuit was filed in bad faith or was frivolous.  Named Plaintiffs and Genworth are settling this case voluntarily after consultation with competent legal counsel. Throughout the course of the litigation, the Parties and their counsel complied with the provisions of FRCP 11.  This Settlement Agreement shall not be used for any purpose, including as evidence by any of the Parties in any judicial, administrative, arbitration, or other proceeding, except for this current proceeding and for the purpose of enforcing the rights and obligations created hereby.

63.    <u>Potential Tax and Partnership Plan Consequences</u>:  Payments made in connection with this Settlement Agreement, any Special Election Option, and/or any decision by a Class Members to modify his or her benefits may have tax consequences and/or consequences on his or her Partnership Plan status, for which he or she is solely responsible.

(a)    Each Class Member is solely responsible for assessing his or her potential tax and Partnership Plan consequences, and each Class Member's tax obligation is the sole responsibility of the Class Member.

(b)    Neither Genworth nor Class Counsel shall be responsible or liable for any tax, Partnership Plan, or any other financial consequences of any Special Election Option selected by any Class Members.

(c)    Neither Genworth nor Class Counsel express any opinion concerning tax or economic consequences of the settlement or receipt by Class Members of any money as a result of the settlement, and make no warranties or other assurances regarding tax or economic consequences.

(d)    Genworth reserves the right to report to federal or State tax authorities, including the IRS, payments made in connection with this Settlement Agreement and the Special Election Options.

64.    <u>Payment of Class Counsel's Attorneys' Fees</u>:  If approved by the Court, Genworth shall pay Class Counsel's reasonable attorneys' fees and litigation expenses, without reducing the benefits to any Class Members, as follows:

(a)    A payment equivalent to 15% or, if the Court orders a lower percentage to be paid to Class Counsel as attorneys' fees, the lower percentage, of the damages payments paid to Class Members who elect any of the following Special Election Options described in **Appendix C**:

I.A.1, I.B.1–5, II.1–2, and III (the "Contingency Fees").  The amount of the Contingency Fees shall be no greater than $13,000,000.00.

(b)     Payments for Contingency Fees shall be calculated within twenty-one (21) calendar days of the end of the Quarter and paid within fourteen (14) calendar days of that calculation.

65.     Payment of Class Counsel's Reasonable Expenses:

(a)     Genworth shall pay Class Counsel's reasonable litigation expenses approved by the Court in an amount not to exceed $50,000.

(b)     None of the expenses shall be deducted from the payments to Class Members.

(c)     These payments shall be made within seven (7) calendar days of the Final Settlement Date, or the Final Fee Award, whichever is later.

66.     Named Plaintiffs' Service Payments:

(a)     Genworth will pay within seven (7) calendar days of the Final Settlement Date a service payment to each of the Named Plaintiffs (or if the Named Plaintiff passes away at any time following the execution of this Settlement Agreement, to Named Plaintiff's estate) in an amount awarded by the Court, not to exceed $15,000.00 to each Named Plaintiff, and the total cumulative award to all five Named Plaintiffs shall not exceed $75,000.00.

(b)     None of these service payments shall be deducted from the payments to Class Members.

67.     Non-Disparagement, Confidentiality, and Public Statements:

(a)     Named Plaintiffs, Genworth, Class Counsel, and Genworth's counsel shall not make any statements, orally or in writing, to third parties that disparage, are inimical to, or damage the reputation of the Parties.  Disparaging remarks, comments, or statements are those

that impugn the character, honesty, integrity, morality, business acumen, motives or abilities of the Parties.

(b)     Named Plaintiffs, Genworth, Class Counsel, and Genworth's counsel shall not make public statements regarding the Settlement Agreement at any time except as required by law or with the prior approval of the other Party except that Class Counsel, Genworth, and Genworth's counsel may make any statements necessary to communicate with Class Members in response to questions they raise after receipt of Class Notice or the Special Election Letter, including, but not limited to, through a call center or toll-free number by Genworth, Class Counsel, or the Settlement Administrator and/or website maintained by Genworth or the Settlement Administrator, and Genworth may make appropriate or necessary statements to their investors, regulators, and in connection with regulatory or required reports and filings.

(c)     Named Plaintiffs and Class Counsel shall not advertise, promote, or share news or information concerning or related to the Settlement Agreement at any time with the media or others who are not necessary to effectuate the terms of the Settlement Agreement, except that Class Counsel may, subject to Genworth's prior approval, publish the Settlement Agreement on their law firms' respective websites along with a brief, accurate statement regarding the Settlement Agreement and a link to the settlement website for additional information.

(d)     If, at any time, either Genworth, Named Plaintiffs, Class Counsel, or the Settlement Administrator (defined below) receives any subpoena or other request for information or documents concerning this settlement or Settlement Agreement, the recipient of such subpoena or request shall provide within five (5) calendar days of receipt of such subpoena or request, notice to Class Counsel and Genworth's counsel and shall not disclose or produce any information or documents to the subpoenaing or requesting person or entity unless (i) Class

23

Counsel and Genworth's counsel have approved disclosure or production, (ii) Class Counsel, Genworth, and Genworth's counsel have not objected to the subpoena or request within the applicable time to do so, or (iii) the Court or other tribunal with jurisdiction over the subpoena or request has authorized or directed production of such information or documents.

68.     Settlement Administrator:  Subject to the Court's approval, the Parties shall utilize Epiq Class Action & Mass Tort Solutions, Inc., a neutral third party, as the "Settlement Administrator."  The Settlement Administrator shall be responsible for mailing Class Notices (as further described below), maintaining a settlement website (as to which Genworth and Named Plaintiffs shall agree in good faith on form and substance), receiving and reviewing Requests for Exclusion (defined below), providing regular reports on the administration of the settlement to Class Counsel and Genworth's counsel, and auditing Special Election Options pursuant to paragraph 75 below.  Genworth shall pay all costs and expenses relating to the notice and settlement administration plan approved by the Court.

69.     Class Notice:

(a)     Within sixty (60) calendar days after the Court grants approval to provide the Class Notice, Genworth shall provide to the Settlement Administrator a list of all known Class Members with each Class Member's last-known mailing address from Genworth's records (the "Class List").  Within thirty (30) calendar days of receiving the Class List from Genworth, the Settlement Administrator shall send out the Class Notice by direct mail.  There shall not be a claim form included with the Class Notice.  The Class Notice is attached as **Appendix E**.

(b)     Subject to Court approval, the Settlement Administrator shall also publish the Publication Notice (attached as **Appendix F**), which shall be at least an eighth of a page in size.

24

70.   <u>Websites</u>:

(a)   The contents of the Class Notice shall be reproduced on a website maintained by the Settlement Administrator, with the input and oversight of Genworth's counsel and Class Counsel.  The website shall include information regarding the nature of the lawsuit, a summary of the substance of the settlement, the Class definition, the procedure and time period to request exclusion from and/or object to the settlement, and the date set for the Final Approval Hearing.

(b)   Genworth may also maintain a website with information available for Class Members to consult upon receiving the Special Election Letters.  Genworth shall provide Class Counsel with an advance opportunity to review, comment, and make suggestions on the website content.  Genworth shall cooperate with and not unreasonably refuse to accept such suggestions.

71.   <u>Requests for Exclusion</u>:  Class Members must submit any requests to be excluded from the Class ("Requests for Exclusion") to the Settlement Administrator with a postmark on or before sixty (60) calendar days after mailing of the Class Notice, as described in the Class Notice.  So-called "mass" or "class" opt outs shall not be allowed.  The Settlement Administrator shall promptly provide notice to Class Counsel and Genworth's counsel of any Requests for Exclusion that it receives.

72.   <u>Termination</u>:

(a)   If more than 10% of Class Members request exclusion from the Class or State Regulators representing 10% or more of the Class Members object to the Disclosures and/or Special Election Options, Genworth shall have the right, but not the obligation, to terminate this Settlement Agreement.  Genworth may do so by giving written notice to Class Counsel within thirty (30) calendar days of the Settlement Administrator providing its final report of Requests for Exclusion to Genworth's counsel and Class Counsel.  Termination shall void all of the rights,

obligations, and Releases under this Settlement Agreement, except the provisions that are necessary to effectuate such termination.

(b)     Separately and alternatively, Genworth and/or Named Plaintiffs may terminate this Settlement Agreement if the Court or any appellate court, rejects, modifies, or denies approval of any portion of the Settlement Agreement that the terminating party in its sole judgment and discretion reasonably determines is material, except that Genworth and/or Named Plaintiffs may not terminate because of a reduction in the amount of any award of attorneys' fees, expenses, or Named Plaintiffs' service payments authorized by the Court or any appellate court. Genworth may terminate this Settlement Agreement if the Court or any appellate court awards any attorneys' fees, expenses, or Named Plaintiffs' service payment in an amount higher than that specified in this Settlement Agreement and shall not be responsible for or liable to Class Counsel or Named Plaintiffs for any such higher amount.

73.     <u>Objections</u>:  Class Members must submit any objections to the settlement in writing to the Court with a postmark on or before sixty (60) calendar days after mailing of Class Notice, as described in the Class Notice.

74.     <u>Special Election Letter and Option Questions</u>:  Genworth may respond to communications and questions from Class Members regarding the Settlement Agreement and Special Election Options.  Genworth will operate a call center and may maintain a website. Named Plaintiffs and Class Counsel agree that communications between Genworth and Class Members regarding the administration of the Settlement Agreement and the Special Election Options are expected, appropriate, and not in violation of any rules about communications with Class Members.

75.   <u>Audit by Settlement Administrator</u>:

(a)   Genworth shall process and track the Special Election Options elected by Class Members and sent by those Class Members to Genworth.

(b)   Genworth, or its designee, shall generate quarterly reports to be provided to the Settlement Administrator of Genworth's record of Class Members' election of Special Election Options in its policy administration system as follows:

(i)   Following the close of the first Quarter in which Genworth receives and records the first Class Member's Special Election Option, Genworth, or its designee, will send to the Settlement Administrator and Class Counsel a report of all elections Genworth has recorded in its policy administration system each Quarter within twenty-one (21) calendar days following the last day of that Quarter (the "Audit Report").

(ii)   The Audit Report shall collectively include, for each election, the Class Members' Class Policy number, the Special Election Option selected, the amount of any cash damages to be paid as a result of any Special Election Option selected, the amount of any paid-up benefits obtained by the election of a paid-up benefit option (*i.e.*, **Appendix C**, Option I.A.1 and I.A.2), and the date that Genworth recorded the Class Member's Special Election Option into its policy administration system.

(c)   For each Audit Report, the Settlement Administrator will select a random sample of Class Members not to exceed twenty-five (25) if the Audit Report lists one-thousand (1,000) or fewer Special Election Options and not to exceed fifty (50) if the Audit Report lists in excess of one-thousand (1,000) Special Election Options.  Collectively, the foregoing information shall be referred to as the "Audit Sample."

27

(d)     With respect to, and within twenty-one (21) calendar days of receiving the Audit Sample from the Settlement Administrator, Genworth, or its designee, will provide to the Settlement Administrator a copy of the written Special Election Options received from the selected Class Members and a spreadsheet or other document reflecting (i) the amount of any claims payments to the Class Members, (ii) the Class Member's (as billed) annual premium prior to the election of the Special Election Option, and (iii) annual premium for the Special Election Option selected.  Collectively, the foregoing information shall be referred to as the "Audit Information."

(e)     The Settlement Administrator shall, within fourteen (14) calendar days of receipt of the Audit Information, conduct an audit to determine if the Audit Information is consistent with the Audit Report and provide the results of that audit to both Genworth and Class Counsel. Collectively, the foregoing information shall be referred to as the "Audit Results."  Genworth will use good faith efforts to resolve any discrepancies identified by the Settlement Administrator's audit.

(f)     If it is determined, whether as a result of an audit or otherwise, that Genworth made an error in processing, implementing, recording or reporting any Class Member's election or the calculation of any cash damages, Genworth shall not be liable to the Class Members or to Class Counsel for any damages or other relief, provided that the error is corrected.

(g)     Any and all Audit Reports, Audit Samples, Audit Information, and/or Audit Results shall be treated as Confidential pursuant to the Protective Order in this Action.

