IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually and on Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:22-cv-00055-REP<br>)<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>) |

### SUPPLEMENTAL RESPONSIVE BRIEF IN SUPPORT OF OBJECTIONS DOCKETED AT ECF #61 BY GARY M. DAVIS AND LORRAINE FREEDLANDER

At the fairness hearing held in this matter in accordance with FRCP 23 (e)(2) on November 17, 2022, this Court heard argument on the joint objections of Gary M. Davis and Lorraine Freedlander ("Objectors"). At the conclusion of that hearing, the Court requested Mr. Davis to brief their objections regarding Genworth's failure to inform its policyholders who had received notices of premium increases during the pendency of this litigation that they were class members in a class action suit that had not only been filed but tentatively settled or that a decision to reduce their coverage could negatively impact the options available to them in the proposed settlement of that class action.

Objectors Davis and Freedlander request that this Court disapprove the proposed settlement unless or until the settlement is altered to allow those class members to choose settlement options as if they had not reduced their coverage during the pendency of the action.

1

## TIMELINE OF RELEVANT EVENTS AS TO OBJECTORS AND OTHERS SIMILARLY SITUTATED

On January 14, 2022, prior to even filing this lawsuit, the parties engaged in a mediation and reached a settlement. Class counsel then proceeded to file their class action complaint with this Court on January 28, 2022. On February 3, 2022, this Court entered an order scheduling a hearing to consider preliminary approval of their settlement and the details of notice to class members. On May 2, 2022, this Court entered an order preliminarily approving the parties' negotiated settlement and directed that notice be given to the class members. Notice of the class action and the settlement was sent to class members on or about August 1, 2022.

Objectors Davis and Freedlander received premium increase notices in early June 2022, after preliminary approval of the settlement but before class notice was sent to members of the class. The premium increase notices and other communications between Genworth and Objectors in this time frame made no mention of a pending class action or class action settlement. In this time frame, Objectors chose to reduce their coverage in order to lower their premiums and submitted forms to Genworth on July 25, 2002, effective on their policy anniversary date of August 4, 2022. Genworth's written confirmations of those changes made no mention of the a 60-day recission period to reinstate their coverage to the original terms.

Genworth has represented that in the period between the preliminary approval of the settlement of May 2, 2022 and August 1, 2022, 3,471 class members received premium increase notices and elected to reduce their coverage in response to that premium increase. As a result of their reduction in coverage, the class action

2

settlement is worth less to Objectors and others who reduced their coverage, than to those who were not faced with notices of a premium increase in this time frame.

## THE CLASS ACTION SETTLEMENT IS NOT "FAIR, REASONABLE AND ADEQUATE" BECAUSE IT TREATS CLASS MEMBERS WHO RECEIVED PREMIUM INCREASE NOTICES AND REDUCED THEIR COVERAGE WITHOUT KNOWLEDGE OF THE PENDING SETTLEMENT DIFFERENTLY THAN THOSE NOT FACED WITH PREMIUM INCREASE NOTICES

Rule 23(e)(2) provides that this Court may approve a proposed settlement "only after a hearing and only on finding that it is fair, reasonable and adequate after considering various factors. One of these factors is "(D) the proposal treats class members equitably relative to each other."

Those class members who, like Objectors, received premium increase notices and reduced their coverage between the time of the preliminary approval of the settlement and the notice, did so in ignorance of the fact that the terms of the settlement would be less beneficial to them if they reduced their coverage. They might have made different choices had they known about the options available to them under the settlement, some of which are tied to the level of coverage they had in place when asked to pick a settlement option and some of which are barred entirely. While those class members may still participate in the settlement, the settlement is worth less to them because their coverage is reduced. They are being treated less favorably than class members who were not faced with premium increase notices and can choose settlement options based on the original value of their long term care policies.

Defendant's Supplemental brief recites that during the period from Preliminary Approval on May 2, 2022 but before Class Notice, a period of approximately three months, 40,927 class members received premium increase notices. Of this number,

3

3,471 or roughly one percent of the entire class, elected to reduce their coverage.[1] It would be more equitable if this group were given the opportunity to rescind their reduction of coverage so that they, like the rest of the class, could choose settlement options based on their original coverage amounts, as if they had not previously reduced their coverages.

## CLASS MEMBERS WHO REDUCED THEIR COVERAGE WHILE THIS LITIGATION WAS PENDING ARE PREJUDICED BY A REDUCTION IN THE OPTIONS AVAILABLE TO THEM

Defense counsel argues that class members who chose to change their coverage in response to a premium increase notice suffered no prejudice as a result of their election. The class notice materials online, however, acknowledge this prejudice. On the second page of the settlement packet in materials titled Summary of Your Legal Rights and Options in This Settlement, it is stated:

> 3. If you reduce your coverage including to response to a rate increase on your policy, your reduction in coverage may affect the Special Election Options that may become available to you under this settlement. For example, if there is a premium rate increase on your policy, you will have options for reducing your coverage. Those options will be different from any Special Election Options that may become available under this settlement and do not include the possibility of a cash damages payout. If you select an option to reduce your coverage separate from the Special Election Options that may be available under this settlement, you may eliminate or reduce the availability of any future Special Election Options or the value of any corresponding cash damages payments that may be available.

