# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL SYLVIA RAUSCH STEPHEN SWENSON, and, ALAN WOOTEN, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>                Defendants. | Civil Action No.<br><br>3:22-cv-00055-REP<br><br><u>CLASS ACTION</u> |

## MEMORANDUM IN SUPPORT OF
## MOTION OF THE FRIEDMAN AND PODOLL OBJECTORS
## FOR INCENTIVE AWARDS AND ATTORNEY'S FEES

Come now Settlement Class members and Objectors Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, William (Bill) and Linda Dudley, and Michael Podoll (the "Friedman/Podoll Objectors"), by, through, and along with their undersigned counsel, The Vernia Law Firm and Clinton & Peed ("Objectors' Counsel"), and hereby move the Court, pursuant to Fed. R. Civ. P. 23 for incentive awards for Objectors and attorneys' fees for Objectors' Counsel pursuant to the Joint Stipulation of Settlement with Objectors ("Joint Stipulation"), reached between Plaintiffs, Class Counsel, Defendants, and Objectors (the "Parties"), and filed on November 30, 2022. Neither the attorneys for the class ("Class Counsel") nor the Defendants, Genworth Life Ins. Co., and Genworth Life Ins. Co. of New York, Inc.

(collectively, "Genworth"), oppose the Friedman/Podoll Objectors' motion for incentive awards and attorneys' fees.

## I. INTRODUCTION

The Friedman/Podoll Objectors raised Objections to the proposed settlement of this action, engaged in good-faith, arms-length negotiations with counsel for Genworth and Class Counsel, and through those efforts achieved substantial improvements to the proposed settlement. (The parties described those improvements in detail in a Joint Stipulation of Settlement filed on November 30, 2022. *See* Docket Nos. 105, 106.) Only after obtaining consensus with counsel for the Parties did Objectors' Counsel commence negotiations regarding payment of incentive awards to the Friedman/Podoll Objectors, and of attorney's fees to Objectors' Counsel.

As a result of those good-faith, arms-length negotiations, Genworth and Class Counsel agreed not to oppose payment of $7,500 as an incentive award to each of the Objectors, and up to $390,000 in fees to Objectors' Counsel (as described below, Objectors' Counsel are seeking fees in the amount of $384,690). None of these amounts will diminish the payments and other benefits flowing to the Class Members as a result of the settlement; indeed, the improvements the Friedman/Podoll Objectors have obtained will mean that the Class Members will receive more than had been bargained for in the original, proposed settlement.

Because the proposed incentive awards are consistent with those the Court approved in the similar *Halcom* case, and because the attorney's fees requested herein are reasonable under either the common fund or lodestar approaches, this Motion should be approved.

## II. PROCEDURAL BACKGROUND

The Friedman/Podoll Objectors purchased "Choice 2" Long-Term Care (LTC) insurance from Genworth, and are, therefore, each Class Members in this lawsuit ("*Haney*"), which was filed on January 28, 2022.[1] On July 7, 2022, the Court approved the Parties' Joint Stipulation of Amended Settlement Agreement, setting a September 30 deadline for filing objections. Docket No. 34.

Each of the Friedman/Podoll Objectors save Mr. Podoll engaged Objectors' Counsel to prosecute their objections, which were filed and served on September 30, 2022 (Docket No. 56).[2] The Friedman Objection (Docket No. 73) sought four changes to the proposed settlement:

(1) Restore the modifier in the "Enhanced Reduced Paid-Up Benefit" option to provide class members with a paid-up benefit amount equal to twice the difference between the total amount of premiums paid and the amount of claims paid, as opposed to the one and half times the difference offered in the proposed settlement;

(2) Restore the "Reduce Benefit Period from [Lifetime] to [X] Years & Reduce Lifetime & Daily Benefit Amount, Plus Cash Payment" option offered in *Skochin* and *Halcom*;

(3) Restore the $2500 damages payment for class members with policies in nonforfeiture status; and

(4) Freeze all premium increases for class members at 75 years of age.

Docket No. 73 at 3.

---

[1] As the Court is aware, this class action followed two similar cases whose classes comprised purchasers of other blocks of LTC insurance. *Skochin, et al. v. Genworth Fin., Inc., et al.*, No. 3:19-CV-00049-REP (E.D.Va. Jan. 18, 2019) (*Skochin*); and *Halcom, et al. v. Genworth Life Ins. Co., et al.*, No. 3:21-CV-00019-REP (E.D.Va. Jan. 11, 2021) (*Haney*).

