Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| FRED HANEY, MARSHA MERRILL SYLVIA RAUSCH STEPHEN SWENSON, and, ALAN WOOTEN, individually and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No. 3:22-cv-00055-REP |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, | ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF BERNARD J. DIMURO, ESQ.

1.    I submit this Declaration in support of the Freidman and Podell Objectors' Motion for Incentive Award and Attorney's Fees. ("Objectors' Motion").  I am over 21 years of age and am competent to testify to the following facts and opinions, all of which stated herein are true and correct to the best of my knowledge, information, and belief.

### I.    BACKGROUND OF DECLARANT

2.    I received my B.A. from Northwestern University in 1976 and my Juris Doctor degree from George Washington University National Law Center in 1979. A copy of my professional resume is attached hereto.

3.    I am licensed to practice law in Virginia (1979), Illinois (1980), and Washington, D.C. (1985). I am also admitted to various Federal courts including the United States Supreme Court, the Court of Appeals for the Fourth Circuit and the United States District Courts for the Eastern and Western Districts of Virginia and the District of Columbia.

4.    I have held a number of positions within the Virginia State Bar that involve matters of professional responsibility which entail, in part, assessing the reasonableness of attorneys' fees and billing practices.[1]

5.    I frequently lecture on matters of professional responsibility. Also, I have been retained on a number of occasions as an expert on the reasonableness of attorneys' fees in litigation. I regularly review the decisions of the United States Court of Appeals for the Fourth Circuit and the United States District Courts for the Eastern and Western Districts of Virginia regarding attorneys' fees applications. I have re-reviewed much of that case law for purposes of rendering this declaration.

6.    Over the years, I have represented a number of law firms in Washington, D.C. and Virginia on matters of professional responsibility, and I have also served as an expert witness on a number of occasions with respect to matters of professional negligence.

7.    My initial employment in private practice was as an associate (later partner) with Hirschkop & Grad, P.C.  Although the firm was small the firm handled complex litigation against large "national" firms. I left the firm in 1989 to form DiMuroGinsberg, P.C with Nina Ginsberg and others. In my role as Managing Partner of my firm, I routinely keep track of hourly rates of attorneys and billing practices of other law firms by review surveys, reading case decisions and discussions with colleagues.

8.    Over the past forty-two years I have represented clients in complex civil litigation matters ranging from securities fraud, intellectual property disputes, business torts, constitutional

---

[1] I was President of the State Bar from June 2002 to June 2003.  I was a member of the Bar's local grievance committee from 1985-1988 and a member of the Virginia Supreme Court Disciplinary Board from 1988 to 1995 (serving as its chairman for the last two years). I was a member of the State Bar's Committee to re-write the Virginia Code of Professional Conduct.

and civil rights, derivative litigation actions, trade secret claims (both federal and state) computer fraud and trespass, software copyright claims, antitrust, and trademark and patent litigation, insurance coverage disputes, the Antiterrorism Act, RICO, False Claim Act disputes and many other complex matters. Oftentimes in these cases, opposing counsel are attorneys in large regional or national law firms. I have also acted as co-counsel and local counsel for regional and national law firms in complex civil litigation, thus being exposed to their staffing and billing practices.

9.     The DiMuro Law Firm has served as counsel including class action claims, such as those present in this case. I was appointed liaison counsel in *Brown v. Transurban USA, Inc.*, C.A. 1:15-cv-00494 (E.D. Va.), *Williamson, et al. v. Lumber Liquidators, Inc.*, C.A. 1:14-cv-00035 (E.D. Va.), the first case involving Lumber Liquidators in this Court.  I was also co-counsel for the plaintiff in *A.F. of L. – A.G.C. Building Trades Welfare Plan v. Pfizer, Inc., et al.*, C.A. No. 2:14-cv-452 (E.D. Va. Norfolk Division) (antitrust class action).  I previously represented the Commonwealth of Massachusetts Pension Reserves Investment Trust in *In Re The Mills Corporation Securities Litigation,* C.A. No. 1:06-cv-00077 (E.D. Va.) (class action alleging widespread accounting fraud resulting in massive losses to individual and institutional investors), the plaintiff in *STLE Corporation v. The Hershey Company, et al.*, C.A. No. 1:08-cv-00019 (E.D. Va.) (antitrust class action transferred to M.D. Pa. as part of MDL order) and the plaintiffs in *Radosti v. Envision EMI, LLC*, C.A. No. 1:09-cv-887 (D.D.C.) (consumer fraud class action case).

