**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| **FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **Civil Action No. 3:22-cv-00055-REP** |
| **vs.** | **CLASS ACTION** |
| **GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,** | |
| **Defendants.** | |

**JOINT RESPONSE TO CLASS MEMBER KATHRYN DIMIDUK'S SUPPLEMENT TO OBJECTION ECF67-DIMIDUK TO HANEY VS GENWORTH CASE (ECF NO. 102)**

Named Plaintiffs and Defendants (collectively, the "Parties") jointly submit this Response to the Supplement to Objection ECF67-Dimiduk to Haney vs Genworth Case submitted by Class Member Kathryn Dimiduk ("Ms. Dimiduk") through a letter dated November 18, 2022 and received by the Court on November 23, 2022 (ECF No. 102).

Ms. Dimiduk timely submitted an objection to the Settlement by a letter dated September 20, 2022. (ECF No. 67.) She then appeared at the November 17, 2022, Final Approval Hearing and provided argument in support of her objection.[1]

[1] Ms. Dimiduk also apparently intends to offer testimony as a witness (if permitted) for another objector, Gary Davis, at the December 13 continued Final Approval Hearing. Pursuant to the Court's December 6, 2022 Order (ECF No. 114), the Parties have filed a separate joint response to Gary Davis's Motion for Leave to Call Kathryn Dimiduk as a Witness by way of Zoom at the Final Approval Hearing on December 13, 2022 (ECF No 116).

Ms. Dimiduk stated at the November 17 Final Approval Hearing that she received a rate action letter in April or May of 2022 purportedly notifying her of a rate increase of 340%,[2] but she was unable to provide the specific date that she made her election to reduce benefits in light of that rate increase letter. (Nov. 17, 2022 Final Approval Hr'g Tr., 155:11-21.) Ms. Dimiduk was then invited by the Court to submit additional documentation regarding her rate action letter by November 22, 2022. (*Id.* at 155:11-156:19 ("if you want to send me something on Monday *about this issue*, or Tuesday, file it Tuesday [November 22].") [emphasis added]).

In her supplemental objection letter dated November 18, 2022, which enclosed several attachments, Ms. Dimiduk provided far more information than was permitted by the Court's invitation (*e.g.*, the date of her rate action letter and benefit reduction) and is beyond the scope of what the Court has set for hearing at the continued Final Approval Hearing. (*See* ECF Nos. 98, 102). Ms. Dimiduk's supplemental objection also for the most part does not raise facts that were not known to Ms. Dimiduk at the time her original objection was due (September 30, 2022, *see* ECF No. 31 at 6, 8) or at the time of the November 17 Final Approval Hearing. Indeed, Ms. Dimiduk's supplemental objection primarily concerns her purchase of a Genworth and another long-term care insurance policy in the 2000s and Genworth's rate action letter sent to her on April 1, 2022. As such, her supplemental objection is untimely and may be overruled on that basis alone. (ECF No. 31 at 6.)

---

[2] Ms. Dimiduk's rate action letter actually advised of a 250% cumulative rate increase phased in over three years.

In any event, Ms. Dimiduk's supplemental objection does not raise any substantive grounds for disapproving the Settlement. Ms. Dimiduk's primary complaint is that she bought her Genworth policy in the early 2000s, and was told by an unspecified source at the time future rate increases were "possible and in the range of maybe 10% - 20%," and that she purchased a certain amount of additional long-term care insurance from another carrier in 2008. (ECF No. 102 at 1.) She now argues that had she known "how much Genworth rates were going to go up" 13 years later, in 2021, she likely would have made a different decision regarding her long-term care insurance in 2008. (*Id.*)

The alleged "deception" that Ms. Dimiduk complains of now not only falls well outside of the Class Period (which begins January 1, 2013) but also outside of the scope of this case to begin with. Plaintiffs have not alleged that Genworth had plans to raise premiums on the Class Policies at the time that Ms. Dimiduk purchased her policy or at the time she obtained an additional policy from another carrier. Plaintiffs' Complaint did not purport to and does not seek damages or other relief associated with Class Members' purchases of their policies or decisions made prior to being sent rate increase notices.[3] A claim based on future rate increases that Genworth (and the rest of the LTC industry) did not foresee at the time of policy sales in the 2000s is not part of this lawsuit (nor could it have been, including due to obvious statute of limitations challenges). Since there is no cognizable claim in this case that dates back to the issuance of Ms. Dimiduk's policy or her 2008 purchase of supplemental coverage from another carrier, there is no relief that this Settlement could provide in that regard. The Settlement is not inadequate for failing to provide such a benefit.

---

[3] According to Genworth's records, Ms. Dimiduk was sent her first rate increase notice in 2020.

Ms. Dimiduk's supplemental objection also provides a timeline of information she received from Genworth, including her 2021 and 2022 rate action letters that included a "reference to possible future rate increases." (ECF No. 102, at 1-2.) Notably, Ms. Dimiduk's supplemental objection goes on to state: "I agree with the lawsuit that neither of the recent rate increases included sufficient information to make an informed decision. . . . This is very generic disclosures [sic] that don't convey sufficient information on which to make reasonable and responsible decisions." (*Id.* at 2.) This is not an objection to the Settlement, though—it is actually supportive of it. The very heart of this case is Plaintiffs' allegation that Genworth did not provide all of the necessary information in its rate action letters that would have allowed Policyholders including Ms. Dimiduk to make, as she puts it, "reasonable and responsible decisions." That is precisely what the Settlement's Disclosures and Special Election Options remedy. Accordingly, this aspect of Ms. Dimiduk's supplemental objection is resolved by the Settlement relief itself.

