IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendants. | Civil Action No. 3:22-cv-00055-REP<br><br><u>CLASS ACTION</u> |

### <u>REPLY IN SUPPORT OF THE PARTIES' SUPPLEMENTAL BRIEF (ECF NO. 99) AND IN RESPONSE TO CLASS MEMBERS GARY DAVIS AND LORRAINE FREEDLANDER'S SUPPLEMENTAL RESPONSIVE BRIEF (ECF NO. 110)</u>

Pursuant to the Court's November 17 and 21, 2022 Orders (ECF Nos. 94 & 98), Named Plaintiffs and Defendants (collectively, the "Parties") jointly submit this reply in support of the Parties' Supplemental Brief filed on November 23, 2022 (ECF No. 99) and in response to the Supplemental Responsive Brief ("Response Brief") filed by Class Members Gary Davis and Lorraine Freedlander (together, "Objectors") on December 2, 2022 (ECF No. 110).[1]

### <u>Introduction</u>

The Objectors fail to address, or even acknowledge, the reasons the Parties identified in support of their plan for disseminating Class Notice, which was compliant with both the Federal

---

[1] Unless otherwise indicated, this Reply utilizes the same defined capitalized terms as the Parties' Supplemental Brief.

Rules of Civil Procedure ("Rules") and the Court's Order Approving Joint Stipulation of Amended Settlement Agreement (*see* ECF No. 34, PageID# 1036, ¶ 5). Those reasons included not only the practical realities of providing Notice and setting up the mechanisms to handle inquiries from a Class of more than 350,000 people, but also the likelihood of confusion, or worse, that could result from providing incomplete and potentially inaccurate information about a Settlement that has only been preliminarily approved, especially without the material information contained in the extensive (11-page) Class Notice. Objectors do not, as they cannot, dispute that the very purpose of Class Notice is to provide complete and accurate information about a potential settlement in a uniform notice to the Class and that the Rules necessarily allow for a reasonable time to prepare and disseminate such notice.

Further, with respect to the election Objectors made shortly before receiving Class Notice, Objectors do not dispute that they—like the overwhelming majority of other Class Members who made an election after Preliminary Approval of the Settlement but before Class Notice was sent—were notified by Genworth in writing that they had 60 days to reverse their election, the exercise of which would have completely resolved the issue they have now raised to the Court. Perhaps most importantly, these Objectors do not claim that they intend to reverse the election they most recently made if given the chance, nor do they claim they would elect one of the Special Election Options in the Settlement. They thus fail to even contend that they have actually been prejudiced or harmed in any sense. Instead, Objectors now seek to gum up the Settlement for the tens of thousands of Class Members who do want to make a Special Election Option, based solely on the Objectors' view that the real-world application of the Class Notice requirements of Rule 23 happen to impact some Class Members to different degrees than others. That is not a persuasive objection to this Settlement.

Finally, in their Response Brief, the Objectors seek to expand the issue framed by the Court. Specifically, Objectors now claim that "pre-Notice notice" should have been provided when the case was *first filed*, *i.e.*, before the Parties had even executed the Settlement—let alone before it was reviewed by the Court. The Objectors' ever-changing notion of the date on which "pre-Notice notice" should have been sent crystallizes why Rule 23 exists. The Objectors' attempt to amend the express requirements of the Rule with their evolving views of fairness should be rejected. As the Court recognized at the November 17, 2022 hearing, the real world requires trade-offs with respect to what is possible, practicable, and in the best interest of the Class as a whole. The Settlement is "fair, reasonable, and adequate" as required by Rule 23, and the Notice provided to the Class was: (a) "the best notice . . . *practicable under the circumstances*," and (b) disseminated only *after* the Court "order[ed] notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)." FED. R. CIV. P. 23(c)(2)(B) (emphasis added). The Objectors' objections are untethered to the express dictates of Rule 23 and should thus be overruled, and the Court should grant final approval of the Settlement.

## I. Objectors Were Treated Fairly.

As noted in the Parties' Supplemental Brief, at the time Objectors received their rate action letters and were provided the option to reduce their benefits, the Objectors were advised in writing—in the "Important Information Regarding This Premium Increase" section of their rate action letters—that they had 60 days to reverse their elections, if made. (*See* Mr. Davis' Rate Action Letter, Ex. 1 to Supplemental Brief (ECF No. 99) at p. 3 of 3 of "Important Information.").) Indeed, Mr. Davis had two months *after receiving Class Notice*—until October

4, 2022—to reverse his election and cure any perceived prejudice he might claim to have suffered from his pre-Notice election. He did not do so.

