IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRED HANEY,
et al.,

    Plaintiffs,

v.                                      Civil Action No. 3:22cv55

GENWORTH LIFE INSURANCE
CO., et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the objections that have been tendered by individual class members in opposition to PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 39) ("Motion to Approve the Settlement").[1] These objections are set out in letters and pleadings submitted by the following individuals: Jonathan Bos (ECF Nos. 35 and 58), Peter Michael and Keiko Howard (ECF No. 37), Darrell Taylor (ECF No. 38), Paul and Marcia Berg (ECF No. 44), Henry and Anna Dowler (ECF Nos. 45 and 47), Julie Black (ECF No. 46), Ronald and Torrie Hays (ECF No. 49), Lonny and Carrol Lang (ECF No. 51), Richard Moore

---

[1] The objections filed by Michael Podoll (ECF No. 48), Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73), and Jane Belkin (ECF No. 53) have been resolved by agreement and will withdraw their objections once the agreement is approved by the Court. See ECF Nos. 105 and 106. So, those objections are not addressed.

(ECF No. 54), Janet Arrowsmith (ECF No. 55), Sol Resnikoff (ECF No. 59), Pamela Resnikoff (ECF No. 60), John Haslett (ECF No. 62), Michael Mack (ECF No. 64), and Kathryn Dimiduk (ECF No. 67). Class Counsel has responded in writing to the several objections.[2] On November 17, 2022, the Court heard argument on the objections from the objectors and the parties.

At the hearing, Gary Davis (ECF No. 61), arguing on behalf of himself and Lorraine Freedlander, his wife, raised additional arguments about the notice of the Settlement. The Court ordered additional briefing on that issue and will hear further arguments at the final settlement approval hearing scheduled for December 13, 2022. ECF No. 98. Dimiduk (ECF No. 67) had also raised a similar objection in her initial filing to the Court. Accordingly, Davis's and that portion of Dimiduk's objections will not be addressed in this MEMORANDUM OPINION.

Having considered all of the submitted information and for the reasons set forth on the record during the hearing on November 17, 2022, as well as the reasons set forth below, the remaining

---

[2] REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 79) ("Reply Brief").

Class Counsel also submitted an objection from Jerry Dean who mailed his objection to the Claims Administrators. ECF No. 81-6. The Court will not consider Dean's objection because, according to Genworth's records, he is not a member of the class and thus has no standing to object to the Settlement. See ECF No. 86 at 25 n.14.

objections relating to Plaintiffs' Motion to Approve the Settlement will be OVERRULED. Objections relating to CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS (ECF No. 41) ("Fees and Awards Motion") will be addressed in a separate memorandum opinion.

## BACKGROUND

### I.  Procedural History: The Class Action Complaint and the Claims

To resolve the objections to the Plaintiffs' Motion to Approve the Settlement, it is necessary to understand the claims asserted in the Class Action Complaint (ECF No. 1) ("Complaint") because it is those claims, not other claims that might have been asserted, that are being resolved by compromise. And, of course, any relief that might be awarded in the event of success at a trial is circumscribed by the claims that would have been tried. Thus, relief achieved by settlement must be measured in perspective of what relief was sought in the Complaint and what relief is conceptually available based on the claims that were asserted therein.

#### A.  The Complaint (ECF No. 1)

Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Class Representatives"), individually and on behalf of a proposed class of Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders as of January 1, 2013 (collectively "Plaintiffs" or

"class members"), filed this class action against Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (collectively "Genworth" or "Defendants"). Compl. ¶ 170. Before the Complaint was filed on January 28, 2022, the parties engaged in three-days of mediation and extensive discovery that resulted in a Memorandum of Understanding ("MOU") that set "forth the material terms of an agreement-in-principle to be incorporated into a formal Settlement Agreement for the Court's approval." ECF No. 28 ¶¶ 4-7. The Complaint asserts two claims. COUNT ONE alleges a claim of fraudulent inducement by omission. COUNT TWO is a claim for declaratory relief under 28 U.S.C. § 2201.

B.    The Factual Backdrop for the Class Claims

Plaintiffs each have Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled Long Term Care Insurance policies issued by Genworth. Long Term Care ("LTC") insurance is intended to defray the cost of home care, assisted living care, nursing home care, and other specialized skilled facility care required when an individual can no longer perform the basic activities of daily life. Compl. ¶ 4.

Plaintiffs allege that, since 2013, Genworth has steadily and substantially increased the premiums on its LTC insurance policies. Compl. ¶ 3. When Genworth learned that there were substantial deficiencies in its reserves going forward, it sought

4

at least six waves of significant premium rate increases to compensate for the deficiency. Id. ¶ 156. Plaintiffs also allege that, to avoid reporting a current negative loss recognition testing margin, Genworth relied almost entirely on billions of dollars in future rate increases to plug the hole in its reserves. Id. ¶ 15.

However, say the Plaintiffs, Genworth's plan for substantial future rate increases was never shared with Genworth's LTC policyholders. Id. ¶¶ 157-59. Rather, it is alleged that Genworth told policyholders only that it was "possible" that a premium rate would increase in the future, without telling policyholders that Genworth actually had significant holes in its reserve and that Genworth planned to significantly increase premiums over the next few years. Id. ¶¶ 24-29. Plaintiffs allege that Genworth only partially disclosed material information when communicating the premium increases to its LTC policyholders and that, without the undisclosed information, Plaintiffs could not make informed decisions in response to their policy option renewals. Id. ¶ 3.

In other words, it is alleged that the undisclosed information was material to decisions that LTC policyholders made respecting whether, and to what extent, to renew or retain their LTC coverage; that the undisclosed information was necessary to make accurate the disclosed information; and that, therefore, the omissions made the disclosed information fraudulent. It is also alleged that

Genworth intended that policyholders would rely on the knowingly inadequate disclosures in making the election among their policy choices.

Generally speaking, the choices given to policyholders respecting whether, and to what extent, to maintain LTC policies were to: (1) maintain the existing LTC coverage and pay the increased premium; (2) reduce the LTC coverage and pay a lower premium; or (3) opt for a paid up LTC policy. Plaintiffs maintain that, had they known the scope and magnitude of Genworth's plans for future rate increases, they would have made different policy option elections than they actually made. Compl. ¶ 200.

## C.    The Claims

In COUNT ONE, the Complaint presents a claim for fraudulent inducement by omission. Compl. at 53-57. In particular, the Complaint alleged:

> 197. By failing to adequately disclose material information about Genworth's rate increase action plans, current reliance on its planned future increases actually being approved, and the risks to Genworth's solvency if such increases were not approved, and the impact those needed future rate increases already had on the Company's financial rating, Genworth withheld material information from Plaintiffs and the Class.
>
> 198. Genworth intended that Plaintiffs and the Class Members rely upon the incomplete information it did provide in the hope that policyholders would make policy elections that were in Genworth's best interest and not the policyholder's best interest.

199. As a result, Plaintiffs and the Class members were unaware of the scope and magnitude of Genworth's entire rate increase action plan when they made their renewal elections. They were also unaware of Genworth's reliance on this rate action plan, which included significant increases on other LTC policies, to build adequate reserves to pay Genworth's future claims.

200. Without a complete picture of Genworth's massive rate increase plan, Plaintiffs and the Class Members made certain elections in response to each rate increase announcement. Had they known the full scope and magnitude of Genworth's rate action plans, and the Company's reliance on massive rate increases in the future to remain viable, they would have made different policy option elections.

Compl. ¶¶ 197-200 (emphasis added). The relief sought in COUNT ONE

is:

    (a)   a finding that Genworth withheld material information from Plaintiffs and the Class regarding its plans for future rate increases; its reliance upon obtaining at least some portion of future rate increases to be able to pay future claims; and the impact that need for additional rate increases has already had on Genworth's financial rating;

    (b)   <u>injunctive relief in the form of an adequate and corrective disclosure</u> to Plaintiffs and the Class that reveals the omitted information, and <u>the right to make new policy renewal elections</u> in light of the new disclosures;

    (c)   if Genworth is found to have omitted material information, then <u>rescission of</u> Plaintiffs' and the Class' <u>policy renewals</u> each year since Genworth first made those omissions; and

>     (d) <u>return of premiums</u> paid for each year a
>         renewal of the policy was rescinded.

