IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRED HANEY,
et al.,

     Plaintiffs,

v.                                    Civil Action No. 3:22cv55

GENWORTH LIFE INSURANCE
CO., et al.,

     Defendants.


**MEMORANDUM OPINION**

     This matter is before the Court on the JOINT MOTION TO APPROVE SETTLEMENT WITH OBJECTORS (ECF No. 105) ("Objectors' Settlement Motion") filed by Plaintiffs, Defendants, and the following objectors: Michael Podoll (ECF No. 48), Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73), and Jane Belkin (ECF No. 53) (collectively "Settlement Objectors"). On December 13, 2022, the Court heard argument on the Objectors' Settlement Motion.[1] Having considered all of the submitted information and for the reasons set forth on the record during the hearing on December 13, 2022, as well as the reasons set forth below, the Objectors' Settlement

---

[1] The related OBJECTOR JANE BELKIN'S MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES (ECF No. 103) and the MOTION OF THE FRIEDMAN AND PODOLL OBJECTORS FOR INCENTIVE AWARDS AND ATTORNEY'S FEES (ECF No. 111) will be addressed in a separate opinion.

Motion will be granted. The JOINT STIPULATION OF SETTLEMENT WITH OBJECTORS (ECF No. 106-1) will be approved, and its terms will be included in the SECOND AMENDED SETTLEMENT AGREEMENT (ECF No. 109-1).

## BACKGROUND

A more detailed recitation of the facts and procedural history is presented in the MEMORANDUM OPINION (ECF No. 122) dated December 12, 2022, and familiarity therewith is presumed. However, facts and procedural history pertinent to the Objectors' Settlement Motion are outlined below.

I.   **The Class Action Complaint and the Claims**

A. *The Complaint (ECF No. 1)*

Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Class Representatives"), individually and on behalf of a proposed class of Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders as of January 1, 2013 (collectively "Plaintiffs" or "class members"), filed this class action against Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (collectively "Genworth" or "Defendants"). Compl. ¶ 170. Before the Complaint was filed, the parties engaged in three-days of mediation and extensive discovery that resulted in a Memorandum of Understanding ("MOU") that set "forth the material terms of an agreement-in-principle to

be incorporated into a formal Settlement Agreement for the Court's approval." ECF No. 28 ¶¶ 4-7. The Complaint asserts two claims. COUNT ONE alleges a claim of fraudulent inducement by omission. COUNT TWO is a claim for declaratory relief under 28 U.S.C. § 2201.

### B.   The Factual Background for the Class Claims

Plaintiffs each have Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled Long Term Care Insurance policies issued by Genworth. Long Term Care ("LTC") insurance is intended to defray the cost of home care, assisted living care, nursing home care, and other specialized skilled facility care required when an individual can no longer perform the basic activities of daily life. Compl. ¶ 4.

Plaintiffs allege that, since 2013, Genworth has steadily and substantially increased the premiums on their LTC insurance policies. Compl. ¶ 3. When Genworth learned that there were substantial deficiencies in its reserves going forward, it sought at least six waves of significant LTC premium rate increases to compensate for the deficiency. Id. ¶ 156. Plaintiffs also allege that, to avoid reporting a current negative loss recognition testing margin, Genworth relied almost entirely on billions of dollars in future rate increases to plug the hole in its reserves. Id. ¶ 15.

However, say the Plaintiffs, Genworth's plan for those substantial future rate increases was never shared with Genworth's

3

LTC policyholders. Id. ¶¶ 157-59. Rather, it is alleged that Genworth told policyholders only that it was "possible" that a premium rate would increase in the future, without telling policyholders that Genworth actually had significant holes in its reserve and that, at that time, Genworth actually planned to significantly increase premiums over the next few years. Id. ¶¶ 24-29. Plaintiffs allege that Genworth only partially disclosed material information when communicating the premium increases to its LTC policyholders and that the undisclosed information was material to the ability of policyholders to make informed decisions respecting their LTC policy option renewals and the attendant premium increases. Id. ¶ 3.

