IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRED HANEY,
et al.,

     Plaintiffs,

v.                                    Civil Action No. 3:22cv55

GENWORTH LIFE INSURANCE
CO., et al.,

     Defendants.


**MEMORANDUM OPINION**

This matter is before the Court on OBJECTOR JANE BELKIN'S MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES (ECF No. 103) ("Belkin Fees Motion") and the MOTION OF THE FRIEDMAN AND PODOLL OBJECTORS FOR INCENTIVE AWARDS AND ATTORNEY'S FEES (ECF No. 111) ("Friedman Fees Motion") (collectively "Objectors' Fees Motions" or "Motions"). On December 13, 2022, the Court heard argument on the Motions from the objectors' counsel and the parties. The related JOINT MOTION TO APPROVE SETTLEMENT WITH OBJECTORS (ECF No. 105) is addressed in a separate opinion.

Having considered all of the submitted information and for the reasons set forth on the record during the hearing on December 13, 2022, as well as the reasons set forth below, the Objectors' Fees Motions (ECF Nos. 103 and 111) will be granted.

## BACKGROUND

A more detailed recitation of the facts and procedural history is presented in the MEMORANDUM OPINION (ECF No. 122) dated December 12, 2022, and familiarity therewith is presumed. However, facts and procedural history pertinent to the Objectors' Fees Motions are outlined below.

## I.   The Class Action Complaint and the Claims

### A. The Complaint (ECF No. 1)

Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Class Representatives"), individually and on behalf of a proposed class of Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders as of January 1, 2013 (collectively "Plaintiffs" or "class members"), filed this class action against Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (collectively "Genworth" or "Defendants"). Compl. ¶ 170. Before the Complaint was filed, the parties engaged in three-days of mediation and extensive discovery that resulted in a Memorandum of Understanding ("MOU") that set "forth the material terms of an agreement-in-principle to be incorporated into a formal Settlement Agreement for the Court's approval." ECF No. 28 ¶¶ 4-7. The Complaint asserts two claims. COUNT ONE alleges a claim of fraudulent inducement by omission. COUNT TWO is a claim for declaratory relief under 28 U.S.C. § 2201.

2

**B.    The Factual Background for the Class Claims**

Plaintiffs each have Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled Long Term Care Insurance policies issued by Genworth. Long Term Care ("LTC") insurance is intended to defray the cost of home care, assisted living care, nursing home care, and other specialized skilled facility care required when an individual can no longer perform the basic activities of daily life. Compl. ¶ 4.

Plaintiffs allege that, since 2013, Genworth has steadily and substantially increased the premiums on their LTC insurance policies. Compl. ¶ 3. When Genworth learned that there were substantial deficiencies in its reserves going forward, it sought at least six waves of significant LTC premium rate increases to compensate for the deficiency. Id. ¶ 156. Plaintiffs also allege that, to avoid reporting a current negative loss recognition testing margin, Genworth relied almost entirely on billions of dollars in future rate increases to plug the hole in its reserves. Id. ¶ 15.

However, say the Plaintiffs, Genworth's plan for those substantial future rate increases was never shared with Genworth's LTC policyholders. Id. ¶¶ 157-59. Rather, it is alleged that Genworth told policyholders only that it was "possible" that a premium rate would increase in the future, without telling policyholders that Genworth actually had significant holes in its

3

reserve and that, at that time, Genworth actually planned to significantly increase premiums over the next few years. Id. ¶¶ 24-29. Plaintiffs allege that Genworth only partially disclosed material information when communicating the premium increases to its LTC policyholders and that the undisclosed information was material to the ability of policyholders to make informed decisions respecting their LTC policy option renewals and the attendant premium increases. Id. ¶ 3.

In other words, it is alleged that the undisclosed information was material to decisions that LTC policyholders made respecting whether, and to what extent, to renew or retain their LTC coverage; that the undisclosed information was necessary to make accurate the information that was disclosed; and that, therefore, the omissions made the disclosed information fraudulent. It is also alleged that Genworth intended that policyholders would rely on the knowingly inadequate disclosures in making the election among their policy choices.

