IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRED HANEY,
et al.,

    Plaintiffs,

v.                                    Civil Action No. 3:22cv55

GENWORTH LIFE INSURANCE
CO., et al.,

    Defendants.

MEMORANDUM OPINION

This matter is before the Court on CLASS COUNSEL'S APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO
THE NAMED PLAINTIFFS (ECF No. 41) ("Fees and Awards Motion") and
the related unresolved objections to the Fees and Awards Motion
filed by the following class members: Johnathan Bos (ECF Nos. 35
and 48), Peter Michael and Keiko Howard (ECF No. 37), Paul and
Marcia Berg (ECF No. 44), Julie Black (ECF No. 46), Lonny and Carol
Lang (ECF No. 51),[1] Richard Moore (ECF No. 54), and Kathryn Dimiduk
(ECF No. 67).

---

[1] The Court has been advised that the Langs have reached a
settlement, which the Court will consider on February 7, 2023,
based on a motion to be filed on January 30, 2023. The Langs'
objections to the Fees and Awards Motion are being withdrawn.
Further, if the settlement with the Langs is approved, it will be
necessary to revise the Second Amended Settlement Agreement to
reflect the results of the settlement with the Langs. It also will
be necessary to consider the application of the Langs' counsel for

Having considered all of the submitted information and for
the reasons set forth on the record during the hearing on November
17, 2022, and December 13, 2022, as well as the reasons set forth
below, the Fees and Awards Motion will be GRANTED, and the
remaining objections will be OVERRULED.

BACKGROUND

I.    The Class Action Complaint and the Claims

A. The Complaint (ECF No. 1)

Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson,
and Alan Wooten ("Class Representatives"), individually and on
behalf of a proposed class of Genworth Choice 2, Choice 2.1,
California CADE, California Reprice, and California Unbundled
policyholders as of January 1, 2013 (collectively "Plaintiffs" or
"class members"), filed this class action against Defendants
Genworth Life Insurance Company ("GLIC") and Genworth Life
Insurance Company of New York ("GLICNY") (collectively "Genworth"
or "Defendants"). Compl. ¶ 170. Before the Complaint was filed on
January 28, 2022, the parties engaged in three-days of mediation
and extensive discovery that resulted in a Memorandum of
Understanding ("MOU") that set "forth the material terms of an
agreement-in-principle to be incorporated into a formal Settlement

---

fees and costs and for service awards to the Langs. None of that,
however, forecloses consideration of the pending Fees and Awards
Motion (ECF No. 41).

2

Agreement for the Court's approval." ECF No. 28 ¶¶ 4-7. The Complaint asserts two claims. COUNT ONE alleges a claim of fraudulent inducement by omission. COUNT TWO is a claim for declaratory relief under 28 U.S.C. § 2201.

### B. *The Factual Backdrop for the Class Claims*

Plaintiffs each have Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled Long Term Care Insurance policies issued by Genworth. Long Term Care ("LTC") insurance is intended to defray the cost of home care, assisted living care, nursing home care, and other specialized skilled facility care required when an individual can no longer perform the basic activities of daily life. Compl. ¶ 4.

Plaintiffs allege that, since 2013, Genworth has steadily and substantially increased the premiums on its LTC insurance policies. Compl. ¶ 3. When Genworth learned that there were substantial deficiencies in its reserves going forward, it sought at least six waves of significant premium rate increases to compensate for the deficiency. Id. ¶ 156. Plaintiffs also allege that, to avoid reporting a current negative loss recognition testing margin, Genworth relied almost entirely on billions of dollars in future rate increases to plug the hole in its reserves. Id. ¶ 15.

However, say the Plaintiffs, Genworth's plan for substantial future rate increases was never shared with Genworth's LTC

policyholders. Id. ¶¶ 157-59. Rather, it is alleged that Genworth told policyholders only that it was "possible" that a premium rate would increase in the future, without telling policyholders that Genworth actually had significant holes in its reserve and that Genworth planned to significantly increase premiums over the next few years. Id. ¶¶ 24-29. Plaintiffs allege that Genworth only partially disclosed material information when communicating the premium increases to its LTC policyholders and that, without the undisclosed information, Plaintiffs could not make informed decisions in response to their policy option renewals. Id. ¶ 3.

In other words, it is alleged that the undisclosed information was material to decisions that LTC policyholders made respecting whether, and to what extent, to renew or retain their LTC coverage; that the undisclosed information was necessary to make accurate the disclosed information; and that, therefore, the omissions made the disclosed information fraudulent. It is also alleged that Genworth intended that policyholders would rely on the knowingly inadequate disclosures in making the election among their policy choices.

