UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs<br><br>  v.<br><br>GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,<br><br>        Defendants. | Civil Action No.: 3:22-CV-00055-REP |

### MEMORANDUM IN SUPPORT OF OBJECTORS LONNY AND CARROL LANGS' MOTION FOR SERVICE AWARDS AND ATTORNEYS' FEES

Class members/objectors Lonny and Carrol Lang ("the Langs") move for service awards and attorneys' fees pursuant to Fed. R. Civ. P. 23 and the Joint Stipulation of Settlement with the Lang Objectors reached between Plaintiffs, Class Counsel, Defendants, and the Langs. Neither Class Counsel nor the Defendants oppose the Langs' motion.

### INTRODUCTION

The Langs' objection challenging the adequacy of the $1,000 cash damages payments for class members already in Non-forfeiture Status led to an additional $3,225,000 class benefits.[1] The Langs could have joined the earlier objector settlement agreement increasing this payment to

---

[1] There are approximately 43,000 class members who were already in Non-Forfeiture status. *See* ECF No. 43-3 at 2. Assuming the same 75% claims rate for these members as in *Skochin* (ECF No. 43-2 at n.2), 32,250 class members will receive the $100 increase achieved by the Langs. 32,250 x 100 = $3,225,000.

$1,150 but declined because they believed they could achieve more for the approximate 43,000 class members in this group. After argument at the final approval hearing and extensive arms-length settlement negotiations, the Langs succeeded in securing an additional $100 increase for each class member already in Non-forfeiture status, resulting in a $3.225 million class benefit.

For this achievement, Lonny and Carrol Lang move for service awards of $7,500 each, the same amount awarded to the settling objectors in this case and in *Halcom*. *See* ECF. No. 131. They further move for $237,500 in reasonable attorneys' fees as 7% of the $3.225 million benefit, with a very modest 1.02 lodestar multiplier on cross-check.[2] This is by far the lowest lodestar multiplier for any objector, either in this case and in *Halcom*. Genworth and Class Counsel do not oppose payments in these amounts.

Significantly, these amounts will not diminish payments or benefits to the class members in any respect. To the contrary, the class members will receive more than had been bargained for in the original settlement.

## PROCEDURAL BACKGROUND

The Langs are Policyholders of Genworth long-term care insurance, Choice 2 in force during the class period, and are therefore class members. ECF No. 51 at 1. The Langs elected non-forfeiture status on May 4, 2020. *Id*. at 3.

The Langs received notice of the underlying class action settlement, reached out to their counsel, and then filed a timely objection on September 30, 2022. ECF No. 51. Among other things, the Langs argued the $1,000 cash damages payments for the approximate 43,000 class

---

[2] The Langs' counsel total lodestar would amount to $268,605. However, since one of the attorneys who contributed to this lodestar, Mikell West of the Bandas Law Firm, did not move for *pro hac vice* admission, the Langs' counsel agree to forego his $36,120 lodestar (based on 51.6 hours at $700 per hour) for purposes of this fee motion. *See* Exhibit 1. As such, the total lodestar is $232,485.

members like them who had previously elected Non-Forfeiture Status were inadequate, particularly when considering the payments made available in *Skochin* and *Halcom*. *Id.* at 2, 4, 16-19, 25-26.

Ahead of the final approval hearing, counsel for Genworth invited the Langs' counsel to join in the objector settlement increasing the payment to Non-forfeiture Members from $1,000 to $1,150. The Langs declined the offer and counsel for the Langs appeared and argued at the final approval hearings on November 17, 2022 and December 13, 2022.

The Langs and counsel for Genworth mediated on December 5, 2022, which was unsuccessful. However, they continued discussions thereafter until reaching an agreement on January 24, 2023. Under the terms of the agreement, the cash damages amount to be paid for class members in Non-forfeiture status will be increased from $1,150 to $1,250. With respect to this motion—the Langs' motion for service awards and attorneys' fees—the parties' agreed Defendants will pay Carrol Lang a $7,500 service award and Lonny Lang a $7,500 service award, if and as ordered by the Court, to compensate them for their improvement to the settlement agreement. The parties also agreed Defendants will pay the Langs' counsel attorneys' fees (but not costs) if and as ordered by the Court, in an amount not to exceed $237,500 for the Bandas Law Firm and Blake Weiner Law, PLLC, combined, and will not oppose applications by the Langs' counsel seeking fees up to that amount.

