IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRED HANEY,
et al.,

    Plaintiffs,

v.                                        Civil Action No. 3:22cv55

GENWORTH LIFE INSURANCE
CO., et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on the JOINT MOTION TO APPROVE THE SETTLEMENT WITH THE LANG OBJECTORS (ECF No. 139) ("Langs' Settlement Motion") filed by Plaintiffs, Defendants, and Lonny and Carrol Lang (ECF No. 51). On February 7, 2023, the Court provided an opportunity for the parties to provide argument on the Langs' Settlement Motion beyond the papers.[1] Having considered all of the submitted information and for the reasons set forth on the record during the hearing on February 7, 2023, as well as the reasons set forth below, the Langs' Settlement Motion will be granted. The JOINT STIPULATION OF SETTLEMENT WITH THE LANG OBJECTORS (ECF No.

---

[1] The related OBJECTORS LONNY AND CARROL LANGS' MOTION FOR SERVICE AWARDS AND ATTORNEYS' FEES (ECF No. 142) will be addressed in a separate opinion.

140-1) ("Langs's Settlement Agreement") will be approved, and its terms will be included in the THIRD AMENDED SETTLEMENT AGREEMENT (ECF No. 141-1).

## BACKGROUND

A more detailed recitation of the facts and procedural history is presented in the MEMORANDUM OPINION (ECF No. 134) dated January 26, 2023, and familiarity therewith is presumed. However, facts and procedural history pertinent to the Langs' Settlement Motion are outlined below.

I.   The Class Action Complaint and the Claims

A. *The Complaint (ECF No. 1)*

Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Class Representatives"), individually and on behalf of a proposed class of Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders as of January 1, 2013 (collectively "Plaintiffs" or "class members"), filed this class action against Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (collectively "Genworth" or "Defendants"). Compl. ¶ 170. Before the Complaint was filed, the parties engaged in three-days of mediation and extensive discovery that resulted in a Memorandum of Understanding ("MOU") that set "forth the material terms of an agreement-in-principle to be incorporated into a formal Settlement Agreement for the Court's

2

approval." ECF No. 28 ¶¶ 4-7. The Complaint asserts two claims. COUNT ONE alleges a claim of fraudulent inducement by omission. COUNT TWO is a claim for declaratory relief under 28 U.S.C. § 2201.

## B.   The Factual Background for the Class Claims

Plaintiffs each have Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled Long Term Care Insurance policies issued by Genworth. Long Term Care ("LTC") insurance is intended to defray the cost of home care, assisted living care, nursing home care, and other specialized skilled facility care required when an individual can no longer perform the basic activities of daily life. Compl. ¶ 4.

Plaintiffs allege that, since 2013, Genworth has steadily and substantially increased the premiums on their LTC insurance policies. Compl. ¶ 3. When Genworth learned that there were substantial deficiencies in its reserves going forward, it sought at least six waves of significant LTC premium rate increases to compensate for the deficiency. Id. ¶ 156. Plaintiffs also allege that, to avoid reporting a current negative loss recognition testing margin, Genworth relied almost entirely on billions of dollars in future rate increases to plug the hole in its reserves. Id. ¶ 15.

However, say the Plaintiffs, Genworth's plan for those substantial future rate increases was never shared with Genworth's LTC policyholders. Id. ¶¶ 157-59. Rather, it is alleged that

3

Genworth told policyholders only that it was "possible" that a premium rate would increase in the future, without telling policyholders that Genworth actually had significant holes in its reserve and that, at that time, Genworth actually planned to significantly increase premiums over the next few years. Id. ¶¶ 24-29. Plaintiffs allege that Genworth only partially disclosed material information when communicating the premium increases to its LTC policyholders and that the undisclosed information was material to the ability of policyholders to make informed decisions respecting their LTC policy option renewals and the attendant premium increases. Id. ¶ 3.

In other words, it is alleged that the undisclosed information was material to decisions that LTC policyholders made respecting whether, and to what extent, to renew or retain their LTC coverage; that the undisclosed information was necessary to make accurate the information that was disclosed; and that, therefore, the omissions made the disclosed information fraudulent. It is also alleged that Genworth intended that policyholders would rely on the knowingly inadequate disclosures in making the election among their policy choices.

