IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FRED HANEY,
et al.,

    Plaintiffs,

v.                          Civil Action No. 3:22cv55

GENWORTH LIFE INSURANCE
CO., et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on OBJECTORS LONNY AND CARROL LANGS' MOTION FOR SERVICE AWARDS AND ATTORNEYS' FEES (ECF No. 142) ("Langs' Fees Motion"). On February 7, 2023, the Court heard argument on the Langs' Fees Motion from the Langs' counsel. The related JOINT MOTION TO APPROVE THE SETTLEMENT WITH THE LANG OBJECTORS (ECF No. 139) was granted by the Court in a separate opinion and order. ECF Nos. 150 and 151.

Having considered all of the submitted information and for the reasons set forth on the record during the hearing on February 7, 2023, as well as the reasons set forth below, the Langs' Fees Motion will be granted in part and denied in part insofar as the Court will not award the Langs' attorneys the full measure of fees requested nor will the Langs receive the full incentive award they requested.

## BACKGROUND

A more detailed recitation of the facts and procedural history is presented in the MEMORANDUM OPINION (ECF No. 134) dated January 26, 2023, and familiarity therewith is presumed. However, facts and procedural history pertinent to the Langs' Fees Motion are outlined below.

I.   **The Class Action Complaint and the Claims**

a. *The Complaint (ECF No. 1)*

Fred Haney, Marsha Merrill, Sylvia Rausch, Stephen Swenson, and Alan Wooten ("Class Representatives"), individually and on behalf of a proposed class of Genworth Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policyholders as of January 1, 2013 (collectively "Plaintiffs" or "class members"), filed this class action against Defendants Genworth Life Insurance Company ("GLIC") and Genworth Life Insurance Company of New York ("GLICNY") (collectively "Genworth" or "Defendants"). Compl. ¶ 170. Before the Complaint was filed, the parties engaged in three-days of mediation and extensive discovery that resulted in a Memorandum of Understanding ("MOU") that set "forth the material terms of an agreement-in-principle to be incorporated into a formal Settlement Agreement for the Court's approval." ECF No. 28 ¶¶ 4-7. The Complaint asserts two claims. COUNT ONE alleges a claim of fraudulent inducement by omission. COUNT TWO is a claim for declaratory relief under 28 U.S.C. § 2201.

2

### b. The Factual Background for the Class Claims

Plaintiffs each have Choice 2, Choice 2.1, California CADE, California Reprice, or California Unbundled Long Term Care Insurance policies issued by Genworth. Long Term Care ("LTC") insurance is intended to defray the cost of home care, assisted living care, nursing home care, and other specialized skilled facility care required when an individual can no longer perform the basic activities of daily life. Compl. ¶ 4.

Plaintiffs allege that, since 2013, Genworth has steadily and substantially increased the premiums on their LTC insurance policies. Compl. ¶ 3. When Genworth learned that there were substantial deficiencies in its reserves going forward, it sought at least six waves of significant LTC premium rate increases to compensate for the deficiency. Id. ¶ 156. Plaintiffs also allege that, to avoid reporting a current negative loss recognition testing margin, Genworth relied almost entirely on billions of dollars in future rate increases to plug the hole in its reserves. Id. ¶ 15.

However, say the Plaintiffs, Genworth's plan for those substantial future rate increases was never shared with Genworth's LTC policyholders. Id. ¶¶ 157-59. Rather, it is alleged that Genworth told policyholders only that it was "possible" that a premium rate would increase in the future, without telling policyholders that Genworth actually had significant holes in its

3

reserve and that, at that time, Genworth actually planned to significantly increase premiums over the next few years. Id. ¶¶ 24-29. Plaintiffs allege that Genworth only partially disclosed material information when communicating the premium increases to its LTC policyholders and that the undisclosed information was material to the ability of policyholders to make informed decisions respecting their LTC policy option renewals and the attendant premium increases. Id. ¶ 3.

In other words, it is alleged that the undisclosed information was material to decisions that LTC policyholders made respecting whether, and to what extent, to renew or retain their LTC coverage; that the undisclosed information was necessary to make accurate the information that was disclosed; and that, therefore, the omissions made the disclosed information fraudulent. It is also alleged that Genworth intended that policyholders would rely on the knowingly inadequate disclosures in making the election among their policy choices.

