IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| FRED HANEY, MARSHA MERRILL, SYLVIA RAUSCH, STEPHEN SWENSON, and ALAN WOOTEN, individually, and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GENWORTH LIFE INSURANCE COMPANY and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, | Civil Action No.: 3:22-cv-00055-REP |

**FINAL JUDGMENT AND ORDER
<u>OF DISMISSAL WITH PREJUDICE</u>**

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Motion") (ECF No. 39). Plaintiffs, individually and on behalf of the proposed Class, and Genworth have entered into a Third Amended Joint Stipulation of Class Action Settlement and Release ("Stipulation") (ECF No. 141-1) that settles the above-captioned litigation. Having considered the Motion, the Stipulation together with all appendices thereto, the record, and the briefs, declarations, and oral argument in this matter, IT IS HEREBY ORDERED as follows:

1. Unless otherwise defined herein, all terms that are capitalized herein shall have the same meaning ascribed to those terms in the Stipulation.

2. The Court has jurisdiction over this litigation, Named Plaintiffs, Genworth, and Class Members, and any party to any agreement that is part of or related to the Stipulation.

## FINAL STIPULATION APPROVAL

3. Rule 23(e)(2) of the Federal Rules of Civil Procedure requires the Court to determine whether the Stipulation is "fair, reasonable, and adequate." *See also In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016) (granting final approval). Under the amended rule the Court should consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

4. Amended Rule 23(e)(2)(B) (arm's-length negotiation) and amended Rule 23(e)(2)(C)(i) (adequacy of the settlement) are similar to the two-level analysis previously adopted by the Fourth Circuit, which "includes an assessment of both the procedural fairness of the settlement negotiations and the substantive adequacy of the agreement itself." *In re Neustar, Inc. Sec. Litig.*, 2015 WL 8484438, at *2 (E.D. Va. Dec. 8, 2015) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-60 (4th Cir. 1991)). Like Rule 23(e)(2)(B), this procedural fairness analysis ensures "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 158-59. And, like Rule 23(e)(2)(C)(i), the adequacy analysis "'weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *Neustar*, 2015 WL 8484438, at *4.[1]

5. The Fourth Circuit has also approved district courts considering the following additional factors: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the experience of counsel; (4) the relative strength of the plaintiffs' case on the merits; (5) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (6) the anticipated duration and expense of additional litigation; (7) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (8) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

6. The Court finds that the Stipulation is fair, adequate, and reasonable in light of these factors. First, the Settlement reflects the strength of Named Plaintiffs' case as well as Genworth's

---

[1] Citations omitted and emphasis added throughout unless otherwise noted.

defenses. This Court is familiar with the litigants and their legal and factual positions and finds that the judicial policy favoring the compromise and settlement of class action suits is applicable here. *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1430 (D.S.C. 1990) ("Federal courts have long recognized a strong public policy supporting settlement of class actions."); *see also Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 186 (4th Cir. 1993) ("Settlement . . . promises to maximize the resources available to the plaintiff class and minimize the drain on both defendants and the courts.").

7. The Parties engaged in three days of in-person mediation over two sessions, on November 8, 2021 and January 14 and 15, 2022, under the direction of mediator Rodney A. Max of Upchurch, Watson, White & Max Mediation Group, Inc. The Parties also engaged in additional settlement communications by telephone and e-mail, both directly and through the mediator.

8. The Court further finds the Stipulation was reached after arm's-length negotiations by experienced and capable counsel, aided by an experienced mediator, and that it was not the product of fraud, overreaching, or collusion among the Parties.

9. Second, the risks, expense, complexity, and likely duration of further litigation also support approval of the Settlement. Class Counsel were prepared to vigorously prosecute their motion to certify a class pursuant to Fed. R. Civ. P. 23, which Genworth was prepared to oppose. Even if the Court granted Named Plaintiffs' motion for class certification of one or more of Named Plaintiffs' claims, Named Plaintiffs still would have faced Genworth's motion for summary judgment, trial, and appeals. The outcome of a trial of any case, let alone a large and complex class action like this, which deals with complicated issues of insurance, accounting and disclosure, is inherently uncertain.

10. Third, the extent of discovery completed also supports approval. In an efficient manner, the Parties conducted substantial pre-suit and confirmatory fact discovery. Among other things, Class Counsel researched Genworth rate action filings with insurance commissioners over a 10-year period in at least 20 states, surveyed and charted rate action approvals on Class Policies in all 50 states, reviewed over 300,000 pages of documents from Genworth, reviewed the past ten years of Genworth's SEC filings, public statements, and financial statements filed with the Delaware Department of Insurance, and interviewed two key Genworth fact witnesses, Genworth's Senior Vice President for In Force and Genworth's Senior Project Manager for In-Force Placement. All Parties also responded to numerous document requests and interrogatories. Accordingly, the Parties have ample information with which to weigh the relative merits of settlement and continued litigation.