76.     <u>Defendants' Representations</u>:

(a)     <u>Solvency</u>:  As of the date of the execution of this Agreement, GLIC and GLICNY represent and warrant that they are solvent as determined by their respective State Regulator(s).

GLIC and GLICNY further represent and warrant that, based on their respective current best estimates as of the date of the execution of this Settlement Agreement, the payment of cash damages, Contingency Fees, Class Counsel's litigation expenses, and Named Plaintiffs' service payments (the "Settlement Costs") will not cause GLIC or GLICNY to become insolvent under applicable State insurance rehabilitation, liquidation, and/or receivership laws.

(b)     Future Rate Increases:  GLIC and GLICNY represent and warrant that they will not use the Settlement Costs as part of the actuarial justification in seeking any additional future rate increases.

77.     Calculation of Deadlines:  For purposes of the calculation of any deadlines or time periods as detailed in this Settlement Agreement, "calendar days" means each day, not including the day of the act, event, or default from which a designated period of time begins to run, but including the last day of the period, unless it is a Saturday, Sunday, or U.S. federal government holiday, in which case the period runs until the end of the next day that is not a Saturday, Sunday, or U.S. federal government holiday.

78.     Enforceability:  This Settlement Agreement is fully enforceable and binding and is admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding the settlement and/or mediation confidentiality provisions that otherwise might apply under applicable law.  The prevailing Party in any civil action to enforce this Settlement Agreement may petition the court to recover costs and reasonable attorneys' fees incurred in connection with such an enforcement action or motion.  The Court shall retain jurisdiction over the Parties to enforce this Settlement Agreement and the Final Order and Judgment.

79.     Mutual Full Cooperation:  The Parties shall fully cooperate with each other and use their best efforts to accomplish the terms of this Settlement Agreement including, but not

limited to, execution of such documents and to take such other actions as may be reasonably necessary to implement the terms of this Settlement Agreement.

80. <u>No Prior Assignments</u>: The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

81. <u>Construction and Choice of Law</u>: The terms and conditions of this Settlement Agreement are the result of extensive, arms-length negotiations between the Parties, and all Parties have participated in the drafting of this Settlement Agreement and setting forth its terms, and this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or their counsel has participated in the drafting of this Settlement Agreement. The law of Virginia shall govern this Settlement Agreement.

82. <u>Modification</u>: This Settlement Agreement may not be changed, altered, or modified except in a writing signed by GLIC, GLICNY, Class Counsel, and each of the Named Plaintiffs (in their individual and representative capacities), the Parties hereto, or as ordered by the Court following a written stipulation between GLIC, GLICNY, Class Counsel, and each of the Named Plaintiffs (in their individual and representative capacities) effectuated through their counsel or the verbal stipulation of counsel for GLIC, GLICNY, Class Counsel, and each of the Named Plaintiffs (in their individual and representative capacities) in open court.

83. <u>Notice</u>: All notices provided for under this Settlement Agreement shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by delivery in person, or by an overnight delivery service or by registered or certified mail, postage pre-paid, return receipt requested, as follows:

(a)     If to the Named Plaintiffs:

> Brian D. Penny
> GOLDMAN SCARLATO & PENNY, P.C.
> 161 Washington Street, Suite 1025
> Conshohocken, PA 19428
> Telephone: (484) 342-0700
> Email: penny@lawgsp.com

> Stuart A. Davidson
> ROBBINS GELLER RUDMAN & DOWD LLP
> 120 East Palmetto Park Road, Suite 500
> Boca Raton, FL. 33432
> Telephone: (561) 750-3000
> Email: sdavidson@rgrdlaw.com

(b)     If to Genworth:

> Genworth Life Insurance Company
> Attention: General Counsel
> 6620 W. Broad Street
> Richmond, VA 23230

> with a copy (which shall not constitute notice) to:

> Michael Duvall
> DENTONS US LLP
> 601 South Figueroa Street Suite 2500
> Los Angeles, CA 90017
> Telephone: (213) 892-2818
> Email: michael.duvall@dentons.com

> Brian Pumphrey
> MCGUIREWOODS LLP
> Gateway Plaza
> 800 East Canal Street
> Richmond, VA 23219-3916
> Telephone: (804) 775-7745
> Email: bpumphrey@mcguirewoods.com

84.     <u>Entire Agreement</u>:  This Settlement Agreement contains the entire agreement between the Parties relating to this lawsuit, the settlement, and the transactions contemplated herein and supersedes all prior or contemporaneous agreements, understandings, representations,

31

and statements, whether oral or written, and whether by a Party or such Party's counsel, related to the lawsuit or the settlement.

85.    Counterparts:  This Settlement Agreement may be executed in counterparts, which, when taken together with other signed counterparts, shall constitute one fully executed agreement that shall be binding upon and effective as to all Parties.  Photographic, facsimile, electronically signed, and scanned PDF copies of signatures shall have the same efficacy of original signatures and may be used for any purpose consistent with this Settlement Agreement.

86.    Representations:  By signing this Settlement Agreement, each of the Parties expressly represents and warrants as follows:

(a)    That it has read the foregoing Settlement Agreement, knows and understands the contents thereof, and has entered into this Settlement Agreement voluntarily and of its own volition.

(b)    That, in entering into this Settlement Agreement, it has not relied on any representation, warranty, or promise made by any person, except for those expressly set forth herein.

(c)    That, in entering into this Agreement, it has been advised of its meaning and consequences by its legal counsel.

(d)    That it, or the person executing this Agreement on its behalf, has full power, capacity and authority to execute and deliver this Agreement.

[signatures on next page]

Agreed to by:

**FRED HANEY**

_____ Date: 11/30/2022
Fred Haney, Named Plaintiff in His Individual and Representative Capacities

**MARSHA MERRILL**

_____ Date: 11/30/2022
Marsha Merrill, Named Plaintiff in Her Individual and Representative Capacities

**SYLVIA RAUSCH**

_____ Date: 11/30/2022
Sylvia Rausch, Named Plaintiff in Her Individual and Representative Capacities

**STEPHEN SWENSON**

_____ Date: 11/30/2022
Stephen Swenson, Named Plaintiff in His Individual and Representative Capacities

**ALAN WOOTEN**

_____ Date: 11/30/2022
Alan Wooten, Named Plaintiff in His Individual and Representative Capacities

**GENWORTH LIFE INSURANCE COMPANY**

_____ Date: _____
Genworth Life Insurance Company

By: Brian Haendiges

Its: President and CEO

**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

_____ Date: _____
Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President

Agreed to by:

**FRED HANEY**

_____ Date: _____
Fred Haney, Named Plaintiff in His Individual and Representative Capacities

**MARSHA MERRILL**

_____ Date: _____
Marsha Merrill, Named Plaintiff in Her Individual and Representative Capacities

**SYLVIA RAUSCH**

_____ Date: _____
Sylvia Rausch, Named Plaintiff in Her Individual and Representative Capacities

**STEPHEN SWENSON**

_____ Date: _____
Stephen Swenson, Named Plaintiff in His Individual and Representative Capacities

**ALAN WOOTEN**

_____ Date: _____
Alan Wooten, Named Plaintiff in His Individual and Representative Capacities

**GENWORTH LIFE INSURANCE COMPANY**

*Brian Haendiges* _____ Date: _____
Genworth Life Insurance Company

By: Brian Haendiges

Its: President and CEO

**GENWORTH LIFE INSURANCE COMPANY OF NEW YORK**

*Brian Haendiges* _____ Date: _____
Genworth Life Insurance Company of New York

By: Brian Haendiges

Its: Senior Vice President

**GOLDMAN SCARLATO & PENNY, P.C.**

_Brian Penny_                                            Date:   11/30/2022
—77E00C9FB9824DC…

By (Print Name): _____
            Brian Penny

_Attorneys for Named Plaintiffs and the Putative Class_

**ROBBINS GELLER RUDMAN & DOWD LLP**

_Stuart Davidson_                                        Date:   11/30/2022
—007FFCA1CB26473…

By (Print Name): _____
            Stuart Davidson

_Attorneys for Named Plaintiffs and the Putative Class_

**BERGER MONTAGUE P.C.**

_Glen Abramson_                                          Date:   11/30/2022
—BDEFCDA01A66416…

By (Print Name): _____
            Glen Abramson

_Attorneys for Named Plaintiffs and the Putative Class_

**PHELAN PETTY PLC**

_Jonathan Petty_                                         Date:   11/30/2022
—FE6D593AC979472…

By (Print Name): _____
            Jonathan Petty

_Attorneys for Named Plaintiffs and the Putative Class_

**DENTONS US LLP**

_____                  Date:   _____

By (Print Name): _____

_Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York_

**GOLDMAN SCARLATO & PENNY, P.C.**

_____          Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**ROBBINS GELLER RUDMAN & DOWD LLP**

_____          Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**BERGER MONTAGUE P.C.**

_____          Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**PHELAN PETTY PLC**

_____          Date: _____

By (Print Name): _____

_Attorneys for Named Plaintiffs and the Putative Class_

**DENTONS US LLP**

_____          Date:   November 30, 2022

By (Print Name):   Michael J. Duvall

_Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York_

**MCGUIREWOODS LLP**

_____    Date: ___11/30/00___

By (Print Name): ___Brian E. Pumphrey___

*Attorneys for Defendants Genworth Life Insurance Company and Genworth Life Insurance Company of New York*

# APPENDIX A

## CLASS POLICIES

**Choice 2 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL |
| | 7042CRT |
| | 7043AL |
| | 7043CRT |
| Alaska | 7042AK |
| | 7044AK |
| Arizona | 7042AZ |
| | 7044AZ |
| Arkansas | 7042AR |
| | 7044AR |
| Colorado | 7042CO |
| | 7044CO |
| Connecticut | 7042CT |
| | 7044CT |
| Connecticut Partnership | 7043CT |
| | 7045CT |
| D. C. | 7042DC |
| | 7044DC |
| Delaware | 7042DE |
| | 7044DE |
| Florida | 7042FL |
| | 7044FL |
| Georgia | 7042GA |
| | 7044GA |
| Hawaii | 7042HI |
| | 7044HI |
| Idaho | 7042ID |
| | 7044ID |
| Illinois | 7042IL |
| | 7044IL |
| Indiana | 7042IN |
| | 7044IN |
| Indiana Partnership | 7043IN |
| | 7045IN |
| Iowa | 7042IA |

|  | 7044IA |
| Kansas | 7042KS |
|  | 7044KS |
| Kentucky | 7042KY |
|  | 7044KY |
| Louisiana | 7042LA |
|  | 7044LA |
| Maine | 7042ME |
|  | 7044ME |
| Maryland | 7042MD |
|  | 7044MD |
| Massachusetts | 7042MA |
|  | 7044MA |
| Michigan | 7042MI |
|  | 7044MI |
| Minnesota | 7042MN |
|  | 7044MN |
| Mississippi | 7042MS |
|  | 7044MS |
| Missouri | 7042MO |
|  | 7044MO |
| Montana | 7042MT |
|  | 7044MT |
| Nebraska | 7042NE |
|  | 7044NE |
| Nevada | 7042NV |
|  | 7044NV |
| New Hampshire | 7042NH |
|  | 7044NH |
| New Jersey | 7042NJ |
|  | 7044NJ |
| New Mexico | 7042NM |
|  | 7044NM |
| New York | 51012 |
|  | 51014 |
| New York Partnership | 51013 |
|  | 51015 |
| North Carolina | 7042NC |
|  | 7044NC |
| North Dakota | 7042ND |
|  | 7044ND |
| Ohio | 7042OH |
|  | 7044OH |

| Oklahoma | 7042OK |
|---|---|
| | 7044OK |
| Oregon | 7042OR |
| | 7044OR |
| Pennsylvania | 7042PA |
| | 7044PA |
| Rhode Island | 7042RI |
| | 7044RI |
| South Carolina | 7042SC |
| | 7044SC |
| South Dakota | 7042SD |
| | 7044SD |
| Tennessee | 7042TN |
| | 7044TN |
| Texas | 7042TX |
| | 7044TX |
| Utah | 7042UT |
| | 7044UT |
| Vermont | 7042VT |
| | 7044VT |
| Virginia | 7042VA |
| | 7044VA |
| Washington | 7042WA |
| | 7044WA |
| West Virginia | 7042WV |
| | 7044WV |
| Wisconsin | 7042WI |
| | 7044WI |
| Wyoming | 7042WY |
| | 7044WY |