---

[1] Objectors believe that policyholders who received premium increase notices and reduced their coverage at any time after the filing of this lawsuit should have been informed of the class action and should be treated similarly.

4

A policyholder who received the same premium increase notice received by Davis and Freedlander during the pendency of this litigation would, as stated above, have limited their settlement options and also would not have the possibility of a cash damages settlement. For example, a policyholder who had chosen one of the options at #2 in the premium increase letter called Flexible Benefit Options is barred from electing any of the RBOs that were part of the settlement or receiving the damages attached to same. That settlement option by its terms "excludes (1) Class Members who previously selected a SPO or FBO. Not only are those options unavailable but damages payments, that can be as high as $ 6000, are not available.

Davis and Freedlander were also prejudiced because they reduced their benefits and premiums a matter of weeks before notice of the settlement was received. They reduced their coverage period by a year and their monthly benefit by fourteen (14%) in response to their rate increase letter. If they were to elect the new option negotiated on the day prior to the fairness hearing that provides for a twenty-five (25%) reduction in benefits, that reduction would be calculated from their already reduced benefits and not from their original policy limits. As such, if they exercised that option, the limits of their coverage would end up reduced more than thirty-five percent (.14 plus (.25 x the remaining 86% of their original limit).

## DEFENDANTS' SIXTY-DAY RECISSION ARGUMENT IS MISPLACED AND A RED HERRING

According to Defendant's Supplemental brief, 3230 of the 3,471 class members who received premium increase letters and elected to reduce their coverage during the period between preliminary approval of the settlement on May 2, 2022 and the notice

5

to the class in early August 2022 have no grounds for complaint because the premium increase notice they received contained a provision allowing 60 days to change their minds about reducing their coverage and they received notice of the class action during that 60-day period.[2]

Defendant's argument misses the point. These class members reduced their coverage without material information about the proposed settlement of it and the impact that a reduction of coverage at that time could have on their settlement options and recovery of damages. Those class members should not have been expected to have the knowledge and sophistication to realize when they received the class notice that they should revisit their decision to reduce their coverage and determine whether it might be wise to rescind. Notably the written communications confirming Objectors' change in coverage does not reference a 60-day period of recission. Copies of the letters Davis and Freedlander received affirming coverage changes are appended hereto as Exhibit A and B.

There was simply no good reason to withhold material information from policyholders who were making the important decision to reduce coverage that was designed to ensure their ability to pay for care in their dotage and that was an important piece of their financial plan.

Furthermore, Genworth presumes that all class members who received the class notice were able to fully discern that they were nearing the end of a 60-day recission

---

[2] Some class members received notice of the class action within a few days of the end of the 60-day recission period. *See* Objections of Kathryn Dimiduk (ECF No. 67).

period and that rescinding their coverage reductions would lead to more favorable treatment under the settlement. The provision stating the 60-day recission period was contained in the notice of a premium increase sent to the policyholder **before** that policyholder would have decided to reduce their coverage. The 60-day recission provision is located several pages away from options chart on page 3 of a section entitled "Important Information Regarding This Premium Increase." It is not highlighted, in bold print or italicized and appears under a small heading among many others entitled "Time frame to reverse decision."

Genworth's follow up letter confirming the coverage did not mention of the 60-day recission period. Thus, Genworth did not communicate to policyholders that they could rescind their coverage changes to receive more favorable treatment under the settlement. Class members were left to connect the disparate dots on their own.

Fortunately, this problem can be easily addressed by amending the terms of settlement to extend the rescission period available to those class members who reduced their coverage during the period of preliminary approval of the settlement through the class notice and/or simply allowing those class members to choose a settlement option as if they had not chosen to reduce their coverage during that period.

## CONCLUSION

It is inequitable to treat class members who received premium increase notices during the pendency of this litigation and reduced their coverage without knowing of the potential impact of the settlement options differently from class members who did

7

not receive premium increase notices during that period and can elect settlement options based on the original coverages in their policies.

This problem can be easily solved by a slight amendment to the settlement that would allow class members who chose to reduce their coverage during the pendency of this action to choose among the settlement options and receive the same amount of coverage as if they had not reduced their coverage. This amendment could be accomplished either by extending their rescission period through the closing date for choosing a class action settlement option or by simply allowing them to choose among options as if they had not previously reduced their coverage.

Objectors request this Court to deny approval of the proposed settlement unless the parties agree to such a change.

                                      Respectfully submitted,

                                      /s/ Gary M. Davis
                                      GARY M. DAVIS

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of December 2022, I caused the foregoing document to be emailed to Nikki Brown, Courtroom Deputy for the Honorable Robert E. Payne, United States District Court Judge for the Eastern District of Virginia, so that she might electronically file it using the CM/ECF System. That email was sent to Nikki_Brown@vaed.uscourts.gov. I also served a copy by email on the following counsel per our agreement at the email addresses specified below:

>Michael J. Duvall, Esquire
>Counsel for Defendants
>Michael.duvall@dentons.com
>
>Brian D. Penny. Esquire
>Counsel for Plaintiffs
>penny@lawgsp.com

Submitted By  *[signature]*
Gary M. Davis, Esquire
PA ID# 26363
gmdavislaw@gmail.com.