[2] The Objectors moved to amend their Objection to add Mr. and Mrs. Dudley, and did so, after the Court approved that motion. *See* Docket Nos. 69 (Motion), 72 (Order), and 73 (Amended Objection).

Mr. Podoll filed his own objection *pro se* (Docket No. 48), and engaged Objectors' Counsel prior to the November 17, 2022, hearing for final approval of the proposed settlement. Mr. Podoll, too, raised four objections, which he summarized as follows:

> Objection 1 – The Settlement Special Election Options 3, 4, and 5 are not fair and equitable. (This objection is for the entire Class.)
>
> Objection 2 – The damage payments for Class members wishing to maintain current benefits, or benefit features, are not adequate or equitable. (This objection is for the entire Class.)
>
> Objection 3 – The Settlement Special Election Option 2 is not adequate. (This objection is for the entire Class.)
>
> Objection 4 – The damage payments for Class members who had previously reacted to premium increases are not adequate or equitable. (This objection is for the entire Class.)

Docket No. 48 at 1, 2, 4, and 5.

Objecting Counsel engaged with counsel for Genworth in mid-October 2022 to see if an amicable resolution of the amended Friedman Objections could be achieved. Those discussions continued for nearly a month, during which Mr. Podoll engaged Objecting Counsel to represent him, too.

On November 16 (the eve of the fairness hearing), counsel for the parties, Objecting Counsel, and counsel for Objector Belkin informed the Court via an *in camera* telephone conference that they had reached a settlement of those objections. Counsel for the parties described the terms of that settlement at the start of the fairness hearing, so that other objectors present (physically and virtually) could understand the proposed improvements. Docket No. 94.

The Court ordered that the Parties and settling Objectors enumerate the terms of their agreement by November 30, 2022. Docket No. 98. The Parties and the settling Objectors filed a joint motion to approve the settlement of the Objections, which was memorialized in a Joint

Stipulation. Docket Nos. 105, 106. With respect to the proposed class action settlement agreement, the Joint Stipulation makes the following improvements:

a. First, the Joint Stipulation increases the Cash Damages Amount to be paid for Class Members in Nonforfeiture (NFO) Status, from $1,000 to $1,150.

b. Second, the Joint Stipulation expands the application of an existing option to Class Members that have benefit inflation protection: they may keep their inflation protection, reduce their Daily/Monthly Benefit Amount (D/M BA) by 25%, and receive a cash damages payment of $1,200.

*See* Docket No. 106 at 6. With respect to this motion – the Friedman/Podoll Objectors' motion for incentive awards and attorney's fees – the Parties agreed:

> Fourth, Defendants agree to pay each Settling Objector an incentive award in an amount ordered by the Court, not to exceed $7,500 per Settling Objector, to compensate each of them for their contributions to the Second Amended Settlement Agreement. *Id*. at ¶¶ 35(a)-(b), (d).
>
> Defendants will pay Objectors' Counsel attorneys' fees (but not costs) if and as ordered by the Court, in an amount not to exceed $195,000 for ThorsenAllen, LLP and Jeffrey A. Belkin, Esq., combined, and in an amount not to exceed $390,000 for the Vernia Law Firm and Clinton & Peed, combined, and will not oppose applications by the respective Objectors' Counsel seeking up to such respective amounts. Objectors' Counsel shall only seek attorneys' fees by reference to the modifications to the Special Election Options with which they were respectively involved.

*Id.* at 7.

## III.   LEGAL STANDARD

Because "[g]ood-faith objections can assist the Court in evaluating a [settlement] proposal," it "is legitimate for an objector to seek payment for providing such assistance…." Fed. R. Civ. P. 23 (Advisory Committee Notes on the 2018 Amendments). The award of monetary incentives to objecting class action members, and fees to their attorneys, are governed by two sections of Fed. R. Civ. P. 23. Under Rule 23(h), the Court "may award *reasonable* attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" (emphasis added). Because of past concerns that objections might be advanced for an improper

5

purpose, under Rule 23(e)(5)(B), any consideration given must be disclosed to the Court and a hearing held prior to the payments' approval. *See also* Advisory Committee Notes on the 2018 Amendments.