10.     The PACER system lists me as counsel of record in almost 300 cases in this District. My best estimate is that I have tried over 190 cases and arbitrations to conclusion.

11.     I am very familiar with the services performed by law firms in Northern Virginia as well as their billing rates as a result of my many years of litigation experience, my participation in Virginia State Bar activities, and my representation of law firms in Northern Virginia.

## II.    MATERIALS REVIEWED

12.    I have reviewed the Complaint filed in this case (ECF 1). I have also reviewed the pleadings relative to approval of the settlement, the objections raised and the final proposed settlement (ECF Nos. 39, 40, 43, 56, 72, 98 and 105-107).  I have also reviewed the time records maintained by Objectors' Counsel and the Objectors' Motion.

13.  I have also reviewed this court's opinions regarding attorney's fees and settlement approval in *Skochin, et. al. v. Genworth Fin. Inc., et al.*, C.A. No. 3:19-cv-00049 (E.D. Va.) ("*Skochin*") and *Halcom, et. al. v. Genworth Life Ins. Co., et al.*,  C.A. No. 3:21-cv-00019 (E.D. Va.), ("*Halcom*").

14.  I have interviewed objector's counsel, Benjamin Vernia and reviewed the resumes of Mr. Vernia and his co-counsel, Timothy B. Clinton.

## III.    OPINIONS

### A.    Reasonableness of Hourly Rates

15.   Lead counsel, Benjamin J. Vernia's hourly rate is $700.  He has been licensed to practice law for 29 years, since 1992.  Mr. Vernia has significant experience in complex litigation, both civil and white collar defense.  From 1994 – 2002 he was a trial attorney with the Department of Justice's Civil Fraud Section and from 2002 – 2005 he was a trial attorney with DOJ's Child Exploitation and Obscenity Section.   Thereafter he was Special Counsel with Covington and Burling LLP until he opened his own firm in 2009.

16.  Mr. Vernia's associate, Andrew K. Murray's hourly rate is $350.

17.  Mr. Clinton has been licensed since 2005.  His hourly rate charged to this matter is $600.

18.  The hourly rates for each of these attorney's are well within the market rates for attorneys with the education, training and experience.  The two senior attorneys would command far greater hourly rates at larger firms. I base this opinion on my knowledge of rates charged by attorneys and by hourly rates approved in court decisions in Virginia federal district courts and the Fourth Circuit Court of Appeals.

## B.  Reasonableness of Time Expended and Work Performed

Mr. Vernia led the work on Objectors' Motion and the subsequent settlement.  He contemporaneously recorded 173.5 hours from September to November 23, 2022 for a total of $121,450.00.  Mr. Vernia provided services in all aspects of Objector's Motion including (a) investigation of the claims and defenses to the claims made; (b) evaluation of the merits of the claims made; (c) an analysis of the initial settlement proposed by the parties; (d) drafting and filing his clients' initial objections; (e)reviewing and assessing the various objections filed by other objectors; (f) taking the lead in negotiating expanded and better terms for the class members which resulted in a joint motion to approve a settlement between Genworth and his clients.

Mr. Murray recorded six hours research for a total of $2,100.00.

Mr. Clinton acted as local counsel providing support with respect to local procedures and providing his substantive thoughts on legal issues and settlement.  opinion to Mr. Vernia's efforts.  He recorded 7.8 hours for a total of $4,680.00.  In toto Objector's Counsel has a lodestar fee of $128,230.00.

Whether the court employs a lodestar calculation under *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d714 (1974) or a common fund method as the Court discussed in *Halcom*, in assessing attorney's fees, the time recorded (and hence the fees recorded) by Objectors.

Indeed the Court has indicated that although it employed the common fund method in *Halcom* (as modified to account for the fact that the common fund was not being invaded), the lodestar method can act as a test to validate the other approach.

As pointed out in Objectors' Motion the fees sought represent a mere 6.4% of the additional value their efforts brought to the class members as a whole and only .17% of Genworth's lowest illustration of the entire settlement's cash damages that will be paid out. The added benefits to the class members include increased damages awards amounting to approximately $6 million.

Under *Johnson*, the relevant factors, and their application here, are as follows:[2]

*(1) The time and labor expended*

The Objectors' Counsel's billing records and declarations support the time and labor they expended in representing the Friedman/Podoll Objectors.

*(2) The novelty and difficulty of the questions raised;*

Although this case is similar to its siblings, *Skochin* and *Halcom*, the specific objections which formed the basis for the Friedman/Podoll Objectors' settlement with the parties were not specifically at issue in those prior actions. As for difficulty, the LTC insurance issues presented in this case – with Class Members falling into multiple subgroups – certainly qualifies the case and its proposed settlement as complex and difficult.