Ms. Dimiduk mischaracterizes the Amended Settlement Agreement as "continu[ing] to reduce and constrain options." (ECF No. 102, at 2.) That is patently not the case. Each change to the Settlement is an enhancement; they include *expanding* the availability of one of the Special Election Options and *increasing* its Cash Damages payment, *adding* a Special Election Option, and *increasing* the Cash Damages payment for another Special Election Option. (*See* ECF No. 109-1 at 51-53.) Ms. Dimiduk specifically takes issue with one of the six Special Election Options that will be available to her in the Settlement, specifically, the Option that includes a Cash Damages payment of $6,000 and a reduction of the Class Member's benefit inflation option to 1% compounded annually. But Ms. Dimiduk ignores other Special Election Options, such as

one under which she could retain her 5% compound benefit inflation protection and receive a Cash Damages payment of $1,200.[4] And, of course, that she does not have to make any Special Election at all if she wants to keep her coverage as-is. (*See Skochin, 2020 WL 6532833, at *13-14 ("[I]f no option fits a class member's circumstances, the member was allowed to opt out of the Settlement.").)*

Lastly, Ms. Dimiduk's supplemental objection returns to the subject of her initial objection: that she had to make a decision on her rate increase letter before learning about this Settlement or about any additional Special Election Options that might become available to her if this Settlement is approved. (ECF No. 102, at 1-2.) Ms. Dimiduk's rate action letter was sent on April 1, 2022, over one month *before* Preliminary Approval was granted. As discussed in the contemporaneous briefing regarding Mr. Davis' objection, there is no requirement under Rule 23 to send a pre-Notice notice of a potential settlement to potential class members, let alone before the potential settlement is even preliminarily approved. Indeed, to have done otherwise would create a much more serious risk than that about which Ms. Dimiduk complains: namely, that Policyholders in receipt of rate increase letters (which are sent on a rolling basis throughout the year according to schedules approved by State insurance regulators) would make decisions about their premiums and benefits based on the *potential* for a settlement that might never even be reached, let alone be approved. Ms. Dimiduk's supplemental objection also illustrates the slippery slope of her and Mr. Davis' proposition (that Policyholders should have been sent a pre-

---

4 Just like Mr. Davis, Ms. Dimiduk actually will be eligible for *the exact same Special Election Options* in the Settlement that she would have been had she not made an election in June of this year to reduce her coverage (like Mr. Davis, she reduced her Daily Benefit Amount by a certain percentage). And like Mr. Davis, Ms. Dimiduk of course has since been paying lowering premiums than she otherwise would have paid under the rate increase.

Notice notice), as Mr. Davis has had to shift his position (that the Preliminary Approval Order is the relevant "start date" for pre-Notice notice) to attempt to conform to Ms. Dimiduk's position (that when Genworth "knew what the proposed settlement was" is the relevant start date for pre-Notice notice, see ECF No. 102 at 2). As the Parties detailed in response to Mr. Davis' objection (ECF No. 99), regardless of when Class Notice was mailed, it is unavoidable that certain Policyholders would be considering their options with respect to rate increase letters in a window of time before that Class Notice. If anything, Ms. Dimiduk's supplemental objection further illustrates the fallacy of Mr. Davis' premise by underscoring that the Class Notice was appropriate considering the rolling nature of rate increase letters that, at some point prior to Class Notice, all Class Members received.

For the foregoing reasons, Ms. Dimiduk's supplemental objection should be overruled.

DATED: December 8, 2022

*/s/ Heidi E. Siegmund*
MCGUIREWOODS LLP
BRIAN C. RIOPELLE (VSB No. 36454)
BRIAN E. PUMPHREY (VSB No. 47312)
HEIDI E. SIEGMUND (VSB No. 89569)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
hsiegmund@mcguirewoods.com

DENTONS US LLP
REID L. ASHINOFF (pro hac vice)
DREW MARROCCO (VSB No. 38955)
MICHAEL J. DUVALL (pro hac vice)
CATHARINE LUO (pro hac vice)
SAMANTHA FAHR (pro hac vice)
HALEY GRISSOM (pro hac vice)
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
reid.ashinoff@dentons.com
drew.marrocco@dentons.com
michael.duvall@dentons.com
catharine.luo@dentons.com
samantha.fahr@dentons.com
haley.grissom@dentons.com

Counsel for Defendants

DATED: December 8, 2022

Respectfully submitted,

*/s/ Jonathan M. Petty (with permission)*
PHELAN PETTY PLC
JONATHAN M. PETTY, VSB No. 43100
BRIELLE M. HUNT, VSB No. 87652
3315 West Broad Street
Richmond, VA 23230
Tel: (804) 980-7100
Fax: (804) 767-4601
jpetty@phelanpetty.com
bhunt@phelanpetty.com

GOLDMAN SCARLATO & PENNY, P.C.
BRIAN DOUGLAS PENNY (*pro hac vice*)
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Tel: (484) 342-0700
Fax: (484) 342-0701
penny@lawgsp.com

ROBBINS GELLER RUDMAN
& DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
BRADLEY BEALL (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000
Fax: (561) 750-3364

BERGER MONTAGUE PC
GLEN L. ABRAMSON (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215)875-4604
gabramson@bm.net

***Counsel for Plaintiffs and the Settlement Class***

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of December, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send a notification of such filing to all counsel of record. I also caused the foregoing to be sent by overnight delivery to Ms. Dimiduk at the following address:

Kathryn Dimiduk
105 Simsburg Dr.
Ithaca, NY 14850

*/s/ Heidi E. Siegmund*
MCGUIREWOODS LLP
BRIAN C. RIOPELLE (VSB No. 36454)
BRIAN E. PUMPHREY (VSB No. 47312)
HEIDI E. SIEGMUND (VSB No. 89569)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
hsiegmund@mcguirewoods.com

***Counsel for Defendants***