Although Objectors try to dismiss the 60-day reversal provision in their rate action letter as a "red herring," they cannot dispute that their right to reverse completely disposes of the issue they raise, both as to them specifically and the overwhelming majority of the other, **non-objecting** Class Members who made elections after Preliminary Approval but before Class Notice.[2]

The Objectors' only response is that they did not read the "Important Information" section of their letter and speculate that the Class as a whole did not have the knowledge or sophistication to review the written terms of their policy documents after they received the Class Notice. This is self-defeating; notably, Objectors cite no authority or State regulatory rule for their bid to excuse their apparent failure to read the terms of their rate action letter, *i.e.*, the very letter that prompted their election in the first instance. It is well established, and Objectors do not dispute, that "[u]pon receipt of proper notice, the insured has the duty to read the notice, and the insurer is not responsible for an insured's failure to do so." *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1237 (4th Cir. 1996).

Objectors further complain that Genworth's confirmation of their ordinary-course benefit reduction did not repeat their 60-day right to reversal. That too is unavailing; an insurer is not required to duplicate in every notice every piece of information that it has previously provided.

---

[2] As noted in the Parties' Supplemental Brief, the vast majority of other Class Members who, like Objectors, made an election based on a rate action letter received after Preliminary Approval but before Class Notice also had the ability to reverse their elections after receiving Class Notice, and thus remedy any alleged prejudice from having made an election prior to Class Notice. **None** of those Class Members has claimed their election or the Class Notice process was unfair or prejudicial.

4

Objectors' unsupported and immaterial musings should not unravel a settlement designed to provide relief to over 350,000 Class Members.

## II. Objectors are not Aggrieved and Cannot Identify Any Actual Prejudice.

Notably, Mr. Davis has not stated that he would elect a Special Election Option in the Settlement, even if he had reversed his ordinary-course election during the 60-day reversal period or had never made that election in the first instance. Mr. Davis thus appears to be engaged in a "controversy" of his own making in which even he has no real interest.[3] Further, Objectors simply speculate that other Class Members who received a rate action letter prior to receiving the Notice "might" have wished to reverse that election after receiving the Notice. (*See* Response Brief (ECF No. 110), PageID# 2984.) But such Class Members chose to reduce their benefits in response to those rate increases because they had decided they could not afford the increased premiums, or because they did not value their full benefits in light of the premium needed to maintain them. (*See, e.g,* Dimiduk Supplement to Objection (ECF No. 102), PageID# 2651.) Thus, Objectors fail to allege, let alone prove, any *actual* harm or prejudice to themselves or to any other Class Member, and merely speculate regarding what others "might" have understood or done differently. This is not a proper basis for an objection inasmuch as Objectors are not aggrieved by the Settlement or its terms. *See, e.g.*, *Brown v. Hain Celestial Grp.*, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016).

---

[3] At most, Mr. Davis appears to be arguing that he does not like any of the Special Election Options available in the Settlement, which, as this Court previously has noted, is not a valid objection. *See Skochin v. Genworth Fin., Inc.*, 2020 WL 6532833, at *18 (E.D. Va. Nov. 5, 2020) (citing *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016)) ("In determining whether to approve a class action settlement, the issue is not whether everyone affected by the settlement is completely satisfied. Instead, the test is whether the settlement, as a whole, is a fair, adequate, and reasonable resolution of the class claims asserted.").

Further, Objectors incorrectly contend—without any purported support—that Policyholders "who received the same premium increase notice" as them would "have limited their settlement options and also would not have the possibility of a cash damages settlement." (Response Brief (ECF No. 110), PageID#2986.)  First, as noted above, the vast majority of Class Members who received a rate action letter after Preliminary Approval but before Class Notice could have reversed their election after receiving Class Notice to avoid any potential limitation of Special Election Options; only 241 Class Members' 60-day reversal window expired before Class Notice was sent.  As Objectors admit, the Class Notice advised Class Members of the *potential* impact on eligibility for Special Election Options following ordinary-course elections (*id.* at PageID# 2985).  But contrary to Objectors' argument, this section of the Class Notice does not "acknowledge" the prejudice Objectors allege, but rather reminded *all* Class Members, including (but not limited to) those in the cohort for which this Court requested briefing, that ordinary-course elections made at any point may influence their eligibility for Special Election Options.  Objectors are simply complaining that they wanted the Class Notice information earlier than what Rule 23 requires or what was practicable under the circumstances.  Second, all of the Class Members who made an ordinary-course election, including Objectors, are still eligible for Special Election Options in the Settlement (whether Paid-Up Benefit, Reduced Benefit, or Non-Forfeiture Status Special Election Options).  And *all* of these Class Members have already benefited by having paid *lower* premiums than they would have paid by choosing to reduce their benefits when they did.  As such, the Settlement is not "worth less to Objectors and others who reduced their coverage" (Response Brief (ECF No. 110), PageID#2984), and no Class Members have been actually harmed by the timing of their rate action letters, elections to reduce benefits and premiums, or Class Notice.