Compl. ¶ 202 (a-d) (emphasis added). The Complaint also says that, as to COUNT ONE:

> 213. To avoid doubt, if the above relief is obtained, <u>Plaintiffs and the Classes (sic) seek to be placed in the same position they were in before Genworth made the aforementioned omissions</u>, meaning they would still have the same guaranteed renewable LTC policies they had prior to the omissions, <u>and must then decide whether to maintain their respective policies</u> in light of the current premiums that would be due, or what level of coverage they prefer in light of the new premiums they would be charged.

Compl. ¶ 203 (emphasis added).

In COUNT TWO, the Complaint presents a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment claim is based on the same factual assertions as form the basis for the fraudulent inducement claim in COUNT ONE. But in COUNT TWO, the Plaintiffs are asking that the Court "declare Genworth had a duty to disclose that information" so that "a corrective disclosure to all class members providing this information would be required." Compl. ¶ 207.

Then, the Complaint presents a PRAYER FOR RELIEF that is not tethered specifically either to COUNT ONE or COUNT TWO. That section of the Complaint seeks:

> B. That the conduct alleged herein be declared, adjudged and decreed to be unlawful;

C.    That Plaintiffs and the Class they
      represent be awarded <u>compensatory,</u>
      <u>consequential, and general damages</u> in an
      amount to be determined at trial;

D.    <u>Injunctive</u> relief as is warranted;

E.    Costs and disbursements of the action;

F.    Pre-and post-judgment interest;

G.    Reasonable attorneys' fees; and

H.    Such other and further relief as this
      Court may deem just and proper

Compl. at 58 (emphasis added).

### D. The Previous Suits

To fully comprehend the claims in this case, it is necessary to understand the two kindred suits that preceded this one. In the first case, <u>Skochin v. Genworth Life Ins. Co.</u>, No. 3:19cv49, the plaintiff class comprised a different set of Genworth's policyholders, but the claims they brought were essentially of the same type as those presented in this case but related to different LTC policies and time frames. The parties in <u>Skochin</u> engaged in extensive discovery and Genworth moved to dismiss the claims under Fed. R. Civ. P. 12(b)(6). 3:19cv49, ECF No. 39. The Court granted the motion to dismiss as to one count of the AMENDED COMPLAINT in that case but denied it as to three other counts. 3:19cv49, ECF No. 79. The parties eventually reached a settlement agreement with terms similar to those proposed here. The second case, <u>Halcom v.</u> <u>Genworth Life Ins. Co.</u>, No. 3:21cv19, was filed two years after

9

Skochin, just as Skochin approached its resolution. Halcom too
involved LTC policies but of different types and for different
time frames. Having tested the strength of their respective claims
and defenses in the Skochin litigation, the parties in Halcom were
able to engage in significant informal discovery and several rounds
of mediation. By the time the complaint was filed in Halcom, the
parties had already more or less agreed to the terms of a
settlement. Just as in Skochin, the parties reached a settlement
agreement with similar terms, and that litigation came to a close
in June 2022.

While there are significant similarities between this case
and Skochin and Halcom, it is also important to note the
differences because those differences significantly affected the
settlement terms in this case. Plaintiffs in Skochin and Halcom
included Choice I, PCS I, and PCS II policyholders. Those types of
policies were subject to a Multi Year Rate Increase Action Plan
("MYRAP") that Genworth failed to disclose to the policyholders,
leading to cumulative rate increases of 250% or more over a decade.
The policies at issue in the current case were not subject to the
MYRAP or any comparable long-term rate increase plan. Instead, the
rates were evaluated closer to an annual basis, which is the key
difference between this case and Skochin and Halcom.

## II. Preliminary Approval and Notice

After engaging in a period of discovery to confirm, and augment, what had been learned in <u>Skochin</u> and <u>Halcom</u>, Class Counsel filed PLAINTIFFS' MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS (ECF No. 26), which the Court granted on May 2, 2022. ECF No. 31. On July 6, 2022, the parties submitted an Amended Settlement Agreement (ECF No. 33-1) to amend the final Release to mirror <u>Halcom</u>. ECF No. 33 at 2. The Court preliminarily approved the Amended Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.

As required by the Class Action Fairness Act, 28 U.S.C. § 1715, on April 11, 2022, notice of the proposed settlement and the terms thereof were sent to the appropriate state representatives in each of the 50 states and the District of Columbia as well as to the Attorney General of the United States. DEFS.' NOTICE OF COMPLIANCE WITH 28 U.S.C. § 1715 (ECF No. 29). That notice afforded

the various governmental entities a full and adequate explanation of the settlement terms and the procedures necessary for them to participate in this case.

Class Counsel has represented that they spoke to almost 4,300 policyholders who had questions about the Amended Settlement Agreement. ECF No. 40 at 22. Over the course of the sixty days allotted in the Notice, 187 policyholders opted out of the Settlement Agreement and 19 objections were filed by 27 Class Members. No state regulatory authorities filed any objection. On November 17, 2022, the Court held a hearing to give objectors the opportunity to explain their objections and for counsel to the parties to respond.

## III. The Terms of the Settlement

To understand the objections to the Amended Settlement Agreement, it is necessary to understand the terms of the Amended Settlement Agreement itself. In broad terms, as explained by Class Counsel, the Amended Settlement Agreement "directly addresses [the] alleged harm by providing Class Members with additional Disclosures about future rate increases, and then allowing them options" to either maintain their current benefits or "restructure their benefits and premiums in light of those Disclosures, if they so wish." ECF No. 40 at 2 (emphasis added). The pertinent terms of the Amended Settlement Agreement are discussed below.

As provided in the Amended Settlement Agreement dated July 6, 2022 (ECF No. 33-1), the parties agree to a payment structure similar to those agreed upon in Skochin and Halcom, and Genworth agrees to a preliminary settlement approval process in which the Court certifies the class solely for purposes of a class settlement. ECF No. 33-1 ¶ 45(a). Class members will receive a "special election letter" from Genworth, which will allow recipients to choose between keeping their current plan or "elect[ing] from a selection of paid-up reduced benefit options and/or reduced benefit options . . . some of which also entitle Class Members to damages payments." Id. ¶¶ 46(a)-(b). Class members who make no elections will simply retain their current policies. Id. ¶ 48(a).

Class members who are not in non-forfeiture status, and "excluding Class Members whose level of benefits are below the level of benefits available in the defined options," will receive the following election options (ECF No. 33-1 at App. C(I)):

- First Paid-Up Benefit Option: A paid-up benefit of lifetime paid-in premiums minus (1) benefits received to date, and (2) $10,000. And, in addition, a $10,000 cash damages payment.

- Second Paid-Up Benefit Option: A paid-up benefit of 1.5 times the difference between the class member's paid-in premiums to date minus claims paid to date. This option does not include a damages payment.

- <u>Reduced Benefit Options (RBOs)</u>: For qualifying class members, options that reduce their policy benefits while also awarding them a $6,000 damages payment. A catchall RBO for otherwise non-qualifying members whereby they receive a benefits reduction and a damages payment of $1,000.

- <u>Fully Paid-Up Options</u>: Class members who are in fully paid-up status may choose between: (1) Paid-up benefits equivalent to premiums paid in, less $10,000 and less benefits received, in addition to a $10,000 damages payment; or (2) a reduction in benefits and a damages payment of $6,000.

- <u>Non-Forfeiture Status Option</u>: Retention of current paid-up benefits and a damages payment of $1,000.

ECF No. 33-1 at App. C. At the November 17 hearing, counsel for Genworth informed the Court that an agreement (referred to as "the Objectors' Settlement Agreement") had been reached between Plaintiffs, Genworth, and a group of objectors, including Michael Podoll (ECF No. 48), Jane Belkin (ECF No. 53), and Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73). The Objectors' Settlement Agreement modified two of the Special Election Options, added a new Option, contained a release provision and agreement to withdraw the objections, and provided attorneys' fees and incentive awards for the objecting parties. ECF No. 106. The Court will consider the Objectors' Settlement Agreement on December 13, 2022. Accordingly, the Objectors' Settlement Agreement is not addressed in this MEMORANDUM OPINION, but it is important to explain the modified special election options and the new option

as they are relevant to some of the objections discussed below.[3] The Objectors' Settlement Agreement produced the following three changes to the Special Election Options in the Amended Settlement Agreement:

- An option was added for class members with qualifying inflation benefits to receive a reduction in their overall benefits but retain the inflation protection and receive a damages payment of $3,000.