In other words, it is alleged that the undisclosed information was material to decisions that LTC policyholders made respecting whether, and to what extent, to renew or retain their LTC coverage; that the undisclosed information was necessary to make accurate the information that was disclosed; and that, therefore, the omissions made the disclosed information fraudulent. It is also alleged that Genworth intended that policyholders would rely on the knowingly inadequate disclosures in making the election among their policy choices.

Generally speaking, the choices given by Genworth to policyholders respecting whether, and to what extent, to maintain LTC policies were to: (1) maintain the existing LTC coverage and

pay the increased premium; (2) reduce the LTC coverage and pay a lower premium; or (3) opt for a paid up LTC policy. Plaintiffs maintain that, had they known the scope and magnitude of Genworth's plans for future rate increases, they would have made different policy option elections than they actually made. Compl. ¶ 200.

###### C.   The Claims

In COUNT ONE, the Complaint presents a claim for fraudulent inducement by omission. Compl. at 53-57. In particular, the Complaint alleged that, "[b]y failing to adequately disclose material information about Genworth's rate increase action plans . . ., Genworth withheld material information from Plaintiffs and the Class." Id. ¶ 197. Further, the Complaint states that, "[h]ad [the class members] known the full scope and magnitude of Genworth's rate action plans, and the Company's reliance on massive rate increases in the future to remain viable, they would have made different policy option elections." Id. ¶ 200. The relief sough in COUNT ONE is to put class members "in the same position they were in before Genworth made the aforementioned omissions" by providing the missing disclosures on future rate increases to class members and allowing them to make new election decisions based on the information. Id. ¶¶ 202-03.

In COUNT TWO, the Complaint presents a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment claim is based on the same factual assertions as form the

basis for the fraudulent inducement claim in COUNT ONE. But in COUNT TWO, the Plaintiffs are asking that the Court "declare Genworth had a duty to disclose that information" so that "a corrective disclosure to all class members providing this information would be required." Compl. ¶ 207.

## II.  Procedural History

Armed with knowledge and evidence obtained in previous similar cases against Genworth[2], and after engaging in a period of confirmatory discovery, Class Counsel filed PLAINTIFFS' MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS (ECF No. 26), which the Court granted on May 2, 2022. ECF No. 31. On July 6, 2022, the parties submitted an Amended Settlement Agreement (ECF No. 33-1) to amend the final Release. ECF No. 33 at 2. The Court preliminarily approved the Amended Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object

---

[2] <u>Skochin v. Genworth Life Ins.  Co.</u>, No.  3:19cv49; <u>Halcom v. Genworth Life Ins. Co.</u>, No. 3:21cv19.

to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.

Class Counsel has represented that they have spoken with almost 4,300 policyholders who had questions about the Amended Settlement Agreement. ECF No. 40 at 22. Over the course of the sixty days allotted in the Notice, 187 policyholders opted out of the Settlement Agreement and 19 objections were filed by 31[3] Class Members.[4] On November 17, 2022, the Court held a hearing to give objectors the opportunity to explain their objections and for counsel to the parties to respond. The afternoon before that hearing, the parties informed the Court that an agreement had been reached with the Settlement Objectors, which counsel for Genworth described in more detail at the beginning of the November 17

---

[3] The MEMORANDUM OPINION (ECF No. 122) filed on December 12, 2022, stated that there were 19 objections filed by 27 class members. ECF No. 122 at 12. However, upon further review, there were actually 19 objections filed by 31 class members. Accordingly, the updated number is reflected in this opinion.