Generally speaking, the choices given by Genworth to policyholders respecting whether, and to what extent, to maintain LTC policies were to: (1) maintain the existing LTC coverage and pay the increased premium; (2) reduce the LTC coverage and pay a lower premium; or (3) opt for a paid up LTC policy. Plaintiffs maintain that, had they known the scope and magnitude of Genworth's

4

plans for future rate increases, they would have made different policy option elections than they actually made. Compl. ¶ 200.

### C.   The Claims

In COUNT ONE, the Complaint presents a claim for fraudulent inducement by omission. Compl. at 53-57. In particular, the Complaint alleged that, "[b]y failing to adequately disclose material information about Genworth's rate increase action plans . . ., Genworth withheld material information from Plaintiffs and the Class." Id. ¶ 197. Further, the Complaint states that, "[h]ad [the class members] known the full scope and magnitude of Genworth's rate action plans, and the Company's reliance on massive rate increases in the future to remain viable, they would have made different policy option elections." Id. ¶ 200. The relief sough in COUNT ONE is to put class members "in the same position they were in before Genworth made the aforementioned omissions" by providing the missing disclosures on future rate increases to class members and allowing them to make new election decisions based on the information. Id. ¶¶ 202-03.

In COUNT TWO, the Complaint presents a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment claim is based on the same factual assertions as form the basis for the fraudulent inducement claim in COUNT ONE. But in COUNT TWO, the Plaintiffs are asking that the Court "declare Genworth had a duty to disclose that information" so that "a

corrective disclosure to all class members providing this information would be required." Compl. ¶ 207.

## II. Procedural History

Armed with knowledge and evidence obtained in previous similar cases against Genworth[1], and after engaging in a period of confirmatory discovery, Class Counsel filed PLAINTIFFS' MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS (ECF No. 26), which the Court granted on May 2, 2022. ECF No. 31. On July 6, 2022, the parties submitted an Amended Settlement Agreement (ECF No. 33-1) to amend the final Release. ECF No. 33 at 2. The Court preliminarily approved the Amended Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.

Class Counsel has represented that they have spoken with almost 4,300 policyholders who had questions about the Amended

---

[1] Skochin v. Genworth Life Ins. Co., No. 3:19cv49; Halcom v. Genworth Life Ins. Co., No. 3:21cv19.

Settlement Agreement. ECF No. 40 at 22. Over the course of the sixty days allotted in the Notice, 187 policyholders opted out of the Settlement Agreement and 19 objections were filed by 31[2] Class Members.[3] On November 17, 2022, the Court held a hearing to give objectors the opportunity to explain their objections and for counsel to the parties to respond. The afternoon before that hearing, the parties informed the Court that an agreement had been reached with the following objectors: Michael Podoll (ECF No. 48), Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73) (collectively "Podoll/Friedman Objectors"), and Jane Belkin (ECF No. 53) (collectively "Settlement Objectors"). Counsel for Genworth described the agreement in more detail at the beginning of the November 17 hearing. ECF No. 96 at 13-15. On November 30,

---

[2] The MEMORANDUM OPINION (ECF No. 122) filed on December 12, 2022, stated that there were 19 objections filed by 27 class members. ECF No. 122 at 12. However, upon further review, there were actually 19 objections filed by 31 class members. Accordingly, the updated number is reflected in this opinion.

[3] The objections were made in response to the Amended Settlement Agreement (ECF No. 33-1) even though it is the Second Amended Settlement Agreement (ECF No. 109-1) which reflects changes to the Special Election Options in Appendix C made as a part of the Objectors' Settlement Agreement that will ultimately be the document that applies to the Class members if the Court approves it. ECF No. 106-1. The Court is not required to provide an additional objection period for Class Members to review the Second Amended Settlement Agreement because the changes are narrow and further the interests of the Class. See Shaffer v. Continental Cas. Co., 362 Fed. Appx. 627, 631 (9th Cir. 2010); Harris v. Graddick, 615 F. Supp. 239, 244 (M.D. Ala. 1985).

2022, the parties and Settlement Objectors filed the Objectors'
Settlement Motion for the Court's approval. During a final approval
hearing on December 13, 2022, counsel for the parties and the
Settlement Objectors were given an opportunity to further explain
the terms of their agreement and advocate for its approval.