Generally speaking, the choices given to policyholders respecting whether, and to what extent, to maintain LTC policies were to: (1) maintain the existing LTC coverage and pay the increased premium; (2) reduce the LTC coverage and pay a lower premium; or (3) opt for a paid up LTC policy. Plaintiffs maintain

that, had they known the scope and magnitude of Genworth's plans for future rate increases, they would have made different policy option elections than they actually made. Compl. ¶ 200.

### C. The Claims

In COUNT ONE, the Complaint presents a claim for fraudulent inducement by omission. Compl. at 53-57. In particular, the Complaint alleged that "[b]y failing to adequately disclose material information about Genworth's rate increase action plans . . ., Genworth withheld material information from Plaintiffs and the Class." Id. ¶ 197. Further, the Complaint states that "[h]ad [the class members] known the full scope and magnitude of Genworth's rate action plans, and the Company's reliance on massive rate increases in the future to remain viable, they would have made different policy option elections." Id. ¶ 200. The Complaint seeks to put class members "in the same position they were in before Genworth made the aforementioned omissions" by providing the missing disclosures on future rate increases to class members and allowing them to make new election decisions based on the information. Id. ¶¶ 202-03.

In COUNT TWO, the Complaint presents a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment claim is based on the same factual assertions as form the basis for the fraudulent inducement claim in COUNT ONE. But in COUNT TWO, the Plaintiffs are asking that the Court "declare

5

Genworth had a duty to disclose that information" so that "a corrective disclosure to all class members providing this information would be required." Compl. ¶ 207.

### D. The Previous Suits

To fully comprehend the claims in this case, it is necessary to understand the two kindred suits that preceded this one. In the first case, Skochin v. Genworth Life Ins. Co., No. 3:19cv49, the plaintiff class comprised a different set of Genworth's policyholders, but the claims they brought were essentially of the same type as those presented in this case but related to different LTC policies and time frames. The parties in Skochin engaged in extensive discovery, and Genworth moved to dismiss the claims under Fed. R. Civ. P. 12(b)(6). 3:19cv49, ECF No. 39. The Court granted the motion to dismiss as to one count of the AMENDED COMPLAINT in that case but denied it as to three other counts. 3:19cv49, ECF No. 79. The parties eventually reached a settlement agreement with terms similar to those proposed here. The second case, Halcom v. Genworth Life Ins. Co., No. 3:21cv19, was filed two years after Skochin, just as Skochin approached its resolution. Halcom too involved LTC policies but of different types and for different time frames. Having tested the strength of their respective claims and defenses in the Skochin litigation, the parties in Halcom were able to engage in significant informal discovery and several rounds of mediation. By the time the complaint was filed in Halcom, the

parties had already more or less agreed to the terms of a settlement. Just as in Skochin, the parties reached a settlement agreement with similar terms, and that litigation came to a close in June 2022.

While there are significant similarities between this case and Skochin and Halcom, it is also important to note the differences because those differences significantly affected the settlement terms in this case. Plaintiffs in Skochin and Halcom included Choice I, PCS I, and PCS II policyholders. Those types of policies were subject to a Multi Year Rate Increase Action Plan ("MYRAP") that Genworth failed to disclose to the policyholders, leading to cumulative rate increases of 250% or more over a decade. The policies at issue in the current case were not subject to the MYRAP or any comparable long-term rate increase plan. Instead, the rates were evaluated closer to an annual basis, which is the key difference between this case and Skochin and Halcom.

## II.  Procedural History

Mindful of information obtained in Skochin and Halcom, and after engaging in a period of confirmatory discovery, Class Counsel filed PLAINTIFFS' MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS (ECF No. 26), which the Court granted on May 2, 2022. ECF No. 31. On July 6, 2022, the parties submitted an Amended Settlement Agreement (ECF No. 33-1) to amend the final Release. ECF No. 33 at 2. The Court preliminarily approved the Amended

7

Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.