**STANDARD OF REVIEW**

As this Court explained in its prior order awarding objector incentive awards and attorneys, fees (ECF No. 131 at 10), the court must approve any payment or consideration "provided in connection with … withdrawing an objection." Fed. R. Civ. P. 23(e)(5)(B). "If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h)

for an award of fees." Committee Notes on Rules (2018). Pursuant to Fed. R. Civ. P. 23 (h), "the court may award reasonable attorney's fees … that are authorized by law or by the parties' agreement." Courts within the United States Court of Appeals for the Fourth Circuit may use two competing methods of calculation for attorneys' fees: the lodestar method or the percentage of recovery method. *In re The Mills*, 265 F.R.D. at 260. Generally, the Court has discretion to use either method. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).

Under the lodestar method, "a proper calculation" of attorneys' fees requires three steps: (1) calculating a lodestar figure by multiplying the number of hours worked by a reasonable billing rate; (2) deducting fees for hours worked on unsuccessful and unrelated claims; and (3) awarding a percentage of the remaining amount, in consideration of "the degree of success enjoyed by the plaintiff." *In re Lumber Liquidators*, 27 F.4th 291, 300 (4th Cir. 2022) (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)).

The percentage of recovery method requires the Court to award attorneys' fees based on "a percentage of the Class' recovery, set by the weighing of a number of factors by the court." *In re The Mills*, 265 F.R.D. at 260. The factors include:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

ECF No. 131 at 11 (citing *In re The Mills*, 265 F.R.D. at 261); *Lumber Liquidators*, 27 F.4th at 297, n.3. "An attractive aspect of the percentage of recovery method is its results-driven nature which 'ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *In re The Mills*, 265 F.R.D. at 260 (citation omitted).

For both methods, "courts will typically employ one method as the primary calculation

method and use the other method as a cross check on the reasonableness of the first." *Skochin v. Genworth Fin., Inc.*, No. 3:19-CV-49, 2020 WL 6536140, at *4 (E.D. Va. Nov. 5, 2020). No matter which method is used to calculate attorneys' fees, the Court must still determine if the result is reasonable. *Galloway*, 2020 WL 7482191, at *5. To determine reasonableness, the Court should employ a seven-factor test that combines the Fifth Circuit's twelve-factor *Johnson* test and the Third Circuit's seven-factor *Gunter* test. *Id.*; *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016).

Additionally, courts within the Fourth Circuit "recognize the purpose and appropriateness of service awards to Class Representatives." *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (quotation omitted). Incentive awards have also been awarded to objectors who achieve a benefit for the entire Class. *See Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022).

## ARGUMENT

The Langs obtained a $3.225 million benefit to the class. Their willingness to insist first that $1,000 and then $1,150 were not enough added a $100 increase for class members in Non-Forfeiture Option Status at the time of the settlement.

Genworth's actuary submitted a declaration illustrating potential Cash Damages payments if, under the original settlement proposal, 32,250 Class Members elect the Non-Forfeiture Status option. ECF. No. 43-3 at 4 (Decl. of Nicholas Sheahon, FSA, MAAA). There is no reason to believe that increased cash damages payment will reduce demand; thus, the Langs' objection should increase the case's settlement value by $3.225 million ($100 x 32,250 = $3,225,000).

## I. The Langs' Attorneys' Fees are Reasonable Under the Percentage Method.

### A. Results Obtained and Amount Involved.

Unlike the benefits obtained by the objectors in *Halcom*, the benefits secured by the Langs are readily quantifiable. *Compare with Halcom*, 2020 WL 2317435 at *31. The $237,500 fee sought by Langs' counsel amounts to 7.3% of the $3.225 million benefit if considering the $100 increase for Non-Forfeiture members since the first objector settlement. The requested $237,500 fee, less than 1/5th the amount the Court approved for the objectors in *Halcom*, is reasonable.

Indeed, courts often award counsel representing objectors 20% or more for similar efforts. *See In re Easysaver Rewards Litig.*, No. 09-cv-02094-BAS-WVG, 2021 U.S. Dist. LEXIS 13119, at *11 (S.D. Cal. 2021) (awarding objector 25% fees for $3.23 million benefit to cy pres beneficiary); *Eubank v. Pella Corp.*, No. 06-CV-4481, 2019 WL 1227832, at *8 (N.D. Ill. Mar. 15, 2019) ("It is well recognized that objectors who add value to litigation through their successful objections are entitled to recover a substantial share of overall attorney's fees. Seventh Circuit caselaw has previously placed such recoveries around 20% of the total attorney's fees."); *Kaufman v. American Express Travel Related Servs., Co.*, 2016 WL 806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector fees of 34% of the benefit); *Arnett v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 149679, 2014 WL 5419125, at *3 (D. Or. Oct. 22, 2014) (25% fee to objector's counsel); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector fee of 25% of the benefit).