Generally speaking, the choices given by Genworth to policyholders respecting whether, and to what extent, to maintain LTC policies were to: (1) maintain the existing LTC coverage and pay the increased premium; (2) reduce the LTC coverage and pay a

4

lower premium; or (3) opt for a paid up LTC policy. Plaintiffs maintain that, had they known the scope and magnitude of Genworth's plans for future rate increases, they would have made different policy option elections than they actually made. Compl. ¶ 200.

C.    The Claims

In COUNT ONE, the Complaint presents a claim for fraudulent inducement by omission. Compl. at 53-57. In particular, the Complaint alleged that, "[b]y failing to adequately disclose material information about Genworth's rate increase action plans . . ., Genworth withheld material information from Plaintiffs and the Class." Id. ¶ 197. Further, the Complaint states that, "[h]ad [the class members] known the full scope and magnitude of Genworth's rate action plans, and the Company's reliance on massive rate increases in the future to remain viable, they would have made different policy option elections." Id. ¶ 200. The relief sough in COUNT ONE is to put class members "in the same position they were in before Genworth made the aforementioned omissions" by providing the missing disclosures on future rate increases to class members and allowing them to make new election decisions based on the information. Id. ¶¶ 202-03.

In COUNT TWO, the Complaint presents a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment claim is based on the same factual assertions as form the basis for the fraudulent inducement claim in COUNT ONE. But in

COUNT TWO, the Plaintiffs are asking that the Court "declare Genworth had a duty to disclose that information" so that "a corrective disclosure to all class members providing this information would be required." Compl. ¶ 207.

II. **Procedural History**

Armed with knowledge and evidence obtained in previous similar cases against Genworth[2], and after engaging in a period of confirmatory discovery, Class Counsel filed PLAINTIFFS' MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS (ECF No. 26), which the Court granted on May 2, 2022. ECF No. 31. On July 6, 2022, the parties submitted an Amended Settlement Agreement (ECF No. 33-1) to amend the final Release. ECF No. 33 at 2. The Court preliminarily approved the Amended Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.

---

[2] Skochin v. Genworth Life Ins. Co., No. 3:19cv49; Halcom v. Genworth Life Ins. Co., No. 3:21cv19.

Class Counsel has represented that, as of September 16, 2022, they have spoken with almost 4,300 policyholders who had questions about the Amended Settlement Agreement. ECF No. 40 at 22. Over the course of the sixty days allotted in the Notice, 187 policyholders opted out of the Settlement Agreement, and 19 objections were filed by 31 Class Members.[3] On November 17, 2022, the Court held a hearing to give objectors the opportunity to explain their objections, including counsel for the Langs, and for counsel to the parties to respond. The afternoon before that hearing, the parties informed the Court that an agreement had been reached with the following objectors: Michael Podoll (ECF No. 48), Jane Belkin (ECF No. 53), and Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73) (collectively "settlement objectors"). The listed parties agreed that in exchange for making certain enhancements to the Special Election Options in the Amended Settlement Agreement, the objectors would withdraw their objections. ECF No. 96 at 13:1-

---

[3] The objections were made in response to the Amended Settlement Agreement (ECF No. 33-1) even though it is the Third Amended Settlement Agreement (ECF No. 141-1) which reflects changes to the Special Election Options in Appendix C made as a part of the two settlement agreements with the different groups of objectors that will ultimately be the document that applies to the Class members if the Court approves it. The Court is not required to provide an additional objection period for Class Members to review the Third Amended Settlement Agreement because the changes are narrow and further the interests of the Class. See Shaffer v. Continental Cas. Co., 362 Fed. Appx. 627, 631 (9th Cir. 2010); Harris v. Graddick, 615 F. Supp. 239, 244 (M.D. Ala. 1985).

13:5. That agreement has been approved (ECF No. 130) and is incorporated in the Second Amended Settlement Agreement (ECF No. 109-1). Counsel for the objectors was also granted attorneys' fees, and each settlement objector was awarded a $7,500 incentive payment. ECF No. 132.