Generally speaking, the choices given by Genworth to policyholders respecting whether, and to what extent, to maintain LTC policies were to: (1) maintain the existing LTC coverage and pay the increased premium; (2) reduce the LTC coverage and pay a lower premium; or (3) opt for a paid up LTC policy. Plaintiffs maintain that, had they known the scope and magnitude of Genworth's

4

plans for future rate increases, they would have made different policy option elections than they actually made. Compl. ¶ 200.

   c. *The Claims*

In COUNT ONE, the Complaint presents a claim for fraudulent inducement by omission. Compl. at 53-57. In particular, the Complaint alleged that, "[b]y failing to adequately disclose material information about Genworth's rate increase action plans . . ., Genworth withheld material information from Plaintiffs and the Class." Id. ¶ 197. Further, the Complaint states that, "[h]ad [the class members] known the full scope and magnitude of Genworth's rate action plans, and the Company's reliance on massive rate increases in the future to remain viable, they would have made different policy option elections." Id. ¶ 200. The relief sought in COUNT ONE is to put class members "in the same position they were in before Genworth made the aforementioned omissions" by providing the missing disclosures on future rate increases to class members and allowing them to make new election decisions based on the information. Id. ¶¶ 202-03.

In COUNT TWO, the Complaint presents a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment claim is based on the same factual assertions as form the basis for the fraudulent inducement claim in COUNT ONE. But in

COUNT TWO, the Plaintiffs are asking that the Court "declare Genworth had a duty to disclose that information" so that "a corrective disclosure to all class members providing this information would be required." Compl. ¶ 207.

## II.  Procedural History

Armed with knowledge and evidence obtained in previous similar cases against Genworth[1], and after engaging in a period of confirmatory discovery, Class Counsel filed PLAINTIFFS' MOTION TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS (ECF No. 26), which the Court granted on May 2, 2022. ECF No. 31. On July 6, 2022, the parties submitted an Amended Settlement Agreement (ECF No. 33-1) to amend the final Release. ECF No. 33 at 2. The Court preliminarily approved the Amended Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.

---

[1] Skochin v. Genworth Life Ins. Co., No. 3:19cv49; Halcom v. Genworth Life Ins. Co., No. 3:21cv19.

6

Class Counsel has represented that, as of September 16, 2022, they have spoken with almost 4,300 policyholders who had questions about the Amended Settlement Agreement. ECF No. 40 at 22. Over the course of the sixty days allotted in the Notice, 187 policyholders opted out of the Settlement Agreement[2], and 19 objections were filed by 31 Class Members, including Lonny and Carrol Lang (ECF No. 51).[3] On November 17, 2022, the Court held a hearing to give objectors the opportunity to explain their objections, including counsel for the Langs, and for counsel to the parties to respond. The afternoon before that hearing, the parties informed the Court that an agreement had been reached with the following objectors: Michael Podoll (ECF No. 48), Dr. David Friedman, James Perry, Thomas Toman, Doug and Bonnie Ebstyne, and William and Linda Dudley (ECF Nos. 56, 69, and 73) (collectively "Podoll/Friedman Objectors"), and Jane Belkin (ECF No. 53) (collectively

---

[2] As of February 14, 2023, three additional policyholders have opted out of the settlement, bringing the total number of opt outs to 190 policyholders. ECF No. 155.

[3] The objections were made in response to the Amended Settlement Agreement (ECF No. 33-1) even though it is the Third Amended Settlement Agreement (ECF No. 141-1) which reflects changes to the Special Election Options in Appendix C made as a part of the two settlement agreements with the different groups of objectors that will ultimately be the document that applies to the Class members if the Court approves it. The Court is not required to provide an additional objection period for Class Members to review the Third Amended Settlement Agreement because the changes are narrow and further the interests of the Class. See Shaffer v. Continental Cas. Co., 362 Fed. Appx. 627, 631 (9th Cir. 2010); Harris v. Graddick, 615 F. Supp. 239, 244 (M.D. Ala. 1985).