11. Fourth, the consideration provided to Class Members, including the ability to make Special Elections for their long-term care ("LTC") policies based on additional Disclosures of Genworth's financial condition and its plan for future rate increases, as well as the opportunity to obtain substantial cash payments and/or enhancements of coverage based on those Special Elections, is substantial.

12. Fifth, the opinions of Class Counsel, who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 568 (E.D. Va. 2016) ("Plaintiffs' Counsel has an extensive record of representing plaintiffs in consumer-protection class actions, which indicates counsel's ability to properly leverage the value of this case into a fair settlement."). Class Counsel endorse the Settlement as fair, adequate, and reasonable.

13. Finally, the reaction of the Class Members supports final approval of the Settlement. Of the approximately 350,000 Class Members, there were only 19 objections to the Settlement filed by 31 Class Members, 4 of which were withdrawn by 9 objecting class members pursuant to settlements. Only 190 Class Members excluded themselves from the Settlement, *i.e.*, approximately six-hundredths of one percent (0.06%) of the Class objected or opted-out. The small number of objections and opt-outs favors final approval. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.").

14. The Court has carefully and independently evaluated each of the objections submitted by every objector. *See Flinn*, 528 F.2d at 1174 (affirming final approval of class settlement and noting that objectors "were given ample opportunity to present testimony and to be heard on the settlement"). None of the objections reveals that the Settlement is not fair, reasonable, or adequate, and none presents a basis to disapprove the Settlement. As Named Plaintiffs argue, the Settlement came about only after considerable negotiations and was based on significant fact discovery. None of the objections provides a reasoned basis why the proposal might be unfair given the risk, delay, and expense of continued proceedings. Each of the objections was OVERRULED in ECF Nos. 123, 135, 138, and 152, and any remaining objections are hereby OVERRULED.

15. The Court, therefore, finds that the Stipulation is in the best interests of Class Members, is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and GRANTS final approval of the Stipulation and all of the terms and conditions contained therein.

## APPROPRIATE NOTICE

16. Rule 23(c)(2)(B) requires that Class Members be provided "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

17. The Court finds that the plan to disseminate the Class Notice and Publication Notice the Court previously approved has been implemented and satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. The Class Notice, which the Court approved, clearly defined the Class and explained the rights and obligations of the Class Members. The Class Notice explained how to obtain benefits under the Settlement, and how to contact Class Counsel and the Settlement Administrator. The Court appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq") to fulfill the Settlement Administrator duties and disseminate the Class Notice and Publication Notice. The Class Notice and Publication Notice permitted Class Members to access information and documents about the case to inform their decision about whether to opt out of or object to the Settlement.

18. The Court finds and concludes that the notices provided by Genworth to the appropriate state and federal officials fully satisfied the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1715. No state or federal officials objected to the Settlement.

## FINAL CERTIFICATION OF THE CLASS

19. The Court preliminarily found class certification appropriate under Fed. R. Civ. P. 23. For the reasons set forth below, the Court finds final certification of the Class appropriate as well. Accordingly, pursuant to Fed. R. Civ. P. 23, the Court finally certifies, for settlement purposes only, the Class is defined as follows:

> all Policyholders[2] of GLIC and GLICNY long-term care insurance Choice 2, Choice 2.1, California CADE, California Reprice, and California Unbundled policies and state variations of those Class Policies[3] in force at any time during the Class Period[4] (defined below) and issued in any of the States excluding: (1) those Policyholders whose policies entered Non-Forfeiture Status (defined below) or entered a Fully Paid-Up Status (defined below) prior to January 1, 2014; (2) those Policyholders whose Class Policy is Lapsed (defined below) and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium, or whose Class Policy has otherwise Terminated (defined below), as of the date of the Class Notice; and those Policyholders whose Class Policy is Lapsed and is outside any period Genworth allows for the Class Policy to be automatically reinstated with payment of past due premium or has otherwise Terminated, as of the date the Special Election Letter[5] would otherwise be mailed to the Policyholder; (3) those Policyholders who are deceased at any time before their signed Special Election Option is post-marked for mailing to Genworth, or is faxed or emailed to Genworth; (4) Genworth's current officers, directors, and employees as of the date Class Notice is mailed; and (5) Judge Robert E. Payne and his immediate family and staff.

---

[2] "Policyholder(s)" means the policy owner, except: (1) where a single policy or certificate insures both a policy owner and another insured person, "Policyholder(s)" means both the policy owner and the other insured person jointly; (2) where the Class Policy at issue is certificate 7042CRT, 7044CRT, or any other Class Policy that is a certificate issued under a group long-term care insurance policy, "Policyholder(s)" means the certificate holder.