**Choice 2.1 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL REV |
| | 7044AL Rev |
| Alaska | 7042AK REV |
| | 7044AK Rev |
| Arizona | 7042AZ REV |
| | 7044AZ Rev |
| Arkansas | 7042AR REV |
| | 7044AR Rev |
| Colorado | 7042CO REV |
| | 7044CO Rev |
| D.C. | 7042DC REV |
| | 7044DC Rev |
| Delaware | 7042DE REV |
| | 7044DE Rev |
| Florida | 7042FL REV |
| | 7044FL Rev |
| Georgia | 7042GA REV |
| | 7044GA Rev |
| Hawaii | 7042HI REV |
| | 7044HI Rev |
| Idaho | 7042ID REV |
| | 7044ID Rev |
| Illinois | 7042IL REV |
| | 7044IL Rev |
| Indiana | 7042IN REV |
| | 7044IN Rev |
| Indiana Partnership | 7043IN REV |
| | 7045IN Rev |
| Iowa | 7042IA |
| | 7044IA Rev |
| Kansas | 7042KS |
| | 7044KS Rev |
| Kentucky | 7042KY REV |
| | 7044KY Rev |
| Louisiana | 7042LA REV |
| | 7044LA Rev |

| | |
|---|---|
| Maine | 7042ME REV |
| | 7044ME Rev |
| Maryland | 7042MD REV |
| | 7044MD Rev |
| Massachusetts | 7042MA REV |
| | 7044MA Rev |
| Michigan | 7042MI REV |
| | 7044MI Rev |
| Minnesota | 7042MN REV |
| | 7044MN Rev |
| Mississippi | 7042MS REV |
| | 7044MS Rev |
| Missouri | 7042MO REV |
| | 7044MO Rev |
| Montana | 7042MT REV |
| | 7044MT Rev |
| Nebraska | 7042NE REV |
| | 7044NE Rev |
| Nevada | 7042NV REV |
| | 7044NV Rev |
| New Hampshire | 7042NH REV |
| | 7044NH Rev |
| New Jersey | 7042NJ REV |
| | 7044NJ Rev |
| New Mexico | 7042NM REV |
| | 7044NM Rev |
| New York | 51012 REV |
| | 51014 Rev |
| New York Partnership | 51015 REV |
| North Carolina | 7042NC REV |
| | 7044NC Rev |
| North Dakota | 7042ND REV |
| | 7044ND Rev |
| Ohio | 7042OH REV |
| | 7044OH Rev |
| Oklahoma | 7042OK REV |
| | 7044OK Rev |
| Oregon | 7042OR REV |
| | 7044OR Rev |

| | |
|---|---|
| Pennsylvania | 7042PA REV |
| | 7044PA Rev |
| Rhode Island | 7042RI REV |
| | 7044RI Rev |
| South Carolina | 7042SC REV |
| | 7044SC Rev |
| South Dakota | 7042SD REV |
| | 7044SD Rev |
| Tennessee | 7042TN REV |
| | 7044TN Rev |
| Texas | 7042TX REV |
| | 7044 TX Rev |
| Utah | 7042UT REV |
| | 7044UT Rev |
| Vermont | 7042VT REV |
| | 7044VT Rev |
| Virginia | 7042VA REV |
| | 7044VA Rev |
| Washington | 7042WA REV |
| | 7044WA Rev |
| West Virginia | 7042WV REV |
| | 7044WV Rev |
| Wisconsin | 7042WI REV |
| | 7044WI Rev |
| Wyoming | 7042WY REV |
| | 7044WY Rev |

**California CADE/Reprice/Unbundled**

| State | Policy/Certificate Form |
|---|---|
| California, CA Reprice & CA Unbundled | 7035AX REV |
| California, CA Discount Enhancement (CADE) | 7035AX REV 2009 |
| California Partnership | 7037C REV |
| California Partnership, CAP Unbundled | 7037C REV 2 |
| California Partnership, CAP CADE | 7037C REV 2009 |

# APPENDIX B

## DISCLOSURES

### [Genworth Life Insurance Company's ("GLIC's")] [Genworth Life Insurance Company of New York's ("GLICNY's")] Plans for Significant Additional Future Rate Increases

As part of the *Haney* class action settlement, we are providing additional information on our current plans to seek future rate increases on your policy and policies like yours to assist you in evaluating which of the elections best meets your needs going forward.  **We plan to seek rate increases in most States over the next few years, and [we plan to seek cumulative rate increases of: (1) approximately [%] on policies with lifetime benefits and an Inflation Benefit (other than 1% compound), (2) approximately [%] on policies with lifetime benefits and 1% compound or no Inflation Benefit, (3) approximately [%] on policies with limited benefits and an Inflation Benefit (other than 1% compound), and (4) approximately [%] on policies with limited benefits and 1% compound or no Inflation Benefit in the State where your policy was issued.] <Policies in a category for which no increases are planned but are planned in other categories> [[We do not have immediate plans to seek premium rate increases on Your policy, though future increases are possible.]** *or* [While we do not have immediate plans to seek rate increases on your policy and policies like yours [that previously elected a [Stable Premium Option] [Flexible Benefit Option]] in the State where your policy was issued, future premium increases are possible [after the expiration of your premium rate guarantee period.]]  Future rate increases are important to our ability to pay future claims.  The inability to obtain future rate increases may impair our ability to do so.

As explained further below, it is possible the actual rate increases we seek will be larger or more numerous than currently planned.  As you review your election options, you should

know that [A.M. Best, a global credit rating agency focused on evaluating the claims paying ability of insurance companies currently rates [GLIC's] [GLICNY's] financial strength as C++, indicating A.M. Best's view that [GLIC] [GLICNY] has a "marginal ability to meet [its] ongoing insurance obligations."]

These planned rate increases will only take effect as permitted by applicable State insurance regulators.  Based on our experience, we expect that most States will continue to grant some portion or all of the requested rate increases.  However, some States may not grant all or a portion of a requested rate increase and some cap the allowable annual increase on policies issued in their States.  In States that do not grant the full increases requested, our current plan is to continue to file for rate increases, which may exceed the full amount of our original request.  [Again, these rate increases will not affect your policy as your policy is fully paid-up and no more premiums are due.]

<if future rate increases planned> [Importantly, if either the performance of policies and/or economic conditions differ from our projections, our requested rate increases may be higher or lower than our current plans or we may also seek additional future rate increases which are not contemplated in our current plans.]

**APPENDIX C**

**SPECIAL ELECTION OPTIONS**

Below are Special Election Options pursuant to paragraph 55(b) of the Settlement Agreement.  Pursuant to paragraph 55(h) of the Settlement Agreement, Special Election Options are only available to Class Members whose policies are in force when the Special Election Option is elected.  To the extent that any State Regulator objects to one or more of the options set forth below, that option will not be made available to Class Members whose policies are regulated by that State.

**I.     Special Election Options For Class Members With Policies That Are Not In Non-Forfeiture Status**

Class Members who have policies that are **not** in Non-Forfeiture Status, excluding Class Members whose level of benefits are below the level of benefits available in the defined option, will receive the following Special Election Options:

**A.  Paid-Up Benefit Options**

1.  A settlement option consisting of two components: **(a)** a paid-up benefit equivalent to 100% of the Class Member's paid in premiums less $10,000 and less claims paid over the lifetime of the policy, and **(b)** a damages payment of $10,000.  The total paid-up benefit amount available under this option shall not exceed the Class Member's current, actual lifetime maximum at the time his or her election is processed, less the Class Member's damages payment under this option.

2.  A settlement option consisting of a paid-up benefit option equivalent to **1.5 times** the difference between the Class Member's paid-in premiums to date less claims paid to the Class Member to date.  The total paid-up benefit amount available under this option is capped at the actual lifetime maximum provided for under the electing Class Member's policy.  This option will **not** include any damages payment.

**B. Reduced Benefit Options ("RBOs")[2]**

Class Members who currently have in force policies, ***excluding*** (1) Class Members who previously elected a SPO, or FBO, and/or (2) Class Members whose level of benefits are below the level of benefits available in the defined option, will have the following options:

1. For Class Members with a Benefit Inflation Option ("BIO"), a settlement option consisting of two components: **(a)** a change in the Class Member's policy benefits that removes BIO with a reduction of their Daily/Monthly Benefit Amount ("D/M BA") to their original D/M BA (*i.e.*, the D/M BA that he or she had prior to any BIO increases)[3] for a reduced annual premium, and **(b)** a damages payment of $6,000.

2. For Class Members with BIO whose policies are regulated by States that have approved 1% compound BIO, a settlement option consisting of two components: **(a)** a change in the Class Member's policy benefits that reduces his/her BIO benefit to 1% compound inflation and recalculates his/her D/M BA by applying 1% compound inflation to his/her original benefit amount,[4] and **(b)** a damages payment of $6,000.

3. A settlement option consisting of two components: **(a)** a change in the Class Member's policy benefits that removes BIO (for those Class Members who have BIO), retains the Class Member's D/M BA, and for Class Members with a benefit period that is greater than three (3) years (four (4) years for shared policies), reduces the existing benefit period to three (3) years (four (4) years for Class Members with shared policies), and **(b)** a damages payment of $6,000.

---

[2] RBOs may be available to Class Members with Partnership Plans, subject to all other requirements, even if those options may result in the loss of Partnership Status.  However, Reduced Benefit Options may not be available to Partnership Plans issued in California, Connecticut, Indiana, or New York ("Restrictive Partnership States") if those options may result in the loss of Partnership Status.

[3] In some cases, Class Members may have made changes to their policies resulting in a recalculated original D/M BA, in which case, the recalculated original D/M BA will be used in connection with this Special Election Option.

[4] In some cases, Class Members may have made changes to their policies resulting in a recalculated original D/M BA, in which case, the recalculated D/M BA will be used in connection with this Special Election Option.

4. For Class Members with BIO and a lifetime benefit period, a settlement option consisting of two components: **(a)** a reduction of the Class Member's existing lifetime benefit period to a six year benefit period and a reduction to his or her current D/M BA (after benefit inflation) by 25%, and **(b)** a damages payment equal to $3,000.

Class Members who currently have in force policies, ***excluding*** Class Members who previously elected a FBO, and/or Class Members whose level of benefits are below the level of benefits available in the defined option, will have the following option:

5. A settlement option consisting of two components: **(a)** a reduction of the Class Member's D/M BA by 25%, and **(b)** a damages payment of $1,200.

## II.   Special Election Options For Class Members In Fully Paid-Up Status

1. A settlement option consisting of two components: **(a)** a paid-up benefit equivalent to 100% of the Class Member's paid in premiums less $10,000 and less claims paid over the lifetime of the policy, and **(b)** a damages payment of $10,000.  The total paid-up benefit amount available under this option shall not exceed the Class Member's current, actual lifetime maximum at the time his or her election is processed less the Class Member's damages payment under this option.

2. A settlement option consisting of two components: **(a)** a reduction of the Class Member's existing benefit period to the next lowest benefit option available (in the case for Class Members in a Fully Paid-Up Status that have unlimited benefit period policies, a six (6) year benefit period) and a reduction to his or her current D/M BA (after benefit inflation) by 25%, and **(b)** a damages payment equal to $6,000.[5]

---

[5] This RBO may be available to Class Members with Partnership Plans, subject to all other requirements, even if those options may result in the loss of Partnership Status.  However, RBOs may not be available to Partnership Plans issued in Restrictive Partnership States if those options may result in the loss of Partnership Status.

**III.     Special Election Option For Class Members In Non-Forfeiture Status**

1.  Class Members who were in Non-Forfeiture Status after January 1, 2014 but prior to making an election in this settlement will be provided with an option to elect a damages payment of $1,150 and retain their current paid-up benefit.