### A. Attorney's Fees

In ruling on the motion of Objectors in the *Halcom* case (sibling to this action), the Court described well the standard for assessing fees in class action suits:

> Fed. R. Civ. P. 23(h) requires that a Court's award of attorney fees be "reasonable." Attorney fees are generally calculated by one of two methods. The lodestar method calculates the product of hours worked by each attorney multiplied by each attorney's respective hourly rate. The common fund method apportions counsel a percentage of the settlement fund paid out to plaintiffs by defendants. The Court in *Brown v. Transurban USA, Inc.* further noted that "[the] current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases." 318 F.R.D. 560, 575 (E.D. Va. 2016) (internal quotation marks and citation omitted). In the *Skochin* litigation, the Court treated a settlement with a structure closely analogous to that here as a "constructive common fund" settlement. *Skochin v. Genworth Financial, Inc.*, No. 3:19cv49, 2020 WL 6536140, at *6 (E.D. Va. Nov. 5, 2020). It is only constructively treated as a common fund settlement because the attorney fees and damages payments are not actually paid out of a common fund. Instead, as described above, for each class member who selects an option that entails a damages payment, class counsel will receive a separate payment from Genworth corresponding to 15% of the damage payment awarded to the class member.
>
> As the Court further noted in *Skochin*, no rule exists that dictates application of either approach in this case. But the "favored method" for determining attorney fees in common fund cases is the percent-of-fund method. 2020 WL at *3-4. Either way, however, "courts will typically employ one method as the primary calculation method and use the other as a cross [-] check on the reasonableness of the first." *Id*. at *4.

*Halcom v. Genworth Life Ins. Co.,* No. 3:21-CV-19, 2022 WL 2317435, at *8-9 (E.D. Va. June 28, 2022).

Whether the lodestar method is employed as an alternative to, or merely a cross-check on, the common fund method, the Court applies multifactorial tests developed in two cases: *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (1974) (adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 226 n.28 (4th Cir. 1978)), and *Gunter v. Ridgewood Energy Corp.*,

6

223 F.3d 190 (3d Cir. 2000). *See Halcom*, Docket No. 105 at 21-22 and n. 5. As the Court noted in *Halcom*:

> The *Johnson* factors are:
>
> > (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for legal work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation[,] and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.
>
> *Barber*, 577 F.2d at 226 n.28. The *Gunter* factors are:
>
> > (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys' involved; (3) the complexity and duration of the case; (4) the risk of nonpayment; (5) awards in similar case; (6) objections; and (7) the amount of time devoted to the case by plaintiffs' counsel. *Gunter*, 223 F.3d at 195 n.l.

*Halcom*, 2022 WL 2317435 at *10.

**B. Incentive Awards**

In its recent opinion in *Halcom*, the Court likewise addressed the standards controlling its evaluation of incentive awards*:*

> Incentive payments, also called "service awards," "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (*citing Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

*Halcom*, 2022 WL 2317435 at *10. As evidenced by the Court's application of that standard to the objector's motion in *Halcom*, its reasoning applies equally well to objectors as to named plaintiffs. *Id.*

## IV. ARGUMENT

Although the Friedman/Podoll Objectors believe that Fed. R. Civ. P. 23(e)(5)(B) governs the Court's consideration of their motion for incentive awards and attorney's fees (as payments "*in connection with*" the "withdrawing" of their objection), the parties to the Joint Stipulation engaged in sequential, arms-length negotiations. It was only after an agreement was reached on the improvements to be made to the proposed settlement agreement to benefit the entire class that Objectors' Counsel began to discuss the resolution of the side questions of their fees and the Fredman/Podoll Objectors' incentive awards. That fact may not appear in the various tests of reasonableness, but it is certainly germane to the Court's assessment of the objector's good faith in resolving their concerns. *Compare* Fed. R. Civ. P. 23 (2018 Advisory Committee Notes).

Under the standards this Court has previously applied in very similar cases, the attorney's fees requested by Objectors' Counsel, and the incentive awards requested by the Friedman/Podoll Objectors are more than reasonable and fair and should be approved.

### A. The Friedman/Podoll Objectors and Their Counsel Have Achieved Substantial and Estimable Benefits to the Settlement.

The Friedman/Podoll Objectors obtained two substantial and estimable benefits to the entire class by virtue of their Objections and their counsel's efforts:

First, an amendment to the Non-Forfeiture Option increased the cash damages amount from $1,000 to $1,150 – *i.e.*, by $150 for each Class Member who elects this option. Genworth's actuary explained that under the original settlement proposal, 32,250 Class Members may elect the Non-Forfeiture Status option. Docket No. 43-3 at 4 (Decl. of Nicholas Sheahon, FSA, MAAA). Because there is no reason to believe that the increase in cash damages payment will reduce demand, the Friedman/Podoll Objectors' negotiated resolution of their Objection No. 3 may increase the case's settlement value by over $4.8 million ($150 x 32,250 = $4,837,500).