*(3) The skill required to properly perform the legal services rendered;*

This factor dovetails with its predecessor. Another skill required of counsel here was to inform, advise, and coordinate with eight objector clients. The diversity, size, and wisdom of the

---

[2] *Halcom*, Docket No. 115 at 22 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Friedman/Podoll Objectors were a strength, but presented logistical challenges as well that called on counsel's skills.

*(4) The attorney's opportunity costs in pressing the instant litigation;*

Given the short time available to engage with Genworth's counsel and negotiate a valuable settlement, it should come as no surprise that a quite significant share of one attorney's time (Mr. Vernia) was devoted to this representation during that period. All of the attorneys, moreover, were called from other matters and client development to devote time to this case.

*(5) The customary fee for legal work;*

As noted above, the Court has previously approved hour rates exceeding those sought to be charged here. In *Halcom*, Mr. Cronin had the same number of years in practice as Mr. Vernia, but the Court approved his lodestar figure at a rate of $750.00 per hour – $50,00 more than Mr. Vernia seeks. Likewise, Mr. Duncan had just three more years of experience than Mr. Clinton, but received that same $750.00 rate (vs. $600.00 for Mr. Clinton here). Finally, the associate in that case, Mr. Podolny, had just half a year more of experience than Mr. Murray, but his individual lodestar was approved at a rate of $550.00, or $200.00 more per hour than is sought in Mr. Murray's lodestar. *See Halcom* Docket No. 106 at 16.

*(6) The attorney's expectations at the outset of litigation;*

The Objectors' Counsel took this matter on a purely contingent basis, expecting no payment from the Friedman/Podoll Objectors, and relying on the strength of the objections.

*(7) The time limitations imposed by the client or circumstances;*

As described above, the Objectors' Counsel had very little time to familiarize themselves with the class action suit, appraise the objections their clients sought to be made, and then once

made, engage with parties' counsel and negotiate a resolution – first, of the merits of the objections, and then, of the compensation to be paid.

*(8) The amount in controversy and the results obtained;*

The discussion, *supra*, concerning the value obtained for the entire class addresses this *Johnson* factor. With respect to the objections, the Objectors' Counsel obtained approximately $6 million in value for the class as a whole, over a very short – but intense – period of litigation. As the Court noted in approving payment of $1.2 million to the attorneys in *Halcom*, the case overall involves a massive number of people (in fact, more here than in *Skochin* and *Halcom* combined) and hundreds of millions of dollars.

*(9) The experience, reputation and ability of the attorney;*

Each of Objectors' Counsel has significant experience in complex commercial litigation. Mr. Vernia, the lead attorney, has nearly thirty years of practice, including eleven years at the Department of Justice handling complex civil and criminal fraud cases.

*(10) The undesirability of the case within the legal community in which the suit arose;*

This factor is neutral with respect to the reasonableness of the requested fees.

*(11) The nature and length of the professional relationship between attorney and client;*

The Objectors' Counsel have only represented the Friedman/Podoll Objectors briefly, but as described above, that relationship required significant interaction to draw from their knowledge and seek their input into, and approval of the settlement.

*(12) Attorneys' fees awards in similar cases.*

This factor counsels most strongly in favor of approving this motion. As previously described, the *Halcom* case provides an excellent point of comparison, and the fee request here is, in all respects, more modest than that which the Court approved there.

Thus, the *Johnson* factors (with the exception of 10, which is neutral), favor approval of the Objectors' Counsel's fee request.

**I declare under penalty of perjury that the foregoing statements are true and correct.**

_December 2, 2022_____
Date                                                    Bernard J. DiMuro, Esq.



### CURRICULUM VITAE
### BERNARD J. DiMURO

### CURRENT POSITION

Partner, DiMuroGinsberg, P.C.