### III. Class Notice Fully Complied with Rule 23 and No Additional Notice was Required.

Notably, Objectors failed to respond to the Parties' argument that providing Class Notice contemporaneously with Preliminary Approval was 1) impossible as a practical matter, 2) wholly inconsistent with the Federal Rules, and 3) likely problematic, since it would have involved the dissemination of incomplete, premature, or highly confusing information. Instead, sidestepping the real-world practicalities of what they demand—including the requisite effort to compile a complete and accurate Class List and the importance of providing Class Members with sufficient detail about the Settlement to inform their decision-making—Objectors conclusorily argue, "[t]here was simply no good reason to withhold material information from policyholders . . ." (Response Brief (ECF No. 110), PageID# 2987.).

Importantly, the Parties have not "withheld" any material information from Policyholders. The Parties have acted in accordance with the Rules and this Court's Preliminary Approval Order, and provided uniform notice of the Settlement in a timely manner; any suggestion otherwise is unfounded and improper.

Objectors also entirely ignore the process by which Genworth obtains approval for and sends out rate action letters. As noted in the Parties' Supplemental Brief, Genworth sends all of its rate action letters pursuant to rate increases, and rolling implementation schedules, that have been reviewed and approved by the appropriate State Insurance Regulators. The implementation of rate action letters is systematic, administratively complex, and cannot simply be paused or changed at any moment as Objectors seem to assume (albeit, again, without specifics).

Objectors also ignore the fact that "pre-Notice notice" likely would have caused significant confusion among Class Members and could have potentially led some or many Class Members to make decisions, or refrain from making decisions, based on incomplete information.

Indeed, Objectors do not argue with the Parties' point that providing an abbreviated description of a settlement that *might* be finally approved, without the additional and material information contained in the extensive (11-page) Class Notice, could inadvertently mislead Policyholders into making important decisions about their benefits and premiums largely in reliance on their *assumptions* about the Settlement and its possible terms. Nor do Objectors address the fact that "pre-Notice notice" would not provide Class Members with access to any of the instrumental informational resources the Parties created in connection with Class Notice (*i.e.*, the Settlement Website, the Claims Administrator's call center, and Class Counsel's separate dedicated call center). Objectors have not, and cannot, deny that Class Notice complied with the Federal Rules and this Court's Preliminary Approval Order, and was implemented in the best manner under the circumstances to properly inform the Class of the Settlement.

Despite being an attorney himself, Mr. Davis does not cite a single case for the proposition that a class member is harmed by the absence of notice of a potential or preliminarily-approved settlement *before* the Court-ordered date for Class Notice under Rule 23(c)(2)(B).[4] The Parties have located no authority contrary to Rule 23 requiring such "pre-Notice notice," and are not aware of any court that has ordered such "pre-Notice notice." Mr. Davis also fails to provide any authority for his even more strained contention that a class member is potentially harmed by the absence of notice of a tentative settlement *that has not even been presented to the Court for preliminary approval or even executed by the parties*. There is no logical or legal reason to deviate from the Rules, and Mr. Davis provides none, especially

---

[4] Rule 23(c)(2)(B) requires Class Notice, *inter alia*, to state "the definition of the class certified," which of course has not occurred at the time a complaint is filed, a settlement agreement is executed by the parties, or a motion for preliminary approval is filed.

where Objectors themselves concede that they were not were negatively impacted by the alleged timing issue, and none of the remaining 0.07% of Class Members who *may* have been allegedly impacted have even objected.

### IV. The Objectors' Proposed "Solution" is Deeply Flawed.

Failing to establish their own entitlement to relief, Objectors proceed to suggest, for the first time and without any logistical analysis, that the Court should require an amendment to the Second Amended Class Action Settlement Agreement allowing Class Members who have made an ordinary-course election *since the commencement of this action* to choose a Special Election Option based on their *previous* benefit pool and premium amount (prior to any reductions of benefits and premiums since this action was filed). (Response Brief (ECF No. 110), PageID# 2988.) There is no legal basis for drawing an arbitrary line beginning at the commencement of an action, which was months before the Parties completed their negotiations and signed the Settlement, and would otherwise be untethered to any requirements in Rule 23 or the case law of this Circuit (or, to the Parties' knowledge, of any other Circuit). Any argument that exceptions to the Rules are possible or plausible is not a basis to significantly alter the Settlement reached by the Parties, which complies to the letter with the requirements of the Rules and this Court's Orders.

Nor would allowing such reversals be a "simple process" as Objectors blithely assert. Allowing such open-ended reversals would require significant retroactive adjustments to premiums and coverage, as well as possible reinsurance and financial considerations, that may be further complicated if Class Members have gone on claim or otherwise experienced changes in their health.