- Expanded the eligible members for the catchall RBO option and increased the damages payment from $1,000 to $1,200.

- Increased the damages payment for the non-forfeiture status option from $1,000 to $1,150.

ECF No. 106 at 4-6.

The Amended Settlement Agreement is further conditioned on approval by state insurance regulatory bodies. The Agreement provides that information about the Special Elections Letters will be sent to each state's regulatory body, with Genworth retaining the right to decide how to proceed in the event that a regulator raises an objection or concern. Id. ¶ 49(a).[4]

---

[3] The objections were made in response to the Amended Settlement Agreement (ECF No. 33-1) even though it is the Second Amended Settlement Agreement (ECF No. 109-1) which reflects changes to the Special Election Options in Appendix C made as a part of the Objectors' Settlement Agreement that will ultimately be the document that applies to the Class members if the Court approves it. ECF No. 106-1. The Court is not required to provide an additional objection period for Class Members to review the Second Amended Settlement Agreement because the changes are narrow and further the interests of the Class. See Shaffer v. Continental Cas. Co., 362 Fed. Appx. 627, 631 (9th Cir. 2010); Harris v. Graddick, 615 F. Supp. 239, 244 (M.D. Ala. 1985).

The Amended Settlement Agreement further provides for attorney fees equivalent to 15% of damages payments with a cap of $13 million. ECF No. 33-1 ¶ 55(a). Importantly, these fees are over and above the damages payments to class members and are not taken out of those payments. For example, for every $1,000 in damage payments, the class member gets the full $1,000 and the attorneys get a separate payment of $150. Expenses are capped at $50,000 and likewise will not be deducted from payments to class members. Id. ¶ 56. The Class Representatives will receive incentive payments of $15,000 each. Id. ¶ 57. The remaining terms (fee to settlement administrator, non-disparagement, etc.) have no notable provisions. The release provision in the Haney settlement mirrors the modified version of the final release provision in Halcom, which was submitted by the parties in response to the Court's concerns about the prior release language.

It is against this background that the objections will be considered.

## LEGAL FRAMEWORK

A district court may approve a class action settlement agreement only after complying with the procedures set forth in

---

[4] Pursuant to the Court's Order, Genworth sent this notification on April 11, 2022, ECF No. 29, and there were no objections. ECF No. 82. Since there were no objections by any state regulator, the provision that offers class members a $100 compensation is irrelevant. Id. ¶ 49(g) (triggered "[o]nly in the event that a State Regulator objects . . .").

Fed. R. Civ. P. 23(e). Rule 23(e) provides for three stages and two separate hearings to effectuate the settlement approval process. At the first stage, the parties must present the proposed settlement to the court for the court's preliminary approval, and, if the class has not yet been certified, for conditional class certification. In the second stage, assuming that the class action settlement was approved preliminarily, notice must be sent to potential class members describing the terms of the proposed settlement, class members must be given an opportunity to object or to opt out of the settlement, and the court then must conduct a fairness hearing at which class members may appear and support or object to the settlement. At the third and last stage, the court must take into consideration all of the information before it and determine whether "final approval" of the settlement is merited.

Fed. R. Civ. P. 23(e) provides that "[t]he claims, issues, or defenses of a certified class-or a class proposed to be certified for purposes of settlement-may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(d). A class settlement can be approved "only after a hearing and on a finding" that the proposed class-action settlement is "fair, reasonable, and adequate." See In re MicroStrategy, Inc. Sec. Litig., 150 F. Supp. 2d 896, 903-04 (E.D. Va. 2001). When determining whether to approve a class action settlement, the court will first consider whether the process leading to the settlement

was fair and then turn to whether the terms provided within the settlement are adequate. See Jiffy Lube Sec. Litig., 927 F.2d 155, 158-59 (4th Cir. 1991).

The Fourth Circuit has set a multifactor standard to assess whether a class action settlement is "fair, reasonable, and adequate." The "fairness" evaluation centers on the settlement process itself. Whitaker v. Navy Federal Credit Union, No. 09cv2288, 2010 WL 3928618, at *2 (D. Md. Oct. 4, 2010). In making this determination, a court should consider:

> (1) the posture of the case at the time settlement was proposed;
>
> (2) the extent of discovery that had been conducted;
>
> (3) the circumstances surrounding the negotiations; and
>
> (4) the experience of counsel in the area of [the] class action litigation.

See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991). The "adequacy" evaluation focuses on the substance of the settlement. Whitaker, 2010 WL 3928616, at *2. In assessing the adequacy of the proposed settlement, a court must consider:

> (1) the relative strength of the plaintiffs' case on the merits;
>
> (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;

(3)   the anticipated duration and expense of
      additional litigation;

(4)   the solvency of the defendant[ ] and the
      likelihood of recovery on a litigated
      judgment; and

(5)   the degree of opposition to the
      settlement.

See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir.
1991). The reasonableness, fairness, and adequacy analysis of the
overall settlement will be made in a separate order, but the basic
principles must be kept in mind when assessing the objections.

        A lack of objection to the settlement by class members, and
the absence of (or a limited number of) opt outs from the class,
are evidence of low opposition to the settlement and weighs in
favor of its approval. See In re Mills Copr. Sec. Litig., 265
F.R.D. 246, 257-58 (E.D. Va. 2009).  However, under Fed. R. Civ.
P. 23(e), the Court must protect unnamed class members from "unjust
or unfair settlements affecting their rights." Amchem Prod., Inc.
v. Windsor, 521 U.S. 591, 623 (1997).

        Class members, of course, have a right to object to the
proposed settlement terms; and, thus, they are entitled to present
their objections before the court decides whether to approve the
proposed settlement. See Fed. R. Civ. P. 23(e)(5)(A) ("Any class
member may object to the proposal if it requires court approval
under this subdivision (e). The objection must state whether it
applies only to the objector, to a specific subset of the class,

or to the entire class, and also state with specificity the grounds for the objection."). An objector is generally entitled "to be heard, to examine witnesses and to submit evidence on the fairness of the settlement." Flinn v. FMC Corp., 528 F.2d. 1169, 1173 (4th Cir. 1975).

In deciding whether to approve a settlement, the court must account for the "strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation" when considering class members' objections. Robinson v. Carolina First Bank NA, No. 7:18-cv-02927, 2017 WL 719031, at *8 (D.S.C. Feb. 14, 2019). The objectors to a class settlement generally bear the burden of proving the predicate for the challenges they make to the reasonableness of a class action settlement. United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990) ("In this circuit, we have usually imposed the burden on the party objecting to a class action settlement."); see also Schechter v. Crown Life Ins. Co., No. 2:13-cv-05596, 2014 WL 2094323, at *2 (C.D. Cal. May 19, 2014) (stating that objectors bear the burden of showing that settlement approval would contravene its equitable objectives).

## DISCUSSION

Before the November hearing, the Court reviewed all objections and the responses to them. Then, at the hearing, objectors were afforded the opportunity to explain their

20

objections orally. Class Counsel and attorneys for Genworth had the opportunity to respond to each of the objections.

The objections to the Settlement can be organized into six categories: (1) challenges to the composition of the class; (2) challenges involving notice; (3) challenges to the Settlement options; (4) challenges concerning the overall fairness and adequacy of the Amended Settlement; and (5) miscellaneous objections that did not fit in another category; and (6) challenges to the amount of attorneys' fees or service payments.

In this MEMORANDUM OPINION, the Court will address each category of objections except objections to the amount of attorneys' fees or service payments, which will be addressed in a later opinion.