[4] The objections were made in response to the Amended Settlement Agreement (ECF No. 33-1) even though it is the Second Amended Settlement Agreement (ECF No. 109-1) which reflects changes to the Special Election Options in Appendix C made as a part of the Objectors' Settlement Agreement that will ultimately be the document that applies to the Class members if the Court approves it. ECF No. 106-1. The Court is not required to provide an additional objection period for Class Members to review the Second Amended Settlement Agreement because the changes are narrow and further the interests of the Class. See Shaffer v. Continental Cas. Co., 362 Fed. Appx. 627, 631 (9th Cir. 2010); Harris v. Graddick, 615 F. Supp. 239, 244 (M.D. Ala. 1985).

7

hearing. ECF No. 96 at 13-15. On November 30, 2022, the parties and settlement objectors filed the Objectors' Settlement Motion for the Court's approval. During a final approval hearing on December 13, 2022, counsel for the parties and the Settlement Objectors were given an opportunity to further explain the terms of their agreement and advocate for its approval.

## III. The Terms of the Objectors' Settlement Agreement

To understand the Objectors' Settlement Agreement (ECF No. 106-1), it is necessary to understand the key terms of the Amended Settlement Agreement. In broad terms, as explained by Class Counsel, the Amended Settlement Agreement "directly addresses [the] alleged harm by providing Class Members with additional Disclosures about future rate increases, and then allowing them options" to either maintain their current benefits or "restructure their benefits and premiums in light of those Disclosures, if they so wish." ECF No. 40 at 2.

To that end, the Amended Settlement Agreement dated July 6, 2022 (ECF No. 33-1) provides that class members will receive a "special election letter" from Genworth, which will allow recipients to choose between keeping their current plan or "elect[ing] from a selection of paid-up reduced benefit options and/or reduced benefit options . . . some of which also entitle

Class Members to damages payments." ECF No. 33-1 ¶¶ 46(a)-(b). Class members who make no elections will simply retain their current policies. Id. ¶ 48(a).

Class members who are not in non-forfeiture status (and "excluding Class Members whose level of benefits are below the level of benefits available in the defined options") will receive the following election options (ECF No. 33-1 at App. C(I)):

- First Paid-Up Benefit Option: A paid-up benefit of lifetime paid-in premiums minus (1) benefits received to date, and (2) $10,000. And, in addition, a $10,000 cash damages payment.

- Second Paid-Up Benefit Option: A paid-up benefit of 1.5 times the difference between the class member's paid-in premiums to date minus claims paid to date. This option does not include a damages payment.

- Reduced Benefit Options (RBOs): For qualifying class members, options that reduce their policy benefits while also awarding them a $6,000 damages payment. A catchall RBO for otherwise non-qualifying members whereby they receive a benefits reduction and a damages payment of $1,000.

- Fully Paid-Up Options: Class members who are in fully paid-up status may choose between: (1) Paid-up benefits equivalent to premiums paid in, less $10,000 and less benefits received, in addition to a $10,000 damages payment; or (2) a reduction in benefits and a damages payment of $6,000.

- Non-Forfeiture Status Option: Retention of current paid-up benefits and a damages payment of $1,000.

ECF No. 33-1 at App. C.

The Objectors' Settlement Agreement modifies two of those Special Election Options, adds a new Option, contains a release provision and agreement to withdraw the objections, and provides

for attorneys' fees and incentive awards for the objecting parties.
ECF No. 106. The Objectors' Settlement Agreement produces the
following three changes to the Special Election Options in the
Amended Settlement Agreement:

- An option was added for class members with qualifying
  inflation benefits to receive a reduction in their overall
  benefits but retain the inflation protection and receive a
  damages payment of $3,000.

- Expanded the eligible members for the catchall RBO option and
  increased the damages payment from $1,000 to $1,200.

- Increased the damages payment for the non-forfeiture status
  option from $1,000 to $1,150.

ECF No. 106 at 4-6. The release clause prevents the settlement
objectors from further objecting to the settlement or delaying its
implementation. Id. at 7. The attorneys' fees and incentive awards
will be discussed in a separate opinion.