### III. The Terms of the Objectors' Settlement Agreement

To understand the Objectors' Settlement Agreement (ECF No.
106-1), it is necessary to understand the key terms of the Amended
Settlement Agreement. In broad terms, as explained by Class
Counsel, the Amended Settlement Agreement "directly addresses
[the] alleged harm by providing Class Members with additional
Disclosures about future rate increases, and then allowing them
options" to either maintain their current benefits or "restructure
their benefits and premiums in light of those Disclosures, if they
so wish." ECF No. 40 at 2.

To that end, the Amended Settlement Agreement dated July 6,
2022 (ECF No. 33-1) provides that class members will receive a
"special election letter" from Genworth, which will allow
recipients to choose between keeping their current plan or
"elect[ing] from a selection of paid-up reduced benefit options
and/or reduced benefit options . . . some of which also entitle
Class Members to damages payments." ECF No. 33-1 ¶¶ 46(a)-(b).
Class members who make no elections will simply retain their
current policies. Id. ¶ 48(a).

Class members who are not in non-forfeiture status (and "excluding Class Members whose level of benefits are below the level of benefits available in the defined options") will receive the following election options (ECF No. 33-1 at App. C(I)):

- <u>First Paid-Up Benefit Option</u>: A paid-up benefit of lifetime paid-in premiums minus (1) benefits received to date, and (2) $10,000. And, in addition, a $10,000 cash damages payment.

- <u>Second Paid-Up Benefit Option</u>: A paid-up benefit of 1.5 times the difference between the class member's paid-in premiums to date minus claims paid to date. This option does not include a damages payment.

- <u>Reduced Benefit Options (RBOs)</u>: For qualifying class members, options that reduce their policy benefits while also awarding them a $6,000 damages payment. A catchall RBO for otherwise non-qualifying members whereby they receive a benefits reduction and a damages payment of $1,000.

- <u>Fully Paid-Up Options</u>: Class members who are in fully paid-up status may choose between: (1) Paid-up benefits equivalent to premiums paid in, less $10,000 and less benefits received, in addition to a $10,000 damages payment; or (2) a reduction in benefits and a damages payment of $6,000.

- <u>Non-Forfeiture Status Option</u>: Retention of current paid-up benefits and a damages payment of $1,000.

ECF No. 33-1 at App. C.

The Objectors' Settlement Agreement modifies two of those Special Election Options, adds a new Option, contains a release provision and agreement to withdraw the objections, and provides for attorneys' fees and incentive awards for the objecting parties. ECF No. 106. The Objectors' Settlement Agreement produces the

following three changes to the Special Election Options in the Amended Settlement Agreement:

- An option was added for class members with qualifying inflation benefits to receive a reduction in their overall benefits but retain the inflation protection and receive a damages payment of $3,000.

- Expanded the eligible members for the catchall RBO option and increased the damages payment from $1,000 to $1,200.

- Increased the damages payment for the non-forfeiture status option from $1,000 to $1,150.

ECF No. 106 at 4-6. Additionally, the release clause prevents the settlement objectors from further objecting to the settlement or delaying its implementation. Id. at 7. Lastly, the Defendants agree to pay each settling objector an incentive award of $7,500 and attorneys' fees for counsel for the objectors. Id.

## STANDARD OF REVIEW

The court must approve any payment or consideration "provided in connection with . . . withdrawing an objection." Fed. R. Civ. P. 23(e)(5)(B). "If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees." Committee Notes on Rules (2018). Pursuant to Fed. R. Civ. P. 23(h), "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Courts within the United States Court of Appeals for the Fourth Circuit may use two competing methods of calculation for attorneys' fees: the lodestar method or the percentage of

10

recovery method. In re The Mills, 265 F.R.D. at 260. The Court has discretion to use either method. Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008).

Under the lodestar method, the Fourth Circuit has held that "a proper calculation" of attorneys' fees requires three steps: (1) calculating a lodestar figure by multiplying the number of hours worked by a reasonable billing rate; (2) deducting fees for hours worked on unsuccessful and unrelated claims; and (3) awarding a percentage of the remaining amount, in consideration of "the degree of success enjoyed by the plaintiff." In re Lumber Liquidators, 27 F.4th 291, 300 (4th Cir. 2022) (quoting McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013)).