Class Counsel has represented that they spoke to almost 4,300 policyholders who had questions about the Amended Settlement Agreement. ECF No. 40 at 22. Over the course of the sixty days allotted in the Notice, 187 policyholders opted out of the Settlement Agreement and 19 objections were filed by 31 Class Members.[2] On November 17, 2022, the Court held a hearing to give

---

[2] The objections were made in response to the Amended Settlement Agreement (ECF No. 33-1) even though it is the Second Amended Settlement Agreement (ECF No. 109-1) which reflects changes to the Special Election Options in Appendix C made as a part of the Objectors' Settlement Agreement. ECF No. 130. The Court is not required to provide an additional objection period for Class Members to review the Second Amended Settlement Agreement because the changes are narrow and further the interests of the Class. See Shaffer v. Continental Cas. Co., 362 Fed. Appx. 627, 631 (9th Cir. 2010); Harris v. Graddick, 615 F. Supp. 239, 244 (M.D. Ala. 1985). Nor will the Court be required to provide an additional objection period for class members to review the Third Amended Settlement Agreement if the Court approves the new settlement with the Langs.

objectors the opportunity to explain their objections and for counsel to the parties to respond. The afternoon before this hearing, the parties informed the Court that an agreement (referred to as the "Objectors' Settlement Agreement") had been reached with the following objectors: Michael Podoll (ECF No. 48), Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73), and Jane Belkin (ECF No. 53) (collectively "settlement objectors"). Counsel for Genworth described the agreement in more detail at the beginning of the November 17 hearing. ECF No. 96 at 13-15. On November 30, 2022, the parties and settlement objectors filed the JOINT MOTION TO APPROVE SETTLEMENT WITH OBJECTORS (ECF No. 105) for the Court's approval. That same day, counsel for Belkin filed a MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES (ECF No. 103), and on December 2, 2022, counsel for the remaining settlement objectors filed the MOTION OF THE FRIEDMAN AND PODOLL OBJECTORS FOR INCENTIVE AWARDS AND ATTORNEY'S FEES (ECF No. 111). Plaintiffs and Genworth also filed a JOINT STIPULATION OF SECOND AMENDED SETTLEMENT AGREEMENT (ECF No. 109) with an updated settlement agreement that reflected the modifications based on the Objectors' Settlement Agreement. The Objectors' Settlement Agreement modified two of the Special Election Options, added a new Option, contained a release provision and agreement to withdraw the objections, and provided attorneys' fees and incentive awards for the objecting parties. ECF No. 106.

During a final approval hearing on December 13, 2022, the Court heard argument on the remaining objections, the Objectors' Settlement Agreement and fees, and final approval of the Second Amended Settlement Agreement. On January 11, 2023, the Court approved the Objectors' Settlement Agreement after finding that it was fair, reasonable, and adequate.[3] ECF No. 130. Accordingly, the modifications to the Special Election Options are now incorporated into the Second Amended Settlement Agreement (ECF No. 109-1).

## III. The Terms of the Settlement

To understand the objections to the Fees and Awards Motion, it is necessary to understand the terms of the Settlement Agreement. While the objections were filed in response to the Amended Settlement Agreement (ECF No. 33-1), the provisions relating to attorneys' fees and service awards did not change between that agreement and the Second Amended Settlement Agreement (ECF No. 109-1), which is now the controlling document for the settlement. Accordingly, the Court will refer to the Second Amended Settlement Agreement throughout this Memorandum Opinion.

In broad terms, as explained by Class Counsel, the Settlement Agreement "directly addresses [the] alleged harm by providing Class Members with additional Disclosures about future rate

---

[3] In a separate MEMORANDUM OPINION, the Court also granted OBJECTOR JANE BELKIN'S MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES (ECF No. 103) and the MOTION OF THE FRIEDMAN AND PODOLL OBJECTORS FOR INCENTIVE AWARDS AND ATTORNEY'S FEES (ECF No. 111). ECF No. 132.

increases, and then allowing them options" to either maintain their current benefits or "restructure their benefits and premiums in light of those Disclosures, if they so wish." ECF No. 40 at 2 (emphasis added). The pertinent terms of the Second Amended Settlement Agreement are discussed below.

As provided in the Second Amended Settlement Agreement dated December 1, 2022 (ECF No. 109-1), Genworth agrees to a preliminary settlement approval process in which the Court certifies the class solely for purposes of a class settlement. ECF No. 109-1 ¶ 54(a). Class members will receive a "special election letter" from Genworth, which will allow recipients to choose between keeping their current plan or "elect[ing] from a selection of paid-up reduced benefit options and/or reduced benefit options . . . some of which also entitle Class Members to damages payments." Id. ¶¶ 55(a)-(b). Class members who make no elections will simply retain their current policies. Id. ¶ 57(a).

Class members who are not in non-forfeiture status, and "excluding Class Members whose level of benefits are below the level of benefits available in the defined options," will receive the following election options (ECF No. 109-1 at App. C(I)-(III)):

- First Paid-Up Benefit Option: A paid-up benefit of lifetime paid-in premiums minus (1) benefits received to date, and (2) $10,000. And, in addition, a $10,000 cash damages payment.