A court recently awarded the Langs' counsel, Robert Clore, a 14.27% fee for a similarly sized $4.3 million benefit to a settlement class. *See In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143, 2022 U.S. Dist. LEXIS 151727, at *19-20 (N.D. Cal. Aug. 22, 2022). The same court awarded Mr. Clore a 7% fee for a much larger $21 million benefit, characterizing the fee as

"relatively modest." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143, Dkt. 3062, 2021 U.S. Dist. LEXIS 171405, at *24 (N. D. Cal. Sept. 9, 2021).

Counsel for the Podoll/Friedman objectors received a substantially larger $389,000 fee. When considering the much larger 3 lodestar multiplier in that case, as compared to the 1.02 multiplier here, the requested $237,500 is manifestly reasonable. Though the Belkin objectors were awarded slightly less ($190,000) than the Langs' requested $237,500, the Belkins' fees were under the lodestar method with a 3.75 multiplier relative to the Langs' modest 1.02 multiplier. Further, as this Court noted, some of the claimed benefits were overlapping as between the Podoll/Friedman and Belkin objectors. *See Haney v. Genworth Life Ins. Co.*, Civil Action No. 3:22cv55, 2023 U.S. Dist. LEXIS 6624, at *24 n.4 (E.D. Va. 2023) (noting both objectors' counsel claimed credit for the initial "$150 increase in cash damages for the non-forfeiture option and the expansion of one of the options"). The Langs alone were responsible for the additional $100 increase, netting the class at least $3.225 million. The results obtained and the amount involved weigh in favor of reasonableness.

### B.  Objections.

Since this motion is filed on the same day as the Joint Stipulation of Settlement with the Lang Objectors, this is a difficult factor for the Langs to evaluate at this juncture. However, both Class and Counsel and Genworth agreed not to oppose the request for attorneys' fees. Accordingly, this factor weighs in favor of finding that the award of attorneys' fees is reasonable.

### C.  Skill and Efficiency of Attorneys Involved.

Mr. Clore, rated AV Preeminent by Martindale-Hubbell, is "a seasoned plaintiffs attorney who has successfully represented clients objecting to a number of big-ticket MDL settlements before trial courts and on appeal." Dorothy Atkins, Settling On Zoom: The Rise of Pro Se MDL

Objectors, Law360 (Dec. 22, 2020).³ Mr. Clore has also filed class actions in his own right. *See e.g., Arturo Garza, et al. v. Herrman & Herrman, PLLC, et al.*, No. 2:22-cv-00079 (S.D. Tex.). In the last three years, Mr. Clore's representation of class members has resulted in nearly $30 million in benefits conveyed to class members Nationwide. *See e.g., In re Optical Disk Drive Prods. Antitrust Litig.*, No. 21- 16291, 2022 U.S. App. LEXIS 15571, at *7 (9th Cir. 2022) (securing vacatur of fee award that resulted in $4.38 million class benefit); *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020) and *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 Fed.Appx. 443 (9th Cir. 2020) (prevailing in appeal with vacatur of $52.8 million fee award that resulted in $21.8 million class benefit); *In re Syngenta*, 2:14-MD-02591, Dkt. 4318 at 8-9; 4278 at 3, 6-7 (D. Kan. Jan. 6, 2020) (securing a $3 million monetary benefit for a settlement class of corn farmers and supplying nonmonetary benefits to the claims process). Additionally, Mr. Clore has fought successfully in cases (including in this Circuit) that did not necessarily achieve financial gains, but nevertheless resulted in beneficial precedent for absent class members. *See e.g., In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 489 (4th Cir. 2020) (determining vouchers were coupons under 28 U.S.C. § 1712, the Class Action Fairness Act ("CAFA"), and vacating attorneys' fee award); *Chambers v. Whirlpool Corp.,* 980 F.3d 645 (9th Cir. 2020) (rejecting district court's failure to apply CAFA's coupon provision and vacating improper attorneys' fee award).