In a MEMORANDUM OPINION (ECF No. 122) and ORDER (ECF No. 123) issued on December 12, 2022, the Court overruled the Langs' objections to the settlement except for the objection pertaining to attorneys' fees. On December 13, 2022, during the final hearing, counsel for the Langs renewed their objection to the attorneys' fees, arguing more specificity was needed. ECF No. 133 at 123-25. In a MEMORANDUM OPINION (ECF No. 137) and ORDER (ECF No. 138) issued on January 30, 2023, the Court overruled the Langs' objection to the attorneys' fees.

### III. The Terms of the Langs' Settlement Agreement

To understand the Langs' Settlement Agreement (ECF No. 140-1), it is necessary to understand the key terms of the Second Amended Settlement Agreement. In broad terms, as explained by Class Counsel, the Settlement Agreement "directly addresses [the] alleged harm by providing Class Members with additional Disclosures about future rate increases, and then allowing them options" to either maintain their current benefits or "restructure their benefits and premiums in light of those Disclosures, if they so wish." ECF No. 40 at 2.

To that end, the Second Amended Settlement Agreement dated December 1, 2022 (ECF No. 109-1) provides that class members will receive a "special election letter" from Genworth, which will allow recipients to choose between keeping their current plan or "elect[ing] from a selection of paid-up reduced benefit options and/or reduced benefit options . . . some of which also entitle Class Members to damages payments." ECF No. 109-1 ¶¶ 55(a)-(b). Class members who make no elections will simply retain their current policies. Id. ¶ 57(a).

Class members who are not in non-forfeiture status, and "excluding Class Members whose level of benefits are below the level of benefits available in the defined options," will receive the following election options (ECF No. 109-1 at App. C(I)-(III)):

- First Paid-Up Benefit Option: A paid-up benefit of lifetime paid-in premiums minus (1) benefits received to date, and (2) $10,000. And, in addition, a $10,000 cash damages payment.

- Second Paid-Up Benefit Option: A paid-up benefit of 1.5 times the difference between the class member's paid-in premiums to date minus claims paid to date. This option does not include a damages payment.

- Reduced Benefit Options (RBOs): For qualifying class members, options that reduce their policy benefits while also awarding them a $6,000 damages payment, and for qualifying members with inflation benefits, an option that reduces their overall benefits but retains the inflation protection and a damages payment of $3,000. A catchall RBO for otherwise non-qualifying members whereby they receive a benefits reduction and a damages payment of $1,200.

- <u>Fully Paid-Up Options</u>: Class members who are in fully paid-up status may choose between: (1) Paid-up benefits equivalent to premiums paid in, less $10,000 and less benefits received, in addition to a $10,000 damages payment; or (2) a reduction in benefits and a damages payment of $6,000.

- <u>Non-Forfeiture Status Option</u>: Retention of current paid-up benefits and a damages payment of $1,150.

ECF No. 109-1 at App. C.

On January 26, 2023, the parties and counsel for the Langs informed the Court that they had reached a settlement agreement. The Langs had originally been invited to join the previous settlement with the other group of objectors, but the Langs declined. ECF No. 143 at 2-3. The Langs and Genworth held a mediation session on December 5, 2022, but it was unsuccessful. Id. at 3. The Langs and Genworth continued discussions until they reached an agreement on January 24, 2023. Id. The terms of the Langs' Settlement Agreement (ECF No. 140-1) are as follows. As described in the MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT WITH THE LANG OBJECTORS (ECF No. 140) filed on January 30, 2023, the cash damages amount for the non-forfeiture option will increase from $1,150 to $1,250.[4] ECF No. 140 at 5. Second, even though they are overruled, the Langs agree that all of their objections are withdrawn and will be denied as moot. Id. at 6. Third, the Langs agree not to further object to the

---

[4] This change is reflected in the Third Amended Settlement Agreement (ECF No. 141) that the parties filed for final approval on January 30, 2023.

settlement, file any appeals, or otherwise interfere with the
settlement's finality. Id. Lastly, Genworth agrees to pay the Langs
an incentive payment of $7,500 each and attorneys' fees not to
exceed $237,500, all paid separately from the payments to class
members. Id. at 6-7. The incentive payment and fees will be
addressed in a separate memorandum opinion.