"Settlement Objectors"). The listed parties agreed that, in exchange for making certain enhancements to the Special Election Options in the Amended Settlement Agreement, the objectors would withdraw their objections. ECF No. 96 at 13:1-13:5. That agreement has been approved (ECF No. 130) and is incorporated in the Second Amended Settlement Agreement (ECF No. 109-1). Counsel for the objectors was also granted attorneys' fees, and each settlement objector was awarded a $7,500 incentive payment. ECF No. 132.

In a MEMORANDUM OPINION (ECF No. 122) and ORDER (ECF No. 123) issued on December 12, 2022, the Court overruled the Langs' objections to the settlement except for the objection pertaining to Class Counsel's attorneys' fees. On December 13, 2022, during the final hearing, counsel for the Langs renewed their objection to the Class Counsel's attorneys' fees, arguing that more specificity was needed respecting the lodestar calculation. ECF No. 133 at 123-25. In a MEMORANDUM OPINION (ECF No. 137) and ORDER (ECF No. 138) issued on January 30, 2023, the Court overruled the Langs' objection to the attorneys' fees.

## III. The Terms of the Langs' Settlement Agreement

To understand the Langs' Settlement Agreement (ECF No. 140-1), it is necessary to understand the key terms of the Second Amended Settlement Agreement. In broad terms, as explained by Class Counsel, the Settlement Agreement "directly addresses [the]

alleged harm by providing Class Members with additional Disclosures about future rate increases, and then allowing them options" to either maintain their current benefits or "restructure their benefits and premiums in light of those Disclosures, if they so wish." ECF No. 40 at 2.

To that end, the Second Amended Settlement Agreement dated December 1, 2022 (ECF No. 109-1) provides that class members will receive a "special election letter" from Genworth, which will allow recipients to choose between keeping their current plan or "elect[ing] from a selection of paid-up reduced benefit options and/or reduced benefit options . . . some of which also entitle Class Members to damages payments." ECF No. 109-1 ¶¶ 55(a)-(b). Class members who make no elections will simply retain their current policies. Id. ¶ 57(a).

Class members who are not in non-forfeiture status, and "excluding Class Members whose level of benefits are below the level of benefits available in the defined options," will receive the following election options (ECF No. 109-1 at App. C(I)-(III)):

- First Paid-Up Benefit Option: A paid-up benefit of lifetime paid-in premiums minus (1) benefits received to date, and (2) $10,000. And, in addition, a $10,000 cash damages payment.

- Second Paid-Up Benefit Option: A paid-up benefit of 1.5 times the difference between the class member's paid-in premiums to date minus claims paid to date. This option does not include a damages payment.

- Reduced Benefit Options (RBOs): For qualifying class members, options that reduce their policy benefits while also awarding

them a $6,000 damages payment, and for qualifying members with inflation benefits, an option that reduces their overall benefits but retains the inflation protection and a damages payment of $3,000. A catchall RBO for otherwise non-qualifying members whereby they receive a benefits reduction and a damages payment of $1,200.

- Fully Paid-Up Options: Class members who are in fully paid-up status may choose between: (1) Paid-up benefits equivalent to premiums paid in, less $10,000 and less benefits received, in addition to a $10,000 damages payment; or (2) a reduction in benefits and a damages payment of $6,000.

- Non-Forfeiture Status Option: Retention of current paid-up benefits and a damages payment of $1,150.

ECF No. 109-1 at App. C.

On January 26, 2023, the parties and counsel for the Langs informed the Court that they had reached a settlement agreement. The Langs had originally been invited to join the previous settlement with the other group of objectors, but the Langs declined. ECF No. 143 at 2-3. The Langs and Genworth held a mediation session on December 5, 2022, but it was unsuccessful. Id. at 3. The Langs and Genworth continued discussions until they reached an agreement on January 24, 2023. Id.

The terms of the Langs' Settlement Agreement (ECF No. 140-1) are as follows. As described in the MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT WITH THE LANG OBJECTORS (ECF No. 140) filed on January 30, 2023, the cash damages amount for

the non-forfeiture option will increase from $1,150 to $1,250.[4]
ECF No. 140 at 5. Second, even though the Langs' objections have
been overruled[5], the Langs agree that all of their objections to
the settlement terms are withdrawn. Id. at 6.[6] Third, the Langs
agree not to further object to the settlement, file any appeals,
or otherwise interfere with the settlement's finality. Id. Lastly,
Genworth agrees to pay the Langs an incentive payment of $7,500
each and attorneys' fees not to exceed $237,500, all paid
separately from the payments to class members. Id. at 6-7.