[3] "Class Policies" means Genworth long-term care insurance policies on the policy forms identified in Appendix A to the Settlement Agreement in force at any time during the Class Period and issued in any of the fifty (50) states of the United States or the District of Columbia.

[4] The "Class Period" means any time on or between January 1, 2013 and the date the Class Notice is mailed.

[5] The "Special Election Letter" means the letter that Genworth will send, as part of consideration to the Class under this Settlement that provides disclosures and settlement options available to the Class Member.

Also excluded from the Class is any individual who timely and validly opted-out of the Class, the list of which is attached hereto and incorporated herein by reference as **Exhibit A**.

20. As a general matter, following a rigorous Rule 23 analysis, the Court may certify a national or multi-state settlement class. *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D.W. Va. 2005).

21. The Court has conducted such a rigorous Rule 23 analysis and finds that the Class satisfies the requirements of Federal Rule of Civil Procedure 23(a): the Class is comprised of over 352,000 members; there are questions of law or fact common to the Class, such as whether Genworth failed to disclose material information in connection with its rate-increase notification letters; the Named Plaintiffs' claims are typical of those of Class Members and there are no conflicts between the Named Plaintiffs and the Class, as they were each deprived of the same allegedly material disclosures about Genworth's plan for substantial future rate increases and reliance on obtaining those increases to ensure it would be able to continue to pay future claims; and, as the record more than reflects, the Named Plaintiffs and their counsel are more than competent, do not have individual interests which conflict with the Class and thus have fairly and adequately protected the interests of the Class, and shall continue to do so.

22. The Court finds that the Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3): the questions of law or fact common to the Class predominate over individual questions, and class action litigation is superior to other available methods for the fair and efficient adjudication of this controversy. Whether Genworth failed to disclose all of the alleged material information to Named Plaintiffs and the Class during the Class Period is a question shared by all Class Members and every state-law claim in this litigation, the answer to which rests on common evidence. Further, whether Genworth's alleged failure to disclose material

information resulted in a fraudulent inducement of Named Plaintiffs and the Class is a question shared by the Class.

## NO ADMISSION OF LIABILITY

23. This Final Judgment and Order and the Stipulation shall not be offered or received against any Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Party with respect to the truth of any fact alleged by any Party or the validity of any claim or defense that has been or could have been asserted in the Action or in any litigation, the deficiency of any claim or defense that has been or could have been asserted in the Action or any litigation, or the suitability of this case for class certification on a contested motion.

## DISMISSAL, RELEASES, AND COVENANT NOT-TO-SUE

24. Upon the Final Settlement Date, this Action is dismissed with prejudice, with each Party to bear its own costs and attorneys' fees except as provided by the terms of the Stipulation and the Order Awarding Attorneys' Fees and Expenses to Class Counsel and Service Awards to Named Plaintiffs (ECF No. 138) and ECF Nos. 132 and 157 awarding attorneys' fees and incentive payments to select objectors and their counsel.

25. All Class Members shall be bound by the terms of the Stipulation upon entry of this Final Judgment and Order.

(a) Upon the Final Settlement Date, each Class Member, as well as each Named Plaintiff, forever releases and discharges the Genworth Released Parties of and from any and all known or unknown, contingent or absolute, matured or unmatured, suspected or unsuspected, disclosed or undisclosed, foreseeable or unforeseeable, liquidated or unliquidated, existing or arising in the future, and accrued or unaccrued claims, demands, interest, penalties, fines, and

causes of action, that the Named Plaintiffs and Class Members may have from the beginning of time through and including the Final Settlement Date that relate to claims alleged, or that have a reasonable connection with any matter of fact set forth in the Action, including, but not limited to, any claims relating to rate increases on Class Policies prior to the Final Settlement Date. This release specifically includes any legal or equitable claim arising from or related to any election or policy change made or not made by any Class Members to his or her policy benefits prior to the Final Settlement Date. Named Plaintiffs and Class Members, subject to the exception set forth below, will further release the Genworth Released Parties and Class Counsel from any claims relating to or arising out of the Disclosures or the Special Election Letters the Class Members are provided as part of the Settlement Agreement, including (but not limited to) claims specifically relating to any alleged omissions in the Disclosures or the Special Election Letters or to any decision, or non-decision, to maintain, modify, or give up coverage based on the Disclosures, the Special Election Letters, or the Special Election Options offered. Collectively, the claims described in this paragraph shall be referred to as the "Released Claims." A claim that a Class Member was harmed by an express and intentional misrepresentation: in the completed portion of the Disclosures that currently is bracketed in the template Special Election Letter appended as Appendix D to the Settlement Agreement, in the completed portions of the Special Election Options that are made available to that Class Member that currently are bracketed in the template Special Election Letter, or by the Genworth Released Parties or Class Counsel about the Disclosures, shall not be a Released Claim. A Class Member may pursue such a claim in this Court via complaint or petition within three years of the date the Class Member makes a Special Election or three years of the deadline for the Class Member to make a Special Election, whichever is earlier, provided that, before filing any such claim, the Class Member shall first

notify the Parties of the basis for the claim and provide them with a reasonable opportunity to investigate and, if appropriate, remedy the alleged harm.