**IV.     Special Election Options For Class Members In States That Do Not Allow The Disclosures Or Any Applicable Special Election Options To Be Provided**

To the extent that any State refuses to allow any form of the Disclosures and the Special Election Options agreed to in the underlying Agreement, the Class Members in that State will be offered:

1.  For Class Members whose policies are still in force, an option to elect a $100 credit against future Class Policy premiums.

2.  For Class Members whose Class Policies are in Non-Forfeiture Status only, an option to elect a $100 one-time credit to the Class Members' current benefit pool.

# APPENDIX D

## SPECIAL ELECTION LETTER

**TEMPLATE**

<div style="background:#2b8cc4;color:white;padding:1em;">

## IMPORTANT SETTLEMENT INFORMATION

**You could get a cash payment up to $[X.XX] and reduce or eliminate your premiums by adjusting your policy's coverage offered below.**

**To elect a Special Election Option, your response is required by [], 202[]. No response is required if you wish to maintain your policy as is.**

</div>

**Dear[Name],**

Your long term care insurance policy is part of the class action settlement in *Haney et al. v. Genworth Life Insurance Company et al.*, Case No. 3:22-CV-00055-REP pending in the United States District Court for the Eastern District of Virginia. This letter includes information about your rights under the settlement. It is not a rate increase notice.

**<if inforce with NFO >**
**[You have previously elected a paid-up option that required no further premium payments. As part of this settlement, you can elect a cash payment of $1,150, and retain your current paid-up benefit. Nothing about your current coverage will change if you elect to receive the payment.]**

**<if in Fully Paid-Up Status>**
[**Your policy is fully paid-up and requires no further premium payments**. As part of this settlement, we are making options available to you that allow you to reduce your current level of benefits in return for a damages payment. **Please keep in mind that you are not required to choose any of these options to reduce your benefits, and you may keep your policy as is and not be required to make any further premium payments**. Before making an election or deciding to keep your policy as is, we strongly encourage you to discuss the settlement options and the valuable coverage offered by your fully paid-up policy with your licensed insurance agent, financial advisor, family members, or a member of our Customer Service Team by calling [800 883.1127]].

**<if inforce, *NOT* with NFO>**
**[As a result of the settlement, we are making special settlement options available for you to reduce or eliminate future premiums in return for adjusting your policy's benefits, while still providing meaningful coverage. Most options also provide for a one-time cash payment to you. <u>You are not required to choose any of these options, and you may instead keep your policy as is</u>. Before making an election or deciding to keep your policy as is, we strongly encourage you to discuss the settlement options and the valuable coverage offered by your policy with your licensed insurance agent, financial advisor, family members, or a member of our Customer Service Team by calling [800 883.1127].]**

**<if additional increases planned>**
**[As you evaluate these choices, please be aware that as of [<span style="color:#2b8cc4">mm/dd/yyyy</span>], we plan to seek cumulative rate increases of (1) approximately [%] on policies with lifetime benefits and an Inflation Benefit (other than 1% compound), (2) approximately [%] on policies with lifetime benefits and 1% compound or no Inflation Benefit, (3) approximately [%] on policies with limited benefits and an Inflation Benefit (other than 1% compound), and (4) approximately [%] on policies with limited benefits and 1% compound or no Inflation Benefit in the State where your policy was issued. <Policies in a category for which no increases are planned but are planned in other categories> [We do not have immediate plans to seek premium rate increases on Your policy, though future increases are possible.] [Any future premium rate increase will be subject to approval by the State in which the [policy] was issued and, if approved, may be approved for less than the amount requested by Genworth. If you decide to keep your existing**

coverage, or if you decide to select a settlement option that requires you to continue paying premiums, your policy will be subject to premium rate increases in the future. Please also review the important disclosures provided as part of the settlement about our premium rate increase plans and our reasons for seeking such increases later in this letter.]

**<if no additional increases planned or SPO or FBO>**

[As you evaluate these choices, please be aware that we do not have immediate plans to seek premium rate increases on your [policy] and policies like yours <if SPO> [that have a Stable Premium Option] <if FBO> [that have a Flexible Benefit Option] in the State where your [policy] was issued, although future premium rate increases are possible <if SPO or FBO> [after the expiration of your premium rate guarantee period]. Any future premium rate increase will be subject to approval by the State in which the policy was issued and, if approved, may be approved for less than the amount requested by Genworth. If you decide to keep your existing coverage or if you decide to select a settlement option that requires you to continue paying premium, your policy may be subject to premium rate increases in the future.]

**<if Class Member has not already been notified of a new approved scheduled rate increase and one is pending and/or if a previous increase is being phased>**

[In addition to the future rate increase plans, you should also consider that a new XX% premium rate increase is scheduled to take effect on your policy on XX/XX/XXXX [and will be phased in over X years].] [You should note that future rate increase plans are in addition to any previous increase that has already taken effect and is currently being phased in over a number of years for your policy.]

**<if a paid-up option available>**
[Any future premium rate increases would not be applicable if you choose a settlement option with a reduced paid-up benefit (Option 1 [or [Option 2]].)]

Your options are outlined below and are only available to you in this settlement. These options are separate and different from any reduced benefit options that may be available in connection with a premium rate increase. As you evaluate these options, you should consider if your circumstances have changed since you purchased your policy and review the Important Information about Your Settlement Options included with this letter.

**<representative template options to be shown, if available>**

**<for Class Members with Class Policies that are not in Non-Forfeiture or Fully Paid-up Status>**
[Options 1 and 2:

Pay no more premiums and receive a reduced paid-up benefit amount, which would be available for future claim payments. **Option 1** provides a lower *basic* paid-up benefit (consisting of 100% of your paid-in premiums less $10,000 and less any claims payments made to you to date), ***plus* a one-time cash payment of $10,000**. **Option 2** includes an *enhanced* paid-up benefit equal to 1.5 times the difference between the total amount of premiums you have paid and the amount of claims payments made to you, if any. For details on these paid-up benefits, see the Important Information about your Settlement Options included with this letter. If you choose either of these paid-up benefit options, you will not be subject to any future premium payments or rate increases.]

**Options [3 – 7]**:

<span style="color:red">**<For Class Members who have not previously elected a SPO or FBO, have BIO, and whose benefits are above the level of benefits in Options [3] through [7] (Option 4 only available for policies regulated by States that have approved 1% compound BIO)>**</span>
These options provide for a **one-time cash payment** to you. They may also provide for reduced premiums in return for certain reductions to your policy's current benefits. Although your premiums and benefits will be reduced under these options, your new reduced premiums would still be subject to future rate increases.

**[Option 3]** provides a change in your policy that removes your inflation benefit and reduces your [Daily][Monthly] Benefit Amount ("[D][M]BA") to your original ("[D][M]BA (i.e., the ("[D][M]BA that you had prior to any BIO increases)[1] for a reduced annual premium, *plus* a cash payment of $6,000. **Option [4]** provides a change to your policy that reduces your BIO benefit to 1% compound inflation and recalculates your ("[D][M]BA by applying 1% compound inflation to your original benefit amount,[2] *plus* a cash payment of $6,000. **Option [5]** provides a change to your policy that removes BIO, retains your current ("[D][M]BA, and reduces your existing benefit to [three (3) years] <if shared policy> [four (4) years], *plus* a cash payment of $6,000. **Option [6]** provides a change to your policy that reduces your existing lifetime benefit period to a six year benefit period and reduces your current D/M BA (after benefit inflation) by 25%, *plus* a cash payment of $3,000. **Option [7]** provides a change to your policy that reduces your current D/M BA (after benefit inflation) by 25%, *plus* a cash payment of $1,200.**]**

<span style="color:red">**<For Class Members who have not previously elected a SPO or FBO, do not have BIO, and whose level of benefits are above the level of benefits in following defined options>**</span>
[**Option 3** provides a change to your policy that retains your current [Daily][Monthly] Benefit Amount and reduces your existing benefit to [three (3) years] <if shared policy> [four (4) years], *plus* a cash payment of $6,000. **Option [7]** provides a change to your policy that reduces your current D/M BA by 25%, *plus* a cash payment of $1,200.**]**

<span style="color:red">**<For Class Members who previously elected a SPO and/or Class Members whose level benefits are below the level of benefits in Options [1] through [6], except for Class Members with FBO Policies>**</span>
[**Option 7** will provide a reduction of your [Daily][Monthly] Benefit Amount by 25%, <if SPO> [allow you to maintain your Stable Premium Option status], *plus* a cash payment of $1,200.]

<span style="color:red">**<For Class Members in Fully Paid-Up Status>**</span>
[**Option 1** provides a *basic* paid-up benefit equivalent to 100% of your premiums paid to date, less $10,000 and less any claims payments made to you to date, if any, *plus* **a one-time cash payment of $10,000**. For details on this paid-up benefit, see the Important Information about your Settlement Options included with this letter. If you choose this option, you will remain in paid-up status and not be subject to any future premium payments or rate increases. **Option 2** provides a change to your policy that reduces your existing benefit period to <for Class Members with limited benefit period policies> [the next lowest benefit option available] <for Class Members with unlimited benefit period policies> [a six (6) year benefit period] and reduces your current [D][M]BA (after any benefit inflation) by 25%, *plus* a cash payment of $6,000.]

If you wish to choose one of the special settlement options you MUST sign and return by mail (postmarked by the return deadline), fax, or email the completed enclosed form indicating your choice by: [MONTH DAY, YEAR]. Once you send us a signed request to select a settlement option, you cannot reverse your selection. If

---

[1] If you have made changes to your policy that resulted in a recalculated original Daily Benefit Amount, the recalculated original Daily Benefit Amount will be used in connection with this Special Election Option.

[2] If you have made changes to your policy that resulted in a recalculated original Daily Benefit Amount, the recalculated original Daily Benefit Amount will be used in connection with this Special Election Option.

you want to keep your policy as is, you need not do anything. Please note that if we don't hear from you by [MONTH DAY, YEAR], your policy will stay the same and you will no longer be entitled to these special settlement options, including those that result in a payment to you.

The chart below shows how each of these options compares to your current premiums and benefits.* For additional definitions of terms in the chart, please see the included Important Information about Your Settlement Options.

| | Your Current Benefits | Option 1 Basic Reduced Paid-Up Benefit *Plus* Cash Payment | Option 2 Enhanced Reduced Paid-Up Benefit | Option 3 Remove Inflation Benefit & Revert to Original Daily/ Monthly Benefit Amount, *Plus* Cash Payment | Option 4 Reduce Inflation Benefit to 1% Compound Inflation & Recalculates Daily/Monthly Benefit Amount, *Plus* Cash Payment | Option 5 Remove Inflation Benefit & Reduce Benefit Period, *Plus* Cash Payment | Option 6 Reduce Benefit Period to 6 Years & Reduce Lifetime & Daily/ Monthly Maximums, *Plus* Cash Payment | Option 7 Reduce Daily/ Monthly (and Lifetime) Maximums, Plus Cash Payment |
|---|---|---|---|---|---|---|---|---|
| **Cash Payment** | N/A | $10,000 | None | $6,000 | $6,000 | $6,000 | $3,000 | $1,200 |
| **[Daily][Monthly] Benefit Amount**** | $[8,979.28] | $[8,979.28] | $[8,979.28] | $[5,000.00] | $[5,634.13] | $[8,979.28] | $[6,734.46] | $[6,734.46] |
| **Inflation Benefit** | [Compound [5]%] | None | None | None | Compound 1% | None | [Compound [5]%] | [Compound [5]%] |
| **Elimination Period** | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care |
| **Benefit** Period** | Lifetime | [N/A] | [N/A] | Lifetime | Lifetime | [3] years | [6] years | Lifetime |
| **Total Lifetime Benefit** | Lifetime | $[42,272] [****] | $[78,408] [****] | Lifetime | Lifetime | $[323,254] [***] | $[484,881] [***] | Lifetime |
| **[Annual Premium]** | $[4,781.25] | Pay no further premiums. | Pay no further premiums. | $[2,434.23] | $[2,614.73] | $[2,342.11] | $[2,705.58] | $[3,585.94] |

*Benefits, premiums and payment amounts in this chart are subject to confirmation and may change based on changes you make to your policy, including, for example, your receipt of any claim payments, your payment of any additional premium, or changes you make to your benefits. For more details, see the Important Information about your Settlement Options included with this letter.*

*\*\*Applicable to facility care benefits. Other benefits may also be subject to and/or based on the [Daily][Monthly] Benefit Amount.*

*\*\*\*This is the amount available to you for future claim payments. It is the Total Lifetime Benefit less past claims paid under the policy.*

*\*\*\*\*We will refund any premiums you have paid on your Class Policy that correspond to the time period after*

*your new reduced paid-up benefit becomes effective, if any. Such refunded premium will not be used to calculate your new reduced paid-up benefit, and, as a result, your actual reduced paid-up benefit may be less than the reduced paid-up benefit amount stated above.*

[Reducing benefits is an important decision that affects the amount of benefits available to you to pay for future care. This is particularly true with respect to the Paid-Up Benefit Options, which may significantly reduce available benefits.]