8

The added value of the second amendment obtained through the Friedman/Podoll Objectors' efforts is harder to estimate, but clearly improved the settlement. Genworth has not provided an estimate of the number of Class Members who might elect to reduce their Daily/Monthly Benefit Amount by 25%, and thereby receive a cash damages payment of $1,200, but if even 1,000 Class Members elect this option, it would increase the settlement's cash value by $1.2 million.

Combining these two figures yields a conservative estimate of $6 million in additional value over the settlement proposal to which the Friedman/Podoll Objectors responded.

### B. Under the Common Fund Method, Objectors' Counsel's Attorney's Fees are Reasonable.

As the Court noted in *Halcom* (2020 WL 2317435 at *9) and *Skochin*, the "favored method" for determining attorney fees in common fund cases is the percent-of-fund or common fund method. *Citing Skochin v. Genworth Financial, Inc.*, No. 3:19cv49, 2020 WL 6536140, at *6 (E.D. Va. Nov. 5, 2020). As in both *Skochin* and *Halcom,* this is not a typical common fund settlement, because its value is not a sum certain, but "instead, is a function of the elections that will be made by class members in the future." *Halcom,* 2020 WL 2317435 at *9. In *Halcom*, the benefits the objectors obtained on behalf of the class were "in the form of non-quantifiable changes to the settlement agreement." *Id.* at 31. Here, by contrast, the foregoing estimate of the value makes the use of the common fund approach far more practical.

Applying the constructive common fund approach here demonstrates the reasonableness of the fees requested. The $384,690 that Objecting Counsel seek in fees represents only 6.41% of the *additional value* their efforts brought to the Class Members as a whole, and only 0.171% of Genworth's *lowest* illustration of the entire settlement's cash damages that may be paid out. *See* Docket No. 43-3 at 4 (illustrating total cash damages of $224,806,00, at a 10% "Take Rate for

9

Options 1-5"). *Compare Halcom*, Docket No. 105 at 36 (calculating objector's counsel fees as 2% of the "projected value of the settlement"). When the $6 million estimated value of the Friedman/Podoll Objectors' improvements is added to Genworth's lowest illustrated total, the requested fees fall to just 0.167% of the potential total settlement cash value.[3] The Objecting Counsel's fee request – less than a third of the amount the Court approved for objectors' counsel in *Halcom* – is evidently reasonable under the favored common fund method, and should be approved.

        **C.**     **The Requested Fees Are Reasonable Under the Lodestar Approach.**

The reasonableness of the fees that Objectors' Counsel request, is also corroborated by the lodestar method, when employed as a cross-check. *See Halcom*, 2020 WL 2317435 at *9. Objectors' Counsel are experienced attorneys who spent far fewer hours, at lower rates, than the Court approved in its award compensating the *Halcom* objectors' counsel;. Whether applying *Johnson's* or *Gunter's* factors, the lodestar method supports approving the payment of $384,690.

Three attorneys represented the Friedman/Podoll Objectors: Benjamin Vernia and Andrew Murray of the Vernia Law Firm, and Timothy Clinton of Clinton & Peed. As the attorneys' declarations (Exhibit A) establish, each are experienced in complex litigation. The following chart summarizes the time they spent, and the hourly rate sought:

| Attorney | Firm | Position | Years of Experience | Hours | Hourly Rate | Individual Lodestar |
|---|---|---|---|---|---|---|
| Benjamin Vernia | The Vernia Law Firm | Attorney (Founder) | 29 | 173.5 | $700 | $121,450.00 |
| Andrew Murray | The Vernia Law Firm | Sr. Associate | 6 | 6.0 | $350.00 | $2,100.00 |

---

[3] *I.e.,* $224,806,000 + $6,000,000 = $230,806,000; and $384,690/$230,806,000 = 0.167%.

| Timothy Clinton | Clinton & Peed | Partner | 17 | 7.8 | $600.00 | $4,680.00 |
|---|---|---|---|---|---|---|
| | | **Totals** | **53** | **187.3** | | **$128,230.00** |

*See* Exhibit B. An attorney with long experience in this District, Bernard J. Dimuro, has reviewed the time entries and rates and finds them to be reasonable under the circumstances of this case. *See* Exhibit C. Using a lodestar methodology, the Objectors' Counsel request for $384,690 represents a multiplier of three.