Licensed in Virginia (1979), Illinois (1980) and District of Columbia (1985). Admitted before the U.S. Supreme Court and numerous federal courts

Professional emphasis: Civil Litigation and Professional Responsibility - "AV" Rated

Qualified as an expert witness on matters relating to reasonableness of attorneys fees, professional responsibility and the standard of care for attorneys in litigation and fiduciary matters

### EDUCATION

George Washington University National Law Center, Juris Doctor, 1979
Northwestern University, Bachelor of Arts, Political Science, 1976

### PROFESSIONAL ACTIVITIES

**Virginia State Bar**
- President (2002-2003)
- Executive Committee (2000-2004 and 1995-1997)
- Council Member (1999-2004; 1991-1997)
- Co-Chair, Advertising Task Force (2004-2005)
- Vice-Chair, Standing Committee on Budget and Finance (2004-2005)
- Member, Leadership Task Force (2004)
- Council Liaison to Lawyers Helping Lawyers Committee (1999-2009)
- Chair, Task Force on Public Access to the Disciplinary System (2000-2001)
- Member, Task Force on Corporate Counsel
- Member, Budget and Finance Committee (2000-2004)
- Member, Continuing Legal Education Committee (2000-2004)
- Member, Committee to Study the Code of Professional Responsibility (1995-2000)
- Member, Committee on Public Information, Public Relations (1996-1998)

1



- Chair, Virginia Disciplinary Board (1993-1995)
- Member, Virginia Disciplinary Board (1988-1995)
- Faculty Member, Course on Professionalism (1996-1999)
- Member, Committee on Lawyers Serving as Fiduciaries (1994-1995)
- Member, Committee on Advertising and Solicitation (1991)
- Member and Chairman, 8th District Grievance Committee (1985-1989)

**Other Professional Activities**
- Fellow, Litigation Counsel of America (2015)
- Fellow, American Bar Association (Inducted 1998)
- Fellow, Virginia Law Foundation (Inducted 1995)
- Delegate, American Bar Association (1997-1999) (1999-2003) (2010-2014)
- Chair & Member, Merit Selection Panel for Magistrate Judges (E.D. Va.) (1993-1999)
- Member, Board of Governors, Virginia Trial Lawyers Association (1997-1998)

## PROFESSIONAL ORGANIZATIONS AND CIVIC ACTIVITIES

- Virginia Bar Association
- American Bar Association
- Virginia Trial Lawyers' Association
- American Association for Justice
- Public Justice Foundation
- Former Board of Directors, Virginia Special Olympics
- Trial Lawyers for Public Justice (Recipient, Public Justice Award, 1995); Finalist, Trial Lawyer of the Year (2006)

## PROFESSIONAL RESPONSIBILITY LECTURES

## LAST 10 YEARS

**Virginia CLE**
- Top Ethics Concerns of the Contemporary Practitioner (2017)
- Annual Ethics Update (2001-2017)
- Attorneys' Fees and Sanctions (2012 - 2017)
- Advanced Business Litigation (2009-2014)

2



- Business Law Seminar (2000, 2002-2003, 2005-2010)
- Advanced Real Estate Seminar (2010, 2014)
- Advanced Worker's Compensation Seminar (2010)

**Virginia State Bar**
- Bar Leaders Institute (2017)
- Annual Disciplinary Conference (2010)
- What Every Attorney Needs to Know (2010)
- Young Lawyers Conference:  Professional Development Seminar (2010)

- Disclosure" (2015)

**Virginia Association of Defense Attorneys**
- Annual Meeting (2011)
- Spring Meeting (2010)

**Northern Virginia Women Attorney's Association**
- Ethics Update (2013-2017)

**Fairfax Bar Association**
- Best Billing Practices – Attorneys' Fees (2017)
- The Ultimate View from the Bench (2014, 2015)
- Business Law Section (2011)
- Ethics Triple Header (2007)

**George Mason American Inn of Court**
- Civil Litigation (2014)

**Virginia Trial Lawyers Association**
- Electronic Evidence – The Paper Trial in a Digital Age (2017)
- Ethics, Evidence and Sanctions (2015)
- Attorneys' Fees and Sanctions (2013)
- Evidence for the Trial Lawyer (2010)
- Making A Difference (2006)

**Legal Tech New York**



- eDiscovery without Limits (2013)


**<u>PUBLICATIONS</u>**
- Co-Author, *Understanding Virginia's Business Conspiracy Act*, The Journal, of the Virginia Trial Lawyers Association, Fall 2012
- Co-Author, <u>Attorneys' Fees and Sanctions</u>, Virginia CLE
- Co-Editor, <u>Virginia Employment Law Letter</u>**,** M. Lee Smith Publishers
- *Rule Change Will Bolster Effective Disciplinary System*; Virginia Lawyers Weekly, March 28, 1994
- *Multiple Chemical Sensitivity: An Emerging Area of Law*; Trial Magazine, Association of Trial Lawyers of America, July, 1995
- *To Speak or Not to Speak: Public Employment and the First Amendment*; The Journal of the Virginia Trial Lawyers Association, Spring, 1996