In sum, Mr. Davis may think his proposed solution is simple, but it is not. Nor, importantly, is it what the Parties agreed to in the Settlement. The Parties have complied with all of the requirements of Rule 23 and they, no less than Objectors, are entitled to rely on the Federal Rules.

**V.      Objectors' *Sua Sponte* Expansion of the Relief Requested Exemplifies the Problems With Their *Ad Hoc* Approach to Class Notice.**

The inherent problem with Objectors' proposed *ad hoc* deviation from Rule 23 is exemplified by the fact that between the November 17, 2022 hearing and Objectors' December 2, 2022 Response Brief, Objectors have radically expanded the temporal universe in which, to their mind, "pre-Notice notice" should have been sent. Objectors now contend—contrary to the position they took in Court on November 17th (and which they had not taken in their written Objection) and without regard to the Court's own framing of the dispositive issue[5]—that the proper "pre-Notice notice" date is not the date of Preliminary Approval but rather the date upon which the action was *commenced*, *i.e.*, before this Court had even seen—or the Parties had even executed—a Settlement. Objectors' trending expansion of their opinion on the proper timing for Class Notice has no limit; by Objectors' logic, perhaps Class Notice should have been sent at the time of pre-suit demand or even at the beginning of the Class Period, before the Parties even had any definitive information to share with the Class. Mr. Davis's ignorance of the parameters of the Court's Order, and the slippery slope his expanding position creates, should not be entertained.

---

[5] The Court Order required the Parties and Mr. Davis to submit supplemental briefs, "[t]o resolve the objection regarding rate increase letters between preliminary approval of the settlement agreement and the mailing of notice made by Mr. Gary M. Davis, esquire, on behalf of himself and Lorrianne Friedlander…." (ECF No 98, at ¶1.)

**Conclusion**

The Settlement is fair, reasonable, and adequate and does not unfairly discriminate or prejudice the Objectors or any other Class Member. Moreover, under the totality of the circumstances, the manner and timing of Class Notice was fully compliant with Rule 23 and this Court's Preliminary Approval Order, and no additional notice to Objectors or any other Class Member was required. The Objectors' arguments should be rejected, and the Court should grant final approval of the Second Amended Class Action Settlement Agreement.

DATED: December 8, 2022

/s/ *Heidi E. Siegmund*
MCGUIREWOODS LLP
BRIAN E. PUMPHREY (VSB No. 47312)
HEIDI E. SIEGMUND (VSB No. 89569)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
bpumphrey@mcguirewoods.com
hsiegmund@mcguirewoods.com

DENTONS US LLP
REID L. ASHINOFF (*pro hac vice*)
DREW MARROCCO (VSB No. 38955)
MICHAEL J. DUVALL (*pro hac vice*)
CATHARINE LUO (*pro hac vice*)
SAMANTHA FAHR (*pro hac vice*)
HALEY GRISSOM (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
reid.ashinoff@dentons.com
drew.marrocco@dentons.com
michael.duvall@dentons.com
catharine.luo@dentons.com
samantha.fahr@dentons.com
haley.grissom@dentons.com

**Counsel for Defendants**

DATED: December 8, 2022          Respectfully submitted,

*/s/ Jonathan M. Petty (with permission)*
PHELAN PETTY PLC
JONATHAN M. PETTY, VSB No. 43100
BRIELLE M. HUNT, VSB No. 87652
3315 West Broad Street
Richmond, VA 23230
Tel: (804) 980-7100
Fax: (804) 767-4601
jpetty@phelanpetty.com
bhunt@phelanpetty.com

GOLDMAN SCARLATO & PENNY, P.C.
BRIAN DOUGLAS PENNY (*pro hac vice*)
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Tel: (484) 342-0700
Fax: (484) 342-0701
penny@lawgsp.com

ROBBINS GELLER RUDMAN
& DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000
Fax: (561) 750-3364
sdavidson@rgrdlaw.com

BERGER MONTAGUE PC
GLEN L. ABRAMSON (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215)875-4604
gabramson@bm.net

**Counsel for Plaintiffs and the Settlement Class**

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of December, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will send a notification of such filing to all counsel of record. I also caused the foregoing to be sent by email to Mr. Davis at gmdavislaw@gmail.com.

> */s/ Heidi E. Siegmund*
> MCGUIREWOODS LLP
> BRIAN E. PUMPHREY (VSB No. 47312)
> HEIDI E. SIEGMUND (VSB No. 89569)
> Gateway Plaza
> 800 East Canal Street
> Richmond, VA 23219
> Tel: (804) 775-1000
> Fax: (804) 775-1061
> bpumphrey@mcguirewoods.com
> hsiegmund@mcguirewoods.com
>
> ***Counsel for Defendants***