I. Challenges to the Composition of the Proposed Settlement Class

The Langs (ECF No. 51), the Bergs (ECF No. 44), and Haslett (ECF No. 62) all present objections pertaining to the make-up of the proposed Settlement Class (hereafter "Class"). The Langs (ECF No. 51) argue that a segment of the Class lacks standing so the Class cannot be properly certified. ECF No. 51 at 8-13. The Langs also believe that the Class should be divided into subclasses for those with limited damages and those with more substantial damages as well as a subclass for those in non-forfeiture status. Id. at 13-19. Haslett (ECF Nos. 62 and 63) argues that the interests of class member partnership policyholders were not adequately

represented by Class Counsel and should be treated differently from other policyholders. ECF No. 62 at 25-28. Finally, the Bergs (ECF No. 44) contend that the Class should be broadened to include any individual who paid a premium to Genworth at some point and allowed their policy to lapse because they were also subjected to the same alleged fraudulent inducement as the current class members. ECF No. 44 at 2.

Under the terms of the Amended Settlement Agreement, the Class is defined as:

> [A]ll Policyholders (defined below) of GLIC and GLICNY long-term care insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policies and state variations of those Class Policies (defined below) in force at any time during the Class Period (defined below) and issued in any of the States (defined below) excluding: (1) those Policyholders whose policies entered Non-Forfeiture Status (defined below) or entered a Fully Paid-Up Status (defined below) prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed (defined below) and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated (defined below), as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter (defined below) would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time before their signed Special Election Option (defined below) is post-marked for

> mailing to Genworth, or is faxed or emailed to
> Genworth; (4) Genworth's current officers,
> directors, and employees as of the date Class
> Notice is mailed; and (5) Judge Robert E.
> Payne and his immediate family and staff.

ECF No. 33-1 ¶ 22 (footnotes omitted). "Class Policies" are defined

as "Genworth long-term care insurance policies, or, for group

policies, certificate forms identified in Appendix A to this

Settlement Agreement in force at any time during the Class Period

and issued in any of the States." Id. ¶ 24.

## A. Objection Based on Standing

In class action suits, "[e]very class member must have Article

III standing in order to recover individual damages." TransUnion

LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021). Here, the Langs (ECF

No. 51) argue that class members from Virginia and Massachusetts

do not have standing because the Langs assume that those class

members must have received disclosures of future increased

premiums because an objection from Halcom suggested that had

occurred to some individuals in that separate class of plaintiffs.

ECF No. 51 at 9-10. However, as Class Counsel correctly notes, the

Langs do not offer independent evidence that any class members in

this suit received disclosures of future increased premiums, and

the Court cannot presume that such notice was given based on a

notice provided to a wholly different set of policyholders in a

case involving different polices and time frames. See ECF No. 86

at 30-31. Further, as Class Counsel provides, the disclosures made

to certain policyholders in Virginia and Massachusetts in Halcom are different from the disclosures that the Plaintiffs in the present case are receiving in accordance with the Amended Settlement Agreement. Id. at 31-32. Accordingly, the Langs' objection as to class members' standing is overruled.

## B. Subclasses

The Langs (ECF No. 51) also argue that the Class should be divided between those who suffered limited damages and those who suffered more substantial damages as well as a subclass for policyholders in non-forfeiture status. ECF No. 51 at 13, 16.

Fed. R. Civ. P. 23(c) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues . . . [and] [w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(4)-(5). That rule grants authority to create subclasses in situations in which common and noncommon issues are intermingled. Subclasses may be appropriate when class members seek different types of relief or where there are similar types of factual differences between the claims of different groups or class members. However, "a class need not be subdivided merely because different groups within it have alternative legal theories for recovery or because they have different factual bases for seeking relief." 7A Wright & Miller, Federal Practice and Procedure § 1790 (3d ed. 2020).

## 1. *Subclass Based Upon Amount of Damage Suffered*

The Langs argue that there should be a subclass for class members with limited damages and another for class members with more significant damages because "there is a fundamental intraclass conflict" between those groups. ECF No. 51 at 13. This objection is based on their previous argument that class members in Virginia and Massachusetts allegedly received notice of the future increased premiums, but as discussed above, that argument cannot be credited because it is based on an assumption rather than evidence. But, even if there were a disparity in damages, that would not warrant forming a subclass. See Morris v. Wachovia Sec., Inc., 223 F.R.D. 284, 299 (E.D. Va. 2004) ("[D]ifferences in damages among the potential class members do not generally defeat predominance if liability is common to the class.").

The Langs point to two decisions of the Supreme Court of the United States to support their argument that the Class should be divided based on the amount of damages suffered. ECF No. 51 at 14 (discussing Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997) and Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999)). In Amchem, the Supreme Court found that subclasses with separate representation for class members with present and future claims was necessary. 521 U.S. at 627. Two years later, in Ortiz, the Supreme Court required the division of the class along those same parameters as well as a subclass for those who would have their

damages covered by the insurance and those who did not because the interests of the two groups were in conflict for the reason that the claims that would be paid by the insurance entity were more valuable. 527 U.S. at 856-58. The Langs also cite a class action out of the United States Court of Appeals for the Second Circuit where the court found that Amchem and Ortiz required subclassing based on the type of claim asserted because "essential allocation decisions" had to be made depending on the claim type. In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 251-55 (2d Cir. 2011).

None of those cases support creating a subclass here. The policyholders in Virginia and Massachusetts have already suffered similar injuries to the ones that the rest of the policyholders have suffered, so Achem does not support a subclass here. Neither Ortiz nor Literary Works applies because, unlike in those cases, the Amended Settlement Agreement does not set a maximum amount of damages that the class members can receive. The Settlement structure allows every eligible class member to select a Special Election Option in which they will receive a cash damages payment, and every payment thereby selected would be paid in full regardless of any other class member's election. Accordingly, there is no allocation decision necessary to distribute the relief, and thus there is no interclass conflict that would require subclasses.

The Langs also contend that this subclass is necessary because there is a lack of commonality between the majority of class members and those located in Virginia and Massachusetts. ECF No. 51 at 15-16. Under Fed. R. Civ. P. 23(a)(2), there must be "questions of law or fact common to the class." The Plaintiffs assert that the questions of law and fact common to the Class Members are:

- whether Genworth omitted material information from the rate increase letters and other correspondence that was necessary to make their partial disclosures not misleading;

- whether Plaintiffs and the Class are entitled to a declaration that Genworth's prior correspondence omitted material information necessary to make their partial disclosures not misleading;

- whether Genworth should be enjoined from further misconduct; and

- the appropriate measure of damages or other relief to which Plaintiffs and the Class Members are entitled.

Compl. ¶ 176. Additionally, there is nothing in the record to suggest that these questions of law and fact do not apply to class members in Virginia and Massachusetts.

For the foregoing reasons, the Langs' objection as to a subclass based on the level of damages must be overruled.

### 2. *Subclass Based on Non-Forfeiture Status*

The Langs also believe there should have been a subclass created for class members whose policies are in non-forfeiture status because these class members "can more easily establish

27

reliance" but received the biggest drop in compensation as compared to similar class members in the Skochin and Halcom cases. ECF No. 51 at 16-17. This aspect of the Langs' argument is flawed because it is based on the recovery of different class members in a different case rather than on their claims in this case. Thus, even if the Langs' "other case" theory were viable (which it is not), the claims in the present case, as Class Counsel explains, are not as strong as those brought in Skochin and Halcom, so the settlement options were expected to be lower as a reflection of the risk of litigation and the recovery that was available. ECF No. 86 at 10. In any event, the Langs have not shown that they would receive more damages than other class members if individual allocations were to occur. And, it is difficult to understand how they would receive more damages because they stopped paying premiums before this action commenced. Lastly, as Class Counsel explained during the November 17 hearing, two of the Class Representatives, Fred Haney and Stephen Swenson, are in non-forfeiture status, so that subclasses' interests were adequately represented by Class Counsel. ECF No. 96 at 80:20-81:17.

Accordingly, for the foregoing reasons, the Langs' objections will be overruled.

## C. Inadequate Representation for Partnership Policyholders

Haslett (ECF Nos. 62 and 63) argues that "Class Counsel did not represent the Public interests of the LTC Partnership Program." ECF No. 62 at 25.

It is not at all clear why Haslett has standing to raise such an objection. Moreover, the objection is based on a phone conversation that Haslett claims to have had with Class Counsel on August 10, 2022. Id. However, the record lacks any detail about the substance of the conversation. The argument fails for that reason alone.