## LEGAL FRAMEWORK

Under Fed. R. Civ. P. 23(e)(2) and (5), the Court must approve
settlement agreements, including agreements that provide payment
or consideration in exchange for withdrawing an objection. See
also In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir.
1991). A settlement can be approved "only after a hearing and on
a finding" that the proposed settlement is "fair, reasonable, and
adequate." See In re MicroStrategy, Inc. Sec. Litig., 150 F. Supp.
2d 896, 903-04 (E.D. Va. 2001). When determining whether to approve
a settlement in a class action, the court will first consider

10

whether the process leading to the settlement was fair and then turn to whether the terms provided within the settlement are adequate. See Jiffy Lube Sec. Litig., 927 F.2d 155, 158-59 (4th Cir. 1991).

The Fourth Circuit has set a multifactor standard to assess whether a class action settlement is "fair, reasonable, and adequate." The "fairness" evaluation centers on the settlement process itself. Whitaker v. Navy Federal Credit Union, No. 09cv2288, 2010 WL 3928618, at *2 (D. Md. Oct. 4, 2010). In making that determination, a court considers:

> (1) the posture of the case at the time settlement was proposed;
>
> (2) the extent of discovery that had been conducted;
>
> (3) the circumstances surrounding the negotiations; and
>
> (4) the experience of counsel in the area of [the] class action litigation.

See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991). The "adequacy" evaluation focuses on the substance of the settlement. Whitaker, 2010 WL 3928616, at *2. In assessing the adequacy of the proposed settlement, a court considers:

> (1) the relative strength of the plaintiffs' case on the merits;
>
> (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;

 (3) the anticipated duration and expense of additional litigation;

 (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and

 (5) the degree of opposition to the settlement.

See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991).

## DISCUSSION

As described below, under the Jiffy Lube factors, the Court finds that the Objectors' Settlement Agreement is fair, reasonable, and adequate.

## I. Fairness and Reasonableness

### A. *Posture of the Case*

When the parties have "had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of the case," this factor favors settlement approval. Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009) (quotations omitted). Here, Plaintiffs, after discovery mindful of the evidence in other related cases, and Genworth had negotiated an Amended Settlement Agreement that had been presented to the Class for opt-outs and objections. Thus, there was adequate time for the Settlement Objectors to fairly evaluate their options and decide whether to

12

opt-out, retain their objections, or reach an agreement with the parties. Accordingly, this factor weighs in favor of a finding of fairness.

## B. *Extent of Discovery*

Relevant under this factor is the "complexity, expense, and duration of the litigation." Pili v. Patel, No. 3:18cv317, 2019 WL 8888162, at *2 (E.D. Va. Feb. 19, 2019). In general, this factor favors settlement approval if a proceeding has "advanced to a stage sufficient to permit the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and engage in arms-length settlement negotiations." Lomascolo, 2009 WL 3094955, at *11. Here, Plaintiffs and Genworth had adequate time to engage in discovery during pre-litigation discussions and once the Complaint was filed. Additionally, the Settlement Objectors had over sixty days to review the Amended Settlement Agreement, consult with Class Counsel to receive any pertinent information, and negotiate a settlement. Accordingly, this factor supports a finding of fairness.

## C. *Circumstances Surrounding the Negotiations*

"In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred." Gagliastre v. Capt. George's Seafood Restaurant, LP, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019). Here, the parties represent that they "engaged in extensive, arms-length negotiations" with the

settlement objectors to reach an agreement. ECF No. 106 at 3. And the record confirms that to be so. Further, there is no evidence to suggest that any fraud or collusion occurred during the negotiations. Since there is no evidence of fraud or collusion, this factor favors settlement approval. Gagliastre, 2019 WL 2288441, at *3.