The percentage of recovery method requires the Court to award attorneys' fees based on "a percentage of the Class' recovery, set by the weighing of a number of factors by the court." In re The Mills, 265 F.R.D. at 260. The factors generally include:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

Id. at 261.; Lumber Liquidators, 27 F.4th at 297, n.3. "An attractive aspect of the percentage of recovery method is its results-driven nature which 'ties the attorneys' award to the

overall result achieved rather than the hours expended by the attorneys." In re The Mills, 265 F.R.D. at 260 (citation omitted). However, "blindly awarding a requested percentage of the funds presents drawbacks of its own, namely what has been described as an 'anchoring' effect, which might result in an inaccurately-high award even if the Court awards a smaller percentage than initially requested for fear of deviating too far." Id. (citing In re Cardinal Health Inc. Sec. Litig., 528 F. Supp. 2d 752, 763 (S.D. Ohio 2007)).

For both methods, "courts will typically employ one method as the primary calculation method and use the other method as a cross check on the reasonableness of the first." Skochin v. Genworth Fin., Inc., No. 3:19-CV-49, 2020 WL 6536140, at *4 (E.D. Va. Nov. 5, 2020). No matter which method is used to calculate attorneys' fees, the Court must still determine if the result is reasonable. Galloway, 2020 WL 7482191, at *5. To determine reasonableness, the Court should employ a seven-factor test that combines the Fifth Circuit's twelve-factor Johnson test and the Third Circuit's seven-factor Gunter test. Id.; In re Genworth Fin. Sec. Litig., 210 F. Supp. 3d 837, 843 (E.D. Va. 2016).

Additionally, courts within the Fourth Circuit "recognize the purpose and appropriateness of service awards to Class Representatives." See Brown v. Transurban USA, Inc., 318 F.R.D. 560, 578 (E.D. Va. 2016) (citing Deem v. Ames True Temper, Inc.,

No. 6:10-CV-01339, 2013 WL 2285972, at *6-7 (S.D.W. Va. May 23, 2013) (approving award of $7,500 per lead plaintiff); Manuel v. Wells Fargo Bank, No. 3:14-CV-238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (approving a $10,000 service award); Berry v. LexisNexis Risk & Info. Analytics Grp., No. 3:11-CV-754, 2014 WL 4403524, at *16 (E.D. Va. Sept. 5, 2014), aff'd sub nom. Berry v. Schulman, 807 F.3d 600 (4th Cir. 2015) (approving a $5,000 service award); Burke v. Shapiro, Brown & Alt, LLP, No. 3:14cv838/3:14cv201 (DJN), 2016 WL 2894914, at *6 (E.D. Va. May 17, 2016) (approving a $3,000 service award)). "A fairly typical practice, incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. (quoting Manuel, 2016 WL 1070819, at *6) (internal quotations omitted). Incentive awards have also been awarded to objectors who achieve a benefit for the entire Class. Halcom v. Genworth Life Ins. Co., No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022).

## DISCUSSION

### I. Belkin Fees Motion

Counsel for Belkin is asking for $195,000 in attorneys' fees. ECF No. 104 at 3. Counsel argues that their negotiations with Plaintiffs and Defendants led to the addition of two Special

13

Election Options, which allows class members to retain a portion of their lifetime benefits, including the inflation protection benefit. Id. at 2-3. Counsel asks the Court to apply the lodestar method of calculation then perform a cross check using the percentage-of-fund method. Id. at 6.

As of November 30, 2022, the lodestar figure was $52,340, leading to a multiplier of 3.725. ECF No. 104 at 6. There are four individuals included in this fee: James Thorsen (lead counsel), Jeffrey Belkin (lead counsel), Jesse Roche (assistant counsel), and Kim Maiden (a paralegal and legal assistant). Id. at 7. Thorsen worked a total of 33.10 hours at an hourly rate of $600; Belkin worked a total of 42.25 hours at an hourly rate of $500; Roche worked a total of 26.70 hours at an hourly rate of $400; and Maiden worked a total of 4.50 hours at a rate of $150. Id. Counsel takes the view that these hourly rates are reasonable based on the prevailing market rate in the Eastern District of Virginia Richmond Division and on Cannada v. Old Dominion Brush, Co., Inc. where an hourly rate of $550 for Thorsen and $350 for Roche was determined to be reasonable by the court. ECF No. 104 at 7-9 (citing No. 3:20-cv-952-, 2022 WL 1213128, at *1 (E.D. Va. Apr. 25, 2022)). Additionally, counsel appears to have "made a good faith effort to exclude excessive, redundant, or otherwise unnecessary hours" and that the included hours were "a necessary use of time and resources in prosecuting this case and bringing out a modification to the

14

Settlement Agreement that provides substantial relief to the class." ECF No. 104 at 9-10 (quotations omitted). Counsel also achieved a considerable degree of success by negotiating the addition of Special Election Options that were "specifically tailored to address Belkin's objection." Id. at 10.