- Second Paid-Up Benefit Option: A paid-up benefit of 1.5 times the difference between the class member's paid-in premiums to

11

date minus claims paid to date. This option does not include a damages payment.

- <u>Reduced Benefit Options (RBOs)</u>: For qualifying class members, options that reduce their policy benefits while also awarding them a $6,000 damages payment, and for qualifying members with inflation benefits, an option that reduces their overall benefits but retains the inflation protection and = a damages payment of $3,000. A catchall RBO for otherwise non-qualifying members whereby they receive a benefits reduction and a damages payment of $1,200.

- <u>Fully Paid-Up Options</u>: Class members who are in fully paid-up status may choose between: (1) Paid-up benefits equivalent to premiums paid in, less $10,000 and less benefits received, in addition to a $10,000 damages payment; or (2) a reduction in benefits and a damages payment of $6,000.

- <u>Non-Forfeiture Status Option</u>: Retention of current paid-up benefits and a damages payment of $1,150.

ECF No. 109-1 at App. C. The Second Amended Settlement Agreement is further conditioned on approval by state insurance regulatory bodies. The Agreement provides that information about the Special Elections Letters will be sent to each state's regulatory body, with Genworth retaining the right to decide how to proceed in the event that a regulator raises an objection or concern. ECF No. 109-1 ¶ 58(a).[4]

The Second Amended Settlement Agreement further provides for attorneys' fees equivalent to 15% of damages payments with a cap

---

[4] Pursuant to the Court's Order, Genworth sent this notification on April 11, 2022, ECF No. 29, and there were no objections. ECF No. 82. Since there were no objections by any state regulator, the provision that offers class members a $100 compensation is irrelevant. <u>Id.</u> ¶ 49(g) (triggered "[o]nly in the event that a State Regulator objects . . .").

of $13 million. ECF No. 109-1 ¶ 64(a). Importantly, these fees are over and above the damages payments to class members and are not taken out of those payments. For example, for every $1,000 in damage payments, the class member gets the full $1,000 and the attorneys get a separate payment of $150. Expenses are capped at $50,000 and likewise will not be deducted from payments to class members. Id. ¶ 65. The Class Representatives will receive incentive payments of $15,000 each. Id. ¶ 66. The remaining terms (fee to settlement administrator, non-disparagement, etc.) have no notable provisions.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 23(h), Class Counsel is "entitled to compensation and reimbursement for their efforts in ascertaining a benefit for the Class in this case." In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 260 (E.D. Va. 2009). Courts within the Fourth Circuit may use two competing methods of calculation for attorneys' fees: the lodestar method or the percentage of recovery method. In re The Mills, 265 F.R.D. at 260. Class Counsel requests—and Genworth does not oppose—relying on the percentage method of recovery, ECF No. 42 at 2, but both methods are ultimately used to discern reasonableness. The Court has discretion to use either method. Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008).

13

Under the lodestar method, the Fourth Circuit has held that "a proper calculation" of attorneys' fees requires three steps: (1) calculating a lodestar figure by multiplying the number of hours worked by a reasonable billing rate; (2) deducting fees for hours worked on unsuccessful and unrelated claims; and (3) awarding a percentage of the remaining amount, in consideration of "the degree of success enjoyed by the plaintiff." In re Lumber Liquidators, 27 F.4th 291, 300 (4th Cir. 2022) (quoting McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013)).

The percentage of recovery method, which Plaintiffs advised the Court to follow, requires the Court to award attorneys' fees based on "a percentage of the Class' recovery, set by the weighing of a number of factors by the court." In re The Mills, 265 F.R.D. at 260. The factors generally include:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

Id. at 261.; Lumber Liquidators, 27 F.4th at 297, n.3. "An attractive aspect of the percentage of recovery method is its results-driven nature which 'ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." In re The Mills, 265 F.R.D. at 260 (citation omitted).

14

However, "blindly awarding a requested percentage of the funds presents drawbacks of its own, namely what has been described as an 'anchoring' effect, which might result in an inaccurately-high award even if the Court awards a smaller percentage than initially requested for fear of deviating too far." Id. (citing In re Cardinal Health Inc. Sec. Litig., 528 F. Supp. 2d 752, 763 (S.D. Ohio 2007)).

The Fourth Circuit has also applied a percentage of recovery method and then completed a "lodestar cross-check" to supplement. See In re Lumber Liquidators, 27 F.4th at 297; In re Mills, 265 F.R.D. at 261. However, regardless of which method is employed, the Court must also assess the reasonableness of the requested fee before approving the Motion. Just as in Skochin and Halcom, the Court will consider the reasonableness factors from both Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (1974) (adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 226 n.28 (4th Cir. 1978)) and Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000).