Mr. Clore has an even broader array of victories in the context of civil appeals. *See e.g., Cavazos v. Stryker Sales Corp*., No. 13-21-00070-CV, 2022 Tex. App. LEXIS 8142, at *1 (Tex. App.—Corpus Christi Nov. 3, 2022, no pet. h.) (reversing in favor of client plaintiff); *Salinas v. World Houseware Producing Co*., 34 N.Y.3d 925, 926 (Sept. 12, 2019) (New York Court of

---

³ Accessible at https://www.law360.com/articles/1337218.

8

Appeals reversing in favor of client plaintiff in products liability action); *Broussard v. Omni Hotels Corp. et al.*, 2019 WL 4309574 (Tex. App.—Corpus Christi Sept. 12, 2019, no pet.) (reversing in favor of plaintiff client); *City of San Antonio v. Peralta*, 476 S.W.3d 653, 661 (Tex. App.—San Antonio 2015, no pet.) (affirmance in favor of plaintiff client); *Schaffer v. Nationwide Mut. Ins. Co.*, No. 13-11-00503-CV, 2013 WL 2146833, at *1 (Tex. App. May 16, 2013) (reversal in favor of plaintiff client); *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 142–43 (Tex. 2012) (reversal in favor of client in the Texas Supreme Court); *Guerrero v. Bexar Cty. Civil Serv. Comm'n*, No. 04-12-00523-CV, 2012 WL 6728260, at *1 (Tex. App. Dec. 28, 2012); *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 822 (Tex. 2010) (client's petition for writ of mandamus granted in the Texas Supreme Court); *Butters v. Noyola*, No. 13-07-00713-CV, 2008 WL 3984168, at *1 (Tex. App.—Corpus Christi-Edinburg, Aug. 29, 2008, no pet.) (reversal in favor of client); *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 570 (Tex. 2005) (reversal in favor of client).

Mr. Clore graduated *magna cum laude* from St. Mary's University School of Law, served as Articles Editor with the St. Mary's Law Journal, held membership in Phi Delta Phi, and clerked two years at the Thirteenth Court of Appeals for the State of Texas before entering private practice. *See* Exhibit 1. He served as appellate counsel for several highly respected defense firms in Texas before becoming Senior Appellate Counsel for the Bandas Law Firm, P.C. in early 2016. He is a member of the Appellate Section of the State Bar of Texas and the Corpus Christi Bar Association and am admitted to practice and in good standing with the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits as well as the United States Supreme Court. *Id.*

Mr. Weiner and Blake Weiner Law, PLLC have successfully represented civil rights

9

plaintiffs in Title VII and Section 1983 cases and serves as a criminal defense attorney. Mr. Weiner graduated *cum laude* from Georgetown Law. *See* Exhibit 2. He was recognized as a top five brief writer for the Leahy Appellate Advocacy Competition, served as an Annual Survey Editor for the American Criminal Law Review, and was recognized for achieving the "exceptional pro bono pledge." After completing a federal clerkship, Mr. Weiner served as an Assistant United States Attorney in Washington, D.C. *Id.*

In assisting the Langs secure benefits beyond those contemplated in the initial objector settlement, Mr. Clore and Mr. Weiner have demonstrated the necessary skills to inform and advise their clients and assisted them in successfully reaching a settlement beneficial to the class. Additionally, the Langs' objection contains far more analysis of authority—from the Fourth Circuit and elsewhere—than any other objection. *See* ECF. 51 (Langs' objection citing 42 opinions, including 11 from within the Fourth Circuit).

The Langs' counsel worked efficiently. Between Mr. Clore and Mr. Weiner, counsel invested 317.5 hours of time.[4] That is substantially less than the 768 hours incurred by the objectors in *Halcom*. *Halcom*, ECF. 106 at 16. It is also reasonable relative to the Podoll/Friedman objectors (who incurred 187 hours) considering the Langs' counsel argued at the final approval hearing and negotiated for several months after the initial objector settlement. *See* Exhibit 1. The skill and efficiency of counsel thus weighs in favor of the requested fee.

### D. Complexity and Duration of the Litigation

Though the process of improving the larger settlement agreement may not have been as complex as negotiating the original agreement, it entailed its own complexity and unique

---

[4] Mr. West spent 51.6 hours editing, drafting, and discussing case strategy. Ex. 1. As noted, however, his time is omitted since he did not move *pro hac vice* before the Court.

challenges. In order to argue that the Non-Forfeiture Status class members were entitled to greater relief, counsel was required to, among other things, compare and contrast the *Halcom* and *Skochin* settlements relative to the relief offered in *Haney*.