### LEGAL FRAMEWORK

Under Fed. R. Civ. P. 23(e)(2) and (5), the Court must approve
settlement agreements, including agreements that provide payment
or consideration in exchange for withdrawing an objection. See
also In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir.
1991). A settlement can be approved "only after a hearing and on
a finding" that the proposed settlement is "fair, reasonable, and
adequate." See In re MicroStrategy, Inc. Sec. Litig., 150 F. Supp.
2d 896, 903-04 (E.D. Va. 2001). When determining whether to approve
a settlement in a class action, the court will first consider
whether the process leading to the settlement was fair and then
turn to whether the terms provided within the settlement are
adequate. See Jiffy Lube Sec. Litig., 927 F.2d 155, 158-59 (4th
Cir. 1991).

The Fourth Circuit has set a multifactor standard to assess
whether a class action settlement is "fair, reasonable, and
adequate." The "fairness" evaluation centers on the settlement
process itself. Whitaker v. Navy Fed. Credit Union, No. 09cv2288,

2010 WL 3928618, at *2 (D. Md. Oct. 4, 2010). In making that determination, a court considers:

> (1) the posture of the case at the time settlement was proposed;
>
> (2) the extent of discovery that had been conducted;
>
> (3) the circumstances surrounding the negotiations; and
>
> (4) the experience of counsel in the area of [the] class action litigation.

See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991). The "adequacy" evaluation focuses on the substance of the settlement. Whitaker, 2010 WL 3928616, at *2. In assessing the adequacy of the proposed settlement, a court considers:

> (1) the relative strength of the plaintiffs' case on the merits;
>
> (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;
>
> (3) the anticipated duration and expense of additional litigation;
>
> (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and
>
> (5) the degree of opposition to the settlement.

See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991).

### DISCUSSION

As described below, under the Jiffy Lube factors, the Court finds that the Langs' Settlement Agreement is fair, reasonable, and adequate.

## I. Fairness and Reasonableness

### A. *Posture of the Case*

When the parties have "had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of the case," this factor favors settlement approval. Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009) (quotations omitted). This settlement comes after all parties have had time to examine the evidence, provide Notice to the Class, and review the Amended Settlement Agreement. Thus, as the parties describe, "there was adequate time for the Lang Objectors to fairly evaluate their options and decide whether to opt-out, retain their objections, or reach an agreement with Plaintiffs and Defendants." ECF No. 140 at 9. Accordingly, this factor weighs in favor of a finding of reasonableness.

### B. *Extent of Discovery*

Relevant under this factor is the "complexity, expense, and duration of the litigation." Pili v. Patel, No. 3:18cv317, 2019 WL 8888162, at *2 (E.D. Va. Feb. 19, 2019). In general, this factor favors settlement approval if a proceeding has "advanced to a stage sufficient to permit the Parties and their counsel to obtain and

13

review evidence, to evaluate their claims and defenses and engage in arms-length settlement negotiations." Lomascolo, 2009 WL 3094955, at *11. Here, Plaintiffs and Defendants engaged in discovery during pre-litigation discussions and once the Complaint was filed. ECF No. 140 at 10. The Langs have also had time to review the Settlement Agreement, craft an objection, and work with Class Counsel and Genworth to reach a resolution. Accordingly, this factor shows that the settlement is reasonable.

### C. Circumstances Surrounding the Negotiations

"In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred." Gagliastre v. Capt. George's Seafood Restaurant, LP, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019). Here, the parties "engaged in extensive, arms-length negotiations" to reach an agreement with the Langs. ECF No. 140 at 10. There is no evidence of fraud or collusion in the negotiations. However, the Lang settlement was revealed after the Langs' objections had been overruled. And, the settlement was for a relatively small amount. Also, the resolution of the Langs' objections delayed the proceedings. Additionally, the law firm representing the Langs has been sanctioned elsewhere for improperly interjecting objections in class action cases. Taken together, these facts give the Court concerns that the settlement was prompted by the in terrorem effect of a possible appeal of the decision overruling the Lang's objections.

14

Nonetheless, the Court cannot find fraud or collusion produced by the Lang settlement. Accordingly, this factor favors approving the settlement. Gagliastre, 2019 WL 2288441, at *3.