### STANDARD OF REVIEW

The court must approve any payment or consideration "provided
in connection with . . . withdrawing an objection." Fed. R. Civ.
P. 23(e)(5)(B). "If the consideration involves a payment to counsel
for an objector, the proper procedure is by motion under Rule 23(h)
for an award of fees." Committee Notes on Rules (2018). Pursuant
to Fed. R. Civ. P. 23(h), "the court may award reasonable
attorney's fees . . . that are authorized by law or by the parties'

---

[4] This change is reflected in the Third Amended Settlement
Agreement (ECF No. 141) that the parties filed for final approval
on January 30, 2023.

[5] ECF Nos. 122, 123, 137 and 138.

[6] The Langs' Settlement Agreement also provides that the Langs'
objections will be denied as moot because they are withdrawn. ECF
No. 140 at 6. However, as noted above, the Langs' objections were
overruled because they lacked merit in ECF Nos. 122, 123, 137, and
138, and those decisions stand as entered. The effect of the
withdrawal provisions, of course, is to foreclose any appeal of
the Langs' objections.

agreement." Courts within the United States Court of Appeals for the Fourth Circuit may use two competing methods of calculation for attorneys' fees: the lodestar method or the percentage of recovery method. In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 260 (E.D. Va. 2009). The Court has discretion to use either method. Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008).

Under the lodestar method, the Fourth Circuit has held that "a proper calculation" of attorneys' fees requires three steps: (1) calculating a lodestar figure by multiplying the number of hours worked by a reasonable billing rate; (2) deducting fees for hours worked on unsuccessful and unrelated claims; and (3) awarding a percentage of the remaining amount, in consideration of "the degree of success enjoyed by the plaintiff." In re Lumber Liquidators, 27 F.4th 291, 300 (4th Cir. 2022) (quoting McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013)).

The percentage of recovery method requires the Court to award attorneys' fees based on "a percentage of the Class' recovery, set by the weighing of a number of factors by the court." In re The Mills, 265 F.R.D. at 260. The factors generally include:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the

> complexity and duration of the litigation; (5)
> the risk of nonpayment; (6) public policy; and
> (7) awards in similar cases.

Id. at 261.; Lumber Liquidators, 27 F.4th at 297, n.3. "An attractive aspect of the percentage of recovery method is its results-driven nature which 'ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." In re The Mills, 265 F.R.D. at 260 (citation omitted). However, "blindly awarding a requested percentage of the funds presents drawbacks of its own, namely what has been described as an 'anchoring' effect, which might result in an inaccurately-high award even if the Court awards a smaller percentage than initially requested for fear of deviating too far." Id. (citing In re Cardinal Health Inc. Sec. Litig., 528 F. Supp. 2d 752, 763 (S.D. Ohio 2007)).

For both methods, "courts will typically employ one method as the primary calculation method and use the other method as a cross check on the reasonableness of the first." Skochin v. Genworth Fin., Inc., No. 3:19-CV-49, 2020 WL 6536140, at *4 (E.D. Va. Nov. 5, 2020). No matter which method is used to calculate attorneys' fees, the Court must still determine if the result is reasonable. Galloway, 2020 WL 7482191, at *5. To determine reasonableness, the

Court will employ a seven-factor test that combines the Fifth Circuit's twelve-factor Johnson test and the Third Circuit's seven-factor Gunter test. Id.; In re Genworth Fin. Sec. Litig., 210 F. Supp. 3d 837, 843 (E.D. Va. 2016).