(b) The Released Claims shall not include a Class Member's claim for benefits under his or her Class Policy consistent with his or her policy coverage, nor shall it include a Class Member's challenge or appeal of Genworth's denial of benefits under his or her Class Policy.

(c) Upon the Final Settlement Date, each Class Member and each Named Plaintiff expressly waives and releases any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each Named Plaintiff and each Class Member similarly waives any and all rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Each Named Plaintiff and each Class Member may hereafter discover facts other than or different from those which he or she knows or believes to be true with respect to the Released Claims, but each Named Plaintiff and each Class Member hereby expressly waives and fully, finally, and forever settles and releases, upon the Final Settlement Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

26. Upon the Final Settlement Date, and by Order of this Court, Genworth releases and discharges Named Plaintiffs, the Class, and Class Counsel from any and all claims that arise

out of or relate to the institution, prosecution, or settlement of the claims against Genworth in the Action, except for claims relating to the breach or enforcement of the Settlement Agreement.

27. By Order of this Court, Class Members and Named Plaintiffs shall not sue, directly or indirectly, any of the Genworth Released Parties or Class Counsel with respect to any of the Released Claims. Class Members and Named Plaintiffs are forever barred and enjoined from directly or indirectly filing, commencing, instituting, prosecuting, maintaining, joining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, or before any tribunal or administrative body (including any State Regulator, state Department of Insurance or other regulatory entity) whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any of the Released Claims. If any Class Member or Named Plaintiff breaches this covenant not to sue, the Genworth Released Parties or Class Counsel, as the case may be, shall be entitled to all damages resulting from that breach, including, but not limited to, attorneys' fees and costs in defending such an action or enforcing the covenant not to sue.

## TERMINATION

28. In the event that the Stipulation is terminated pursuant to the terms of the Stipulation, (a) the Stipulation and this Order shall become void, shall have no further force or effect, and shall not be used in the Action or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Stipulation that survive termination; (b) this matter will revert to the status that existed before execution of the Stipulation; and (c) no term or draft of the Stipulation or any part of the Parties' settlement discussions, negotiations, or documentation (including any briefs filed in support of preliminary or final approval of the Settlement) shall (i) be admissible into evidence for any purpose in the Action or other

proceeding other than as may be necessary to enforce the terms of the Stipulation that survive termination, (ii) be deemed an admission or concession by any Party regarding the validity of any Released Claim or the propriety of certifying any class against Genworth, or (iii) be deemed an admission or concession by any Party regarding the truth or falsity of any facts alleged in the Action or the availability or lack of availability of any defense to the Released Claims.

## JURISDICTION

29. Without affecting the finality of the Court's judgment, the Court retains jurisdiction over the implementation, administration, effectuation, and enforcement of the Stipulation and its terms. The Court also has the jurisdiction and authority to enforce the provisions of this Final Judgment and Order. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994).

## FINAL APPROVAL

30. For the reasons set forth throughout this ORDER, it is hereby ORDERED that PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (ECF No. 39) is GRANTED.

## APPEALS AND SETTLEMENT IMPLEMENTATION

31. To avoid any unnecessary delay of relief to the Class Members, the Court further ORDERS that any person who appeals from this Judgment and Order shall file simultaneously with the notice of appeal a motion stating their position as to the appropriate amount of an appeal bond.

32. The Court further ORDERS that Genworth is authorized (but not required), in its discretion but in consultation with Class Counsel, to implement the Settlement before the Final Settlement Date (which as defined in the Stipulation Paragraph 50 follows the disposition of any appeal), in which case all provisions in the Stipulation specifying actions to be taken on or after

- 14 -

the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date Genworth commences implementation of the Settlement. If Genworth implements the Settlement pursuant to this Paragraph, the Parties shall notify the Settlement Class of the date of commencement of implementation by a posting on the Settlement website at least seven (7) days prior to such commencement.

**IT IS SO ORDERED.**

Dated: February 15, 2023

/s/ REP
ROBERT E. PAYNE
SENIOR UNITED STATES DISTRICT JUDGE