Settlement options are only available to you if your policy is still in force or in non-forfeiture status at the time your election is postmarked for mailing or sent to us by fax or email. If your policy lapses but is still in the period during which your policy can be automatically reinstated by paying any past-due premium, you will need to reinstate your policy by paying the past-due premium before you may select one of these options.

**We encourage you to discuss the options with your licensed insurance agent, financial advisor, family members, or a member of our Customer Service Team by calling [800.883.1127].**

# IMPORTANT SETTLEMENT INFORMATION

**[Genworth Life Insurance Company's ("GLIC's")] [Genworth Life Insurance Company of New York's ("GLICNY's")] Plans for Significant Additional Future Rate Increases**

As part of the *Haney* class action settlement, we are providing additional information on our current plans to seek future rate increases on your policy and policies like yours to assist you in evaluating which of the elections best meets your needs going forward. **We plan to seek rate increases in most States over the next few years, and [we plan to seek cumulative rate increases of: (1) approximately [%] on policies with lifetime benefits and an Inflation Benefit (other than 1% compound), (2) approximately [%] on policies with lifetime benefits and 1% compound or no Inflation Benefit, (3) approximately [%] on policies with limited benefits and an Inflation Benefit (other than 1% compound), and (4) approximately [%] on policies with limited benefits and 1% compound or no Inflation Benefit in the State where your policy was issued.] <Policies in a category for which no increases are planned but are planned in other categories> [We do not have immediate plans to seek premium rate increases on Your policy, though future increases are possible.].** *or* [While we do not have immediate plans to seek rate increases on your policy and policies like yours [that previously elected a [Stable Premium Option] [Flexible Benefit Option]] in the State where your policy was issued, future premium increases are possible [after the expiration of your premium rate guarantee period.] Future rate increases are important to our ability to pay future claims. The inability to obtain future rate increases may impair our ability to do so.

As explained further below, it is possible the actual rate increases we seek will be larger or more numerous than currently planned. As you review your election options, you should know that [A.M. Best, a global credit rating agency focused on evaluating the claims paying ability of insurance companies, currently rates [GLIC's] [GLICNY's] financial strength as C++, indicating A.M. Best's view that GLIC[NY] has a "marginal ability to meet [its] ongoing insurance obligations."]

These planned rate increases will only take effect as permitted by applicable State insurance regulators. Based on our experience, we expect that most States will continue to grant some portion or all of the requested rate increases. However, some States may not grant all or a portion of a requested rate increase and some cap the allowable annual increase on policies issued in their States. In States that do not grant the full increases requested, our current plan is to continue to file for rate increases, which may exceed the full amount of our original request. [Again, these rate increases will not affect your policy as your policy is fully paid-up and no more premiums are due.]

<if future rate increases planned> [Importantly, if either the performance of policies and/or economic conditions differ from our projections, our requested rate increases may be higher or lower than our current plans or we may also seek additional future rate increases which are not contemplated in our current plans.]

Sincerely,



**Genworth Life**
Genworth Life of New York
Administrative Office:
3100 Albert Lankford Drive
Lynchburg, VA  24501

## Important Information about Your Settlement Options

from Genworth Life Insurance Company and Genworth Life Insurance Company of New York

Page 1 of [m]

## Definitions

These are summary definitions of terms used in the accompanying *Haney* class action settlement letter, the Coverage Options Form, and this important information document. Please see your policy for complete definitions and details.

| | |
|---|---|
| **Cash Payment** | The payment you will receive as a result of selecting a special Settlement Option that provides for a cash payment. The payment arises from the class action settlement and is not a policy benefit. |
| **[Annual] Premium** | This is the amount you must pay [every year], [twice a year], [each quarter], *or* [each month] in a timely manner to keep your policy in effect. If you select a settlement option with reduced premiums, your new premium will generally take effect as of the beginning of the next policy month after we receive your signed selection. Each policy month generally begins on the same day of the month as your policy anniversary date.  Any future rate increases will be based on your new reduced premium amount. <if Policy is in a Fully Paid-up or Non-forfeiture Status> [Since your policy is paid-up [under a non-forfeiture benefit], premiums are not required and future increases will not apply to your policy.] |
| **[Daily][Monthly]Benefit Amount [(DBA)][(MBA)]** | The [daily][monthly] limit on the combined total for all benefit payments subject to the [Daily][Monthly] Benefit Amount. [It is called the "Daily Maximum" or "Daily Payment Maximum" in the policy.][It is called the "Monthly Maximum" in the policy.] |
| **Inflation Benefit** | A benefit that increases your policy's benefits each year as shown in your policy. In the policy, it is called a "Benefit Increases" provision. |
| **Insured Person** | The policyholder named in the policy schedule, and another insured person, if any, who is also named in the policy schedule. |
| **Elimination Period** | This is generally the number of days for which each Insured Person must incur expenses that qualify for payments under [policy] benefits subject to the Elimination Period, before we will commence paying benefits. [. See your [policy] for complete details on the Elimination Period.] |
| **Benefit Period** | This is generally the minimum period of years your policy will provide coverage. While the Benefit Period is not a policy definition, it is used to determine your policy's Total Lifetime Benefit. |
| **Total Lifetime Benefit** | The combined total amount we will pay as benefits under this policy. It is called the "Lifetime Maximum" or "Lifetime Payment Maximum" in the policy. |

## Benefit values are approximate

Benefit values presented in the accompanying letter and Coverage Options Form are approximate due to rounding and certain timing considerations.  If you select one of the settlement options, you will receive a written confirmation from us showing your new benefit values. Covered benefits payable at the time of a claim will be calculated in accordance with your policy.

## Considerations related to adjusting your coverage

All of the settlement options available to you may not be of equal value.

<If Partnership State> [If you have a Partnership policy, reducing your coverage may affect your Partnership Status. For example, it may result in a change in your asset protection type and may reduce your overall protection). <Where applicable >[We understand that electing any of the available settlement options will result in the loss of Partnership status[.][, except for the settlement options that retain some of your Inflation Benefits, which we understand will to continue to qualify for Partnership Status.]  You can contact your Partnership Plan for additional information.

Benefits are payable only when you meet the terms and conditions for receiving benefits under your policy.

If you remove an Inflation Benefit from your policy, your [Daily][Monthly] Benefit Amount and Total Lifetime Benefit will not increase.

Your Benefit Period is the period of time that is used to calculate the Total Lifetime Benefit. Your coverage is based on this Total Lifetime Benefit, not a certain period of time. If your [Daily][Monthly] Benefit Amount and/or the Benefit Period are reduced, the Total Lifetime Benefit payable under your policy will automatically be reduced because the policy maximum is a function of the [Daily][Monthly] Benefit Amount and the Benefit Period. In addition, other benefit amounts may be reduced.

## Adjustment to premium

If you select a settlement option that eliminates an Inflation Benefit or otherwise reduces your coverage, for all options other than a reduced paid-up benefit option, your new premium will be determined as follows: Your new premium will be the same as what it would have been (at the time your settlement option becomes effective and including all premium increases) if your policy had included the reduced benefits since it first took effect. This premium is subject to change in accordance with the terms of your policy.

## Premium payments by automatic withdrawal/third-party account/online banking

If you are using automatic withdrawals, the new required premium will be automatically deducted from your bank checking account. If you are using a third-party account, or online banking to pay your premiums, please be sure to make the proper adjustments and arrangements for paying the new required premium amount.

## Total Lifetime Benefit is reduced by benefit payments

Any benefits paid or payable are deducted from the reduced Total Lifetime Benefit. This means the combined maximum policy benefits available for all insureds under the policy will be the new Total Lifetime Benefit less claims paid under the policy. Therefore, if you have previously been on claim, carefully consider whether reducing your benefits is appropriate for your circumstances. [(Note that the new Total Lifetime Benefit for any reduced paid-up option will already reflect the reduction of past claims.)]

## <if in premium paying status> Selecting a Paid-up Benefit

If you select a settlement option with a reduced paid-up benefit, your Total Lifetime Benefit will be reduced, any Inflation Benefit provision will be removed from your policy, and you will no longer have to pay policy premiums. Both the enhanced and basic reduced paid-up benefit options are types of Nonforfeiture Benefits, and will be treated as such under the terms of your policy or policies.

For the settlement option that includes the enhanced reduced paid-up benefit, and no cash payout, the new Total Lifetime Benefit will equal 150% of the difference between the sum of all premiums paid under the policy (excluding any waived premium), and the amount of all benefits paid or payable under the policy for expenses incurred prior to the date the settlement option takes effect. The total paid-up benefit available under this option shall not exceed the Class Member's actual lifetime benefit at the time the election is processed.

[For the settlement option that includes the basic reduced paid-up benefit, as well as a cash payout, the new Total Lifetime Benefit will equal 100% of the sum of all premiums paid under the policy (excluding any waived premium) minus $10,000.00, minus the amount of all benefits paid or payable under the policy for expenses incurred prior to the date the settlement option takes effect]. The total paid-up benefit amount available under this option is capped at the Class Member's current actual lifetime benefit at the time the election is processed less the Class Member's damages payment under this option. This option will include a $10,000 cash payment.

Continuation of the policy under the enhanced reduced paid-up benefit [or the basic reduced paid-up benefit] is subject to the following conditions: (a) the policy will be continued under a paid-up status (with no further premium becoming due), subject to all of the terms and conditions of the policy; (b) except as stated below, and subject to the reduced Total Lifetime Benefit, the policy will have the same benefits, Elimination Period, and other policy limits in effect on the date the settlement option takes effect, (c) any Inflation Benefit that was in effect under the policy will no longer apply, which means Daily/Monthly Benefit Amounts and the new Total Lifetime Benefit will not increase, (d) any survivorship benefit, restoration of benefits, or return of premium benefit will no longer apply to the policy and (e) coverage will end and the policy will terminate when the total benefits paid under the policy after the settlement option takes effect equals the Total Lifetime Benefit for the reduced paid-up benefit as of the date the settlement option takes effect.

**Please note: selecting a reduced paid-up benefit will reduce the policy benefits available to you.**

## <if in Fully Paid-Up Status> Selecting a Basic Reduced Paid-up Benefit

**If you select a settlement option with a paid-up benefit, your Total Lifetime Benefit will be reduced and any Inflation Benefit provision will be removed from your policy. The reduced paid-up benefit option is a type of Nonforfeiture Benefit, and will be treated as such under the terms of your policy or policies. If you select a settlement option with a reduced paid-up benefit, other Nonforfeiture Benefits or similar benefits in your policy will no longer be available to you.**

**The new Total Lifetime Benefit** will equal 100% of the sum of all premiums paid under the policy (excluding any waived premium) minus $10,000.00, minus the amount of all benefits paid or payable under the policy for expenses incurred prior to the date the settlement option takes effect The total paid-up benefit amount available under this option is capped at the Class Member's current actual lifetime benefit at the time the election is processed less the Class Member's damages payment under this option. This option will include a $10,000 cash payment.