By comparison, the Court in *Halcom* approved attorney's fees in the amount of $1.2 million (approximately 3.12 times the amount sought here). Counsel for the *Halcom* objectors expended 768 hours for a total lodestar amount of $502,000. *Halcom* Docket 106 at 16. Even before multiplication, therefore, the *Halcom* objectors' lodestar exceeded the entire amount sought here – and the Court multiplied the fees in *Halcom* by 2.4. Each of the three principal attorneys logged more than the combined time spent by the Objectors' Counsel here. Halcom Docket No. 106 at 16.

### D. The *Johnson* and *Gunter* Factors support Objectors' Counsel's Motion.

Under *Johnson*, the relevant factors, and their application here, are as follows:[4]

*(1) The time and labor expended*

The Objectors' Counsel's billing records and declarations support the time and labor they expended in representing the Friedman/Podoll Objectors.

*(2) The novelty and difficulty of the questions raised;*

The LTC insurance issues presented in this case certainly qualifies the case and its proposed settlement as complex and difficult.

---

[4] *Halcom*, Docket No. 115 at 22 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

*(3) The skill required to properly perform the legal services rendered;*

This factor dovetails with its predecessor. Another skill required of counsel here was to inform, advise, and coordinate with eight objector clients. The diversity, size, and wisdom of the Friedman/Podoll Objectors were a strength, but presented logistical challenges as well that called on counsel's skills.

*(4) The attorney's opportunity costs in pressing the instant litigation;*

Given the short time available to engage with Genworth's counsel and Class Counsel and negotiate a valuable settlement, it should come as no surprise that a quite significant share of one attorney's time (Mr. Vernia) was devoted to this representation during that period. All of the attorneys, moreover, were called from other matters and client development to devote time to this case.

*(5) The customary fee for legal work;*

As noted above, the Court has previously approved hourly rates exceeding those sought to be charged here. In *Halcom*, Mr. Cronin had the same number of years in practice as Mr. Vernia,[5] and the Court approved his lodestar figure at a rate of $750.00 per hour – $50,00 more than Mr. Vernia seeks. Likewise, Mr. Duncan had just three more years of experience than Mr. Clinton, and received that same $750.00 rate (vs. $600.00 for Mr. Clinton here). Finally, the associate in that case, Mr. Podolny, had just half a year more of experience than Mr. Murray, and his individual lodestar was approved at a rate of $550.00 – or $200.00 more per hour than is sought in Mr. Murray's lodestar. *See Halcom* Docket No. 106 at 16.

---

[5] Mr. Cronin lists 30 years of experience; Mr. Vernia was admitted to the Michigan Bar approximately 29 years, 10 months ago.

*(6) The attorney's expectations at the outset of litigation;*

The Objectors' Counsel took this matter on a purely contingent basis, expecting no payment from the Friedman/Podoll Objectors, and relying on the strength of the objections.

*(7) The time limitations imposed by the client or circumstances;*

As described above, the Objectors' Counsel had very little time to familiarize themselves with the class action suit, appraise the objections their clients sought to be made, and then once made, engage with parties' counsel and negotiate resolutions – first, of the merits of the objections, and then, of the compensation to be paid.

*(8) The amount in controversy and the results obtained;*

The discussion, *supra*, concerning the value obtained for the entire class addresses this *Johnson* factor. With respect to the objections, the Objectors' Counsel obtained approximately $6 million in value for the class as a whole, over a very short – but intense – period of litigation. As the Court noted in approving payment of $1.2 million to the attorneys in *Halcom*, the case overall involves a massive number of people (in fact, more here than in *Skochin* and *Halcom* combined) and hundreds of millions of dollars. As documented in Exhibit D, the Friedman/Podoll Objectors are satisfied with the services of the Objectors' Counsel.[6]

*(9) The experience, reputation and ability of the attorney;*

The declarations of counsel (Exhibit A) establish Objectors' Counsel's experience, reputation, and ability. Each attorney has significant experience in complex commercial litigation. Mr. Vernia, the lead attorney, has thirty years of practice, including eleven years at the Department of Justice handling complex civil and criminal fraud cases.