Haslett's proposed solution for the alleged failure to represent the public interest is for the Court to "direct various state health agencies to intervene . . . to represent the interests of Class Member Partnership policy interests." Id. at 25-26. In response, Class Counsel contends that the Court does not need to "determine every entity that might be tangentially impacted by every proposed class action settlement and then force those entities to intervene." ECF No. 86 at 47. Instead, Class Counsel argues that the Court has met the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, and that that was the extent of the Court's notification duty. Id.

Class Counsel is correct. The Court was not obligated to force certain entities to intervene. CAFA requires that "each defendant that is participating in the proposed settlement . . . serve upon

the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of" an enumerated list of items. 28 U.S.C. § 1715(b). As the Court required, Genworth sent such notice to the relevant state official in all 50 states and the District of Columbia as well as the Attorney General of the United States on April 11, 2022. ECF No. 29. After that notice was sent, it was up to each individual state regulator to decide to intervene and to inform other state parties, including any entities responsible for the public health partnership programs, about the class action. No state chose to intervene or file an objection. ECF No. 82. Accordingly, this portion of Haslett's objection will be overruled.

### D. Broadening the Class

The Bergs (ECF No. 44) contend that the Class definition should be expanded to include "all individuals who ever paid any premiums, including those who allowed the policy to lapse, because all policy holders were subjected to the same deception." ECF No. 44 at 2. Here too, it is unclear why the Bergs have standing to present an objection of this sort.

In response, Class Counsel argues that this expansion would be inappropriate because it would include individuals who were not allegedly harmed and the disclosures given as relief would not be "relevant to any decision they could make regarding their lapsed

policy." ECF No. 86 at 25-26. Class Counsel correctly points out that expanding the Class to include individuals with lapsed policies would not be consistent with the relief sought in the Complaint because the disclosure of the future increased premiums would have no effect on individuals without active plans. Further, expanding the Class in this manner would adversely affect the commonality between class members. Accordingly, the Bergs' objection on this ground will be overruled.

## II. Challenges Involving Notice

Haslett (ECF No. 62) objects to the fact that there is not an additional opt-out or objection period after the class members have received more information, including the disclosures about future rate increases. Likewise, Dimiduk (ECF No. 67) argues that she had to decide whether or not to opt-out without knowing what benefits she might receive or which options were available to her. Lastly, Bos (ECF Nos. 35 and 48) and the Langs (ECF No. 51) argue that there was not enough notice provided in the Fees and Awards Motion. ECF No. 96 at 34:23-35:25, 71:20-74:17.

Fed. R. Civ. P. 23(e) requires notice of the proposed settlement (and consequent dismissal) of a class action to all members of the class. The rule is "meant to protect class members from the binding effect of a settlement in a class suit where the class members had no opportunity to object to the proposed settlement." Kevin D. Hart, Annotation, <u>Propriety of notice of</u>

31

voluntary dismissal or compromise of class action, 52 A.L.R. Fed. 457 (1981). Notice afforded to class members "must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Hege v. Aegon USA, LLC, 780 F. Supp. 2d 416, 429-30 (D.S.C. 2011) (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1950)); Fed. R. Civ. P. 23(c)(2). Under the due process requirements of the Fifth Amendment, putative class members must be given "[r]easonable notice combined with an opportunity to be heard and withdraw from the class." See In re Serzone Products Liability Litigation, 231 F.R.D. 221, 231 (S.D.W.Va. 2005). Further, Fed. R. Civ. P. 23 provides that:

> The notice must clearly and concisely state in plain, easily understood language:
> (1) the nature of the action;
> (2) the definition of the class certified;
> (3) the class claims, issues, or defenses;
> (4) that a class member may enter an appearance through an attorney if the member so desires;
> (5) that the court will exclude from the class any member who requests exclusion;
> (6) the time and manner for requesting exclusion; and
> (7) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In essence, notice must provide class members with enough information to make an informed choice

regarding the proposed settlement. <u>In re Serzone Products Liability Litigation</u>, 231 F.R.D. at 231. Thus, "due process does not necessarily require a global class action settlement notice to contain detailed, comprehensive information about the law of class members' states." <u>Hege</u>, 780 F. Supp. 2d at 430.

There are no objections to the mode of notice or to the adequacy of its reach and distribution. Instead, the objections to the adequacy of the Notice are based upon the adequacy of the substantive information provided in the notice or upon the generalized assertion that additional information should have been included within the Notice. Even the objections based on the perceived need to provide an additional opt-out or objection period come down to a complaint about the type of information that was provided in the notice. No matter how presented, these arguments all present the same issue: "that the Notice is defective because class members must decide whether to opt-out (or not) of the action before they know exactly what disclosures Genworth will make as part of the settlement, [or] exactly what elections they will have the ability to make." <u>Skochin v. Genworth Fin., Inc.</u>, at *13. "And, it is reasonable to construe all of these objections as arguing that the [Amended] Settlement Agreement is defective for the same reasons." <u>Id.</u>

Just as in <u>Skochin</u>, the Notice and the Amended Settlement Agreement are complex. But, complexity alone does not render the

Notice inadequate or defective. Nor does complexity alone render the Amended Settlement Agreement objectionable for being unfair, unreasonable, or inadequate.

The complexity arises, in the first instance, from the fact that the Amended Settlement provides a variety of remedial options to the class members. That, of course, is a recognition that with long-term care insurance, one kind of remedy does not fit all class members even though their claims arise out of the same facts (i.e., misrepresentation by omission). That recognition, and the crafting of a settlement to take it into account, is not grounds to find either the Notice or the Settlement Agreement inadequate. That is particularly so where, as here, the various options are outlined with such specificity as is currently available.

Just as in Skochin, the Court is satisfied that, with reasonable study, class members can understand the various options and can discern, from among them, which best fits their respective circumstances. In like measure, if no option fits a class member's circumstances, the member was allowed to opt out of the Settlement.

In assessing the adequacy of the Notice, as well as the fairness of the settlement itself, it is important that, according to the record, as of November 1, 2022, the Notice reached more than 99% of the more than 352,000 class members. ECF No. 81-1 ¶ 10. It is also significant that objections were lodged by 0.008% of the class and only 0.025% of the class opted out. See ECF No.

86 at 1 (noting that "there were only 19 Objections (by 27 class members)); ECF No. 81-1 ¶ 16 (noting that of the 352,146 potential class members, 187 individuals opted out). In other words, the overwhelming majority of the class did not complain that the Notice, albeit complex, was beyond comprehension or that the Amended Settlement Agreement was substantially unfair in requiring class members to opt out (or remain in) the settlement class before they received the disclosures from Genworth, knew exactly what elections they had to make, or knew exactly what damages they might receive.

Here, as in In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig., the fact that so few members of the class objected to, or opted out of, the settlement is a testament to the conclusion that the Notice was adequate as well as to the conclusion that the settlement is fair and reasonable. 952 F.3d 471, 485 (4th Cir. 2020). In other words, on this record, the Court concludes that the overwhelming number of recipients of the Notice found that neither it, nor the Amended Settlement Agreement it described, was objectionable either because the Notice did not adequately explain the settlement terms or because those terms were unfair or unreasonable or inadequate.

Moreover, it is not necessary that class members have an exact explanation of the settlement benefits that they will receive

35

before they must decide whether to opt out. Indeed, many class settlements require class members to elect one remedy or another before opting out. See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig., No. 1:17-MD-2800-TWT, 2020 WL 256132, at *2-3 (N.D. Ga. Jan. 13, 2020); In re Anthem, Inc. Data Breach Litig., 327 F.R.D. 299, 331-32 (N.D. Cal. 2018); see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 328 (3d Cir. 1998).

In sum, the Notice adequately explains the class claims, the issues, and the defenses. It also defines the Settlement Class. It explains how and when class members may object to, or exclude themselves (opt-out) from, the settlement. Further, the Notice explains in considerable detail the Settlement terms. It gives class members sufficient information to make an informed choice whether to accept the Settlement, object to it, or opt-out of it.

"The test for whether a given item must be included in a class notice is whether that information is such that 'a reasonable person would consider [it] to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.'" Good v. Am. Water Works Co., Inc., No. 2:14-cv-01374, 2016 WL 5746347, at *8 (S.D.W. Va. Sept. 30, 2016) (quoting In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1104 (5th Cir. 1977)).