### D. Experience of Counsel

In Lomascolo, the court found that this factor favored settlement approval when counsel had experience in federal litigation (and particularly representing multiple plaintiffs against corporations) and when counsel appeared competent based on the "pleadings, briefs, and arguments presented by counsel for the Parties throughout this case." 2009 WL 3094955, at *12; see also Kuntze v. Josh Enterprises, Inc., No. 2:18cv38, 2019 WL 2179220, at *3 (E.D. Va. May 20, 2019) (finding counsel was experienced and competent based on the pleadings, briefs, and arguments). Here, counsel for the Settlement Objectors has significant legal experience, including in complex commercial litigation. ECF No. 104-2 at 2; ECF No. 112 at 13. Further, counsel for the Settlement Objectors have provided able representation to their clients and have achieved a beneficial result for their clients and, indeed, the entire Class. Accordingly, this factor supports a finding of fairness.

On this record, all four factors weigh in favor of settlement approval; and therefore, the Court finds that the Objectors' Settlement Agreement is fair and reasonable.

## II. Adequacy

### A. *Strength of Plaintiffs' and Objectors' Case on the Merits and the Difficulties of Proof or Strong Defenses*

The first two adequacy factors may be considered together to assess whether the settlement is substantively adequate. To do that, is it necessary "to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." Brown v. Transurban USA, Inc., 318 F.R.D. 560, 573 (E.D. Va. 2016) (quotations omitted). Here, the parties "do not concede that the original Special Election Options were deficient or inadequate in any respect," but they "agree that the foregoing amended Special Election Options will expand the Class recovery." ECF No. 106 at 9. The Objectors' Settlement Agreement is estimated to increase the overall Amended Settlement Agreement by at least $10 million, which shows the value that the Settlement Objectors were able to achieve. ECF No. 104 at 12; ECF No. 112 at 9. Further, the objections filed by the Settlement Objectors were not certain of succeeding. Hence, settlement was prudent. Accordingly, this factor shows that the Objectors' Settlement Agreement is reasonable.

15

### B. *Anticipated Duration and Expenses of Additional Litigation*

The Court must also consider "the substantial time and expense litigation of this sort would entail if a settlement was not reached." In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 256 (E.D. Va. 2009). Here, had a settlement not been reached, there was a risk of continued, perhaps lingering, litigation, which would have delayed the Class receiving their relief. Additionally, resolution of the challenges made by the Settlement Objectors would have been costly for them and for Genworth and the other class members. Accordingly, this factor weighs in favor of approving the settlement.

### C. *Defendants' Solvency and the Likelihood of Recovery*

The Amended Settlement Agreement contains a provision that ensures that Genworth is solvent and that "the payment of cash damages, Contingency Fees, Class Counsel's litigation expenses, and Named Plaintiffs' service payments (the "Settlement Costs") will not cause GLIC or GLICNY to become insolvent." ECF No. 33-1 ¶ 67(a). "Regardless, of any clear evidence of Defendants risk of insolvency, this factor is largely considered 'beside the point given the other factors weighing in favor of preliminary approval.'" Solomon v. Am. Web Loan, Inc., No. 4:17cv145, 2020 WL 3490606, at *5 (E.D. Va. June 26, 2020) (quoting Henley v. FMC Corp., 207 F. Supp. 2d 489, 494 (S.D.W. Va. 2002)). Accordingly, this factor supports approval.

16

### D. Degree of Opposition

Finally, the fifth factor takes into account "the reaction of the Class to the proposed settlement and the attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court." In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 257 (E.D. Va. 2009). There were no challenges to the Objectors' Settlement Agreement. On the contrary, other objectors expressed their approval of the Objectors' Settlement Agreement during the approval hearings. Accordingly, this factor weighs in favor of approval.

Since the five adequacy factors all weigh in favor of settlement approval, the Court finds that the Objectors' Settlement Agreement is adequate.

### CONCLUSION

For the foregoing reasons, and to the extent outlined above, the Objectors' Settlement Motion will be granted. The Court will address the settlement objectors' request for attorneys' fees and incentive awards in a separate opinion.

It is so ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 11, 2023