To assess the reasonableness of the attorneys' fees for Belkin's counsel, the Gunter and Johnson factors are discussed in order:

### A. *Results Obtained and Amount Involved*

While the actual amount paid to class members is unknown at this time, counsel for Belkin calculates that the addition of the Special Election Options they negotiated will add at least $5,424,000.00 to the value of the settlement. ECF No. 104 at 12. Nothing in the record suggests otherwise. Additionally, the inclusion of an option that allows class members to retain their inflation protection benefits is undoubtedly valuable. Indeed, at least two other objections raised the same issue. See ECF Nos. 49 and 62. Accordingly, this factor appears to weigh in favor of reasonableness.

### B. *Objections*

As of December 12, 2022, no objections have been raised challenging the award of attorneys' fees to counsel for the Settlement Objectors. Additionally, both Class Counsel and Genworth agreed not to oppose the request for attorneys' fees. ECF

No. 104 at 12. Accordingly, this factor weighs in favor of finding that the award of attorneys' fees is reasonable.

### C. Skill and Efficiency of Attorneys Involved

Counsel believes they possess "skill and efficiency" which helped reach a resolution for Belkin's objection. ECF No. 104 at 12. Thorsen has experience in litigating complex civil issues in federal court since 1979, including class actions. ECF No. 104-2 at 2. Belkin practiced labor law for forty years before transitioning into mediation. ECF No. 104-3 at 1-2. Lastly, Roche has practiced for eleven years and has experience in labor-focused litigation. ECF No. 104-5 at 1. Accordingly, this factor weighs in favor of a finding of reasonableness.

### D. Complexity and Duration of the Litigation

While the overall case was undoubtedly complex and difficult, counsel had the Amended Settlement Agreement as a base to make changes to, so the process of coming up with revisions to the larger Agreement does not seem as complex as negotiating the original agreement. Accordingly, this factor is neutral as to the reasonableness of the requested attorneys' fees.

### E. Risk of Non-Payment and Public Policy

Counsel for Belkin represents that they took this objection "with no guarantees of compensation." ECF No. 104 at 12; see also In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The risk of nonpayment incurred by [Class] Counsel is

16

evident in the fact that they undertook this action on an entirely contingent fee basis."). Moreover, public policy favors incentivizing "capable and seasoned counsel" to undertake complex litigation. In re The Mills, 265 F.R.D. at 263. Because recovery was not certain, and public policy favors the requested fee here, this factor weights in favor of the award fee.

### F. Time Devoted to Litigation

Counsel represents that, as of November 30, 2022, they have spent approximately 106.55 hours litigating this case. ECF No. 104 7. Counsel believes that they "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Id. at 10 (quotations omitted). The Court agrees, so this factor weighs in favor of finding the fees are reasonable.

### G. Fees in Similar Cases

Lastly, "the Court looks to fee awards in analogous cases to determine the reasonableness of the percentage requested here." In re Mills, 265 F.R.D. at 264. "[M]erely comparing the size of the fund and percentage of the award in other cases to the present case discounts the specifics of each case, [however, it] nonetheless provides a valuable point of reference. Still, the reasonableness inquiry is necessarily case-specific, and thus the percentage actually awarded varies from case to case." Id. Belkin's counsel argues that their hourly rates are lower than what was sought by Class Counsel in this case and what was awarded in

17

similar cases, citing Halcom where the objectors' attorneys' fees was $1.2 million. ECF No. 112 at 11; Halcom v. Genworth Life. Ins. Co., No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022). Accordingly, this factor counsels in favor of a finding of reasonableness.