The Johnson factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for legal work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the

15

experience, reputation[,] and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between attorney
and client; and (12) attorneys' fees awards in similar
cases.

Barber, 577 F.2d at 226 n.28. The Gunter factors are:

(1) the results obtained for the class; (2) the quality,
skill, and efficiency of the attorneys' involved; (3)
the complexity and duration of the case; (4) the risk of
nonpayment; (5) awards in similar case; (6) objections;
and (7) the amount of time devoted to the case by
plaintiffs' counsel.

Gunter, 223 F.3d at 195 n.1.

Additionally, courts within the Fourth Circuit "recognize the

purpose and appropriateness of service awards to Class

Representatives." See Brown v. Transurban USA, Inc., 318 F.R.D.

560, 578 (E.D. Va. 2016) (citing Deem v. Ames True Temper, Inc.,

No. 6:10-CV-01339, 2013 WL 2285972, at *6-7 (S.D.W. Va. May 23,

2013) (approving award of $7,500 per lead plaintiff); Manuel v.

Wells Fargo Bank, No. 3:14-CV-238 (DJN), 2016 WL 1070819, at *6

(E.D. Va. Mar. 15, 2016) (approving a $10,000 service award); Berry

v. LexisNexis Risk & Info. Analytics Grp., No. 3:11-CV-754, 2014

WL 4403524, at *16 (E.D. Va. Sept. 5, 2014), aff'd sub nom. Berry

v. Schulman, 807 F.3d 600 (4th Cir. 2015) (approving a $5,000

service award); Burke v. Shapiro, Brown & Alt, LLP, No.

3:14cv838/3:14cv201 (DJN), 2016 WL 2894914, at *6 (E.D. Va. May

17, 2016) (approving a $3,000 service award)). "A fairly typical

practice, incentive awards are intended to compensate class

16

representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Brown, 318 F.R.D. at 578 (quoting Manuel, 2016 WL 1070819, at *6) (internal quotations omitted).

DISCUSSION

## I. Fees for Class Counsel

Plaintiffs request that Class Counsel be awarded a contingent fee of 15% "of certain amounts related to Special Election Options selected by the Class, which shall be no greater than $13 million." ECF No. 42 at 2. Of note, "none of the attorneys' fees will be deducted from the cash awards claimed by the Class Members, and instead will be paid separately by Genworth." Id. The Defendant does not oppose this request and takes no position on the approval of Class Counsel's attorneys' fees. Id. at 5. Plaintiffs aver that the Court should follow the percentage fee method because it is the preferred method for common fund settlements and it was the same approach taken in Skochin and Halcom. Id. at 6; see also Galloway v. Williams, No. 3:19-cv-470, 2020 WL 7482191, at *5 (E.D. Va. Dec. 18, 2020) ("[T]he favored method for calculating attorneys' fees in common fund cases is the percentage of the fund method."). Plaintiffs assert their requested award of 15%, exclusive of expenses, is reasonable in light of other class

17

actions from the Fourth Circuit where class counsel has received an award of 25-33%. ECF No. 42 at 6-7.

No matter which method is used to calculate attorneys' fees, the Court must still determine if the result is reasonable. Galloway, 2020 WL 7482191, at *5. To determine reasonableness, the Court employs a seven-factor test that combines the Fifth Circuit's twelve-factor Johnson test and the Third Circuit's seven-factor Gunter test. Id.; In re Genworth Fin. Sec. Litig., 210 F. Supp. 3d 837, 843 (E.D. Va. 2016). The seven factors are addressed in order:

### A. *Results Obtained and Amount Involved*

Class Counsel estimates that the Class of more than 352,000 members will receive between $224 million and $609 million in cash damages. ECF No. 42 at 2. That amount "does not account for the benefits for the thousands of Class Members who may elect a paid-up non-forfeiture benefit in the Settlement that will be worth 150% of what it would be worth if elected outside the Settlement." Id. Not every class member will receive a cash damages payment, but all class members will receive the Disclosures of the future rate increases, which is the relief that underlies their claims. Id. This factor weighs in favor of the reasonableness of the requested fee.

### B. *Objections to the Terms of the Settlement*

As of November 1, 2022, at least 352,168 class members had received notice of the Settlement, ECF No. 81-1 ¶ 10, and 31 of

18

those members objected to the Amended Settlement Agreement. The objections to the substance of the settlement have been overruled. ECF Nos. 123 and 135.[5]

The small number of objections teach that the settlement is viewed favorably by the Class. Accordingly, this factor weighs in favor of finding that the award of attorneys' fees is reasonable.