The Langs' counsel were also required to negotiate for several months longer than the Belkin and Podoll/Friedman objectors to secure the additional $100 increase for the Non-Forfeiture Status members. Had they not, the payments would have remained at $1,150. Further, unlike these objectors, the Langs' counsel were required to advocate on behalf of their objections during the final approval hearing. On the whole, the complexity and duration of the litigation weighs in favor of the requested fee.

### E. Risk or Non-Payment and Public Policy.

Counsel took this case on a contingency basis and was accordingly prepared to put in the time and effort without the guarantee of payment. *See* Exhibit 1*; see also In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The risk of nonpayment incurred by Counsel is evident in the fact that they undertook this action on an entirely contingent fee basis."). Public policy favors incentivizing "capable and seasoned counsel" to undertake complex litigation*. In re The Mills*, 265 F.R.D. at 263. Because recovery was not certain, and public policy favors the requested fee here, this factor weighs in favor of the award fee.

### F. Time Devoted to Litigation.

As of January 24, 2023, the Langs counsel invested 317.5 hours of time.[5] Again, that is substantially less incurred by the objectors in *Halcom* and reasonable relative to the 187 hours incurred by the Podoll/Friedman objectors for less than two months considering the Langs' counsel argued at the final approval hearing and then negotiated for several months after the initial objector

---

[5] Again, that excludes Mr. West's 51.7 hour. *See supra* n. 2.

settlement. *See* Exhibit 1. Accordingly, this factor weighs in favor of finding the fees are reasonable.

### G. Fees in Similar Cases.

As this Court noted, the final factor is examining "fee awards in analogous cases to determine the reasonableness of the percentage requested here." *Haney v. Genworth Life Ins. Co.*, Civil Action No. 3:22cv55, 2023 U.S. Dist. LEXIS 6624, at *22 (E.D. Va. 2023) (citing *In re Mills*, 265 F.R.D. at 264). "[M]erely comparing the size of the fund and percentage of the award in other cases to the present case discounts the specifics of each case, [however, it] nonetheless provides a valuable point of reference. Still, the reasonableness inquiry is necessarily case-specific, and thus the percentage actually awarded varies from case to case." *Id*.

More so than the Podoll/Friedman objectors, the Langs' requested $237,500 fee "is significantly less than the objectors' counsel fees in *Halcom*, which was $1.2 million[.]" *Haney v. Genworth Life Ins. Co.*, Civil Action No. 3:22cv55, 2023 U.S. Dist. LEXIS 6624, at *28 (E.D. Va. 2023). And as noted, the Langs' requested 7% fee is on the low end of what has been awarded to other objectors' counsel. *See e.g., Kaufman*, 2016 WL 806546, at *13-*14 (34%); *Arnett*, 2014 U.S. Dist. LEXIS 149679, at *3 (25%); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (25%). As such, "this factor counsels in favor of a finding of reasonableness." *Haney*, 2023 U.S. Dist. LEXIS 6624, at *28.

## II. A Lodestar Cross-Check Confirms the Requested Fees are Reasonable.

The reasonableness of the Langs' requested $237,500 in attorneys' fees is further substantiated by a lodestar cross-check. As of January 24, 2023, the Langs' total lodestar is

$232,485.[6] *See* Exhibit 1; *see also In re The Mills*, 265 F.R.D. at 264 ("[T]he Court may accept hours estimates provided by Lead Counsel."). This creates a multiplier of 1.02. This is far below the 2.4 multiplier in *Halcom* as well as the 3 multiplier for Podoll/Friedman and 3.75 multiplier for Belkin in this case.

As with the Belkin and Podoll/Friedman objectors, the Langs' presented the relevant argument that led to the improved benefit in the body of their objection. This was not simply a matter that was raised for the first time at the final approval hearing as in *Halcom*. 2022 WL 2317435, at *14, *42 (reducing the attorneys' fees in part because the ultimate agreement between the parties and objectors had "little to nothing to do with" the original objections and "the focus on the breadth of the release language came only during the final approval hearing"). Further, even if lodestar were reduced by 20% as in Halcom to account for arguments that were not successful, the resulting $185,988 lodestar multiplier would still be modest at 1.27.[7]

The following chart summarizes the Langs' counsels' lodestar:

| Attorney | Years Exp. | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Robert W. Clore, Partner, Bandas Law Firm | 22 | $750 | 298.7 | $224,025 |
| Blake A. Weiner Blake Weiner Law, PLLC | 4 | $450 | 18.8 | $8,460 |
| **TOTAL** | | | 317.5 | $232,485 |

Mr. Clore's hourly rate is $750 per hour, which is comparable to the rates for counsel with similar experience approved by this Court in *Halcom*. It is also well below many of the rates

---

[6] Again, this excludes the $36,120 lodestar of Mikell West of the Bandas Law Firm, who did not move for *pro hac vice* admission.
[7] $232,485 x .2 = $46,497. $232,485 - $46,497 = $185,988. $237,500 % $188,988 = 1.27.