### D. Experience of Counsel

In Lomascolo, the court found that this factor favored settlement approval when counsel had experience in federal litigation (and particularly representing multiple plaintiffs against corporations) and when counsel appeared competent based on the "pleadings, briefs, and arguments presented by counsel for the Parties throughout this case." 2009 WL 3094955, at *12; see also Kuntze v. Josh Enterprises, Inc., No. 2:18cv38, 2019 WL 2179220, at *3 (E.D. Va. May 20, 2019) (finding counsel was experienced and competent based on the pleadings, briefs, and arguments). Here, the Langs' counsel has experience in class action litigation, including representing objectors, and other commercial litigation. ECF No. 143 at 7-10. However, as mentioned above, the firm in which the Langs' counsel is a partner has been sanctioned for improperly objecting in class actions. The Langs' counsel, himself, was not sanctioned, and the Court has counsel's fee request under consideration. And, the fact that the firm was sanctioned does not detract from the Langs' counsel's qualifications or experience. Accordingly, this factor weighs in favor of a finding of reasonableness.

On this record, all four factors weigh in favor of settlement approval; and therefore, the Court finds that the Langs' Settlement Agreement is fair and reasonable.

## II. Adequacy

### A. *Strength of Plaintiffs' and Objectors' Case on the Merits and the Difficulties of Proof or Strong Defenses*

The first two adequacy factors may be considered together to assess whether the settlement is substantively adequate. To do that, is it necessary "to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." Brown v. Transurban USA, Inc., 318 F.R.D. 560, 573 (E.D. Va. 2016) (quotations omitted). Here, the Langs' objections had already been overruled by the Court. ECF Nos. 123 and 138. Additionally, the parties "do not concede that the prior cash damages payment . . . was deficient or inadequate in any respect," and the Langs were uncertain if they would be successful on appeal. ECF No. 140 at 11. However, all parties believe that "settlement was prudent." Id. The Court agrees that the Langs' Settlement Agreement adds some (albeit not great) value for the overall Class. Accordingly, this factor is neutral as to whether the settlement is adequate.

### B. *Anticipated Duration and Expenses of Additional Litigation*

The Court must also consider "the substantial time and expense litigation of this sort would entail if a settlement was not

16

reached." In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 256 (E.D. Va. 2009). Here, had the parties not reached an agreement as to the Langs' objections, the Langs could have filed an appeal, which would have prolonged the litigation and delayed the Class receiving relief. ECF No. 140 at 11-12.[5] Additionally, all parties would have been required to pay for the ongoing litigation, which could have been costly. Accordingly, this factor weighs in favor of a finding of adequacy.

### C. Defendants' Solvency and the Likelihood of Recovery

The Second Amended Settlement Agreement (and likewise the Third Amended Settlement Agreement) contains a provision that ensures that Genworth is solvent and that "the payment of cash damages, Contingency Fees, Class Counsel's litigation expenses, and Named Plaintiffs' service payments (the "Settlement Costs") will not cause GLIC or GLICNY to become insolvent." ECF No. 109-1 ¶ 76(a). "Regardless, of any clear evidence of Defendants risk of insolvency, this factor is largely considered 'beside the point given the other factors weighing in favor of preliminary approval.'" Solomon v. Am. Web Loan, Inc., No. 4:17cv145, 2020 WL 3490606, at *5 (E.D. Va. June 26, 2020) (quoting Henley v. FMC Corp., 207 F. Supp. 2d 489, 494 (S.D.W. Va. 2002)). Accordingly, this factor supports approval.

---

[5] Having concluded that the Langs' objections lacked merit, the Court doubts that any appeal, if filed, would have been successful.

17

### D. *Degree of Opposition*

Finally, the fifth factor takes into account "the reaction of the Class to the proposed settlement and the attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court." In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 257 (E.D. Va. 2009). There were no challenges to the Langs' Settlement Agreement. Rather, as the parties note, eight other objectors similarly filed objections to the cash damages payment for the non-forfeiture status policyholders, so it is logical that the Class would support a higher damages payment. ECF No. 140 at 12-13. Accordingly, this factor supports finding that the settlement is adequate.

Because the five adequacy factors all weigh in favor of settlement approval, the Court finds that the Langs' Settlement Agreement is adequate.

## CONCLUSION

For the foregoing reasons, and to the extent outlined above, the Langs' Settlement Motion will be granted, and the settlement therein discussed will be approved. The Court will address the Langs' request for attorneys' fees and incentive awards in a separate opinion.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 8 , 2023