Additionally, courts within the Fourth Circuit "recognize the purpose and appropriateness of service awards to Class Representatives." See Brown v. Transurban USA, Inc., 318 F.R.D. 560, 578 (E.D. Va. 2016) (citing Deem v. Ames True Temper, Inc., No. 6:10-CV-01339, 2013 WL 2285972, at *6-7 (S.D.W. Va. May 23, 2013) (approving award of $7,500 per lead plaintiff); Manuel v. Wells Fargo Bank, No. 3:14-CV-238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (approving a $10,000 service award); Berry v. LexisNexis Risk & Info. Analytics Grp., No. 3:11-CV-754, 2014 WL 4403524, at *16 (E.D. Va. Sept. 5, 2014), aff'd sub nom. Berry v. Schulman, 807 F.3d 600 (4th Cir. 2015) (approving a $5,000 service award); Burke v. Shapiro, Brown & Alt, LLP, No. 3:14cv838/3:14cv201 (DJN), 2016 WL 2894914, at *6 (E.D. Va. May 17, 2016) (approving a $3,000 service award)). "A fairly typical practice, incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. (quoting Manuel, 2016 WL 1070819, at *6) (internal quotations omitted). Incentive awards have also

14

been awarded to objectors who achieve a benefit for the entire Class. Halcom v. Genworth Life Ins. Co., No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022).

**DISCUSSION**

## I. Attorneys' Fees

Counsel for the Langs requests an award of $237,500 in attorneys' fees because, in their view, negotiations with counsel for Plaintiffs and Defendants led to an $100 increase in cash damages for the non-forfeiture option, which is said to add over $3.225 million of value to the settlement. ECF No. 143 at 2, 5. Counsel asks the Court to apply the percentage of recovery method and then to perform a lodestar cross check. Id. at 6. Counsel estimates that they are requesting fees equal to 7.3% of the added value to the settlement. Id.

To assess the reasonableness of the attorneys' fees for the Langs' counsel, the Gunter and Johnson factors are discussed in order:

### a. *Results Obtained and Amount Involved*

While the actual amount paid to class members is unknown at this time, counsel for the Langs estimates that the increase in the cash damages payment for the non-forfeiture option will add at least $3,255,000.00 to the value of the settlement. ECF No. 143 at 6. Additionally, while not the main focus, the Langs' written objection mentioned dissatisfaction with the cash damages payment

15

for the non-forfeiture status option, so the value they added to the settlement was related to their objection. ECF No. 51 at 16-19. Although the $100 increase undoubtedly does add some value to the class settlement, the agreement between the parties and the Langs was reached after the Langs' objection had been overruled, a process that has delayed providing relief to the Class. Additionally, the $100 increase is relatively small in comparison to the settlement as a whole, and it is doubtful that the small amount warranted delaying implementation of the settlement. This delay and the relative small value of the increase notwithstanding, this factor appears to weigh in favor of reasonableness.

### b. Objections

As of February 7, 2023, no objections have been raised challenging the fee request for Langs' counsel. Additionally, both Class and Counsel and Genworth agreed not to oppose the request for attorneys' fees. ECF No. 143 at 7. Accordingly, this factor somewhat weighs in favor of finding that the award of attorneys' fees is not unreasonable.

### c. Skill and Efficiency of Attorneys Involved

Counsel believes they possess "the necessary skills to inform and advise their clients and [assist] them in successfully reaching a settlement." ECF No. 143 at 10. Robert Clore's primary practice is in appellate litigation, but he has experience litigating class action lawsuits, including representing objectors. ECF No. 143 at

16

7-9. Blake Weiner owns a criminal law practice but asserts that he has experience in civil practice litigating Title VII and § 1983 cases. Id. at 9-10. Accordingly, this factor appears to weigh in favor of a finding of reasonableness.

### d. Complexity and Duration of the Litigation

While the overall case was undoubtedly complex and difficult, counsel for the Langs had the Second Amended Settlement Agreement as a base to make changes to, so the process of coming up with revisions has not been shown to be complex. Counsel argues that they were "required to, among other things, compare and contrast the Halcom and Skochin settlements relative to the relief offered" here because, in their opinion, class members in non-forfeiture status were entitled to greater relief. ECF No. 143 at 10-11. However, the Court expressly overruled their arguments comparing the relief between the three cases and the idea that some class members were entitled to greater relief, so counsel's reliance on that point is of little merit in the complexity analysis. ECF No. 122 at 27-28. And, the duration of Langs' counsel's involvement was not long. Accordingly, this factor, at best, is neutral as to the reasonableness of the requested attorneys' fees.