Continuation of the policy under the basic reduced paid-up benefit is subject to the following conditions: (a) the policy will be continued under a paid-up status (with no further premium becoming due), subject to all of the terms and conditions of the policy; (b) except as stated below, and subject to the reduced Total Lifetime Benefit, the policy will have the same benefits, Elimination Period, and other policy limits in effect on the date the settlement option takes effect, (c) any Inflation Benefit that was in effect under the policy will no longer apply, which means Daily/Monthly Benefit Amounts and the new Total Lifetime Benefit will not increase, (d) because the policy will be in a Nonforfeiture Benefit status, any survivorship benefits, restoration of benefits, or return of premium benefit provisions that were a part of your policy will no longer apply to the policy, and (e) coverage will end and the policy will terminate when the total benefits paid under the policy after the settlement option takes effect equals the Total Lifetime Benefit for the reduced paid-up benefit as of the date the settlement option takes effect.

## Selections of a special settlement option cannot be reversed

**Once you send us a signed request to select a settlement option, you cannot reverse your selection.** This means we will process any premium and/or benefit reductions for the settlement option and you will not be able to revert back to the premium and benefits you had before your selection. For policies that insure both the policyowner and another Insured Person, the selection of a settlement option cannot be reversed once both the policyowner and other Insured Person send us a signed request to select the settlement option. Because a settlement option cannot be reversed once selected, please carefully consider whether it is right for you before you send us your selection.

## Taxes

Your policy, including any reduced benefits associated with the selection of a settlement option, is intended to be a federally tax qualified long term care insurance contract under Section 7702B(b) of the Internal Revenue Code of 1986, as amended.

It is your responsibility to assess any potential tax consequences of selecting a settlement option, including, for example, whether any cash payment you receive is taxable.

Please consult with your tax advisors. Genworth cannot provide tax advice.

## Unearned Premium

We will refund any premiums you have paid on your Class Policy that corresponds to the time period after your new reduced paid-up benefit becomes effective, if any. Such refunded premium will not be used to calculate your new reduced paid-up benefit, and, as a result, your actual reduced paid-up benefit may be less than the reduced paid-up benefits in your Special Election Letter.

## For more information

If you have questions for us about the settlement options available to you, you may call our Genworth Customer Service Team at [800-883-1127].

For information about the cost of long term care in your area, and to see how those costs may change in the future, visit our 20[##] Cost of Care Survey at [].



# Coverage Options Form

**THREE WAYS TO CHOOSE**

| Email: [] | | Fax: [] | | | | | Mail: Check a box below. Tear off and return to []. | |
|---|---|---|---|---|---|---|---|---|
| | **Your Current Benefits** | **Option 1 Basic Reduced Paid-Up Benefit *Plus* Cash Payment** | **Option 2 Enhanced Reduced Paid-Up Benefit** | **Option 3 Remove Inflation Benefit & Revert to Original Daily/ Monthly Benefit Amount, *Plus* Cash Payment** | **Option 4 Reduce Inflation Benefit to 1% Compound Inflation & Recalculates Daily/Monthly Benefit Amount, *Plus* Cash Payment** | **Option 5 Remove Inflation Benefit & Reduce Benefit Period, *Plus* Cash Payment** | **Option 6 Reduce Benefit Period to 6 Years & Reduce Lifetime & Daily/ Monthly Maximums, *Plus* Cash Payment** | **Option 7 Reduce Daily/ Monthly (and Lifetime) Maximums, Plus Cash Payment** |
| **Cash Payment** | N/A | $10,000 | None | $6,000 | $6,000 | $6,000 | $3,000 | $1,200 |
| **[Daily][Monthly] Benefit Amount**** | $[8,979.28] | $[8,979.28] | $[8,979.28] | $[5,000.00] | $[5,634.13] | $[8,979.28] | $[6,734.46] | $[6,734.46] |
| **Inflation Benefit** | [Compound [5]%] | None | None | None | Compound 1% | None | [Compound [5]%] | [Compound [5]%] |
| **Elimination Period** | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care | [0] Days Home Care or [90] Days Facility Care |
| **Benefit** Period** | Lifetime | [N/A] | [N/A] | Lifetime | Lifetime | [3] years | [6] years | Lifetime |
| **Total Lifetime Benefit** | Lifetime | $[42,272] [****] | $[78,408] [****] | Lifetime | Lifetime | $[323,254] [***] | $[484,881] [***] | Lifetime |
| **[Annual Premium]** | $[4,781.25] | Pay no further premiums. | Pay no further premiums. | $[2,434.23] | $[2,614.73] | $[2,342.11] | $[2,705.58] | $[3,585.94] |

**Please read all documents before making a decision. If you don't want to choose any of these options, you don't need to do anything and your policy will stay the same. To choose one of these options, we must hear from you by [MONTH DAY, YEAR]. Otherwise, your policy will stay the same and you will no longer be entitled to these special settlement options. Questions? Call [(XXX) XXX-XXXX]**

**NOTICE: Your options are below. To elect a Special Election Option, a response is required by [Date].**

<u>No Further Premiums</u>

[**Option 1:** Paid-up benefit of premiums paid, less $10,000 and any claims paid, plus $10,000 cash payment.

**Option 2:** Paid-up benefit of 1.5X difference between premiums paid less claims paid.]

<u>Reduced Premiums</u>

[**Option 3:** Remove inflation benefit, revert to original [Daily][Monthly] Benefit Amount, plus $6,000 cash payment.

**Option 4:** Reduce inflation benefit to 1% compound inflation, reduce [Daily][Monthly] Benefit Amount, plus $6,000 cash payment.

**Option 5:** Remove inflation benefit, retain [Daily][Monthly] Benefit Amount, and reduce benefit period, plus $6,000 cash payment.

**Option 6:** Reduce existing lifetime benefit period to a six year benefit period, reduce current [Daily][Monthly] Benefit Amount (after benefit inflation) by 25%, plus $3,000 cash payment.

**Option 7:** Reduce current [Daily][Monthly] Benefit Amount (after benefit inflation) by 25%, plus $1,200 cash payment.]

**Please return in the enclosed envelope. Genworth recommends that you consult with your licensed insurance agent, financial advisor or family members before making any selection. By signing, you acknowledge your intent to reduce your benefits available to pay for future care.**

By signing, you represent and agree that (1) we are authorized to process the requested change to your policy, (2) a request for a settlement option cannot be reversed once requested, (3) benefits and premiums quoted above are subject to confirmation and may change, (4) you have read and understand the information on this form and the enclosed documents, (5) complete terms are in your policy, **<if Partnership Plan>** [(6) you acknowledge that you have read the Important Information About Your Settlement Options and that certain Special Election Options, if elected, will cause a loss of Partnership Status and associated asset protection], and [(6) or (7)] you have either consulted your trusted advisor or made an informed decision not to do so. You do not need to return this form if you are keeping your current coverage. If changing your coverage to one of the options above, please check the blue box to indicate your choice, then sign and return this form by email, fax, or mail [in the enclosed envelope] by: [##/##/####]



Policyholder: [Mr. John Smith]

Date: [MONTH DAY, YEAR]

Policy Number: [123456]

Signature: _____

2nd Signature*: _____

Phone Number: _____

Email: _____

Address: _____

* If the policy insures a person in addition to the policy owner, then both the policy owner and the other insured person must sign the form to select a special settlement option.

# APPENDIX E

# CLASS NOTICE

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT

### *Haney, et al. v. Genworth Life Insurance Company, et al.*

United States District Court for the Eastern District of Virginia (Richmond Division), Case No. 3:22-cv-00055-REP

**TO:** POLICYHOLDERS OF GENWORTH LIFE INSURANCE COMPANY ("GLIC") AND GENWORTH LIFE INSURANCE COMPANY OF NEW YORK ("GLICNY") (collectively GLIC and GLICNY are referred to as "Genworth") LONG-TERM CARE INSURANCE POLICIES ON POLICY FORMS OR CERTIFICATES IDENTIFIED IN THE ATTACHED APPENDIX 1 (the "Class Policies") IN FORCE ON OR AFTER JANUARY 1, 2013, WHOSE POLICIES HAVE NOT LAPSED OR BEEN TERMINATED (AND NOT REINSTATED) ON OR BEFORE JANUARY 1, 2014.

YOU ARE HEREBY NOTIFIED that a proposed settlement of the above-entitled class action lawsuit ("the Class Action") pending in the United States District Court for the Eastern District of Virginia (the "Court") has been reached between Genworth and Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Named Plaintiffs"), on behalf of themselves and the putative class of individuals defined as "Class Members" below (collectively, "Plaintiffs") (together, Genworth and Plaintiffs are referred to as the "Parties"), and on May 2, 2022, the settlement was granted preliminary approval by the Court supervising the lawsuit.

THE PURPOSE OF THIS NOTICE is to describe the Class Action, to inform you of the proposed settlement terms, and to inform you of your potential rights and options in connection with the settlement. You are encouraged to visit the settlement website at **www.Choice2LongTermCareInsuranceSettlement.com** for the precise terms and conditions of the settlement, the complete Settlement Agreement, pleadings and documents on file in this case, and other information about this settlement, including important dates, and a full description of the settlement options you may be offered if the Court approves the settlement.

The settlement will resolve all claims in the above-entitled Class Action. A court hearing concerning the fairness of the settlement (the "Final Approval Hearing") will be held on November 17, 2022 at 10:00 a.m. at the following address: The Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, VA 23219, Richmond Court Room 7400 to determine whether the settlement should be given final approval by the Court. You are not required to attend the hearing in order to participate in the settlement. BECAUSE YOUR RIGHTS MAY BE AFFECTED, IT IS EXTREMELY IMPORTANT THAT YOU READ THIS ENTIRE NOTICE CAREFULLY.

If you have any questions, you may contact Epiq (the "Settlement Administrator") toll-free at (855) 662-0078, or you may call Class Counsel at (800) 348-6192. You should not contact the Court, Genworth, or Genworth's counsel with questions about this Notice or the settlement, although you may contact Genworth, as usual, about your policy, benefits, or any election letter received.

## A. DESCRIPTION OF THE CLASS ACTION

On January 28, 2022, five individuals with GLIC or GLICNY Choice 2, Choice 2.1, California CADE, California Reprice, and/or California Unbundled long term care insurance policies, Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten, filed a Class Action Complaint against Genworth in the United States District Court for the Eastern District of Virginia, alleging that Genworth intentionally withheld material information from Policyholders with respect to the full scope and magnitude of Genworth's rate increase action plans and its reliance on Policyholders paying increased rates to pay future claims (the "Complaint"). The Named Plaintiffs' Complaint alleged that they did not challenge Genworth's right to increase premiums under the policies or Genworth's justification for rate increases. Instead, the Complaint asserted claims for Fraudulent Inducement by Omission and for Declaratory Relief.

Genworth denies any wrongdoing or legal liability for any alleged wrongdoing in connection with any facts or claims that have been or could have been alleged in Named Plaintiffs' lawsuit, whether on behalf of the Named Plaintiffs or Class Members. Genworth contends that the Named Plaintiffs' and Class Members' claims challenged Genworth's right to increase premiums and thus are barred by the filed-rate doctrine, and that neither Named Plaintiffs nor the putative Class has been injured or is entitled to any relief. The Court has not ruled on the merits of the claims or defenses.

All Parties believe in the merits of their respective claims and defenses. Nevertheless, due to the uncertainties, risks, expenses, and business disruption of continued litigation, the Parties have agreed to settle the lawsuit after voluntary mediation proceedings involving a mediator. The Parties have entered into a Joint Stipulation of Class Action Settlement and Release, which the Court has preliminarily approved as fair and reasonable, and which was amended and superseded by an Amended Joint Stipulation of Class Action Settlement and Release on July 6, 2022 ("Settlement Agreement"). The principal terms of the Settlement Agreement are summarized in this Notice. The full Settlement Agreement is on file with the Court and available at:

**www.Choice2LongTermCareInsuranceSettlement.com**

The attorneys for Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten have been designated by the Court as "Class Counsel" to represent all Class Members affected by the Settlement Agreement. Class Counsel believes that the

Settlement Agreement summarized by this Notice is fair, reasonable, and adequate and in the best interests of the Class Members.