---

[6] Due to communication difficulties, Mr. and Mrs. Ebstyne's declarations could not be obtained in time for this filing; they did, however, approve of the settlement. *See* Docket No. 106-1 at PageID #2787.

*(10) The undesirability of the case within the legal community in which the suit arose;*

Objectors' Counsel does not believe that this factor significantly favors either the reasonableness or not of the requested fees.

*(11) The nature and length of the professional relationship between attorney and client;*

The Objectors' Counsel have only represented the Friedman/Podoll Objectors briefly, but as described above, that relationship required significant interaction to draw from the Objectors' knowledge and seek their input into, and approval of the settlement.

*(12) Attorneys' fees awards in similar cases.*

This factor counsels most strongly in favor of approving this motion. As previously described, the *Halcom* case provides an excellent point of comparison, and the fee request here is, in all respects, more modest than that which the Court approved there.

Thus, each of the *Johnson* factors (with the exception of 10, which is neutral), favor approval of the Objectors' Counsel's fee request.

Similarly, under *Gunter,* the reasonableness factors are:[7]

*(1) The results obtained for the class;*

The factor is addressed, *supra*, under *Johnson* factor 8, and clearly favors approving the requested fees.

*(2) The quality, skill, and efficiency of the attorneys' involved;*

Likewise, the discussion of *Johnson* factors 3 and 9, above, address this factor, which favors the Objectors' Counsel's request.

---

[7] *Halcom* Docket No. 115 at 22 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

*(3) The complexity and duration of the case;*

*See supra*, Johnson factors 2, 3 and 11.

*(4) The risk of nonpayment;*

As noted above, in response to *Johnson* factor 6, the Objectors' Counsel took on their clients' cause with no expectation of payment unless they were successful in pressing the objections.

*(5) Awards in similar cases;*

This factor correlates with *Johnson* factor 12, above, and clearly favors granting the motion.

*(6) Objections;*

This factor neither favors nor disfavors the motion, since counsel represents objectors to the proposed settlement, and are not class counsel.

*(7) The amount of time devoted to the case by plaintiffs' counsel.*

Again, the discussion above of *Johnson* factor 1, and the fact that the requested hours amount to a fraction of the time spent by objectors' counsel in *Halcom,* demonstrates the amount and reasonableness of the hours for which compensation is sought.

Under *Gunter*, too, therefore, the weight of the factors clearly favors granting Objectors' Counsel's fee motion in full.

    **E.**    **The Incentive Fees Are Reasonable**

The $7,500 sought as an incentive (or service) award for each of the eight Friedman/Podoll Objectors is likewise reasonable. It is only one-half the amount Class Counsel seeks for the named plaintiffs, and is equal to the amount the Court approved in the sibling case to this one. *Halcom* Docket No. 105 at 37. Each of the Friedman/Podoll Objectors stood up on

15

behalf of the entire class, and expended time and effort to achieve the two manifest and valuable improvements in the Joint Stipulation. None of incentive payments will be deducted from any payments to Class Members. *Joint Stipulation of Settlement with Objectors,* Docket No. 106-1 at 15; *Halcom*, 2022 WL 2317435 at *16.

## V.     CONCLUSION

For the foregoing reasons, the Friedman/Podoll Objectors and the Objectors' Counsel respectfully request that the Court approve the requested incentive awards and attorneys' fees.

Respectfully submitted,

/s/ Timothy R. Clinton
Timothy R. Clinton (Va. Bar No. 70902)
CLINTON & PEED
1775 Eye Street NW, Suite 1150
Washington, DC  20006
(202) 919-9491
(202) 587-5601 (fax)
tim@clintonpeed.com

Benjamin J. Vernia*
D.C. Bar No. 441287
THE VERNIA LAW FIRM
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
Tel. (202) 349-4053
Fax (866) 572-6728
bvernia@vernialaw.com
* *Pro hac vice*

*Attorneys for Objectors*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, I filed the foregoing Memorandum in Support of Motion of the Friedman and Podoll Objectors for Incentive Awards and Attorney's Fees via the CM/ECF with the Clerk of United States District Court for the Eastern District of Virginia.

/s/ Timothy R. Clinton
Timothy R. Clinton (Va. Bar No. 70902)
CLINTON & PEED
777 6th Street NW, 11th Fl.
Washington, DC  20001
(202) 621-1828
(202) 204-6320 (fax)
tim@clintonpeed.com

*Attorney for Objectors*