Genworth's plans for future rate increases, which will be disclosed to class members in the Special Election Letter, are certainly important in deciding which option to exercise, but that information is not known now, and, indeed, is not now knowable. It will become known near the time that the Special Election Letter will be sent. Thus, the question becomes whether the Disclosure information, albeit important, must be given to class members before they must decide whether to opt out. That is only partly an objection to the adequacy of the Notice. It also is an objection to the fairness, reasonableness, and adequacy of the Amended Settlement Agreement.

But the response is the same whether the objection is treated as pertaining to the adequacy of the Notice or the fairness, reasonableness, and adequacy of the Amended Settlement Agreement itself. So, the point will be addressed here.

Although understanding the magnitude of projected future rate increases is important in deciding which option to pursue when presented with specific options, it is not information that is necessary in deciding whether, on the one hand, to participate in a plan that will give the class member both the Disclosure of the likely future rate increases (when that is known) and the specified options available at the time the Disclosure is made; or, on the other hand, to opt out of the class action and proceed on one's own with a fraud claim.

It is fair and reasonable to require the opt-out decision before the details of the forthcoming Disclosure are made because the Disclosures will be accompanied by the right to make elections in light of the Disclosures. That is what this action is all about. That is what the Plaintiffs say they were entitled to initially, and, as relief in this case, and, that is what the class is getting by virtue of the Settlement Agreement.

In other words, as to the fraud by omission claim, class members are given notice that the Amended Settlement Agreement, if approved, will give them the kind of information that, in the class claims, is allegedly needed to be able to decide upon the options that will be presented to them in the Special Election Letter. In addition, class members know that they will receive a cash payment and/or a paid-up policy.

Putative class members who considered these results insufficient were able to opt out and to pursue their claims individually. And, they had enough information to allow them to make that decision, notwithstanding that they do not know Genworth's specific plans for rate increases or the exact value of the paid-up benefit.

Armed with the knowledge that they will receive what they are entitled to (disclosures and new elections) under the policy and

more (cash benefits and paid-up benefits), putative class members had sufficient information whether to take the settlement course or set sail on their own. No more is required.

The proposed alternative is to have Genworth distribute the special election letters and any other pertinent information and then allow class members to opt out if they do not like the options made available to them. But the course posited by the Amended Settlement Agreement is what Genworth is willing to do. That course gives class members what they sued for and more. Class Counsel considers this course to be acceptable in perspective of the discovered evidence and an evaluation of the likelihood of success. No objector has shown Class Counsel's opinion to be erroneous or even flawed.

All things considered, the Notice is adequate under the applicable law and the objections to the Amended Settlement Agreement addressed in this section do not make its terms unfair, unreasonable, or inadequate. Accordingly, the objections pertaining to having an additional opt-out or objection period will be overruled.

Lastly, during the November 17, 2022, hearing, Bos (ECF Nos. 35 and 58) and the Langs (ECF No. 51) raised objections to the allegedly late submission of Class Counsel's request for attorneys' fees, arguing that they were not given enough notice and time to file an objection on the issue. ECF No. 96 at 34:23-

35:25, 71:20-74:17. However, the Fees and Awards Motion (ECF No. 41) was filed on September 16, 2022, which gave class members over two weeks to submit objections to the Court. See ECF No. 31 (setting the deadline for objections as September 30, 2022). Class Counsel did submit a SUPPLEMENT TO CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO THE NAMED PLAINTIFFS (ECF No. 88) on November 14, 2022, but that only updated the total hours from the original Motion. Accordingly, the class members received sufficient notice of the amount of attorneys' fees that Class Counsel was seeking and had adequate time to submit an objection. Therefore, Bos's and the Langs' objections on that ground will be overruled.

During the same hearing, Gary Davis (ECF No. 61) raised the issue about members such as himself who received a rate increase letter from Genworth and had to make an election after the settlement in this case had been preliminarily approved but before notice was received informing them of the pending case. Likewise, Kathryn Dimiduk (ECF No. 67) presents that she "had to make a decision [about coverage following a rate increase letter] before knowing this lawsuit existed." This objection pertains to a unique group of individuals that the Court will examine separately during the final approval settlement hearing on December 13, 2022, after both parties, Davis, and Dimiduk have an opportunity to submit written briefing on the matter.

III. Challenges to the Settlement Options

Bos (ECF Nos. 35 and 58), the Dowlers (ECF Nos. 45 and 47), the Hays (ECF No. 49), and Arrowsmith (ECF No. 55) object to the lack of damages payment to class members who ultimately choose to maintain their current insurance benefit plan rather than choose one of the given settlement options. Additionally, Haslett (ECF No. 62), the Hays (ECF No. 49), and the Bergs (ECF No. 44) object to the options provided as a part of the settlement, arguing that there also should be an option that allows class members to maintain their inflation benefits, if applicable, and an option that gives class members a full refund of any benefits paid to Genworth plus interest.

A. Damages Payment to Class Members who Maintain Current Plan

A handful of objectors question why class members who receive the disclosures on future rate increases yet choose to maintain their current level of benefits do not receive any damages payment similar to those class members who choose one of the options given in the Amended Settlement Agreement. In response, Class Counsel argues that the cash damages provided to class members who choose a Special Election Option "are intended to compensate Class Members who allegedly would have reduced their benefits, and thus premiums, sooner had Genworth earlier and more fully disclosed information regarding its plans for rate increases." ECF No. 86 at 18. To compensate for the harm of failing to disclose the rate increases,

Class Counsel argues that the Disclosures given to every class member is the "equitable remedy" that addresses the harm of "Genworth's alleged failure to timely and sufficiently disclose its plans for future rate increases." Id.

That is correct. The Complaint sought relief for Genworth's failure to disclose planned rate increases, see Compl. ¶¶ 134-169, and the equitable remedy for that harm would be to put class members in the position they should have been in, which is knowing the future rate increases before making an election on whether to maintain their current benefits or reduce them in exchange for a reduced premium. Cash damages would be inappropriate to those class members who receive the Disclosures and choose to maintain their current benefits because they were already made whole by the new disclosures and opportunity to revise their past benefits election. Contrastingly, class members who choose one of the Special Election Options are presumed to have chosen to reduce their benefits in the past if they would have received the disclosures prior to a rate increase. Thus, those class members are receiving a cash damages payment to compensate them for not having the ability to make that election sooner. Accordingly, the

objections[5] as to a lack of further relief beyond the Disclosures for class members who choose to maintain their current benefits will be overruled.

## B. Objections to the Special Election Options

The Bergs (ECF No. 44) object to the fact that there is no Special Election Option that allows class members "to claim a refund for all premiums paid since policy inception, plus interest." ECF No. 44 at 1. The Bergs believe that this should be an option because, when they decided initially to purchase their plan, Genworth allegedly falsely implied that there would never be a rate increase because there had not been one in over thirty years. Id. Thus, the Bergs contend that had they known there would such steep rate increases when purchasing their plan, "it is very unlikely [they] would have purchased" insurance from Genworth. Id. Accordingly, the Bergs request an option for relief (a refund of premiums) that would compensate them for purchasing the insurance plan. Id.

In response, Class Counsel argues that Genworth's representation of no future rate increases was made in 2007, which falls outside of the timeframe for this class action. ECF No. 86 at 25. Class Counsel also explains that the statement was true at

---

[5] Jonathan Bos (ECF Nos. 35 and 58), Henry and Anna Dowler (ECF Nos. 45 and 47), Ronald and Torrie Hays (ECF No. 49), and Janet Arrowsmith (ECF No. 55).

the time it was made, so it would not even qualify as a misrepresentation. Id. Thus, says Class Counsel, the Bergs cannot receive a full refund as relief in this lawsuit because it concerns activity that does not constitute the claims that are alleged in the Complaint. Id.