### H. *Percent-of-fund Cross-Check*

Counsel contends that their requested fees is equal to less than one percent of their added value to settlement, which is significantly less than the Class Counsel's fee. ECF No. 104 at 12. While comparing the fees of the Settlement Objectors' counsel to Class Counsel's percentage fee is not a fair comparison because Class Counsel did considerably more work than counsel for Belkin, less than one percent of their value-added is a reasonable amount. Accordingly, the cross-check weighs in favor of a finding of reasonableness.

Based on the factor analysis and the percentage-of-fund cross-check, the Court finds that the request for $195,000 for attorneys' fee is reasonable. Unlike the objectors in Halcom, the objectors here reached a settlement that related to the main arguments of their initial objections. See Halcom, No. 3:21-cv-19, 2022 WL 2317435, at *14 (E.D. Va. June 28, 2022) (reducing the attorneys' fees in part because the ultimate agreement between the

parties and objectors had "little to nothing to do with" the original objections). Accordingly, the Court will award counsel for Belkin the requested fee of $195,000.

## II. Friedman Fees Motion

Counsel for the Podoll/Friedman Objectors are requesting $384,690 in attorneys' fees, ECF No. 112 at 9, because, in their view, negotiations with counsel for Plaintiffs and Defendants led to two substantial changes to the Special Election Options, including an $150 increase in cash damages for the non-forfeiture option and the expansion of one of the options,[4] which are said to add over $6 million of value to the settlement. Id. at 5, 9. Counsel asks the Court to apply the percentage of recovery method and then to perform a lode-star cross check. Id. at 9-10. Counsel estimates that they are requesting fees equal to 6.41% of the added value to the settlement. Id. at 9.

To assess the reasonableness of the attorneys' fees for the Podoll/Friedman Objectors' counsel, the Gunter and Johnson factors are discussed in order:

### A. Results Obtained and Amount Involved

Counsel for the Podoll/Friedman Objectors say that they were able to obtain an additional $6 million of value for the entire Class, which consists of more than 350,000 individuals. ECF No.

---

[4] Counsel for Belkin also claims credit for this change. ECF No. 104 at 3.

112 at 13. While the actual amount paid to class members is unknown at this time, counsel's estimates show that their changes will add considerable value for all class members who decide to elect one of these options. And, there is no dispute as to the increased value calculated by the Podoll/Friedman Objectors. Accordingly, this factor appears to weigh in favor of reasonableness.

### B. Objections

As of December 12, 2022, no objections have been raised challenging the award of attorneys' fees. Additionally, both Class and Counsel and Genworth agreed not to oppose the request for attorneys' fees. ECF No. 112 at 2. Accordingly, this factor weighs in favor of finding that the award of attorneys' fees is reasonable.

### C. Skill and Efficiency of Attorneys Involved

Counsel for the Podoll/Friedman Objectors have shown that they all have "significant experience in complex commercial litigation" and thus had the necessary skills to "inform, advise, and coordinate with eight objector clients" to successfully reach a settlement. ECF No. 112 at 12-13. Accordingly, this factor weighs in favor of a finding of reasonableness.

### D. Complexity and Duration of the Litigation

Counsel for the Podoll/Friedman Objectors submits that the issues in this case and the proposed settlement are "complex and difficult." ECF No. 112 at 11. Further, they argue that there were

20

"logistical challenges" in representing eight objector clients. Id. at 12. While the overall case was undoubtedly complex and difficult, counsel had the Amended Settlement Agreement as a base to make changes to, so the process of coming up with revisions to the larger Agreement does not seem as complex as negotiating the original agreement. Accordingly, this factor is neutral as to the reasonableness of the requested attorneys' fees.

### E. Risk of Non-Payment and Public Policy

Counsel took this case on a contingency basis and was accordingly prepared to put in the time and effort without the guarantee of payment. See ECF No. 112 at 13; see also In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The risk of nonpayment incurred by Counsel is evident in the fact that they undertook this action on an entirely contingent fee basis."). Additionally, counsel contends that "[g]iven the short time available to . . . negotiate a valuable settlement," all the attorneys were pulled off other matters to devote time to the case. ECF No. 112 at 12. Moreover, public policy favors incentivizing "capable and seasoned counsel" to undertake complex litigation. In re The Mills, 265 F.R.D. at 263. Because recovery was not certain, and public policy favors the requested fee here, this factor weights in favor of the award fee.