### C. *Skill and Efficiency of Attorneys Involved*

Plaintiffs aver that Class Counsel used their "knowledge gained in litigating and settling Skochin and Halcom" to execute this Settlement. ECF No. 42 at 10. Class Counsel "expended significant time, resources, and skill in developing compelling evidence to establish liability and damages and to better understand the potential defenses in this case, which [was] different and more substantial than [prior] defenses." Id. at 11. Class Counsel's skill helped garner a favorable settlement for Plaintiffs. Id. Class Counsel was also retained on a contingency basis, which meant that they expended this energy without a guarantee of payment.

Based on their work in Skochin and Halcom, Class Counsel appears to be "qualified, experienced and generally able to conduct the proposed litigation." Eisen v. Carlisle & Jacquelin, 391 F.2d

---

[5] Eleven of the objectors raised an issue with the attorneys' fees. Overall, that is an extremely small percentage of the Class. Moreover, for the reasons set forth below, Section IV, p. 25, the objections to the attorneys' fees will be overruled.

555, 562 (2d Cir. 1968), cert. denied 417 U.S. 156 (1974). Further, as described in their submitted declarations, Class Counsel is experienced in class action litigation, showing they had the skill to represent all class members properly and adequately. See ECF Nos. 43-3, 43-4, 43-5, 43-6, and 43-7. Accordingly, this factor weighs in favor of a finding of reasonableness.

### D. Complexity and Duration of the Litigation

Class Counsel submits that the issues in this case compared to the prior two were "complex and difficult." ECF No. 42 at 11. A review of the Complaint and the record confirms that this case would be more complex and difficult than Skochin and Halcom. Class Counsel also notes that there were significant risks that the case could be dismissed or a jury could found in favor of Genworth. Id. at 12. Without the Settlement, the litigation would likely have been lengthy and expensive. Further, Class Counsel spent more than 3,500 hours working on this case. ECF No. 89 ¶ 4. Accordingly, this factor weighs in favor of finding that the attorneys' fees are reasonable.

### E. Risk of Non-Payment and Public Policy

Class Counsel took this case on a contingency basis and was accordingly prepared to put in the time and effort without the guarantee of payment. See ECF No. 42 at 12; see also In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The risk of nonpayment incurred by [Class] Counsel is evident in the

20

fact that they undertook this action on an entirely contingent fee basis."). Class Counsel contends that there was also a risk of non-payment because the facts in this case were weaker as compared to Skochin and Halcom. ECF No. 42 at 12. Additionally, Class Counsel has expended significant time and energy into the case yet, to date, has not been compensated. Id. Moreover, public policy favors incentivizing "capable and seasoned counsel" to undertake complex litigation. In re The Mills, 265 F.R.D. at 263. Because recovery was not certain, and public policy favors the requested fee here, this factor weights in favor of the requested fee.

### F. Time Devoted to Litigation

Plaintiffs represent that, as of November 10, 2022, Class Counsel has spent 3,518.40 hours litigating this case. ECF No. 89 ¶ 4. Class Counsel believes that the 15% fee is sufficient to compensate them for the "efficient litigation and great results." Id. at 15. The record teaches that assertion is correct. Accordingly, this factor weighs in favor of finding the fees are reasonable.

### G. Fees in Similar Cases

Lastly, "the Court looks to fee awards in analogous cases to determine the reasonableness of the percentage requested here." In re Mills, 265 F.R.D. at 264. "[M]erely comparing the size of the fund and percentage of the award in other cases to the present case discounts the specifics of each case, [however, it]

nonetheless provides a valuable point of reference. Still, the reasonableness inquiry is necessarily case-specific, and thus the percentage actually awarded varies from case to case." Id. Notably, "as a starting point . . . percentage awards are 'often between 25% and 30% of the fund.'" In re Mills, 265 F.R.D. at 264 (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 188). In In re Genworth Fin. Sec. Litig., the Court determined that an award of 28% in attorneys' fees was fair and reasonable and cited various cases where an attorneys' fee of 25% to 33.3% was granted. 210 F. Supp. 3d 837, 845 & n.4.