13

charged by class counsel. ECF No. 43-5 at PGID#1245 (hourly rates up to $1,100 per hour); PGID# 1412 (hourly rates up to $930 per hour); *see also In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143-RS, 2021 U.S. Dist. LEXIS 171405, at *25-26 (N.D. Cal. 2021) (finding fee reasonable on lodestar cross-check where Mr. Clore billed at an hourly rate of $750; noting that this rate "falls on the lower end of the range that has been found reasonable in similar circumstances"). Similarly, Mr. Weiner's $450 per hour is comparable to rates for similar experience approved by this Court in *Halcom* and well below rates charged by class counsel. *See* ECF No. 43-5 at PGID#1245; PGID# 1412.

Mr. Clore accumulated his time between September 6, 2022 and January 24, 2023 by conferring with Carrol and Lonny Lang on a regular basis; analyzing the Skochin and Halcom dockets; conducting extensive legal research; drafting, editing, and finalizing drafts of the written objection and supporting papers; preparing for the final approval hearing; traveling to Richmond, Virginia from Corpus Christi, Texas to argue at the final approval hearing; preparing for and engaging in a formal mediation; extensive settlement negotiations with opposing counsel; and monitoring the docket. *See* Exhibit 1. Mr. Wiener accumulated his time between September 21, 2022 and January 24, 2023 by conferring with Mr. Clore and the Langs; analyzing and editing drafts of the written objection and supporting papers; finalizing the objection and supporting papers for filing; attending the final approval hearing; and participating in mediation. *See* Exhibit 2.

As in *Halcom* and as with the prior objector settlement in this case, the award will be paid by Genworth and the class benefits will in no way be reduced by the Langs' attorneys' fees. Further, the Langs' are not requesting any compensation for expenses undertaken as part of this litigation Accordingly, for the reasons described above, the requested $237,500 fee is reasonable.

14

### III.     The Langs' Requested Objectors' Service Awards are Reasonable.

As in *Halcom* and as with the Belkin and Podoll/Friedman objectors in this case, the Langs each respectfully request a $7,500 service award. *Halcom*, 2022 WL 2317435, at *16; *see also Haney*, 2023 U.S. Dist. LEXIS 6624, at *30. This is only one-half the amount class counsel seek for the named plaintiffs. The Langs contacted and retained counsel, produced the relevant documents related to her policy, discussed their policy and concerns regarding the proposed Settlement Agreement with counsel, reviewed numerous court filings, discussed several proposals to improve the settlement, and participated in a mediation. *See* Exhibit 3, 4. The Langs stood up on behalf of the class, refusing to agree to the initial settlement offer, and their expenditure of time to achieve these valuable improvements to the settlement demonstrate their requested service awards are reasonable. Additionally, under the terms of the Objectors' Settlement Agreement, the payment of these service awards will not detract from the value of the relief.

### CONCLUSION

For the foregoing reasons, the Langs respectfully request that the Court approve the requested $7,500 service award for Carrol Lang and $7,500 award for Lonny Lang, and further request the Court approve their requested $237,500 in attorneys' fees.

DATED: January 30, 2023  Respectfully submitted,

*/s/ Blake A. Weiner*
Blake A. Weiner
VA Bar No. 94087
BLAKE WEINER LAW, PLLC
1806 Summit Avenue, Suite 300
Richmond, VA 23230
Telephone: (804) 482-1465
Email: bweiner@blakeweinerlaw.com

Robert W. Clore
Texas State Bar #24012436
BANDAS LAW FIRM, P.C.
802 N. Carancahua, Suite 1400
Corpus Christi, TX 78401
(361) 698–5200
rclore@bandaslawfirm.com
Admitted *Pro Hac Vice*

*Counsel for Lonny and Carrol Lang*

**Certificate of Service**

I hereby certify that I filed the foregoing Motion via the CM/ECF with the Clerk of United States District Court for the Eastern District of Virginia which will send electronic notification to all attorneys registered for ECF thus effectuating service.

DATED: January 30, 2023

                                                         _/s/ Blake A. Weiner_