### e. Risk of Non-Payment and Public Policy

Counsel for the Langs represent that they took this case on a contingency fee basis and thus were "prepared to put in the time and effort without the guarantee of payment." ECF No. 143 at 11;

17

see also In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 263
(E.D. Va. 2009) ("The risk of nonpayment incurred by . . . Counsel
is evident in the fact that they undertook this action on an
entirely contingent fee basis."). Moreover, public policy favors
incentivizing "capable and seasoned counsel" to undertake complex
litigation. In re The Mills, 265 F.R.D. at 263. Because recovery
was not certain, and public policy favors the requested fee here,
this factor weighs somewhat in favor of a reasonable fee award.

### f. Time Devoted to Litigation

Counsel represents that, as of January 30, 2023, they had
spent approximately 317.5 hours litigating this case. ECF No. 143
at 11. Counsel argues that this is less than the objectors incurred
in Halcom and is reasonable when compared to how much time counsel
for the other objectors in this case spent reaching their
resolution. Id. at 11. Clore represents that he spent 298.7 hours
performing the following activities:

> conferring with Carrol and Lonny Lang on a regular basis;
> analyzing the Skochin and Halcom dockets; conducting
> extensive legal research; drafting, editing, and
> finalizing drafts of the written objection and
> supporting papers; preparing for the final approval
> hearing; traveling to Richmond, Virginia from Corpus
> Christi, Texas to argue at the final approval hearing;
> preparing for and engaging in a formal mediation;
> extensive settlement negotiations with opposing counsel;
> and monitoring the docket.

ECF No. 143-1 at 5-6. Weiner spent 18.8 hours "conferring with the
Langs and Mr. Clore; analyzing and editing drafts of the written

18

objection and supporting papers; finalizing the objection and supporting papers for filing; attending the final approval hearing; and participating in mediation." ECF No. 143-2 at 2.

Counsel provided no other details to support why it was reasonable or necessary to have devoted the hours they say they devoted. In particular, counsel did not provide a categorized breakdown of the kind of tasks that they performed in the 317.5 hours they claimed.[7] Moreover, counsel's practice of block billing, or lumping "several tasks together under a single entry, without specifying the amount of time spent on each particular task," prevents the Court from being able to adequately determine the reasonableness of the time spent litigating the Langs' objections. Haught v. Wireless Ctr., Inc., No. 3:16-cv-942, 2017 WL 2193246, at *3 (E.D. Va. May 8, 2017) (quotations and citations omitted); see also Two Men & a Truck/Intern., Inc. v. A Mover Inc., 128 F. Supp. 3d 919, 926 (E.D. Va. 2015) ("[B]lock billing is disfavored in this district."). And, it is accepted that block billing is a basis upon which to reduce a fee request. See Guidry v. Clare, 442

_____

[7] In contrast, counsel for the other group of settlement objectors provided a log of all hours spent litigating the objections and descriptions of how each period of time was spent. ECF Nos. 104-1 and 112-2. Similarly, Class Counsel provided categorized charts for each law firm that provided how many hours each attorney spent performing tasks in each category, and counsel provided an explanation of each category during the final settlement hearings on November 17 and December 13, 2022. ECF Nos. 43-4 at 5, 43-5 at 6, 43-6 at 5, and 43-7 at 6.

F. Supp. 2d 282, 294 (E.D. Va. 2006) ("Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award."); S. Bos. Energy LLC v. Hartford Steam Boiler Specialty Ins. Co., No. 1:18-cv-596, 2019 WL 3643062, at *5 (E.D. Va. Aug. 15, 2019) ("If the travel time has been block billed such that the Court cannot determine how much time was spent travelling, the Court may reduce the overall fee award."); Two Men & a Truck/Intern., Inc. v. A Mover Inc., 128 F. Supp. 3d 919, 929-30 (E.D. Va. 2015) (describing "collating and filing documents with the court," "reviewing files for information," and reviewing the Docket Report as clerical work "that should not be compensated for at all"). It seems that the number of hours devoted to the objections was far more than necessary.

For the foregoing reasons, it is quite difficult to discern whether it was reasonable or necessary for counsel to have devoted 317.5 hours to pressing the Lang's objections. That difficulty assumes significant standing in the reasonableness assessment where, as here, the objections were overruled and the results obtained were modest.