The following law firms are Class Counsel and represent the Class Members:

| | |
|---|---|
| GOLDMAN SCARLATO & PENNY, P.C.<br>Brian D. Penny<br>161 Washington Street, Suite 1025<br>Conshohocken, PA 19428 | ROBBINS GELLER RUDMAN & DOWD LLP<br>Stuart A. Davidson<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432 |
| PHELAN PETTY, PLC<br>Jonathan M. Petty<br>3315 West Broad Street<br>Richmond, VA 23230 | BERGER MONTAGUE PC<br>Glen L. Abramson<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103 |
| CLASS COUNSEL'S TOLL-FREE NUMBER: (800) 348-6192 ||

The Settlement Administrator is Epiq. Epiq's phone number is (855) 662-0078; and its mailing address is: P.O. Box 2860, Portland, OR 97208-2860.

## B. <u>CLASS MEMBERS</u>

The "Class Members" for purposes of this settlement are defined as all Policyholders[1] of GLIC and GLICNY long-term care insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policies, and State variations of those policies in force at any time during the Class Period and issued in any of the fifty (50) States of the United States or the District of Columbia (the "States")[2] excluding: (1) those Policyholders whose policies went into

---

[1] "Policyholder(s)" means the policy owner, except: (a) where a single policy or certificate insures both a policy or certificate owner and another insured person, "Policyholder(s)" means both the policy or certificate owner and the other insured person jointly; (b) where the Class Policy at issue is certificate 7042CRT, 7044CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.

[2] A list of Class Policy forms is attached hereto as **Appendix 1**.

Non-Forfeiture Status[3] or a Fully Paid-Up Status[4] prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed[5] and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated,[6] as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter[7] would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time prior to sending their Special Election Option to Genworth; (4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and (5) Judge Robert E. Payne and his immediate family and staff.

Changes to your policy status or coverage (including, for example, whether your policy lapses or is terminated) may also impact whether you are in the proposed settlement class. If your policy lapses after the date of this notice, it must be reinstated within your applicable auto-reinstatement period if you wish to exercise rights and options in the settlement.

## C. <u>YOUR OPTIONS</u>

---

[3] "Non-Forfeiture Status" means a policy status where the Policyholder (defined below) has exercised a "Non-Forfeiture Option." "Non-Forfeiture Options" include, but are not limited to, benefits that may have been made available pursuant to: an optional Non-Forfeiture Benefit Rider; the Limited Benefits Upon Lapse Due to a Substantial Premium Increase (also called a Contingent Non-forfeiture Benefit); the Limited Non-Forfeiture Option; the Optional Limited Benefit Endorsement; or the Limited Benefit with Payment for Partial Policy Disposition.

[4] "Fully Paid-Up Status" means a status whereby a Class Policy is continued in full force and effect and no further premiums are owed. A Class Policy in Fully Paid-Up Status does not include a Class Policy that is in a Non-Forfeiture Status.

[5] "Lapse" or "Lapsed" means a status whereby a policy is no longer in force because premium was not paid as required. A Lapsed policy terminates and cannot be reinstated if it is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium. For purposes of this Settlement Agreement, a policy in Non-Forfeiture Status is not a Lapsed policy.

[6] "Terminated" means a status whereby a Class Policy is no longer in force and is unable to be automatically reinstated by the Policyholder with payment of past due premium. It includes, for example, a Class Policy that has Lapsed beyond the period permitted for automatic reinstatement, a Class Policy that has been cancelled, or a Class Policy (including a policy in Non-Forfeiture Status) that is no longer in force because all available benefits have been exhausted.

[7] A "Special Election Letter" is an individualized letter to be sent to all Class Members who have not opted-out providing certain disclosures and settlement options available to that Class Member.

As a Class Member, you have several options and you should read this entire Notice carefully before acting.

**OPTION #1:** If you do not oppose the settlement of the lawsuit, then simply do nothing. You do not need to send any documents to the Settlement Administrator. IF YOU DO NOTHING, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT, INCLUDING THE RELEASE. If you do nothing, you will not have the right to pursue your own action for the claims covered by the Class Action Release. If the Settlement Agreement is approved by the Court, you will then be sent another correspondence with options to elect to receive benefits under the Settlement Agreement.

**OPTION #2:** If you do NOT want to be bound by the Settlement Agreement and wish to retain the right to proceed against GLIC and/or GLICNY on your own as to the claims that were alleged, or that have a reasonable connection with any matter of fact set forth in the Class Action, subject to any defenses that may be available to GLIC and/or GLICNY to any claims you may have, including, but not limited to, statutes of limitation and statutes of repose, then you must notify the Settlement Administrator that you wish to exclude yourself from the Settlement Agreement and the Class (also known as "opting out").

To do so, you must send a signed letter to the Settlement Administrator, which includes: (1) your name, (2) your address, (3) if available, your policy number, (4) a statement that you are "requesting exclusion" from the Settlement Agreement, (5) the name of the case and case number (*Haney, et al. v. Genworth Life Insurance Company, et al.*, Case No. 3:22-cv-00055-REP), and (6) your signature.

Opt-out letters can be mailed to the Settlement Administrator at the following mailing address: P.O. Box 2860, Portland, OR 97208-2860.

The letter requesting exclusion must be postmarked no later than <u>September 30, 2022</u>. Any request for exclusion received with a postmark after that date will be invalid.

**IF YOU CHOOSE TO EXCLUDE YOURSELF, YOU WILL <u>NOT</u> RECEIVE THE SETTLEMENT AGREEMENT POLICY ELECTION OPTIONS OR OTHER RELIEF AND THE TERMS OF THE SETTLEMENT WILL NOT APPLY TO YOU**.

**OPTION #3: If you want to remain in the Settlement Agreement and be bound by its terms, but you oppose any aspect of the Settlement Agreement, or Class Counsel's application for an award of fees and expenses, you may object to the Settlement Agreement.**

In order to object, you must file a written Objection with the Clerk of United States District Court for the Eastern District of Virginia, located at 701 East Broad Street, Richmond, VA

23219, and you must serve a copy of the written Objection on the Settlement Administrator at the following address: P.O. Box 2860, Portland, OR 97208-2860.

A written Objection must include: (1) your full name, (2) your current address, (3) the name of the case and the case number (*Haney et al. v. Genworth Life Insurance Company et al.*, Case No. 3:22-cv-00055-REP), (5) the basis or reason(s) for your objection(s), (6) your signature, and (7) if you (or someone on your behalf such as an attorney) intends to appear at the Final Approval Hearing, a statement stating that you (or someone on your behalf) intend to appear at the Final Approval Hearing.

Any written Objection must be filed with the Court **and** sent to the Settlement Administrator with a postmark no later than <u>September 30, 2022</u>. Any written Objection filed and/or mailed with a post-mark after this deadline will be invalid.

You may be permitted to appear personally (or through an attorney) at the Final Approval Hearing to present your objections directly to the Court **if you first timely file and serve a written Objection and do not submit a request for exclusion**. A written Objection must state whether you (or someone on your behalf, such as an attorney) intends to appear at the Final Approval Hearing. If you wish to have an attorney represent you in connection with any written Objection, including to appear at the Final Approval Hearing, you will be responsible for any fees or expenses of that attorney. If you submit a written Objection, you will remain a Class Members and, if the Court rejects your objection(s), you will still be bound by the terms of the Settlement Agreement, including the Release.

## D.  <u>SUMMARY OF PROPOSED SETTLEMENT TERMS</u>

This Settlement Agreement is conditioned upon the Court entering an order granting final approval of the Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Class. Subject to the Settlement Agreement becoming final, the terms of the Settlement Agreement are as follows:

1. **Special Election Disclosures and Options:** In consideration for a Release as described in Paragraph D.2, and as a direct result of the Class Action and the Settlement Agreement, Genworth will send a special election letter ("Special Election Letter") to all Class Members after the Settlement has been finally approved. The Special Election Letter will contain, subject to approval by the Court and being approved by and/or not objected to by State insurance regulators:

    (a) Disclosure of certain information about GLIC's and/or GLICNY's future rate increase plans and need for future rate increases (the "Disclosures"); and

(b) Class Members' right to make an election of either (1) maintaining current benefits at existing filed rates (subject to the future approved rate increases), or (2) electing from a selection of reduced paid-up benefit options or reduced benefit options (the "Special Election Options"), subject to the availability of those options depending on each Class Member' current policy terms and benefits and certain State Partnership Plan ("Partnership Plan") requirements. Special Election Options that may be available could increase the amount of your current non-forfeiture paid-up benefit or entitle you to cash damages pay-outs. The actual Special Election Options available to you will depend upon many factors including, but not limited to, your current policy status and benefits, final court approval, and State regulatory review and comment.

(c) Please visit the settlement website, **www.Choice2LongTermCareInsuranceSettlement.com**, for a full description of these options and a sample of the Special Election Letter.

2.  **Release:** Each member of the Class who does not timely and validly opt out of the Class, will forever release and discharge GLIC and GLICNY (collectively "Genworth") and each of those entities' respective affiliates, predecessors, successors, parents, subsidiaries, and, for each of the foregoing, their current, former, and future directors, officers, direct and indirect owners, members, managers, attorneys, representatives, employees, and agents (the "Genworth Released Parties") of and from any and all known or unknown, contingent or absolute, matured or unmatured, suspected or unsuspected, disclosed or undisclosed, foreseeable or unforeseeable, liquidated or unliquidated, existing or arising in the future, and accrued or unaccrued claims, demands, interest, penalties, fines, and causes of action, that the Named Plaintiffs and Class Members may have from the beginning of time through and including the Final Settlement Date that relate to claims alleged, or that have a reasonable connection with any matter of fact set forth in the Class Action including, but not limited to, any claims relating to rate increases on Class Policies prior to the Final Settlement Date. This release specifically includes any legal or equitable claim arising from or related to any election or policy change made or not made by any Class Members to his or her policy benefits prior to the Final Settlement Date. Named Plaintiffs and Class Members, subject to the exception set forth below, will further release the Genworth Released Parties and Class Counsel from any claims relating to or arising out of the Disclosures or the Special Election Letters the Class Members are provided as part of the Settlement Agreement, including (but not limited to) claims specifically relating to any alleged omissions in the Disclosures or the Special Election Letters or to any decision, or non-decision, to maintain, modify, or give up coverage based on the Disclosures, the Special Election Letters, or the Special Election Options offered. A claim that a Class Member was harmed by an express and intentional

misrepresentation: in the completed portion of the Disclosures that currently is bracketed in the template Special Election Letter appended as Appendix D to the Settlement Agreement, in the completed portions of the Special Election Options that are made available to that Class Member that currently are bracketed in the template Special Election Letter, or by the Genworth Released Parties or Class Counsel about the Disclosures, shall not be a Released Claim. A Class Member may pursue such a claim in the Court via complaint or petition within three years of the date the Class Member makes a Special Election or three years of the deadline for the Class Member to make a Special Election, whichever is earlier, provided that, before filing any such claim, the Class Member shall first notify the Parties of the basis for the claim and provide them with a reasonable opportunity to investigate and, if appropriate, remedy the alleged harm.

This Release will not prevent a Class Member from making a claim for benefits under his or her long-term care insurance policy consistent with his or her policy coverage, nor shall it include a Class Member's challenge or appeal of Genworth's denial of benefits under his or her Class Policy.

This Class Notice only contains a summary of the actual benefits and release language contained in the Stipulation of Settlement, which is on file with the Court and available for your review, including on the settlement website described below. If the Settlement Agreement is not approved by the Court or does not become final for any reason, the Class Action will continue, this Release will not be binding, and the Special Election Options will not be available.

3. **Attorneys' Fees and Litigation Expenses:** As part of the request for Final Approval of the Settlement Agreement, Class Counsel will file a request seeking to be paid a contingent payment of 15% of certain amounts related to Special Election Options selected by the Class, which shall be no greater than $13,000,000.00. **None** of the attorneys' fees will be deducted from payments made by Genworth to Class Members.

Class Counsel will also file a request for an award of reasonable litigation expenses in this case. These expenses will be no more than $50,000.

These are the only attorneys' fees and litigation expenses that Class Counsel will be paid as a result of the Settlement. Class members will not be required to separately pay Class Counsel for any other attorneys' fees or expenses. Genworth has agreed to pay all fees and expenses separately. The actual amounts of attorneys' fees and litigation expenses to be paid to Class Counsel will be determined by the Court, and these amounts will be paid by Genworth directly to Class Counsel.