It is correct that the representations for which the Bergs seek relief fall outside the Class Period. ECF No. 109-1 (defining the Class Period as beginning on January 1, 2013). The objection fails for that reason alone. Moreover, a remedy requiring refund of all premiums ever paid to Genworth would not be appropriate relief for failure to disclose rate increases during a limited period. If the Bergs wish to receive compensation in the form of all premiums paid since policy inception plus interest, they would need to bring a separate case that asserts misrepresentations made beginning in 2007 and how those misrepresentations violate the law.[6] Accordingly, because this form of relief is not available for the claims presented in the Complaint, the Bergs' objection (ECF No. 44) based on the absence of an option for a full refund of premiums will be overruled.

Next, Haslett (ECF Nos. 62 and 63) and the Hays (ECF No. 49) raise objections to the treatment of class members' current

---

[6] The Court in no way suggests that such a suit would be successful on the merits or that, if such a suit were filed, the Bergs would receive the relief that they request here.

inflation benefits. Haslett argues that the lack of a Special Election Option that allows class members to maintain their existing inflation protection coverage "materially strips the most valuable policy characteristic from the policy and is not remotely reflective of block characteristics."[7] ECF No. 62 at 8. The Hays (ECF No. 49) contend that the one percent inflation benefit in Option 4 is below Genworth's own three percent "annual inflation default" and that the Deficit Reduction Act of 2005 ("DRA") requires higher inflation protection for Partnership policies. ECF No. 49 at 1.

Class Counsel does not directly respond to Haslett's objection, but in response to the Hays' objection, Class Counsel contends that the current options "are intended to meet the premium reduction needs of most Class Members that will select an Option" and that policyholders have the option to maintain their current benefits. Id. at 28-29.

As Class Counsel explains in the Reply Brief, it was administratively not possible, and also would be impractical, to offer unlimited settlement options to more than 352,000 class members. ECF No. 86 at 19. Thus, the parties had to agree on a

---

[7] The Court is unsure what "block characertictics" means in the context of this sentence from Haslett's objection. ECF No. 62 at 8. However, in reading the entire objection, it is clear that Haslett is objecting to the lack of Special Election Option that would allow policyholders to retain their inflation protection benefit.

limited number of options that would properly compensate the largest number of class members if elected. Those class members who highly value their inflation protection benefits are free to maintain their current benefits or to reduce other coverage outside of the settlement to keep their inflation benefits while reducing coverage in other areas. But, as Class Counsel notes, "[t]o obtain meaningful premium reductions based on filed rates, Policyholders must make meaningful benefit reductions," which includes reductions to inflation protection benefits. Id. Importantly, the addition of a new Special Election Option in the Second Amended Settlement Agreement allows eligible class members to reduce their benefits but retain the inflation protection, which addresses Haslett's objection. ECF No. 106 at 9. Accordingly, the objections as to an option with great inflation protection benefits will be overruled.

As for the Hays' DRA argument, Partnership polices must provide "compound annual inflation protection" to individuals under sixty-one years of age at "the date of purchase." S. 1932, 109th Cong. § 6021(a)(1)(A) (2005). This provision thus applies on the date of purchase and likely would not be a hindrance to changes in coverage made when the policy is already active. But, as a safeguard, Genworth will be personally customizing each class members' special election letter to only include the options that the specific class member is eligible for. ECF No. 33-1 ¶ 46(a)-

(d). Because it can be safely assumed that Genworth would not offer an option that would violate a regulatory provision, Partnership policyholders will not be offered an option to reduce inflation benefits should it violate the DRA. Accordingly, there does not appear to be a conflict with the Special Election Options and the DRA. Therefore, the Hays' DRA objection will be overruled.

## IV. Challenges Concerning the Overall Fairness and Adequacy of the Amended Settlement

A number of objectors contend that as a whole, the Amended Settlement Agreement is not "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2). Haslett (ECF Nos. 62 and 63) believes that the options that allow class members to reduce their policy benefits are not in the best interests of the Class. Black (ECF No. 46) argues that the relief offered in the Amended Settlement Agreement is not adequate. The Langs (ECF No. 51) do not believe that all members of the class were treated equitably. The Hays (ECF No. 49) present data that the relief options will not cover the actual cost of long-term care. Similarly, Michael and Howard (ECF No. 37) and Mack (ECF No. 64) object that the class members are not being compensated by the options given. Bos (ECF Nos. 35 and 58) believes that other options must be added in order to make the Amended Settlement Agreement fair. Moore (ECF No. 54) argues that the Release clause is too broad. Finally, the Dowlers (ECF

No. 47) and Bos (ECF Nos. 35 and 58) object because they argue that Genworth is making a profit off of this settlement and that the release provides a windfall for Genworth.

Contrary to these objections, the Amended Settlement Agreement affords class members considerable benefits. First, the Disclosures to be made pursuant to the Amended Settlement Agreement will inform the class members about anticipated future rate increases, Genworth's then current financial condition, and Genworth's need for the anticipated future rate increases to remain solvent and to pay future claims. Then, in light of these Disclosures, class members are given the opportunity to make new policy elections.

So, in essence, the Amended Settlement Agreement offers class members the ability to make new policy elections, equipped with information about possible premium increases in future years. As Class Counsel explains in their Reply Brief (ECF No. 86), the purpose of the class action is to afford class members the opportunity to "re-choose" their policies as if they had been informed about Genworth's long-term plans for rate increases in 2013, when rate increases first began to occur. ECF No. 86 at 3-5. The terms of the Amended Settlement Agreement require the Disclosures, the omission of which is a central component of the class complaint.

In determining whether to approve a class action settlement, the issue is not whether everyone affected by the settlement is completely satisfied. Instead, the test is whether the settlement, as a whole, is a fair, adequate, and reasonable resolution of the class claims asserted. See, e.g., In re Genworth Fin. Sec. Litig., 210 F. Supp. 3d 837, 839 (E.D. Va. 2016). The terms of the Amended Settlement Agreement provide class members with Disclosures, as well as options to weigh in light of those disclosures. It is true that the Amended Settlement Agreement does not present class members with every conceivable option, or even, the best option in light of the particular circumstances faced by each class member. But, that does not mean that the Amended Settlement Agreement lacks significant value or that it is unfair or unreasonable or inadequate.

A settlement is a compromise between parties to avoid the risk of having the matter decided at trial where either side might lose. Here, Class Counsel negotiated with counsel for Genworth to create a solution that was in line with the key objectives of the lawsuit and, by any measure, the Amended Settlement Agreement was successful in doing so. The options provided to class members take into consideration, insofar as reasonably possible, the range of circumstances that reasonably could be expected to be confronted by most class members and affords them the opportunity to make selections from the options afforded.

The Amended Settlement Agreement stands to confer substantial benefit on more than 352,000 policyholders. It affords class members the opportunity to obtain substantial monetary damages and the ability to make a new election for their long-term care policies based on additional disclosures relating to Genworth's plans for future rate increases and financial viability. The Amended Settlement Agreement provides a mechanism for those who do not think that they will be benefitted to opt out. And, the Amended Settlement Agreement provides a mechanism for those who object to the terms of the Settlement to object to it. The options provided to class members within the settlement enable class members to elect an option based on their individual financial circumstances and other factors that a policyholder might find important. In the Court's view, these are substantial benefits obtained for class members as a result of the Amended Settlement Agreement. And, when measured against the substance of the claims pleaded in the Complaint and the relief sought, this settlement achieves significant results for the Class.

Moore (ECF No. 54) has objected to the Release clause. It is difficult to discern his concerns, but they appear to be that the Release clause is too broad in that it would prevent future claims concerning intentional fraudulent behavior if it were to be discovered in the future. To begin, the clause includes commonly-used language that has been used in other cases, including the

final settlement agreement from Halcom. See e.g., ECF No. 113-1 in Case No. 3:21-cv-19, ¶ 55(c); Wittstadt v. Hosch, No. CCB-16-2251, 2016 WL 7157417 (D. Md. Dec. 8, 2016). Further, there is an exemption for "express and intentional misrepresentation[s]" made in the forthcoming disclosures, so those claims could still be brought if the settlement is approved. ECF No. 33-1 ¶ 50(a). For these reasons, the objection to the scope of the release will be overruled.