### F. Time Devoted to Litigation

The Podoll/Friedman Objectors' counsel represents that, as of December 2, 2022, they had spent 187.3 hours litigating and resolving the objection. ECF No. 112 at 11. Counsel argues that the requested hours is "a fraction of the time spent by objectors' counsel in Halcom," so it is reasonable. Id. at 15. A review of counsels' log of hours does show unavoidable hours. See ECF No. 112-2. Accordingly, this factor weighs in favor of finding the fees are reasonable.

### G. Fees in Similar Cases

Lastly, "the Court looks to fee awards in analogous cases to determine the reasonableness of the percentage requested here." In re Mills, 265 F.R.D. at 264. "[M]erely comparing the size of the fund and percentage of the award in other cases to the present case discounts the specifics of each case, [however, it] nonetheless provides a valuable point of reference. Still, the reasonableness inquiry is necessarily case-specific, and thus the percentage actually awarded varies from case to case." Id. Counsel argues that their requested fee is significantly less than the objectors' counsel fees in Halcom, which was $1.2 million, so it is a reasonable award. ECF No. 112 at 11; Halcom v. Genworth Life. Ins. Co., No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022). The Court agrees, so this factor counsels in favor of a finding of reasonableness.

### H. Lodestar Cross-Check

Counsel for the Podoll/Friedman Objectors estimates that, as of December 2, 2022, their lodestar amount is $128,230.00. ECF No. 112 at 11; see also In re The Mills, 265 F.R.D. at 264 ("[T]he Court may accept hours estimates provided by Lead Counsel."). This creates a multiplier of 3. Id. Counsel contends that this is reasonable because the Court approved a similar lodestar of 2.4 for the objectors' fee award in Halcom. No. 3:21-cv-19, 2022 WL 2317435, at *15 (E.D. Va. June 28, 2022). Based on the multiplier in the current case and that it is comparable to the objectors' lodestar in Halcom, the Court finds that the requested fee is reasonable.

Based on the factor analysis and the lodestar cross-check, the request for $384,690 for attorneys' fee is reasonable. Unlike the objectors in Halcom, the objectors here reached a settlement that related to the main arguments of their initial objections. See Halcom, No. 3:21-cv-19, 2022 WL 2317435, at *14 (E.D. Va. June 28, 2022) (reducing the attorneys' fees in part because the ultimate agreement between the parties and objectors had "little to nothing to do with" the original objections). Accordingly, the Court will award counsel for the Podoll/Friedman Objectors the requested fee of $384,690.00.

### III. Objectors' Service Awards

In Halcom, the Court awarded a $7,500 incentive payment for each of the represented objectors after finding such an award was reasonable. No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022). Belkin's counsel and counsel for the Podoll/Friedman Objectors request the same award here. ECF No. 104 at 13; ECF No. 112 at 15. Belkin contends that she contacted and retained counsel, produced all relevant documents related to her policy, discussed her policy and concerns regarding the proposed Settlement Agreement with counsel, reviewed numerous court filings, and discussed potential proposals to modify the Amended Settlement Agreement with her counsel, which warrants an incentive award. ECF No. 104-6. Likewise, the Podoll/Friedman Objectors contend that they consulted with counsel, reviewed the documents filed on their behalf, and participated in telephone calls and email communications with counsel to help reach an agreement and make improvements for the whole Class. ECF No. 112-4 at 3. This shows the work done by each of the Settlement Objectors in pursuing their aim of improving the terms of the settlement. Additionally, under the terms of the Objectors' Settlement Agreement, the payment of these service awards will not detract from the value of the relief

24

obtained by the Class. ECF No. 106 at 9. Accordingly, the objectors have "amply fulfilled their duties, making the requested service award appropriate." <u>Brown v. Transurban USA, Inc.</u>, 318 F.R.D. 560, 579 (E.D. Va. 2016).

## CONCLUSION

For the foregoing reasons, and to the extent outlined above, the Objectors' Fees Motions will be granted.

It is so ORDERED.

                                    /s/          _REP_
                          Robert E. Payne
                          Senior United States District Judge


Richmond, Virginia
Date: January _12_, 2023