Class Counsel also cites a number of attorneys' fees from recent class actions out of this District where the court approved a fee above 15% to show that their requested fee is reasonable even though "the recovery [here] is better than most cases." ECF No. 42 at 13-14. Those include:

- Knurr v. Orbital ATK, Inc., No. 1:16cv0131, 2019 WL 3317976 (E.D. Va. June 7, 2019) (awarding Class Counsel a fee of 28% of the settlement amount);

- In re Celebrex (Celecoxib) Antitrust Litig., No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding Class Counsel a fee of 33% of the settlement amount);

- In re Genworth Fin. Sec. Litig., 210 F. Supp. 3d 837 (E.D. Va. 2016) (awarding Class Counsel a fee of 28% of the settlement amount);

- In re NII Holdings, Inc. Sec. Litig., No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702 (E.D. Va. Sept. 16, 2016) (awarding Class Counsel a fee of 25% of the settlement amount)

22

- Ryals v. Strategic Screening Sols., Inc., No. 3:14-cv-00643-REP, 2016 WL 7042947 (E.D. Va. Sept. 15, 2016) (awarding Class Counsel a fee of 26.752% of the settlement amount); and

- Henderson v. Verifications, Inc., No. 3:11cv514-REP, 2013 WL 12146748 (E.D. Va. Mar. 13, 2013) (awarding Class Counsel a fee of 28.67% of the settlement amount).

Lastly, the 15% fee is comparable to the attorneys' fees awarded in Skochin and Halcom. ECF No. 42 at 14. Accordingly, this factor counsels in favor of a finding of reasonableness.

### H. Lodestar Cross-Check

Class Counsel estimates that, as of November 10, 2022, their lodestar amount is $1,954,683.50. ECF No. 89 ¶ 4; see also In re The Mills, 265 F.R.D. at 264 ("[T]he Court may accept hours estimates provided by Lead Counsel."). This creates a current multiplier of 6.7. However, as Class Counsel notes, that figure will decrease once the $13 million cap is reached. ECF No. 42 at 16 & n.8; ECF No. 88 at 2. And, the lodestar calculation does not include any additional hours incurred after November 10, 2022, which will include preparing for and attending the final hearings, and any other tasks associated with ensuring that class members receive their relief, which will also decrease the multiplier.

Class Counsel contends that their request is reasonable because the Court approved a maximum lodestar of 9.05 in Skochin and an 8.4 multiplier in Halcom. No. 3:19-cv-49, 2020 WL 6536140, at *10 (E.D. Va. Nov. 5, 2020) (finding maximum lodestar was not

23

unreasonable because it would only trigger if the ceiling was reached and it was only the cross-check, not the principal method of assessing the fees); Halcom v. Genworth Life Ins. Co., No. 3:21cv19, 2022 WL 2317435, at *13 (E.D. Va. June 28, 2022). This factor weighs in favor of reasonableness.

Based on the factor analysis and the lodestar cross-check, a 15% attorneys' fee is reasonable. Accordingly, the Court will award Class Counsel attorneys' fees in the amount of 15% "of the damages payments paid to Class Members who elect any of the following Special Election Options described in Appendix C: I.A.1, I.B.1–5, II.1–2, and III" up to $13 million. ECF No. 109-1 ¶ 64(a).

## II. Costs for Class Counsel

In addition to attorneys' fees, Fed. R. Civ. P. 23(h) allows an award of reasonable non-taxable costs to Class Counsel. Here, Class Counsel requests reimbursement of $39,697.92 in costs. ECF No. 42 at 20. An award of costs must be "reasonable in nature." In re Microstrategy, Inc. Sec. Litig., 172 F. Supp. 2d 778, 791 (E.D. Va. 2001). Class Counsel included "expenditures for computer legal research, document reproduction, . . . court reporting, . . . consultant fees, and travel, meals, and lodging" in their tabulation of costs. ECF No. 42. The categories listed are consistent with the kinds of costs found to be reasonable in other

litigation, In re Microstrategy, 172 F. Supp. 2d at 791, and because the expenses have been shown to be both reasonable in amount and reasonably necessary, the Court will award Class Counsel $39,697.92 in costs.

## III. Service Payments to Named Plaintiffs

Class Counsel seeks a $15,000 service award for each of the four Class Representatives. ECF No. 42 at 21. Genworth does not oppose. Id. This Service Award is appropriate in light of the time and risks Class Representatives have taken on to propel the litigation forward. See id. at 22-23. It is also the same service award that the class representatives in Halcom received. Id. at 22. Moreover, as Class Counsel notes, the Class Representatives actively participated in all aspects of the case, including pre-suit discovery, produced relevant documentation to include "extremely private financial and medical information," and subjected themselves to "public attention and exposure of their personal information." Id. at 22-23. The Class Representatives have "amply fulfilled their duties, making the requested service award appropriate," Brown v. Transurban USA, Inc., 318 F.R.D. 560, 579 (E.D. Va. 2016), so the Court will grant each of the Class Representatives a $15,000 service award.