### g. Fees in Similar Cases

Lastly, "the Court looks to fee awards in analogous cases to determine the reasonableness of the percentage requested here." In re Mills, 265 F.R.D. at 264. "[M]erely comparing the size of the fund and percentage of the award in other cases to the present

case discounts the specifics of each case, [however, it] nonetheless provides a valuable point of reference. Still, the reasonableness inquiry is necessarily case-specific, and thus the percentage actually awarded varies from case to case." Id.

The Langs' counsel argues that their requested fee is lower than that which was awarded to the objectors' counsel in Halcom, which was $1.2 million. ECF No. 143 at 12; Halcom v. Genworth Life. Ins. Co., No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022). Additionally, counsel cites at least three cases where objectors' counsel has been awarded a significantly higher percent. Id. (citing Kaufman v. Am. Express Travel Related Servs., Co., 2016 WL 806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector fees of 34% of the benefit); Arnett v. Bank of Am., N.A., 2014 U.S. Dist. LEXIS 149679, 2014 WL 5419125, at *3 (D. Or. Oct. 22, 2014) (25% fee to objector's counsel); Lan v. Ludrof, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector fee of 25% of the benefit)). However, none of these cases are from this District or from a trial court within the Fourth Circuit.

For the foregoing reasons, this factor is neutral as to a finding of reasonableness.

### h. Lodestar Cross-Check

Counsel for the Langs estimates that, as of January 30, 2023, their lodestar amount is $234,485. ECF No. 143 at 12-13; see also

In re The Mills, 265 F.R.D. at 264 ("[T]he Court may accept hours estimates provided by Lead Counsel."). This creates a current multiplier of 1.02. Counsel contends this is reasonable in comparison to the 2.4 multiplier for the objectors' counsel in Halcom, the 3.0 multiplier for the Friedman objectors' counsel, and the 3.75 multiplier for the Belkin objectors' counsel. ECF No. 143 at 13.

Based on the record before the Court, it cannot be said that the Langs' counsel's request of $237,500 in attorneys' fees is reasonable. To begin, counsel block billed the 317.5 hours, so the Court cannot determine whether counsel spent a reasonable amount of time litigating the Langs' objection or whether counsel impermissibly charged more hours than necessary. Second, the Langs' objection relating to the agreement reached with the parties had already been overruled, so continuing to negotiate an agreement delayed implementing the relief for the Class. Finally, the settlement was for a relatively small amount, so the award of all attorneys' fees requested is not warranted because the fee request is for securing a modest result. Nonetheless, notwithstanding the lack of merit to the objections, the delay, and the modest relief obtained, the Langs' counsel is entitled to a reasonable fee. The claimed hours (317.5) amounts to slightly less than 40 eight-hour days (39.6875). Having reviewed, and heard argument on, the Langs' objections, having taken into account the results secured, and

22

having considered all other applicable factors, the Court concludes that a reasonable fee to compensate counsel for the results obtained is $80,000. The Court finds that this is a reasonable amount considering the substance of the objection, the ultimate result of the agreement, the stage of the litigation at which the agreement was reached, and the amount of time reasonably devoted to achieve the result.

## II. Langs' Service Awards

In Halcom, the Court awarded a $7,500 incentive payment for each of the represented objectors after finding such an award was reasonable. No. 3:21-cv-19, 2022 WL 2317435, at *16 (E.D. Va. June 28, 2022). Likewise, the Court awarded a $7,500 incentive payment to each of the earlier settlement objectors who reached an agreement before their objections were overruled. ECF No. 132. The Langs request the same incentive payment to compensate them for standing up on behalf of the Class, "refusing to agree to the initial settlement offer, and [expending] time to achieve" the improvements to the settlement. ECF No. 143 at 15. The Langs did expend time and energy helping counsel achieve an agreement with the parties. However, their objections lacked merit, the results obtained were modest, and the record does not establish why a $7,500 service award would be warranted. Accordingly, the Court will award an incentive payment of $3,750 to each of the Langs.

23

## CONCLUSION

For the foregoing reasons, and to the extent outlined above, the Langs' Fees Motion will be granted in part and denied in part. The Court will award $80,000.00 in attorneys' fees to the Langs' counsel and a $3,750 incentive payment to Lonny and Carrol Lang.

It is so ORDERED.

_____ /s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 15, 2023

24