This Class Notice only contains a summary of the actual Attorneys' Fees and Litigation Expenses provisions contained in the Settlement Agreement, which is on file with the Court and available for your review, including on the settlement website described below.

4. **Class Representative Service Payment:** Named Plaintiffs Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten have been appointed as class representatives by the Court. As part of the request for Final Approval of the Settlement Agreement, Class Counsel will request that service payments be awarded to each class representative in an amount of up to $15,000 for each of them for the time, work, and risk they undertook in bringing this Class Action and achieving a settlement on behalf of all Class Members. None of the service payments approved by the Court will be deducted from payments made by Genworth to Class Members.

## E. FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT

The Final Approval Hearing on the fairness and adequacy of the Settlement Agreement will be held on November 17, 2022, at 10:00 AM ET in Courtroom 7400 in The Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, VA 23219. You are not required to attend the Final Approval Hearing in order to participate in the Settlement Agreement, although you are free to do so if you choose. The Court, in its discretion, may continue the Final Approval Hearing to a later date, in which case no additional written notice will be sent to Class Members, so it is incumbent upon you to check the settlement website regarding the Final Approval Hearing date and time if you wish to attend.

## F. ADDITIONAL IMPORTANT INFORMATION

The Special Election Options described in this notice still require final approval by the Court and are subject to review by State insurance regulators.

You should also consider the following additional information, which may impact the availability of Special Election Options under this settlement:

1. **If you currently have a long-term care policy with Genworth, you must continue to pay premiums (unless they have been waived) to keep your policy in force so that it is eligible for Special Election Options under this settlement.** Your premiums also remain subject to any rate increases that may be approved or otherwise permitted.

2. **Changes to your policy status or coverage (including lapse or termination) may impact whether you are in the**

**proposed settlement class and/or whether Special Election Options will be available to you.**

- If your policy lapses after the date of this notice but is still in the period during which your policy can be automatically reinstated by paying any past-due premium, you will need to reinstate your policy by paying the past-due premium to exercise any rights and options under the settlement.

- If, before you are sent a Special Election Letter, your policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium, or terminates for any other reason, then you will be excluded from the Settlement Class and the Special Election Options will not be available to you.

- If, after you have been sent a Special Election Letter, your policy lapses and is outside any period Genworth allows for the policy to be automatically reinstated with payment of past due premium, or terminates for any other reason, then you will remain in the Settlement Class and release your claims, but you will no longer be eligible for the Special Election Options.

3. **If you reduce your coverage, including in response to a rate increase on your policy, your reduction in coverage may affect the Special Election Options that otherwise may become available to you under this settlement.** As a Policyholder, you have options to reduce your coverage that are separate from the Special Election Options that may become available to you under this settlement. For example, if there is a premium rate increase on your policy, you will have options for reducing your coverage. Those options will be different from any Special Election Options that may become available under this settlement and do not include the possibility of a cash damages payout. If you select an option to reduce your coverage separate from the Special Election Options that may be available under this settlement, you may eliminate or reduce the availability of any future Special Election Options or the value of any corresponding cash

damages payments that may be available.  Whether one of these options or any Special Election Option will best meet your needs will depend on your specific circumstances.

This Notice is only a summary of the Settlement Agreement. For the precise terms and conditions of the settlement, the complete Settlement Agreement, pleadings and documents on file in this case, and other information about this settlement including important dates, PLEASE VISIT THE SETTLEMENT WEBSITE AT **www.Choice2LongTermCareInsuranceSettlement.com** OR CALL THE SETTLEMENT ADMINISTRATOR AT (855) 662-0078.

# APPENDIX 1 TO CLASS NOTICE

## CLASS POLICIES

**Choice 2 Class Policies**

| State | Policy/Certificate Form |
|---|---|
| Alabama | 7042AL |
| | 7042CRT |
| | 7043AL |
| | 7043CRT |
| Alaska | 7042AK |
| | 7044AK |
| Arizona | 7042AZ |
| | 7044AZ |
| Arkansas | 7042AR |
| | 7044AR |
| Colorado | 7042CO |
| | 7044CO |
| Connecticut | 7042CT |
| | 7044CT |
| Connecticut Partnership | 7043CT |
| | 7045CT |
| D. C. | 7042DC |
| | 7044DC |
| Delaware | 7042DE |
| | 7044DE |
| Florida | 7042FL |
| | 7044FL |
| Georgia | 7042GA |
| | 7044GA |
| Hawaii | 7042HI |
| | 7044HI |
| Idaho | 7042ID |
| | 7044ID |
| Illinois | 7042IL |
| | 7044IL |
| Indiana | 7042IN |
| | 7044IN |
| Indiana Partnership | 7043IN |
| | 7045IN |
| Iowa | 7042IA |

|                       |          |
|-----------------------|----------|
|                       | 7044IA   |
| Kansas                | 7042KS   |
|                       | 7044KS   |
| Kentucky              | 7042KY   |
|                       | 7044KY   |
| Louisiana             | 7042LA   |
|                       | 7044LA   |
| Maine                 | 7042ME   |
|                       | 7044ME   |
| Maryland              | 7042MD   |
|                       | 7044MD   |
| Massachusetts         | 7042MA   |
|                       | 7044MA   |
| Michigan              | 7042MI   |
|                       | 7044MI   |
| Minnesota             | 7042MN   |
|                       | 7044MN   |
| Mississippi           | 7042MS   |
|                       | 7044MS   |
| Missouri              | 7042MO   |
|                       | 7044MO   |
| Montana               | 7042MT   |
|                       | 7044MT   |
| Nebraska              | 7042NE   |
|                       | 7044NE   |
| Nevada                | 7042NV   |
|                       | 7044NV   |
| New Hampshire         | 7042NH   |
|                       | 7044NH   |
| New Jersey            | 7042NJ   |
|                       | 7044NJ   |
| New Mexico            | 7042NM   |
|                       | 7044NM   |
| New York              | 51012    |
|                       | 51014    |
| New York Partnership  | 51015    |
| North Carolina        | 7042NC   |
|                       | 7044NC   |
| North Dakota          | 7042ND   |
|                       | 7044ND   |
| Ohio                  | 7042OH   |
|                       | 7044OH   |
| Oklahoma              | 7042OK   |

|  | 7044OK |
| Oregon | 7042OR |
|  | 7044OR |
| Pennsylvania | 7042PA |
|  | 7044PA |
| Rhode Island | 7042RI |
|  | 7044RI |
| South Carolina | 7042SC |
|  | 7044SC |
| South Dakota | 7042SD |
|  | 7044SD |
| Tennessee | 7042TN |
|  | 7044TN |
| Texas | 7042TX |
|  | 7044TX |
| Utah | 7042UT |
|  | 7044UT |
| Vermont | 7042VT |
|  | 7044VT |
| Virginia | 7042VA |
|  | 7044VA |
| Washington | 7042WA |
|  | 7044WA |
| West Virginia | 7042WV |
|  | 7044WV |
| Wisconsin | 7042WI |
|  | 7044WI |
| Wyoming | 7042WY |
|  | 7044WY |

**Choice 2.1 Class Policies**

| State | Policy/Certificate Form |
| --- | --- |

| | |
|---|---|
| Alabama | 7042AL REV |
| | 7044AL Rev |
| Alaska | 7042AK REV |
| | 7044AK Rev |
| Arizona | 7042AZ REV |
| | 7044AZ Rev |
| Arkansas | 7042AR REV |
| | 7044AR Rev |
| Colorado | 7042CO REV |
| | 7044CO Rev |
| D.C. | 7042DC REV |
| | 7044DC Rev |
| Delaware | 7042DE REV |
| | 7044DE Rev |
| Florida | 7042FL REV |
| | 7044FL Rev |
| Georgia | 7042GA REV |
| | 7044GA Rev |
| Hawaii | 7042HI REV |
| | 7044HI Rev |
| Idaho | 7042ID REV |
| | 7044ID Rev |
| Illinois | 7042IL REV |
| | 7044IL Rev |
| Indiana | 7042IN REV |
| | 7044IN Rev |
| Indiana Partnership | 7043IN REV |
| | 7045IN Rev |
| Iowa | 7042IA |
| | 7044IA Rev |
| Kansas | 7042KS |
| | 7044KS Rev |
| Kentucky | 7042KY REV |
| | 7044KY Rev |
| Louisiana | 7042LA REV |
| | 7044LA Rev |
| Maine | 7042ME REV |
| | 7044ME Rev |
| Maryland | 7042MD REV |

| | |
|---|---|
| | 7044MD Rev |
| Massachusetts | 7042MA REV |
| | 7044MA Rev |
| Michigan | 7042MI REV |
| | 7044MI Rev |
| Minnesota | 7042MN REV |
| | 7044MN Rev |
| Mississippi | 7042MS REV |
| | 7044MS Rev |
| Missouri | 7042MO REV |
| | 7044MO Rev |
| Montana | 7042MT REV |
| | 7044MT Rev |
| Nebraska | 7042NE REV |
| | 7044NE Rev |
| Nevada | 7042NV REV |
| | 7044NV Rev |
| New Hampshire | 7042NH REV |
| | 7044NH Rev |
| New Jersey | 7042NJ REV |
| | 7044NJ Rev |
| New Mexico | 7042NM REV |
| | 7044NM Rev |
| New York | 51012 REV |
| | 51014 Rev |
| New York Partnership | 51015 REV |
| North Carolina | 7042NC REV |
| | 7044NC Rev |
| North Dakota | 7042ND REV |
| | 7044ND Rev |
| Ohio | 7042OH REV |
| | 7044OH Rev |
| Oklahoma | 7042OK REV |
| | 7044OK Rev |
| Oregon | 7042OR REV |
| | 7044OR Rev |
| Pennsylvania | 7042PA REV |
| | 7044PA Rev |
| Rhode Island | 7042RI REV |

|  | 7044RI Rev |
|---|---|
| South Carolina | 7042SC REV |
|  | 7044SC Rev |
| South Dakota | 7042SD REV |
|  | 7044SD Rev |
| Tennessee | 7042TN REV |
|  | 7044TN Rev |
| Texas | 7042TX REV |
|  | 7044 TX Rev |
| Utah | 7042UT REV |
|  | 7044UT Rev |
| Vermont | 7042VT REV |
|  | 7044VT Rev |
| Virginia | 7042VA REV |
|  | 7044VA Rev |
| Washington | 7042WA REV |
|  | 7044WA Rev |
| West Virginia | 7042WV REV |
|  | 7044WV Rev |
| Wisconsin | 7042WI REV |
|  | 7044WI Rev |
| Wyoming | 7042WY REV |
|  | 7044WY Rev |

**California CADE/Reprice/Unbundled**

| State | Policy/Certificate Form |
|---|---|
| California, CA Reprice & CA Unbundled | 7035AX REV |
| California, CA Discount Enhancement (CADE) | 7035AX REV 2009 |

| California Partnership | 7037C REV |
|---|---|
| California Partnership, CAP Unbundled | 7037C REV 2 |
| California Partnership, CAP CADE | 7037C REV 2009 |

## APPENDIX F

## PUBLICATION NOTICE

## Genworth Long-Term Care Insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled Class Action

Do you own a Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled long-term care insurance policy issued by Genworth Life Insurance Company or Genworth Life Insurance Company of New York? If so, you may be part of a class action settlement. Genworth has agreed to settle a proposed class action involving certain Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled long-term care policies.

In January 2022, five policyholders brought a lawsuit on behalf of a class alleging that Genworth should have included certain additional information in letters sent to Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders about premium rate increases. Genworth denies all allegations and maintains that its disclosures to policyholders were reasonable, appropriate and truthful.

Pending final Court approval and subject to certain conditions, impacted policyholders may receive certain disclosures and policy options, including potential payments or credits. If you are a class member, you may be entitled to obtain this relief, and you may have other rights relating to the proposed settlement. To learn more about the settlement (including whether you are a class member and how to be excluded from or object to the settlement), you may visit this website, www.Choice2LongTermCareInsuranceSettlement.com, or call the Settlement Administrator at [].