Finally, as to the Dowlers' objection (ECF No. 47) concerning Genworth's financial gain from the Settlement, it is no part of the law of class actions that the terms of a settlement must economically devastate a defendant or preclude it from making a profit. Indeed, were there such an exception, defendants would have little reason to agree to a settlement at all. And, whether Genworth will make a profit going forward is a matter of speculation. In any event, the fact that Genworth may make a profit in the future is no ground to scuttle a settlement that benefits, in significant ways, so many people, and that achieves, in significant measure, the relief sought in the Complain. The Dowlers' objection will be overruled.

Accordingly, for the foregoing reasons, the objections pertaining to the overall fairness and adequacy of the Settlement will be overruled.

51

## V. Miscellaneous Challenges that Remain

### A. Objections Related to Rate Increases

Taylor (ECF No. 38), Sol Resnikoff (ECF No. 59), Pamela Resnikoff (ECF No. 60), and Dimiduk (ECF No. 67) all object to the past rate increases assessed and collected by Genworth. Similarly, Mack (ECF No. 64) objects to the lack of stipulation in the Amended Settlement Agreement as to future rate increases, arguing that some additional protection beyond state regulators should be built into the settlement terms in order to prevent Genworth from imposing "outrageous [rate] increases" in the future. ECF No. 64 at 1.

In assessing these objections, it is necessary to keep in mind the basis of this class action and the class claims. As explained in Skochin v. Genworth Life Ins. Co., "all the [plaintiffs'] claims . . . are based on the theory that Genworth withheld material information from the plaintiffs. That is not a challenge to the reasonableness of the rate." 413 F. Supp. 3d 473, 483 (E.D. Va. 2019) (Payne, J.) (emphasis added); see also ECF No. 86 at 4 ("[T]his case only challenged . . . the materiality of the information that Genworth did not share with Policyholders and the effects that informational imbalance had on Policyholders' renewal elections."). The same is true here.

However, because Genworth's past rate increases were approved by the appropriate regulatory authorities, any objections to the

propriety of the rates themselves are barred by the filed-rate doctrine.[8] Thus, all objections based on the notion that the settlement is inadequate for failure to have challenged the past increases, that the past increases were too high, or stipulations pertaining to the amount of future rate increases will be overruled.

### B. Financial Stress on Genworth

Arrowsmith (ECF No. 55) objects to the proposed settlement on the ground that it will financially stress Genworth and could be used to justify higher premiums in the future. In essence, Arrowsmith argues that terms of the settlement will further strain Genworth's resources and will negatively affect Genworth's financial situation. As a result, believes Arrowsmith, the settlement will impair Genworth's ability to pay policyholder claims.

There is no explicit requirement that a class action settlement provide assurances that a defendant will be financially viable in the future. Nonetheless, the Court is obligated "to

---

[8] The filed-rate doctrine is a federal and state common law doctrine that precludes lawsuits that challenge the payment of rates filed with a state or federal regulator. See, e.g., AT&T Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 221-23 (1998). This doctrine precludes civil lawsuits that challenge the alleged misconduct leading to the payments of the filed rates. The Court need not examine this doctrine in detail at this time, as it is not material to the outcome at hand. Skochin v. Genworth Fin., Inc., No. 3:19-cv-49, 2020 WL 6532833, at *19 & n.8 (E.D. Va. Nov. 5, 2020).

appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (internal quotations omitted). And whether a class action defendant is able to pay claims to policyholders plays a role in the Court's fairness analysis under Fed. R. Civ. P. 23. And, the ability to satisfy terms which could not reasonably be expected to be satisfied would be illusory. It is difficult to see how such a settlement could ever be fair, reasonable, or adequate.

With that in mind, it is necessary to recall that a core contention in this action was that premium increases were caused because Genworth's reserves were not adequate to meet its potential obligations under, inter alia, the LTC policies at issue here. Accordingly, it is reasonable for class members to question how a settlement purporting to pay substantial cash damages and attorneys' fees might affect Genworth's financial viability and ability to pay claims in the future.

In response to these concerns, Genworth represented to Class Counsel and to the Court that it will be able to pay the attorneys' fees and to meet its other obligations under the Amended Settlement Agreement, including the cash damages payments elected by Settlement Class members. ECF No. 33-1 ¶ 67(a). Genworth further represented that the attorneys' fees, service awards, and cash damage expenses of the Amended Settlement Agreement will not be

used as "actuarial justification in seeking any additional future rate increases" Id. ¶ 67(b). Accordingly, Genworth has presented information sufficient to overcome Arrowsmith's concerns on the basis of the company's financial ability to deliver on the settlement. Based on the assurances given by Genworth, the objection as to Genworth's ability to pay future claims will be overruled.

### C. Information on Genworth's Long-Term Plans

Moore (ECF No. 54) argues that "Class Counsel should have obtained in discovery documents showing what the premium increases would look like over the long term" because "that information is crucial to [his] decision as to whether or not to remain in the class." ECF No. 54 at 1-2. In response, Class Counsel assures that "information about Genworth's internal plans for future rate increases is precisely what will be disclosed in the Disclosures to be provided in each Class member's Special Election Letter." ECF No. 86 at 37.

The Amended Settlement Agreement provides that the Disclosures in the Special Election Letter sent to all class members will include the plan for future rate increases if one exists. ECF No. 33-1 at 48 (App. B). Further, as Class Counsel described in their Reply Brief (ECF No. 86), discovery did not uncover a long-term plan for rate increases for this group of class members as they did in Skochin and Halcom, ECF No. 86 at 11, so

55

there is no "long-standing, long term plan for premium increases" to disclose to class members. Accordingly, Moore's objection will be overruled.

### D. John Haslett's Remaining Objections

Finally, Haslett (ECF Nos. 62 and 63) raises two outstanding objections that the Court has not yet addressed. First, Haslett objects to the lack of participation in the settlement of state regulators and public health partnership representatives. ECF No. 62 at 14, 25-27. Second, Haslett argues that a wide range of information, including the information that state regulators had, the settlement results from Skochin, information about State Guaranty Association, and information about inflation deltas, should have been provided to class members, the named parties, and numerous other participants. Id. at 2-3, 5, 10, 13, 15; ECF No. 63 at 3.

As to Haslett's first objection, the record shows that Genworth gave full notice to all state insurance regulators pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Thus, the regulations were all able "to decide whether to intervene or take another action," to include notifying any public health partnership representatives in each state. ECF No. 86 at 47. Class Counsel contends that this was the extent of the Court's notification duty and that the Court is under no obligation to "force those entities to intervene." Id. Class Counsel is correct

that the statutory requirement to notify state regulators has been met. CAFA requires that "each defendant that is participating in the proposed settlement . . . serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of" an enumerated list of items. 28 U.S.C. § 1715(b). Genworth sent such notice to the relevant state official in all 50 states and the District of Columbia as well as the U.S. Attorney General on April 11, 2022. ECF No. 29. After that notice was sent, it was up to each regulator to decide whether to intervene and to inform other state parties, including any entities responsible for the public health partnership programs, about the class action. No state chose to intervene. ECF No. 82. The Court has neither the duty nor the authority to force regulators to participate in this case or to dictate who should participate in settlement negotiations. Accordingly, Haslett's objection (ECF Nos. 62 and 63) will be overruled.

Regarding Haslett's second objection respecting the need to distribute additional information to the various parties, Class Counsel argues that it was either provided or was unnecessary to make the settlement fair and adequate. ECF No. 86 at 41-43. The settlement data from Skochin has been made available on the record within Nicholas Sheahon's Declaration (ECF No. 43-3), so it was readily available for any interested party, including state

regulators. Haslett has not shown that the information that he asserts should have been disclosed was necessary for adequate notice as described in Fed. R. Civ. P. 23(c)(2)(B). Nor has he shown how that information is necessary to a determination whether the notice was adequate or whether the settlement is fair, reasonable, and adequate. Accordingly, Haslett's objection on this matter will be overruled.

## CONCLUSION

For the foregoing reasons, and to the extent outlined above, the objections to Plaintiffs' Motion to Approve the Class Settlement as set forth above will be overruled.[9] The Court will address all objections to the Fees and Awards Motion in a separate opinion.

It is so ORDERED.

/s/ _Peд_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 12, 2022

---

[9] The objection by Davis and Freedlander (ECF No. 61) and a portion of Dimiduk's objection (ECF No. 67) will be addressed after briefing is complete.