## IV. Objections to Attorneys' Fees and the Class Representative Awards

Johnathan Bos (ECF Nos. 35 and 48), Peter Michael and Keiko Howard (ECF No. 37), Paul and Marcia Berg (ECF No. 44), Lonny and Carol Lang (ECF No. 51), and Richard Moore (ECF No. 54) object to the amount of requested attorneys' fees, arguing that the request is too high. Michael and Howard expand on that argument, explaining that the fee is too high because the relief obtained is not adequate. ECF No. 37. Kathryn Dimiduk (ECF No. 67) contends that the attorneys' fees are simply a write-off for Genworth. Julie Black (ECF No. 46) objects to the fee structure. Paul and Marcia Berg (ECF No. 44) believe that the Class Representative award is too high and thus unfair.

In response, Class Counsel showed that, although this case was similar in theory to Skochin and Halcom, they were still required to do a significant amount of independent work, including a significant amount of work before filing the Complaint and in conducting confirmatory discovery. ECF No. 86 at 21. Class Counsel further reminds the objectors that the fees are contingent upon the actual amount of damages paid, which will be unknown until all class members make their elections. Id. at 22. The contingent fee structure is aligned with the Advisory Committee's Notes to Fed. R. Civ. P. 23, and the fifteen percent figure is lower than "other contingent fee percentages awarded by Courts in this Circuit." ECF

No. 86 at 22. As for the Class Representative awards, Class Counsel points to Berry v. Schulman to support the notion that service awards are regularly awarded to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." 807 F.3d 600, 613 (4th Cir. 2015), quoted in ECF No. 86 at 24. Class Counsel contends that the Class Representatives here earned such a reward for "their willingness to prosecute [the] case even though it required them to disclose sensitive health and financial information." Id. at 24.

As explained above, the requested attorneys' fees in the amount of 15%, capped at $13 million, are reasonable under Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000). Class Counsel obtained significant benefits for the Class. Further, Class Counsel devoted their time and their considerable expertise to communicate with class members and to negotiate a settlement agreement on their behalf to get a truly worth-while solution for the claims that were at issue. Lastly, the relief that flows from the Second Amended Settlement Agreement is the relief that was originally requested in the Complaint, which illustrates the success achieved through the services of Class Counsel. Every objection to the requested fee based on the

27

contention that the fee is "too high" is based on conclusory assertions, and the objections offered no cogent reason to support the "too high" theory. On the other hand, the record shows that Class Counsel achieved significant results for the Class in perspective of the claims asserted in the Complaint. It bears nothing, as well, that the contingency fee percentage is well below the percentage that is rather standard in Virginia. That, of course, reflects the reality that counsel had antecedent knowledge from previous, related litigation while, at the same time, accounting for the fact there is were significant risk-affecting differences between this cases and the related, earlier cases.

For the foregoing reasons, the objections that the attorneys' fees are too high and that the fee structure is incorrect will be overruled as lacking in substantive merit.

As for Dimiduk's concerns that the attorneys' fees will be treated as a write-off for Genworth and as a justification to seek higher rate increases, ECF No. 67, Genworth represented to Class Counsel and the Court that it will be able to pay the attorneys' fees and to meet its other obligations under the Second Amended Settlement Agreement, including the cash damages payments elected by Settlement class members. ECF No. 109-1 ¶ 76(a). Genworth further represented that the attorneys' fees, service awards, and cash damage expenses of the Second Amended Settlement Agreement will not be used as "actuarial justification in seeking any

28

additional future rate increases." Id. ¶ 76(b). Nothing in the record undercuts those representations. Accordingly, Dimiduk's objection will be overruled.

As for the Class Representative awards to which the Bergs object, courts within the Fourth Circuit "recognize the purpose and appropriateness of service awards to Class Representatives." See Brown v. Transurban USA, Inc., 318 F.R.D. 560, 578 (E.D. Va. 2016) (citing Deem v. Ames True Temper, Inc., No. 6:10-CV-01339, 2013 WL 2285972, at *6-7 (S.D.W. Va. May 23, 2013). As described above, the Class Representatives here actively participated in all aspects of the case, including pre-suit discovery, produced relevant documentation to include "extremely private financial and medical information," and subjected themselves to "public attention and exposure of their personal information." ECF No. 42 at 22-23. Because the Class Representatives appropriately earned their service award, the Bergs' objection will be overruled.

29

## CONCLUSION

For the foregoing reasons, and to the extent outlined above, the Fees and Awards Motions will be granted, and the remaining objections will be overruled.

It is so ORDERED.

/s/ REV
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 30, 2023